## IN THE UNITED STATES DISTRICT COURT FOR
## THE WESTERN DISTRICT OF PENNSYLVANIA

RENEE ZINSKY,                                    Civil Action

        Plaintiff,                               No. 2:22-cv-547

        vs.

MICHAEL RUSSIN, RUSSIN FINANCIAL,
RUSSIN GROUP, SIMON ARIAS, III,
ARIAS AGENCIES,
S.A. ARIAS HOLDINGS, LLC,
AMERICAN INCOME                                  ELECTRONICALLY FILED
LIFE INSURANCE COMPANY,


        Defendants.                              JURY TRIAL DEMANDED

### PLAINTIFF'S AMENDED COMPLAINT

Pursuant to F. R Civ. P. 15(a)(1), Plaintiff, Renee Zinsky ("Plaintiff"), by and through her undersigned counsel, files this Amended Complaint against Michael Russin ("Defendant" or "Russin"), Russin Financial ("Defendant" or "Russin Financial"), Russin Group ("Defendant" or "Russin Group"), Simon Arias III ("Defendant" or "Arias"), Arias Agencies ("Defendant" or "Arias Agencies"), S. A. Holdings LLC ("Defendant" or "Arias Holdings"), and American Income Life Insurance Company ("Defendant" or "AIL") seeking all available relief under the Fair Labor Standards Act of 1938, 29 U.S.C. §§201, *et seq*. ("FLSA") and Pennsylvania laws. The following allegations are based on personal knowledge as to Plaintiff's own conduct and on information and belief as to the acts of others.

### JURISDICTION AND VENUE

1.      This Court has jurisdiction over Plaintiff's FLSA claim pursuant to 29 U.S.C. Pa. C.S.A. § 216(b) and 28 U.S.C. § 1331.

2.      This Court has jurisdiction over Plaintiff's claims for sexual assault, and related

torts (battery, false imprisonment, negligent infliction of emotional distress, and intentional infliction of emotional distress) pursuant to the Ending Forced Arbitration of Sexual Assault and Sexual Harassment Act of 2021 (H.R. 4445), amending the Federal Arbitration Act (9 U.S.C. §§ 1-16).

3.    This Court has supplemental jurisdiction under 28 U.S.C. § 216(b) and 28 U.S.C. § 1331.

4.    Venue in this Court is proper pursuant to 28 U.C. 1391. Plaintiff resides in this judicial district, the events giving rise to Plaintiff's claims occurred within this district, and the Defendants do business in this district.

## PARTIES

5.    Plaintiff, Renee Zinsky ("Plaintiff" or "Zinsky"), is an adult individual who resides in Wexford, Pennsylvania 15090.

6.    Michael Russin ("Defendant" or "Russin") is an adult individual who resides at 11 Noble Lane, Windham Maine, 04062.

7.    Russin Financial ("Defendant" or "Russin Financial") is a Pennsylvania corporation and has its principal place of business at 150 Lake Drive, Suite 105, Wexford, Pennsylvania, 15090.

8.    The Russin Group LLC ("Defendant" or "Russin Group") is a Pennsylvania corporation and has its principal place of business at 8000 Christopher Wren Drive, Unit 108, Wexford, Pennsylvania 15090.

9.    Russin Financial and The Russin Group LLC are owned and operated by Russin.

10.   Simon Arias, III ("Defendant" or "Arias") is an adult individual who resides at 103 Indian Meadow Drive Mars, Pennsylvania, 16046.

11.   Arias Agencies ("Defendant" or "Arias Agencies") is a Pennsylvania corporation

and has its principal place of business at 150 Lake Drive, Suite 105, Wexford, Pennsylvania, 15090.

12.     S.A. Arias Holdings, LLC ("Defendant" or "Arias Holdings") is a Pennsylvania corporation and has its principal place of business at 12330 Perry Highway, Wexford Pennsylvania 15090.

13.     Arias Agencies and S.A. Arias Holdings, LLC are owned and operated by Arias.

14.     American Income Life Insurance Company ("Defendant" or "AIL") is an Indiana corporation and operates throughout the United States, including approximately thirteen offices in this judicial district.

15.     AIL is a financial services business which includes selling life insurance products to consumers through its agencies such as Russin Financial and Arias Agencies.

16.     AIL is an insurance company registered with the National Association of Insurance Commissioners.

17.     AIL employs Plaintiff and other individuals engaged in commerce or in the production of good for commerce and/or handling, selling, or otherwise working on goods or materials that have been moved in or produced in commerce by any person, as required by 29 U.S.C. §§ 206- 207.

18.     Russin Financial, Russin Group, Arias Agencies, Arias Holdings, and AIL's (collectively referred to as "Corporate Defendants") business models are, in large part, based on selling life insurance products to consumers as well as recruiting sales agents.

19.     The Corporate Defendants' annual gross volume of business exceeds $500,000.00.

20.     The Corporate Defendants are not independently owned and controlled local enterprises within the meaning of 29 U.S.C. § 207(b)(3).

## BACKGROUND FACTS

21.     Plaintiff has been employed by the Corporate Defendants from April 2019 through present, as an insurance producer, selling life insurance products on behalf of the Corporate Defendants.

22.     From April 2019 through August 2021, approximately, Plaintiff held the positions of Agent, Supervising Agent, and General Agent while reporting to Russin.

23.     From August 2021 through present, Plaintiff has held the position of Agent while reporting to Arias.

24.     For all relevant times herein, Russin reported to Arias.

25.     Throughout all of her positions noted above, Plaintiff was paid on a commission basis.

26.     The Corporate Defendants required Plaintiff to sign an "Agent Contract" for each of Plaintiff's aforementioned agent positions.

27.     Most recently, the Corporate Defendants required Plaintiff to enter into an Agent Contract in August 2021 ("Agent Contract"). Attached hereto as **Exhibit A** is a true and correct copy of the unexecuted agreement provided by the Corporate Defendants at that time[1].

28.     Plaintiff's Agent Contract provides a specific commission structure. The Contract further provides, in relevant part, as follows:

     a.   The Agent is not an employee of the Company; rather the agent is an independent contractor. The agent has no fixed hours and is free to choose the time and manner in which services are performed;

     b.   The Agent shall be responsible for all expenses incurred in the production of insurance for the Company. The Agent shall, at his or her own expense, furnish his or her own means of transportation … and any other relevant expense incurred solicitation of insurance for the Company.

---

[1] Plaintiff believes and therefore avers that she signed this Contract on or about August 20, 2021 but has been unable to locate the executed agreement to date.

    c.   All disputes, claims, questions and controversies of any kind or nature arising out of or relating to this Contract… except a dispute regarding the enforceability of this agreement to arbitrate, shall be submitted to binding arbitration.

    d.   Aside from issues relating to arbitration or the enforceability of this agreement to arbitrate, all issues relating to any dispute, claim, or controversy arising out of or relating to this Contract shall be governed by and decided in accordance with the internal laws of the State of Texas, without regard to its choice-of-law rules.

    e.   In the event of any dispute or disagreement, whether arising out of this Contract or otherwise … The Parties to the dispute shall use their best efforts to settle such disputes … The Parties shall negotiate with each other in good faith to reach a just solution.

## A. **The Hiring Process**

29.      On or about November 2018, Plaintiff interviewed with Russin for a sales agent position with the Corporate Defendants.

30.      During the interview, Russin represented that, as a sales agent for the Corporate Defendant's, Plaintiff's compensation would be comprised of multiple income streams, including but not limited to the following:

    a.   Commissions based on volume and retention of life insurance product sales;
    b.   Commissions based on volume and retention of new agent recruits;
    c.   Bonuses; and,
    d.   Customer renewals of previously sold life insurance products which continue for a certain period of time depending on the agents' tenure.

31.      Since, various representatives on behalf of the Corporate Defendants have reiterated the same compensation structure to Plaintiff.

32.      Immediately following the aforementioned interview, Russin offered Plaintiff a position as a Sales Agent, pending her passing the applicable Pennsylvania license exam.

33.      Over the next couple of months, Russin would contact Plaintiff from time to time to get updates with regard to her decision and the status of her licensing process.

34.      At that time, Russin promised Plaintiff that if Plaintiff accepted the job offer of Sales Agent, she would be making enough money to pay for her living expenses, pay off her

personal debts, save an additional $50,000.00, and be promoted to a Master General Agent within her first year of work.

35.     In reliance on the above referenced representations and promises, Plaintiff accepted the job offer and obtained her state license on or about March 2019.

**B.  Plaintiff's Employment**

36.     On or about late April 2019, Plaintiff began working as a Sales Agent for the Corporate Defendants at their office located at 150 Lake Drive, Suite 105, Wexford, Pennsylvania, 15090 ("Wexford Office").

37.     Arias, Russin, and other sales agents of the Corporate Defendants reporting up to Russin and/or Arias also worked out of the Wexford Office.

38.     From approximately May 2019 through November 2020, Plaintiff received sales commissions on a weekly basis and renewal commissions (from prior sales) on a monthly basis.

39.     On or about November 2020, without notice, the Corporate Defendants began withholding Plaintiff's compensation for earned monthly renewal commissions.

40.     Despite Plaintiff's repeated inquiries and requests since November 2020, the Corporate Defendants have never provided a response or explanation with regard to Plaintiff's owed compensation.

41.     To date, the Corporate Defendants continue to withhold said compensation owed to Plaintiff for her earned renewals since November 2020.

42.     Upon information and belief, the Defendants routinely withhold their sales agents' compensation for various reasons, including but not limited to blackmail, coercion, intimidation tactics or other unethical and/or unlawful reasons, to their benefit.

43.     Upon hire, the Corporate Defendants required Plaintiff to attend training for approximately one month.

6

44.     The Corporate Defendants informed Plaintiff that she would be compensated at least $500 per week for the mandatory training.

45.     The mandatory training lasted at least four weeks and Plaintiff was required to work more than eight hours per day, six or more days per week, and over forty (40) hours a week while training.

46.     During training, the Corporate Defendants required Plaintiff to work on-site and attend training courses in its offices. Plaintiff was also required to "shadow" employees of Corporate Defendants "in the field". Some of those days lasted in excess of 12 hours.

47.     Plaintiff is unable to ascertain her actual hourly rate during training because she never received a single paystub that reflected her applicable hourly rate, total hours worked, gross wages earned, or net wages earned; however, the rate of pay for Plaintiff was solely set by the Corporate Defendants.

48.     Plaintiff was not paid for her time spent in training.

49.     Since she did not make sales while in training, and Plaintiff's compensation is commission based, she did not otherwise earn money while training.

50.     For all times relevant herein, the Corporate Defendants wrongfully classified Plaintiff as an independent contractor.

51.     More specifically, the Corporate Defendants controlled practically all aspects of Plaintiff's work, including but not limited to the following particulars:

    a. Control over the manner in which Plaintiff's work was performed;
    b. Control over Plaintiff's work schedule, including but not limited to certain days of the week, times, and amount of hours worked;
    c. Control over Plaintiff's work schedule, requiring in-office meetings at certain times and days of the week;
    d. Control over Plaintiff's work schedule, requiring in-office sales calls at certain times and days of the week;
    e. Control over Plaintiff's work schedule, requiring off-site sales meetings with potential buyers to occur at certain times and days of the week;
    f. Control over Plaintiff's work schedule, requiring off-site team meetings, often

involving significant travel and overnights;

g.   Control over Plaintiff's work location;

h.   Control over Plaintiff's work performance;

i.   Controlling the types and/or brands of products Plaintiff could sell;

j.   Requiring Plaintiff to complete the Corporate Defendants' training and orientation programs;

k.   Requiring Plaintiff to comply with the Corporate Defendants' written policies and guidelines;

l.   Paying Plaintiff on a weekly basis;

m.   Discouraging Plaintiff from holding other jobs; and,

n.   Controlling Plaintiff's work in all other respects.

52.    Plaintiff performed duties that were integral to the Corporate Defendants' business.

53.    The Corporate Defendants control the method and means of Plaintiff's work including that of Plaintiffs and not merely the result of the work.

54.    Plaintiff was not paid minimum wage or overtime pay

55.    Plaintiff did not receive regular meal and rest breaks and was not paid for missed breaks.

56.     Plaintiff was required to pay her own expenses incurred in the performance of her job.

**C.  <u>The Defendants' Hostile, Toxic, and Cult-Like Work Environment</u>**

57.    Soon after starting to work for the Corporate Defendants, Plaintiff experienced a highly charged misogynistic, aggressive, unethical, hostile, and toxic work environment, including but not limited to the following particulars:

a.    The vast majority of agents working for the Corporate Defendants were male;

b.   All of the business leaders within Arias Agencies and Russin Financial were male;

c.   The top business leaders within Arias Agencies were male with significant criminal backgrounds;

d.   Many of the male business leaders were professional fighters, boxers and/or frequently engaged in physical combat activities or other violence at work;

e.   Female coworkers warned Plaintiff of frequent unwelcomed sexual advances from the male leaders as "part of the culture";

f.   Female coworkers warned Plaintiff of sexual relationships they had and/or were engaged in with male leaders as "part of the culture";

g.   Male agents, including but not limited to Russin, openly and frequently abused alcohol and drugs including but not limited to steroids, male enhancing drugs, cocaine,

8

painkillers, and other controlled substances during work hours, at the office, and/or work events;

h.  Male agents, including but not limited to Russin, would frequently discuss and publicize their illicit drug and alcohol abuse;

i.  Male leaders, including but not limited to Russin, frequently hosted work events at bars, nightclubs, and strip clubs where excessive alcohol and drugs were used, along with inappropriate and offensive sexualized language, behavior, and other degrading, misogynistic conduct;

j.  Male leaders, including but not limited to Russin and Albert Serur, would drug female subordinates, by administering sedatives such as gamma-hydroxybutyrate ("GHB") and other controlled substances frequently referred to as "date rape drugs" to female subordinates without their knowledge or consent;

k.  Male leaders, including but not limited to Arias and Russin, openly and frequently engaged in and encouraged aggressive and violent behavior such as physical fights, slapping agents' in the face, and wrestling matches in the Arias Agencies office and at work related events on a frequent basis;

l.  Male leaders, including but not limited to Arias and Russin, intentionally used lies, misrepresentations, threats, blackmail, bullying, ridicule, and intimidation tactics to "motivate", manipulate, or otherwise take advantage of their subordinates, to the Defendants' benefit;

m.  Male leaders, including but not limited to Arias and Russin, intentionally used lies, misrepresentations, threats, blackmail, and intimidation tactics to discourage and/or prevent agents from voicing complaints about their and/or other males' use of unethical and fraudulent business practices and/or the corporate culture and work environment, generally speaking;

n.  Male leaders, including but not limited to Arias and Russin, intentionally used lies, misrepresentations, threats, blackmail, and intimidation tactics to discourage and/or prevent agents from asserting their legal rights;

o.  Male leaders, including but not limited to Russin, constantly made lewd, sexualized, demoralizing, vile and otherwise offensive comments about women, many of whom were their subordinates, coworkers, spouses, girlfriends, and/or partners of said male leaders;

p.  Male leaders, including but not limited to Russin, Justin Adams, James Cunningham, Steven Dell, and Matt Diulus, openly and frequently engaged in extramarital affairs and sexual relationships, often times with female subordinates, and openly discussing same in the workplace;

q.  Male leaders, including but not limited to Russin, Justin Adams, James Cunningham, Steven Dell, and Matt Diulus, openly and frequently engaged in extramarital affairs and sexual relationships, often times with female subordinates, resulting in pregnancies which Arias and male leaders financed or otherwise caused to be aborted;

r.  Male leaders, including but not limited to Arias and Russin, engaged all male guest speakers, many of which were professional fighters and boxers with no experience in sales or the insurance industry to motivate and/or educate the Corporate Defendants' sales team;

s.  Male leaders, including but not limited to Arias engaged other male guest speakers, to include the Corporate Defendants' male leaders such as James Cunningham, Steve Dell, Justin Adams and Matt Diulus who had known histories of sexually harassing and/or sexually assaulting their female subordinates at work, to "motivate" or educate

the sales team;

t.  Male leaders, including but not limited to Arias and Russin would challenge their subordinates to physical fights, or otherwise encourage their subordinates to engage in inappropriate and violent physical contact during work hours;

u.  Promotion of males over females who performed at the same level if not higher than said males;

v.  Demotions and or terminations of females for performance similar to if not better than male peers.

w.  Paying males higher wages than females including but not limited to sales commissions, bonuses, residual income, and other fringe benefits such as competitions and contests;

x.  Fixing, rigging, and/or otherwise manipulating Arias Agencies contests and competitions so that certain male leaders would win over otherwise eligible female agents;

y.  Frequent and continuous disregard for the applicable laws, regulations, and/or Corporate Defendants' policies, to the benefit of the Defendants;

z.  Demotion of females who performed their duties in accordance with applicable laws, regulations, and/or the Corporate Defendants' policies;

aa. Male leaders, including but not limited to Arias and Russin, frequently referring to males as *"studs", "young studs"*, and *"stallions";*

bb. Male leaders, including but not limited to Arias and Russin, frequently referring to females as "*sluts", "bitches"*, and/or *"whores"*;

cc. Male leaders, including but not limited to Arias and Russin, would hire and/or seek to hire disproportionate amount of unqualified male agents including but not limited to those with significant criminal backgrounds, under or at the age of 18, and/or with little to no training or education;

dd. Male leaders, including but not limited to Arias and Russin, would encourage new agents and/or prospective new agents to detach from their friends, family, and/or respective historic personal value system so to incorporate the Defendants' personal and professional values;

ee. Male leaders, including but not limited to Arias and Russin, would encourage new agents, and/or prospective new agents to drop out of college or otherwise discontinue formal education and/or formal training in lieu of working on behalf of Corporate Defendants;

ff. Male leaders, including but not limited to Arias and Russin, facilitated, encouraged and promoted males, particularly those males who engaged in unethical and fraudulent business practices, including but not limited to the following:

   i.  Forging AIL customers' signatures,

   ii.  Billing and charging AIL customers for products and services without said customers' consent;

   iii.  Intentionally lying and/or otherwise misleading AIL customers to fraudulently induce customers' business;

   iv.  Targeting certain AIL customers including but not limited to the elderly, uneducated, and/or unsophisticated to manipulate and mislead;

   v.  Forcing subordinate sales agents to pay male leaders for sales leads or other unknown "manager fees";

   vi.  Misusing AIL customers', including but not limited to deceased AIL customers', identities to fraudulently charge AIL customers for bogus life insurance policies;

vii.  Misusing former AIL agents' license numbers and other identifying information (without their consent) to fraudulently sell AIL products to AIL customers;

viii.  Creating counterfeit bank accounts and/or mailing addresses on behalf of the Corporate Defendants to facilitate the aforementioned unethical and/or fraudulent business practices; and,

ix.  Violating AIL customer's privacy rights by accessing their private information such as bank accounts and social security numbers privacy rights without consent to fraudulently induce sales, to the Defendants' pecuniary benefit.

gg. Male leaders, including but not limited to Arias and Russin, concealing and/or covering up for the aforementioned misconduct on behalf of other males;

hh. Male leaders, including but not limited to Arias, taking affirmative steps to identify and punish subordinate agents who reported and/or otherwise spoke up against the aforementioned misconduct, including but not limited to hiring private investigators to follow and/or harassing female agents;

ii. Male leaders, including but not limited to Arias and Russin, encouraging, condoning, or otherwise complicit with the aforementioned misconduct on behalf of other males;

jj. Other inappropriate, offensive, non-compliant, or otherwise unlawful behavior on behalf of the Corporate Defendants which contributed to the Corporate Defendants' hostile, toxic, and cult-like work environment.

58.     In addition, Russin would frequently make inappropriate, lewd, violent, degrading, and sexualized comments, threats, and other offensive behavior toward females in his professional capacity on behalf of the Corporate Defendants, including but not limited to the following:

a.   *I do everything fast, even cummies;*
b.   *This deal needs to be ran like a fucking cult!*
c.   *You little sluts;*
d.   *Whore;*
e.   *She was a dime piece;*
f.   *Bitch;*
g.   *Stupid bitch;*
h.   *Disgusting fucking tramp;*
i.   *You couldn't ever taste anyone else on me? I had a few same day hits;*
j.   *I'm the alpha male! I run this shit!;*
k.   *Why does someone have to put a gun to your head to work;*
l.   *Stop being a pussy;*
m.   *My boss would leave work early to get a fuckin hand job at a massage parlor;*
n.   *If you're a man and you're successful, you're a target…Women make up the majority of lawsuits in business. It's just what they do;*
o.   *Feminism must be checked into the boards by strong men;*
p.   *Feminism is the worst thing that's happened to modern society;*
q.   *A man submits to God. A woman to her husband;*
r.   *If I want to go sit at home and watch porn and sit on a butt plug, I will;*
s.   *I like pussy, titties, ass and drugs;*
t.   *I'll blow lines and hit a tittie bar;*
u.   *I want this to be like a fucking cult. No new person should feel comfortable*

*questioning the leadership*;

v.  *I have a philosophy: kill first, ask questions later;*

w.  *Don't listen to these dumbass women;*

x.  *Fuck around and find out;*

y.  *The rise of matriarchy in the form of pseudo feminism will likely need stamped out with violence;*

z.  *Women want to feel protected and need to know you can be violent;*

aa. *Your beatings will continue until my morale improves;*

bb. *[I'm] 240 pounds of sex drive and violence;*

cc. *I need to be the next best thing to goddam fuckin blow jobs, that's how it has to be;*

dd. *I'm talking commune ... 20-30 families living on it. I'll make the guys sell life insurance and the women care take care of the kids and animals;*

ee. *Too many men get taken out of the game by money grubbing whores;*

ff. *You're a bitch and you'll never succeed;*

gg. *People know I'm a dangerous person and that people could get hurt;*

hh. *If you're not working today you're choosing your own suffering;*

ii. *We are going to thrust our manliness and masculine prowess upon the entire corporation;*

jj. *Drop the ball on this month and everyones sons gonna grow up wanting to be chicks and your daughters are going to be aspiring OnlyFans stars;*

kk. *I was being unfaithful, abusing drugs every day, every night; and,*

ll. *I'm not perfect, goddamit. I'm a mother fucking psycho and anyone with half a brain can see that.*

**D.  Defendants' Treatment of Plaintiff**

59.     Beginning in late April 2019, Russin began making unwelcomed sexual advances toward Plaintiff, sexually harassed, and or otherwise sexually assaulted Plaintiff on numerous occasions within the normal course and scope of his employment with Corporate Defendants.

60.     Despite Plaintiff's refusals and/or rejections, Russin continued to make unwelcomed sexual advances and/or pressured Plaintiff for sexual favors including but not limited to the following acts and other particulars:

a.  During work meetings, Russin would often expose his genitals to Plaintiff and her female peers, along with physical gestures and verbal comments/questions such as "*What are you going to do about this?*"

b.  Russin frequently made inappropriate sexual comments to Plaintiff such as *"You just haven't had the right dick yet"*;

c.  Russin sent Plaintiff sexual and inappropriate text messages including photographs of himself naked with an erect penis;

d.  Russin would coerce Plaintiff and other female subordinates to "take a drive" with him for their "one on one business meetings". During the drive, Russin would pull over, park the car, and lock the doors while making unwelcomed sexual advances and touching Plaintiff without her consent, force Plaintiff to watch pornography with him, and/or force Plaintiff to watch him masturbate while he watched pornography;

e.  Russin administered sedatives such as GHB and/or other "date rape" drugs to Plaintiff without her knowledge or consent;

f.  The date rape drugs caused Plaintiff to blackout, lose consciousness, and/or lose control of her body at which time she believes and avers that she was forced to engage in sexual conduct against her will and/or without her knowledge or consent;

g.  Russin would engage in sexual acts with other female subordinates in Plaintiff's presence, forcing Plaintiff to observe same; and,

h.  Other inappropriate sexualized, violent, and/or otherwise unwelcomed and offensive conduct.

61.  The Corporate Defendant's leaders, including but not limited to Arias, Steven Greer, Chief Executive Officer of AIL ("Greer"), and David Zophin, President of Globe Life Inc. ("Zophin"), encouraged, participated in, or were otherwise complicit with regard to the aforementioned hostile, toxic and cult-like workplace environment and corporate culture, including but not limited to the following particulars:

a.  Firsthand observations of the widespread conduct at work and work events as noted above;

b.  Female agents other than Plaintiff complained to leaders such as Arias about the hostile workplace and misogynistic culture, including but not limited to complaints about Russin and other Arias Agencies' male leaders' sexual harassment;

c.  During the course of his employment with the Corporate Defendants, Russin openly disclosed to the Corporate Defendants his "manic episodes" which, per Russin, often resulted in episodes of rage, anger, violence, sex, and abuse of drugs and alcohol;

d.  Retaining Russin and returning Russin to the workplace as a manager of people soon after inebriated, manic, and/or violent episodes;

e.  Hiring Russin following such a manic episode when Russin committed a series of threatening and violent acts including but not limited to destroying property owned by Allegheny College which resulted in Russin being arrested with various crimes and expelled from said college;

f.  On or about June 2020, Russin committed a myriad of drug and alcohol induced violent acts during another manic episode including but not limited to destroying hotel property, harassing and threatening friends, family, and law enforcement officers, while broadcasting same via Facebook Live, which was extensively viewed by countless AIL representatives;

g.  Russin was ultimately charged with eight felonies as a result of his conduct on or about June 2020, which he openly shared with various representatives on behalf of the Corporate Defendants, including but not limited to Arias;

h.  After outwardly expressing his support of Russin immediately following the June 2020 incident, Arias assured the Russin Financial team members that Russin would only return to work on behalf of the Corporate Defendants after Russin successfully completed an outpatient rehabilitation program;

i.  Within a week, approximately, Russin returned back to work on behalf of the Corporate Defendants and continued to openly behave in the same vile, offensive, and inebriated manner;

j.  Frequent in person visits to the Arias Agency and Russin Financial office by Zophin and Greer;

k.  Frequent virtual calls and meetings with Greer, Zophin, and/or the Arias Agencies and/or Russin Financial business leaders and other agents via phone and/or video;

l.  Frequent offsite work meetings and other work-related events attended by Greer, Zophin, with the Arias Agencies and Russin Financial leaders and other agents;

m.  High turnover of agents, particularly female agents, under Arias and Russin due to the above referenced toxic work environment;

n.  Promotion of male agents, despite their low customer retention rate;

o.  Promotion of male agents, despite their known unethical and fraudulent business practices;

p.  On or about December 2021, Greer and/or Zophin were involved in the termination of another male leader within their organization and associated with Arias Agencies as a result of sexually harassing and/or sexually assaulting at least one of his female subordinates;

q.  It is believed and therefore averred that Greer and/or Zophin have been involved with or otherwise made aware of various other sexual assault, sexual harassment, and/or unethical, fraudulent business practices on behalf of AIL agents from April 2019 through present;

r.  Frequent interaction via social media between and among Greer, Zophin, Arias, Russin and other sales agents; and,

s. Other observations and/or experiences of the Corporate Defendants' aforementioned hostile and toxic work environment

**E.** **Defendants' Ongoing Misconduct Amidst Plaintiff's Reporting**

62.     On or about November 2020, Plaintiff began her attempts to report ongoing misconduct on behalf of Russin, Arias, and other sales agents.

63.     At that time, Plaintiff met with Arias and reported systemic use of unethical and fraudulent business practices by the Corporate Defendants' sales agents, including but not limited to intentional and fraudulent misrepresentations frequently made to potential customers with the intention to induce said clients to purchase the Corporate Defendants' life insurance products.

64.     In response, Arias told Plaintiff that he would look into and take care of said misconduct.

65.     On or about June 2021, Plaintiff began her efforts to report the ongoing sexual harassment and sexual assault that she had been victim to for years.

66.     At that time, Plaintiff began searching for a human resources representative when discovered a point of contact by the name of Chrissy Vansuch ("Vansuch") listed on Arias Agencies' website for the specific purpose of reporting sexual harassment.

67.     At that time, Plaintiff attempted to contact Vansuch but never received a response.

68.     Plaintiff later learned that Vansuch was not employed by the Corporate Defendants and that the contact information was bogus.

69.     Plaintiff later learned that Vansuch is Arias' mother.

70.     On or about July 2021, Plaintiff approached Arias requesting an in-person meeting to discuss a serious matter.

71.     After being put off for about a month, Plaintiff got an in-person meeting scheduled with Arias for August 11, 2021.

72.     On August 11, 2011, Plaintiff told Arias that she had been a victim of ongoing sexual harassment and/or sexual assault on behalf of Russin and provided Arias with evidence substantiating same.

73.     For example, Plaintiff provided Arias with a text she received from Russin stating "*The only way you can get [promoted] is if you and Mal blow me at the same time*".

74.     On or about August 11, 2011, Plaintiff also reiterated her concerns of the ongoing unethical and fraudulent business practices to Arias and provided Arias with documentation substantiating same.

75.     For example, Plaintiff provided Arias with an email from a customer wherein said customer was complaining to Plaintiff about one of the male agents forging the customer's signature and making unauthorized withdrawals from the client's bank accounts.

76.     During the meeting with Arias, Plaintiff asked Arias for contact information for human resources on behalf of the Corporate Defendants.

77.     Arias responded: "*We don't have HR*" and discouraged Plaintiff from escalating her concerns any further. Arias instructed Plaintiff not to engage legal counsel as it could reflect poorly on him.

78.     On or about August 26, 2021, Natalie Price ("Price"), Executive Assistant to Arias, emailed Plaintiff a document titled "Incident Report" and instructed Plaintiff to sign and return same.

79.     The Incident Report referred to Plaintiff's complaints of sexual harassment as "Inappropriate Communication" stating, in part, as follows:

> *This form is intended to document an incident that occurred, actions taken, and final resolution of the situation ... The texts that pertain to [Plaintiff] are being handled accordingly and documented with repercussions ... all requests of [Plaintiff] have been handled and have satisfied the claims ...A follow up to this incident will be held in 30 days...*

80.     The Incident Report made no reference to sexual harassment or Plaintiff's complaints of unethical business practices.

81.     Plaintiff's claims of sexual harassment and unethical and/or fraudulent business practices were in no way "handled" or "satisfied" at that time, or ever.

82.     Plaintiff never signed the Incident Report.

83.     The Corporate Defendants failed to follow up with Plaintiff in any manner over the following 30 days as promised.

84.     On or about November 10, 2021, one of Plaintiff's coworkers provided her with contact information for an actual Human Resources representative on behalf of the Corporate Defendants.

85.     On or about November 10, 2021, Plaintiff contacted the Human Resources representative and relayed her ongoing complaints, including but not limited to the fact that her previous reports of the same conduct were never properly investigated and/or covered up by Arias.

86.     On or about November 17, 2021 – approximately one year after Plaintiff reported unethical and fraudulent business practices, and approximately four months after Plaintiff initialized her complaints of sexual harassment and/or sexual assault - Logan Blackmore ("Blackmore"), on behalf of AIL, contacted Plaintiff advising that they had retained outside counsel to investigate Plaintiff's complaints, i.e. Janet Hendrick ("Hendrick") and the Phillips Murrah law firm.

87.     Based on the Corporate Defendants' ongoing business relationship with Phillips Murrah, it is believed and therefore averred that Phillips Murrah was incapable of performing an unbiased or impartial investigation of Plaintiff's complaints.

88.     Notwithstanding, Plaintiff provided Hendrick with droves of information and names of witnesses to substantiate Plaintiff's complaints of sexual harassment and unethical and

fraudulent business practices.

89.     Upon information and belief, Hendrick failed to conduct a thorough investigation.

90.     On or about November 30, 2021, Hendrick interviewed Plaintiff with regard to Plaintiff's complaints of sexual harassment.

91.     At that time, Hendrick represented that AIL had not retained her to investigate Plaintiff's complaints of unethical business conduct and fraud claims.

92.     Approximately one month later, Hendrick represented that AIL would be handling the ethics issues internally, and that the internal investigation would be managed by Blackmore.

93.     After hearing nothing for another month, approximately, Plaintiff's counsel followed up with Blackmore on multiple occasions seeking a status update with regard to the internal investigation.

94.     Blackmore did not respond until Plaintiff's counsel followed up a third time on or about February 16, 2022.

95.     On or about February 17, 2022, Blackmore represented that the Corporate Defendants had completed their internal investigation of the Plaintiff's ethics complaints.

96.     The Corporate Defendants never interviewed Plaintiff about her complaints of unethical business practices and fraud.

97.     The Corporate Defendants never provided Plaintiff with any response with regard to their findings relative to unethical business practices and/or fraud.  In fact, the Corporate Defendants refused to do so despite Plaintiff's requests.

98.     On or about February 2, 2022, the Corporate Defendants represented that they had completed their investigation with regard to Plaintiff's sexual harassment and/or sexual assault claims.

99.     On or about February 2, 2022 Hendrick represented that Plaintiff's claims of sexual

harassment had been substantiated.

100.    Shortly thereafter, AIL represented that, as a result, it took "remedial action" which included terminating Russin on or about February 11, 2022.

101.    It is believed and therefore averred that said representation was fraudulent or otherwise meant to mislead Plaintiff since Russin continues to work on behalf of the Corporate Defendants to date.

102.    More specifically, Russin continues to participate in meetings, internal communications, and other work events both in person and virtually on behalf of the Corporate Defendants.

## COUNT I
### *Violation of the Fair Labor Standards Act*
### 29 U.S.C. § 201, et seq.
### RENEE ZINSKY v. RUSSIN FINANICAL, RUSSIN HOLDING GROUP, ARIAS AGENCIES, S.A. HOLDING, AMERICAN INCOME LIFE INSURANCE COMPANY

103.    All previous paragraphs ae incorporated as though fully set forth herein.

104.    At all times relevant hereto, the Corporate Defendants were Plaintiff's "employer" under the FLSA, 29 U.S.C. 203(d), subject to the provisions of 29 U.S.C. §§ 201, et seq.; 29 C.F.R. § 791.2.

105.    At all times relevant hereto, Plaintiff was an "employee" of the Corporate Defendants within the meaning of the FLSA, 29 U.S.C. § 203(e)(1).

106.    Plaintiff either (1) engaged in commerce; or (2) engaged in the production of goods for commerce; or (3) were employed in an enterprise engaged in commerce or in the production of goods for commerce.

107.    Plaintiff is not exempt from the applicable provisions of the FLSA.

108.    At all times relevant hereto, the Corporate Defendants "suffered or permitted"

Plaintiff to work and thus "employed" her within the meaning of the FLSA, 29 U.S.C. § 203(g).

109.    The FLSA requires an employer to pay all employees the federally mandated overtime premium rate of one and one-half times their regular pay for every hour worked in excess of 40 hours per workweek. 29 U.S.C. § 207.

110.    Plaintiff regularly worked over 40 hours per week while employed by the Corporate Defendants.

111.    The Corporate Defendants violated the FLSA by failing to pay Plaintiff and other employees overtime compensation, at the rate of one and one-half times their regular hourly rate, for all hours worked in excess of 40 per workweek.

112.    The Corporate Defendants violated the FLSA by failing to pay Plaintiff and other employees proper minimum wage for all hours worked up to 40 per week.

113.    The Corporate Defendants violated the FLSA by failing to pay Plaintiff and other employees for time spent in mandatory training.

114.    The Corporate Defendants violated the FLSA by failing to pay for Plaintiff and other employees' missed meals and rest breaks.

115.    The Corporate Defendants violated the FLSA by requiring employees to pay their own work-related expenses.

116.    The Corporate Defendants violated the FLSA by subjecting employees to "chargebacks" by illegally collecting back commissions from agents' (including Plaintiff) earned wages if an insurance policy was later cancelled by the customer.

117.    The Corporate Defendants violated the FLSA by withholding Plaintiff's monthly renewal payments from approximately November 2020 through present and ongoing.

118.    The Corporate Defendants' violations of the FLSA were willful, with knowledge or reckless disregard of the statutory overtime requirements, as demonstrated by their failure to

pay Plaintiff an overtime premium for all hours worked in excess of 40 per week.

119.     As a result of the foregoing, Plaintiff was injured and seeks appropriate relief against the Corporate Defendants including back pay, liquidated damages, reasonable attorneys' fees and costs, and all other relief just and appropriate in the circumstances.

<u>**COUNT II**</u>
*Violation of 29 C.F.R. § 516, et seq.*
*Failure to Maintain Required Records*
**RENEE ZINSKY v. RUSSIN FINANICAL, RUSSIN HOLDING GROUP, ARIAS AGENCIES, S.A. HOLDING, AND AMERICAN INCOME LIFE INSURANCE COMPANY**

120.     All previous paragraphs are incorporated as though fully set forth herein.

121.     29 C.F.R. § 516.1 provides "every employer subject to any provision of the Fair Labor Standard Act" to maintain employee records.

122.     FLSA requires all employers to keep all payroll records and time records for at least 3 years, including but not limited to all basic timecards and daily starting/stopping times of individual employees. 29 U.S.C. § 211(c); 29 C.F.R. 516.1, *et seq.*

123.     As Plaintiff's employer, the Corporate Defendants were subject to the FLSA's record keeping requirements.

124.     The Corporate Defendants were obligated to maintain and preserve payroll or other records containing, without limitations, the total hours worked by each employee each workday and total hours worked by each employee each workweek. 29 C.F.R. § 516.2.Upon information and belief, the Corporate Defendants maintain corporate policies and/or practices of evading pay for their hourly employees by altering their time records and pay periods and failing to accurately record Plaintiff's hours worked.

125.     The Corporate Defendants failed to maintain and preserve accurate timesheets and payroll records as required by 29 C.F.R. § 516.2.

126.     When the employer fails to keep accurate records of the hours worked by its

21

employees, the rule in *Anderson v. Mt. Clemens Pottery Co.*, 328 U.S. 680, 66 S. Ct. 1187, 1192

(1946) is controlling, and provides as follows:

> [w]here the employer's records are inaccurate or inadequate … an employee
> had carried out his burden if he proves that he has in fact performed work for
> which he was improperly compensated and if he produces sufficient evidence
> to show the mount and extent of that work as a matter of just and reasonable
> inference. The burden then shifts to the employer to come forward with
> evidence of the precise amount of work performed or with evidence to negative
> reasonableness of the inference to be drawn from the employee's evidence. If
> the employer fails to produce such evidence, the court may then award damages
> to the employee, even though the result be only approximate.

127.     The Supreme Court set forth this test to avoid placing a premium on an employer's

failure to keep proper records in conformity with its statutory duty, thereby allowing the employer

to reap the benefits of the employees' labors without proper compensation as required by the

FLSA. When damage are awarded, "[t]he employer cannot be heard to complain that the damages

lack the exactness and precision of measurement that would be possible had they kept records in

accordance with… the Act." *Id.*

128.     As a result of the Defendant's record keeping violations, Plaintiff seeks a declaratory

judgment and order that the Anderson burden-shifting framework applies in this case, along with

all other relief just and appropriate under the circumstances.

### COUNT III
#### *Violation of the Pennsylvania Minimum Wage Act*
#### RENEE ZINSKY v. RUSSIN FINANICAL, RUSSIN HOLDING GROUP, ARIAS AGENCIES, S.A. HOLDING, AND AMERICAN INCOME LIFE INSURANCE COMPANY

129.     All previous paragraphs are incorporated s though fully set forth therein.

130.     The Pennsylvania Minimum Wage Act of 1968 ("PMWA") requires that covered

employees be compensated at a rate not less than the standard rate.

131.     The Pennsylvania Minimum Wage Act of 1968 requires that covered employees be

compensated for all hours worked in excess of forty per week at a rate of at least one and one- half

time the regular rate at which he or she is employed. See 43 P.S. § 333.104(c) and 34 Pa. Code § 231.41.

132.    As described above, Plaintiff was subjected to the Corporate Defendants' practice of not paying employees for all hours worked, including overtime.

133.    Plaintiff was not properly compensated for hours worked at a rate equal to or above Pennsylvania's minimum wage.

134.    Additionally, Plaintiff was not properly compensated for hours worked in excess of 40 hours per workweek.

135.    The Corporate Defendants failed to pay Plaintiff for time spent in mandatory training.

136.    The Corporate Defendants failed to pay Plaintiff for missed meals and rest breaks.

137.    The Corporate Defendants illegally required employees to pay their own work-related expenses.

138.    The Corporate Defendants illegally subjected employees to "chargebacks", by collecting back commissions from agents earned wages if a policy was later cancelled by the customer.

139.    Plaintiff was a non-exempt employee.

140.    In violating the PMWA, the Corporate Defendants acted willfully and with reckless disregard of the applicable provisions to the detriment of Plaintiff.

141.    As a result of the foregoing, Plaintiff was injured and seeks appropriate relief against the Corporate Defendants including back pay, liquidated damages, reasonable attorneys' fees and costs, and all other relief just and appropriate in the circumstances.

## COUNT IV
### *Violation of the Pennsylvania Wage Payment and Collection Law*
### RENEE ZINSKY v. MICHAEL RUSSIN, RUSSIN FINANICAL, RUSSIN HOLDING GROUP, SIMON ARIAS III, ARIAS AGENCIES, S.A. HOLDING, AND AMERICAN INCOME LIFE INSURANCE COMPANY

142.     All previous paragraphs are incorporated as though fully set forth therein.

143.     The Pennsylvania Wage Payment and Collection Law ("WPCL") requires that an employer pay all wages due to its employees. 43 P.S. § 260.3.

144.     The Defendants have intentionally failed to pay wages due to employment for the following:

   a.   Purposefully failing to pay employees for the true and correct number of hours they have worked; and,

   b.   Failing to pay employees minimum wage and all other wages due.

145.     Pursuant to 43 P.S. 260.9 and 260.10, employers such as the Corporate Defendants who intentionally fail to pay an employee wages in conformance with the WPCL shall be liable to the employee for the wages or expenses that were intentionally not paid, liquidated damages, court costs and attorneys' fees incurred in recovering the unpaid wages.

146.     The Defendants do not have written authorization from Plaintiff to withhold, divert, or deduct any portion of her wages that concern this action.

147.     The Defendants violated Pennsylvania law by failing to pay Plaintiff for all compensable time and by failing to pay Plaintiff for work time, including but not limited to overtime and Plaintiff's earned renewal commissions since November 2020 and ongoing.

148.     Pursuant to 43 P.S. 260.9 and 260.10, Plaintiff's employer would also include Russin and Arias as agents and/or officers on behalf of the Corporate Defendants.

149.     Upon information and belief, Russin and Arias were involved in the decision to withhold Plaintiff's wages including but not limited to Plaintiff's earned renewal commissions from November 2020 through present.

150.     The Defendants failed to pay Plaintiff for her renewal commissions from November 2020 through present and ongoing.

151.     The Defendants failed to pay Plaintiff for training.

152.     The Defendants failed to pay Plaintiff for missed meals and rest breaks.

153.     The Defendants illegally required employees to pay their own work-related expenses.

154.     The Defendants illegally subjected employees to "chargebacks", by collecting back commissions from agents earned wages if a policy was later cancelled by the customer.

155.     As a result of the foregoing, Plaintiff was injured and seeks appropriate relief against the Corporate Defendants including back pay, liquidated damages, reasonable attorneys' fees and costs, and all other relief just and appropriate in the circumstances.

**COUNT V**
*Unjust Enrichment*
**RENEE ZINSKY v. RUSSIN FINANICAL, RUSSIN HOLDING GROUP, ARIAS AGENCIES, S.A. HOLDING, AND AMERICAN INCOME LIFE INSURANCE COMPANY**

156.     All previous paragraphs are incorporated as though fully set forth herein.

157.     The Corporate Defendants have received and benefitted from the uncompensated labor of Plaintiff such that to retain such benefit without compensation would be inequitable and unjustly enrich the Corporate Defendants.

158.     At all times relevant herein, the Corporate Defendants devised and implemented a plan to increase their earnings and profits by fostering a scheme of securing work from Plaintiff and other agents without paying total compensation and overtime for hours worked.

159.     Contrary to good faith and fair dealing, the Corporate Defendants induced Plaintiff to performed work while failing to pay her overtime and/or minimum wage compensation for all hours worked as required by law.

160.     By reason of having secured the work and efforts of Plaintiff without paying overtime and full compensation as required by law, the Corporate Defendants enjoyed reduced labor costs and consequently additional earnings and profit to their benefit.

161.     Therefore, Plaintiff is entitled to judgment in an amount equal to the benefits unjustly retained by the Corporate Defendants.

**COUNT VI**
*Breach of Contract – Failure to Negotiate in Good Faith*
**RENEE ZINSKY v. RUSSIN FINANICAL, RUSSIN HOLDING GROUP, ARIAS AGENCIES, S.A. HOLDING, AND AMERICAN INCOME LIFE INSURANCE COMPANY**

162.     All previous paragraphs are incorporated as though fully set forth herein.

163.     As noted in more detail above, the Corporate Defendants are obligated to "use their best efforts" to resolve disputes with Plaintiff and negotiate in good faith.

164.     As noted in more detail above, however, the Corporate Defendants failed to use their best efforts to resolve this dispute with Plaintiff.

165.     Instead, the Corporate Defendants' efforts included but not limited to the following:

  a.  Demoting Plaintiff upon learning of the dispute;
  b.  Withheld Plaintiff's earned wages during the pendency of the dispute;
  c.  Misleading Plaintiff with bogus contact information and fraudulent misrepresentations to give Plaintiff a false sense of security or hope that her complaints were being investigated or appropriately handled;
  d.  Failure to conduct a timely investigation of Plaintiff's complaints including unethical business practices, fraud, and sexual harassment and/or sexual assault;
  e.  Intentionally causing undue delay or otherwise obstructing the "investigation" process by ignoring repeated complaints, lying to Plaintiffs about HR resources, instructing Plaintiff not to seek legal counsel or otherwise exercise her legal rights, and engaging in other egregious conduct to delay and or conceal Plaintiff's complaints;
  f.  Failure to conduct a thorough or unbiased investigation of Plaintiff's complaints of sexual harassment, sexual assault, unethical business practices and/or fraud;
  g.  Failure to interview Plaintiff as part of Corporate Defendants' "investigation" of Plaintiff's reports of unethical and/or fraudulent business practices;
  h.  Refusal to provide Plaintiff with the findings of the Corporate Defendants' alleged investigation of reported unethical and/or fraudulent business practices upon completion of said investigation;
  i.  Failure to respond to Plaintiff and/or Plaintiff's counsel or otherwise provide

Plaintiff and/or Plaintiff's counsel status updates with regard to the Corporate Defendants' alleged investigation of unethical and/or fraudulent business practices;

j. Failure to take reasonable steps to preserve any and all potential evidence relative to Plaintiff's complaints;

k. Spoilation of discoverable evidence;

l. Failure to execute the Corporate Defendants' reported "remedial measures" following the investigations;

m. Intentionally subjecting Corporate Defendants' sale agents, including but not limited to Plaintiff, to an ongoing unsafe work environment;

n. Obstructing Plaintiff from promptly escalating her complaints and/or retaining legal counsel on her behalf;

o. Attending a mediation with primary fact witnesses to this litigation, contrary to Plaintiff's requests;

p. Intentionally misleading Plaintiff and/or concealing the names of attendees to said mediation;

q. Obstructing the negotiation process by attending mediation with multiple fact witnesses to this litigation;

r. Refusing to make a reasonable settlement offer at the time of mediation;

s. Ending the mediation and refusing to continue negotiation discussions, despite the mediator's recommendations to do so;

t. Otherwise participating in the negotiation and/or mediation process as a means of delay, deceit and or pretense; and,

u. Otherwise failing to satisfy their obligation to use best efforts to resolve the instant dispute with Plaintiff.

166.    As a result of the foregoing breach, Plaintiff was injured and seeks appropriate relief against the Corporate Defendants including back pay, liquidated damages, reasonable attorneys' fees and costs, and all other relief just and appropriate in the circumstances.

167. In the alternative, Plaintiff requests a declaration from this Court that the Agent Agreement is rescinded or otherwise invalidated.

## COUNT VII
### *Declaratory Relief – Rescission of Agent Contract*
### RENEE ZINSKY v. RUSSIN FINANICAL, RUSSIN HOLDING GROUP, ARIAS AGENCIES, S.A. HOLDING, AND AMERICAN INCOME LIFE INSURANCE COMPANY

168. All previous paragraphs are incorporated as though fully set forth herein.

169. Prior to agents working for the Corporate Defendants, they are required to sign an "Agent Contract" similar if not identical to that which Plaintiff signed on or about August 20, 2021, attached hereto as Exhibit A.

170. The agreement specifically states that "the Agent has no fixed hours and is free to choose the time and manner in which services are performed." See Exhibit A.

171. The representation of being able to make their own hours and be free to choose the time and manner in which their services were performed is a material element of the agreement.

172. This statement was made falsely by Corporate Defendants, who have knowledge of its falsity as they regulate and control their agents' schedules, requiring off-site sales meetings with potential buyers to occur at certain times and days of the week as well as in-office sales meetings, team meetings, and calls to occur at certain times and days of the week.

173. Prior to Plaintiff accepting a position with the Corporate Defendants, Russin made specific promises to Plaintiff, including but not limited to promoting her to Master General Agent ("MGA") within the first year and Plaintiff making enough money to pay off her personal debts and save over $50,000.00.

174. Despite being a high performer, Russin never promoted Plaintiff to the MGA status.

175. To the contrary, as noted above, Plaintiff later learned that Russin would only promote Plaintiff to MGA in exchange for sexual favors.

176. Despite her high performance, Plaintiff did not make enough money to pay off her debts and save over $50,000.00.

177. The Defendants intentionally misled the Plaintiff in order to fraudulently induce her to accept a position with Corporate Defendants and enter into an Agent Contract.

178. The Corporate Defendants intentionally defrauded the Plaintiff regarding her work hours, schedules, professional development, and amount of pay to entice her to work for less money than she is entitled to.

179. Plaintiff justifiably relied on these misrepresentations when accepting a position with the Corporate Defendants and signing her Agent Contract.

180. The resulting injury is directly connected to Plaintiff being mischaracterized as an independent contractor, rather than employee, specifically in relation to being forced to work certain schedules, attend meetings at certain times and places, and being required to account for their time to Defendants.

181. An actual dispute and controversy has arisen between the Plaintiff and Corporate Defendants regarding whether or not the Agent Agreement and the provisions set forth therein are enforceable.

182. For the reasons set forth above, Plaintiff seeks a declaratory judgment rescinding the Agent Agreement as it was induced by fraud.

183. A judicial determination is necessary and appropriate at this time to determine the respective rights of Plaintiff and Defendants.

184. Plaintiff requests a declaration from this Court that the Agent Agreement is rescinded.

**COUNT VIII**
***Declaratory Relief – Ending Forced Arbitration of Sexual Assault and Sexual Harassment Act***
**RENEE ZINSKY v. RUSSIN FINANICAL, RUSSIN HOLDING GROUP, ARIAS AGENCIES, S.A. HOLDING, AND AMERICAN INCOME LIFE INSURANCE COMPANY**

185. All previous paragraphs are incorporated as though fully set forth herein.

186. Pursuant to the Ending Forced Arbitration of Sexual Assault and Sexual Harassment Act of 2021 ("Act"), pre-dispute arbitration agreements governing instances of sexual assault and sexual harassment are invalid and unenforceable, absent express consent from all parties thereto.

187. Plaintiff does not consent to proceeding in this case via arbitration.

188. An actual dispute and controversy has arisen between the Plaintiff and Corporate Defendants regarding whether or not the Agent Contract and the provisions set forth therein are enforceable.

189. For the reasons set forth above, Plaintiff seeks a declaratory judgment rescinding or

otherwise invalidating the Agent Contract pursuant to the aforementioned Act.

190. A judicial determination is necessary and appropriate at this time to determine the respective rights of Plaintiff and Defendants.

191. Plaintiff requests a declaration from this Court that the Agent Contract is rescinded and/or otherwise invalidated.

## COUNT IX
### *Sexual Assault*
### RENEE ZINSKY v. MICHAEL RUSSIN

192. All previous paragraphs are incorporated as though fully set forth herein.

193. For all the aforementioned reasons, Russin knowingly and intentionally subjected Plaintiff to unwelcomed sexual advances, unwelcomed sexual touching, molestation, coerced sexual contact, sexualized comments, and other inappropriate sexual acts and conduct on numerous occasions since April 2019.

194. As noted in more detail above, many of those advances, comments and other sexual conduct occurred during the normal course of Plaintiff and Russin's workday and/or work events.

195. As noted in more detail above, and contrary to the Corporate Defendants' corporate policies[2], Russin was frequently and openly high or otherwise inebriated at work in the 2019 – 2020 timeframe, when the above referenced misconduct took place.

196. Russin has since admitted to consistent and frequent abuse of drugs and alcohol at work during the 2019 – 2020 timeframe.

197. Russin's aforementioned conduct caused Plaintiff to suffer severe emotional stress and trauma.

198. For all the aforementioned reasons, Russin knowingly and intentionally subjected Plaintiff

---

[2] For example, Arias Agencies' Drug and Alcohol Policy states, in relevant part: *It is, therefore, company policy that any employee or independent contractor found with the presence of alcohol or illegal drugs in his/or system, in the possession of, using, selling, trading or offering for sale illicit drugs or alcohol during working hours, will be subject to disciplinary action including discharge.*

to unwelcomed and/or nonconsensual touching, fondling and/or other sexual conduct on multiple occasions since April 2019.

199. As a result of the foregoing, Plaintiff was injured and seeks appropriate relief against Russin including lost wages, emotional pain and suffering pay, back pay, liquidated damages, reasonable attorneys' fees and costs, and all other relief just and appropriate in the circumstances.

## COUNT X
*Battery*
## RENEE ZINSKY v. MICHAEL RUSSIN

200. All previous paragraphs are incorporated as though fully set forth herein.

201. For the reasons stated in more detail above, Russin knowingly caused Plaintiff unwanted offensive and/or harmful physical contact including but not limited to unwelcomed touching, fondling, and other sexual conduct.

202. For the reasons stated in more detail above, Russin knowingly caused Plaintiff unwanted offensive and/or harmful physical contact including but not limited to administering Plaintiff uncontrolled substances such as date rape drugs without her knowledge or consent.

203. It is believed and therefore averred that, contrary to applicable federal and state laws as well as Corporate Defendants' policies, said date rape drugs were sold and or transferred to Russin by other male leaders on behalf of the Corporate Defendants on multiple occasions.

204. Russin's aforementioned conduct caused Plaintiff to suffer physical injuries and severe emotional stress and trauma.

205. As a result of the foregoing, Plaintiff was injured and seeks appropriate relief against Russin including lost wages, emotional pain and suffering pay, back pay, liquidated damages, reasonable attorneys' fees and costs, and all other relief just and appropriate in the circumstances

**COUNT XI**
*False Imprisonment*
**RENEE ZINSKY V. MICHAEL RUSSIN**

206. All previous paragraphs are incorporated as though fully set forth herein.

207. As noted above, Russin frequently coerced Plaintiff to get into his car with him for their "one-on-one coaching" meetings during the timeframe that Plaintiff reported to Russin, only to be subjected to unwelcomed sexual advances, molestation, coerced sexual contact, and unwelcomes sexualized comments and touching, including but not limited to forcing Plaintiff to engage in sexual acts, forcing Plaintiff to watch pornography with Russin, and/or forcing Plaintiff to watch Russin masturbate.

208. In addition, Russin would detain Plaintiff in his car while he engaged in other sexual acts including but not limited to intercourse with other female subordinates of Russins.

209. Russin willfully detained Plaintiff in his car on multiple occasions in 2019 and 2020 without her consent or authority to do so.

210. For all the aforementioned reasons, Russin knowingly and intentionally subjected Plaintiff to false imprisonment resulting in Plaintiff's severe emotional stress and trauma.

211. As a result of the foregoing, Plaintiff was injured and seeks appropriate relief against Russin including lost wages, emotional pain and suffering pay, back pay, liquidated damages, reasonable attorneys' fees and costs, and all other relief just and appropriate in the circumstances.

**COUNT XII**
*Intentional Infliction of Emotional Distress*
**RENEE ZINSKY V. MICHAEL RUSSIN AND SIMON ARIAS, III**

212. All previous paragraphs are incorporated as though fully set forth herein.

213. As noted in detail above, Russin's conduct was intentional and reckless, including but not limited to the following particulars:

      a.   Continuously subjecting Plaintiff and other subordinate agents to an unsafe work environment;

    b.  Continuously subjecting Plaintiff and other subordinate female agents to frequent and unwelcomed sexualized, demoralizing, and derogatory comments;

    c.  Continuously subjecting Plaintiff and other subordinate female agents to frequent and unwelcomed sexual advances, unwelcomed sexual touching, and other unwelcomed sexual conduct;

    d.  Continuously subjecting Plaintiff and other subordinate agents to frequent use of misrepresentations, bullying, ridicule, threats, and intimidation tactics to manipulate or otherwise take advantage of Plaintiff and other subordinate agents, to his benefit;

    e.  Continuously subjecting and exposing Plaintiff and other subordinate agents to frequent use of illegal and illicit and/or illegal drugs and alcohol at and during work;

    f.  Continuously subjecting Plaintiff and other subordinate agents to administering controlled substances such as date rape drugs without her knowledge or consent;

    g.  Continuously subjecting Plaintiff and other subordinate agents to the open sale and/or transfer of illegal drugs and other controlled substances with other male agents on behalf of the Corporate Defendants at work;

    h.  Continuously subjecting Plaintiff and other subordinate agents to the engagement of physical assaults and/or physical fights and other violent behavior at work and/or work events;

    i.  Promoting male agents over similarly situated and/or higher performing females;

    j.  Retaining and promoting male agents who were conducting unethical and/or fraudulent business practices on behalf of the Corporate Defendants;

    k.  Demoting or terminating females such as Plaintiff who performed higher than retained males;

    l.  Coercing and/or otherwise inducing subordinate agents to refrain from filing lawsuits against the Defendants by making false and fraudulent misrepresentations such as the sales agents had no legal rights against Defendants due to their independent contractor status;

    m.  Withholding subordinate agents, including but not limited to Plaintiff's, earned wages;

    n.  Forcing subordinate agents to pay Russin for sales leads or other bogus "management fees";

    o.  Otherwise encouraging, participating in, and/or being complicit in a highly misogynistic, toxic, unethical, unlawful, hostile and cult-like work environment; and,

    p.  Other intentional and reckless conduct;

214. As noted in more detail above, Arias' conduct was intentional and reckless, including but not limited to the following particulars:

    a.  Continuously subjecting Plaintiff and other subordinate agents to an unsafe work environment, through present;

    b.  Intentionally misleading Plaintiff and other subordinate agents by falsely representing that Russin was being properly managed and/or otherwise removed from the work environment on multiple occasions through present;

    c.  Preventing and/or obstructing agents from reporting misconduct to include sexual harassment and unethical/fraudulent business practices;

33

d. Providing bogus contact information to Plaintiff to in order to obstruct any reports of sexual harassment and/or unethical and fraudulent business practices;

e. Instructing Plaintiff not to escalate her complaints of sexual harassment, unethical business practices, and/or fraud;

f. Lying to Plaintiff about the Corporate Defendants' HR resources;

g. Concealing Plaintiff's complaints of sexual harassment and unethical business practices and/or fraud;

h. Using misrepresentations, threats and intimidation tactics to manipulate or otherwise take advantage of Plaintiff and other agents on a regular basis, to his benefit;

i. Condoning the open and constant use of drugs and alcohol during and at work;

j. Continuously failing to comply with applicable laws, regulations and/or corporate policies;

k. Condoning and/or encouraging unlawful, unethical and/or fraudulent business practices on behalf of the Arias Agencies' agents;

l. Failing to properly supervise Russin and other male leaders, despite frequent violations of the law and/or Corporate Defendants' policies;

m. Retaining and promoting Russin for years despite knowledge of Russin's frequent and repeated misconduct as noted above;

n. Intentionally misleading Plaintiff that Corporate Defendants would investigate her multiple reports of misconduct;

o. Obstructing Plaintiff from escalating her complaints, seeking legal counsel in a timely manner or otherwise exercising her legal rights;

p. Encouraging and/or participating in a highly misogynistic, toxic, and hostile work environment by hosting and/or engaging in physical fights and wrestling matches in the Wexford office on a frequent basis;

q. Encouraging and/or participating in a highly misogynistic, toxic, and hostile work environment by hosting professional fighters (with no experience in the insurance industry) as guest speakers at the Wexford office on a frequent basis;

r. Promoting Russin and other male agents, many of whom are wrestlers and fighters, over similarly situated and/or higher performing females;

s. Retaining Russin and other male agents who were conducting unethical and/or fraudulent business practices on behalf of the Corporate Defendants;

t. Demoting or terminating high performing females, such as Plaintiff;

u. Hiring, retaining and promoting unqualified male agents including but not limited to those who oftentimes engaged in unethical or fraudulent business practices;

v. Publicly using threats and intimidations tactics to identify and punish agents that sought to report or otherwise escalate sexual assault, sexual harassment, unethical and/or fraudulent business practices;

w. Utilizing pressure, coercion and/or financial resources to force female subordinates to abort pregnancies with the Defendants' male leaders;

x. Subjecting subordinate agents to threats, ridicule, bullying, and intimidations tactics in order to identify and punish other female agents that sought to report or otherwise escalate sexual assault, sexual harassment, unethical and/or fraudulent business practices;

y. Withholding subordinate agents, including but not limited to Plaintiff's, earned wages;

z. Otherwise creating, encouraging, participating in, and/or being complicit in a

highly misogynistic, toxic, hostile, and cult-like work environment; and,

aa. Other intentional and reckless conduct.

215. Russin and Arias' conduct as outlined above resulted in Plaintiff suffering severe emotional distress and trauma from late April 2019 through present and ongoing.

216. As a result of the foregoing, Plaintiff was injured and seeks appropriate relief against Russin and Arias including lost wages, emotional pain and suffering pay, back pay, liquidated damages, reasonable attorneys' fees and costs, and all other relief just and appropriate in the circumstances.

## COUNT XIII
### *Negligent Hiring, Retention, and Supervision*
## RENEE ZINSKY V. RUSSIN FINANCIAL, RUSSIN GROUP, ARIAS AGENCIES, S.A. HOLDINGS, AND AMERICAN INCOME LIFE INSURANCE COMPANY

217. All previous paragraphs are incorporated as though fully set forth herein.

218. For all the reasons noted above, the Corporate Defendants knew or should have known of Russin's misconduct at work including but not limited to the following:

a. The frequent abuse of illegal drugs and alcohol at work, during work hours, and at work events;

b.  Forcing agents to pay for sales leads and other "management fees";

c. Bribing potential candidates and new hires with gifts and financial renumeration;

d. Enabling and encouraging widespread unethical and fraudulent business practices on behalf of Arias Agencies' agents;

e. Using misrepresentations, threats, ridicule, bullying, and intimidation tactics to take advantage of his subordinates, to Russin's benefit;

f. Sexually harassing and/or sexually assaulting Plaintiff and/or other female agents on a regular basis;

g. Withholding subordinate agents, including but not limited to Plaintiff's earned wages;

h. Failing to comply with and/or enforce the Corporate Defendants' policies, procedures and guidelines;

i. Failing to abide by relevant laws and regulations;

j. Failing to ensure a safe work environment for Plaintiff and other sales agents.

219. For all the reasons noted above, the Corporate Defendants knew or should have known of Arias' misconduct including but not limited to retaining male leaders, including but not limited to Russin, Matt Duilus, Steve Dell, and Justin Adams, who repeatedly engaged in the aforementioned

misconduct.

220.  For all the reasons noted above, the Corporate Defendants knew or should have known of

Arias' unlawful, unethical, and/or fraudulent business practices including but not limited to the

following:

     a.  Condoning the Corporate Defendants' sales agents' frequent and open use and abuse of drugs and alcohol at work;
     b.  Forcing agents to pay for sales leads and other "management fees";
     c.  Bribing potential candidates and new hires with gifts and financial renumeration
     d.  Enabling and encouraging males to engage in ongoing sexual harassment, sexual assault, and other sexual relationships with female subordinates,
     e.  Pressuring, coercing, and financing female agents to abort pregnancies with male leaders on behalf of Arias Agencies,
     f.  Condoning and/or encouraging subordinate agents to access AIL customer's private information to induce fraudulent sales,
     g.  Fraudulently mislead potential new hires about potential compensation;
     h.  Deliberately and unlawfully withholding agents' compensation;
     i.  Threaten, mislead, and/or discourage agents from suing the Defendants,
     j.  Force managers to threaten, mislead and/or discourage their subordinates from suing the Defendants;
     k.  Withholding subordinate agents, including but not limited to Plaintiff's, earned wages;
     l.  Creating and/or utilizing bogus bank accounts and/or mailing addresses on behalf of the Corporate Defendants to facilitate fraudulent business; and,
     m.  Other unlawful and/or otherwise unethical misconduct.

221. More specifically, the Corporate Defendants' were negligent in the following particulars:
     a.  Failing to maintain a safe workplace for Plaintiff and other agents from April 2019 through present;
     b.  Failing to comply with and/or enforce Corporate Defendants policies, procedures and guidelines;
     c.  Failing to comply with relevant laws and regulations;
     d.  Hiring Russin following a manic episode including extreme violence, criminal convictions, and involuntary mental health hospitalization;
     e.  Hiring and retaining male agents, including but not limited to Arias, Greg Rudolph, Tristan Dlabik, Jon Rindt, and Brent Henderson despite significant criminal backgrounds.
     f.  Failure to conduct a proper background check on male agents, including but not limited to Arias, Rudolph, Dlabik, Rindt, and Henderson prior to hire;
     g.  Failing to investigate Plaintiff's reported unethical and/or fraudulent business practices on behalf of Russin directly to Arias on multiple occasions;
     h.  Retaining Russin and other male leaders despite abusing drugs and alcohol at work on a frequent basis;
     i.  Retaining Russin despite a pattern of "manic" and violent episodes;
     j.  Retaining Russin despite knowledge of other instances of sexual harassment and/or

sexual assault;

k.  Retaining and promoting Justin Adams, Steve Dell, Matt Duilus and other male leaders after sexually harassing their female subordinates;

l.  Retaining and promoting Justin Adams, Steve Dell, Matt Duilus, Jon Rindt, Rob Jackson, and other male leaders after committing unethical and fraudulent business practices;

m.  Retaining Arias despite knowledge of other instances of unethical and/or fraudulent business practices including but not limited to Arias Agencies engaging in unauthorized business of insurance in Nebraska, per Court Order to Cease and Desist dated October 2020 *In the Matter of Arias Agencies, in conjunction with American Income Life*, Cause No. I-98 before The Department of Insurance State of Nebraska.

n.  Retaining Arias despite Arias' obstruction and/or concealment of Plaintiff's complaints on multiple occasions;

o.  Retaining Arias despite Arias failure to supervise Russin particularly following Russin's recurring "manic"[4] episodes resulting in violent, sexual and criminal misconduct;

p.  Failing to supervise Russin and/or Arias despite the above;

q.  Failing to supervise Russin and/or Arias despite the knowledge of other male leaders associated with Arias Agencies sexually harassing female subordinates;

r.  Failing to supervise Russin and Arias in compliance with their policies and procedures; and,

s.  Otherwise failing to hire, retain, and or supervise Russin and Arias.

220     For all the reasons noted above, the Corporate Defendants had knowledge of a highly misogynistic, hostile, unethical, unlawful, toxic, and cult-like workplace culture created and lead by Arias and Russin while retaining Arias and Russin in leadership positions for years.

222.    For all the reasons noted above, the Corporate Defendants knew or should have known of complaints of sexual harassment, unethical business practices and/or fraud in a timely manner as escalated to Russin and/or Arias, yet Russin and Arias concealed, failed to investigate, or otherwise manage same.

223.    In fact, the Corporate Defendants celebrated Russin and Arias as top performers and leaders in the company on many occasions during Plaintiff's tenure and during the pendency of the investigations in question[3].

---

[3] For example, the Corporate Defendants recognized Arias as one of the top leaders in the company with the "Globe Life Legacy Award" in February 2022. Approximately one week after Plaintiff reported Russin's sexual harassment to Arias in August 2021, Arias publicly celebrated Russin as Arias Agencies' "#1 Office in the Agency". In October 2021, Russin was publicly recognized "for writing $13,746 ALP" in one day

224. The Corporate Defendants retained Russin and Arias to their benefit and to the detriment of their female subordinates and customers.

225. For all the reasons noted above, the Corporate Defendants negligently hired, retained, and/or supervised Russin and Arias in their capacities as sales agents and/or leaders.

226. As a result of the foregoing, Plaintiff was injured and seeks appropriate relief against the Corporate Defendants including lost wages, emotional pain and suffering pay, back pay, liquidated damages, reasonable attorneys' fees and costs, and all other relief just and appropriate in the circumstances.

**COUNT XIV**
*Vicarious Liability/Respondeat Superior*
**RENEE ZINSKY V. RUSSIN FINANCIAL, RUSSIN GROUP, ARIAS AGENCIES, S.A. HOLDINGS, AND AMERICAN INCOME LIFE INSURANCE COMPANY**

227. All previous paragraphs are incorporated as though fully set forth herein.

228. At all times relevant herein, Russin and Arias' conduct as noted above occurred while they were acting as an agent of the Corporate Defendants and within their scope of employment with the Corporate Defendants.

229. In the alternative, it is believed and averred that Russin and Arias' conduct was condoned and/or ratified by the Corporate Defendants.

230. For the reasons noted in more detail above, Russin and Arias' conduct noted above was known and/or reasonably foreseeable by the Corporate Defendants.

231. For the reasons noted above, the Corporate Defendants' knowingly and intentionally failed to – and continue to fail to - provide Plaintiff with a safe work environment.

232. As a result of the foregoing, Plaintiff was injured and seeks appropriate relief against the Corporate Defendants including lost wages, emotional pain and suffering pay, back pay, liquidated damages, reasonable attorneys' fees and costs, and all other relief just and appropriate in the

circumstances.

## **RELIEF REQUESTED**

WHEREFORE, Plaintiff Renee Zinsky requests an order for relief as follows:

A.  An order rescinding the Agent Contract or portions thereof;

B.  Back pay damages (including unpaid overtime compensation and unpaid wages) and prejudgment interest to the fullest extent permitted under the law;

C.  Liquidated damages to the fullest extent permitted by the law;

D.  Damages for lost wages, emotional distress, pain and suffering to the fullest extent permitted by the law;

E.  Punitive damages to the fullest extent permitted by law;

F.  Litigation costs, expenses, and attorneys' fees to the fullest extent permitted under the law; and,

G.  Such other and further relief as this Court deems just and proper.

## JURY DEMAND

Plaintiff Renee Zinsky, by and through her attorneys, hereby demands a trial by jury pursuant to Rule 38 of the Federal Rules of Civil Procedure and the court rules and statutes made and provided with respect to the above entitled case.

Date: April 26, 2022                                    Respectfully submitted,

                                                       */s/ Amy N. Williamson*
                                                       Amy N. Williamson, Esq.
                                                       Williamson Law LLC
                                                       Law and Finance
                                                       429 Fourth Avenue, Suite 300
                                                       Pittsburgh PA 15219
                                                       412-600-8862
                                                       awilliamson@awilliamsonlaw.com