**American Income Life Insurance Company**

Executive Office: P.O. Box 2608, Waco, Texas 76702 (254) 761-6400

## AGENT CONTRACT (the "Contract")

### OBLIGATIONS OF AGENT

The Agent agrees:

(a)  To use all business records, policyholder information and records, as well as records of leads, prospects or memberships of organizations, only for the business purposes of American Income Life Insurance Company (the "Company"); to hold such information and records in confidence, and to comply with any and all applicable privacy laws regarding such information and records; to recognize that such records are the property of the Company whether paid for or created by the efforts of the Company, the State General Agent, the Agent, or any other person; and to surrender such records to the Company upon request without retaining copies. See Contract sections titled "USE OF TRADEMARKS/CONFIDENTIAL INFORMATION/USE OF TRADE SECRETS" and "TERM AND TERMINATION" set forth below for further information.

(b)  To submit all applications for life, accident, and health insurance secured by the Agent promptly to the Company, and to no other entity or person.

(c)  While an Agent of the Company and for two (2) years thereafter, not to attempt to induce other agents of the Company to end their respective relationships with the Company, or to breach their respective contracts with the Company, or to encourage and/or assist anyone else taking such actions.

(d)  While an Agent of the Company and for two (2) years thereafter, not to attempt to induce the Company's policyholders to terminate their respective policies with the Company.

(e)  Never to make any statement that is injurious or harmful to the Company, its business or its reputation.

(f)  Not to be licensed with, or maintain a contract or appointment with, any insurance company other than a member of the Globe Life Inc. group of companies while contracted with the Company.

(g)  To repay upon demand all sums owing on the account of the Agent to the Company, any one or more of the Globe Life Inc. group of companies and/or to any State General Agent.

(h)  To obey and comply with any laws, rules or regulations of any Federal, State or local government and/or any other entity having jurisdiction over the sale or service of insurance.

(i)  To maintain all appropriate licenses and appointments to engage in selling insurance products under this Contract, including compliance with applicable continuing education requirements.

(j)  Never to advertise or communicate to applicants, policyholders, insureds or any other person any information that is deceptive, misleading, unlawful and/or untruthful, and/or that constitutes a misrepresentation of fact or an omission of a material fact, and/or that is otherwise not in compliance with requirements of any law or governmental authority(ies).

(k)  To advise the Company of any investigations, claims or demands made by any regulatory authority(ies) against the Agent arising directly or indirectly from her or his actions under this Contract.

(l)  To protect any lead sheets or information relating to any existing and/or potential customers of the Company as confidential; to safeguard such information at all times; and not to use such information for any purpose other than the business of the Company.

(m)  To notify the Company of any discipline, suspension or termination with respect to the Agent's license, including in any State where the Agent is appointed to sell the Company's products, within 72 hours of such action.

### LIMITATION OF AUTHORITY

The Agent does not have authority to:

(a)  Obligate the Company, except by the terms of the insurance application.

(b)  Alter the terms of any policy or contract of the Company.

(c)  Collect premiums for life, accident and health insurance policies other than in the name of the Company.

(d)  Use advertising and/or other materials, regardless of medium, referencing the Company's products other than that which is provided or approved by the Company.

(e)  Enter into agreements in the Company's name for debts, expenses or other liabilities, including, but not limited to, lease agreements.

(f)  Endorse or cash checks made payable to the Company.

## EXPENSES

The Agent shall be responsible for all expenses incurred in the production of insurance for the Company. The Agent shall, at her or his own expense, furnish her or his own: means of transportation; office or place of business; advertising materials, form letters, letterheads, and any other relevant items used in the solicitation of insurance for the Company. Any persons retained by the Agent to assist the Agent in the solicitation or sale of insurance shall be at the Agent's own expense.

The Agent shall be responsible to the Company for all loss and/or damage arising in any way from business done by and entrusted to her or him and shall indemnify, hold harmless, save and defend the Company from any and all expenses, costs, causes of action, losses or damages, including attorney's fees, incurred by the Company as a result of any acts or omissions of the Agent, including unauthorized acts, fraud, or any breach of this Contract.

## ADVICE AND ASSISTANCE FROM OTHER AGENTS

Experienced agents, including Supervising Agents, General Agents, Master General Agents, Regional General Agents and State General Agents, are available to assist the Agent with sales advice, and may recommend strategies to the Agent that could help the Agent become a more successful salesperson. Additionally, from time-to-time, optional training and/or sales meetings may be held by the State General Agent with whom the Agent is affiliated in order to acquaint the Agent with new products, discuss sales techniques, exchange ideas with other agents, and provide general sales support and motivation. The State General Agent may request that the Agent voluntarily provide information about her or his sales activities in order to help identify agents who could benefit from additional training or sales assistance.

## COMMISSIONS

The commission for a given policy sold by the Agent is determined by the Agent's commission schedule in effect at the time the policy is issued and is subject to the following terms and conditions:

(1) Commissions will be paid on premiums received by the Company for business produced by the Agent less any premiums returned to the Company unpaid or refunded to the insured. A commission is not earned unless and until premium is received by the Company. No commissions will be paid on premiums that are waived, or on extra premiums for hazards or physical conditions. Recognizing that the amount of the Agent's profit or loss is solely dependent upon the Agent's degree of skill and effort, commissions paid to the Agent are to be in full satisfaction of all claims upon the Company account for services or expenses under this Contract.

(2) Subject to the terms of this Contract, including, but not limited to, paragraphs 3 and 4, below, commissions earned after termination of this Contract will be paid to the Agent only if: (a) the Agent's termination was not for cause; and (b) the Agent complies with all obligations under this Contract that arise following termination, including, but not limited to, the "USE OF TRADEMARKS/CONFIDENTIAL INFORMATION/USE OF TRADE SECRETS."

(3) As set forth above, commissions are not earned by the Agent unless and until premiums are received by the Company. Solely for the benefit of the Agent, the Company may, at its sole discretion, pay the Agent commissions before they are earned (which commissions are referred to herein as "Advance Commissions"). The Company reserves the right to set limits on the amount of Advance Commissions and to charge interest and fees on Advance Commissions. Advance Commissions will be repaid by the Agent from the proceeds of commissions earned by the Agent following the Company's payment of the Advance Commissions. The Agent understands and agrees, however, that she or he shall be required to repay these Advance Commissions even if the commissions actually earned by the Agent are not sufficient to repay the Company the full amount of the Advance Commissions, and even if the Company fails to make a demand for repayment of the Advance Commissions. The Agent further agrees to the following additional terms as a condition of her or his receipt of Advance Commissions:

    (a)   Advance Commissions will be tracked on the Agent's account by the Company;

    (b)   The Company may reduce or withhold entirely any commissions otherwise payable to the Agent until the Advance Commissions are fully repaid by the Agent, including, but not limited to, renewal commissions that have vested pursuant to this Contract;

    (c)   The Agent understands and agrees that she or he is fully liable to the Company until the Advance Commissions are repaid in full and further understands and agrees that the Company's right to recover such Advance Commissions if they are not fully repaid is based on the Company's right of recoupment and are not in the nature of a set-off, since all such unpaid sums arise under this Contract; and

    (d)   After termination of this Contract, with or without cause, any Advance Commissions that have not been fully repaid will be immediately repaid by the Agent.

(4) The Agent shall not be entitled to receive renewal commissions until one (1) year after the effective date of this Contract.  Thereafter, the Agent's right to receive renewal commissions shall vest in accordance with the Company's union agreement with OPEIU Local 277.

The Agent's right to receive vested renewal commissions, if any, shall immediately terminate without notice if: (a) all Advance Commissions have not been timely and fully repaid; (b) this Contract is terminated for cause or due to the Agent's violation of any provision of this Contract; and/or (c) in any calendar year following termination of this Contract the amount of such vested renewal commissions paid under this Contract is less than $150 (One Hundred and Fifty Dollars) per calendar quarter.

At the option of the Company, payment of commissions may be held in abeyance for one hundred and eighty (180) days after termination of this Contract in order to determine the existence of any sums owed to the Company or any other Globe Life Family of Companies, which sums are to be recouped from commissions. If the Agent has a credit balance on an account with any Globe Life Family of Companies, the credit balance may be applied to satisfy any sums owed by the Agent to said affiliate(s).

This Contract has the standard commission schedule (AGSTD) unless otherwise indicated. Commissions earned after the termination of this Contract shall be credited in accordance with the union agreement with OPEIU Local 277.

## USE OF TRADEMARKS/CONFIDENTIAL INFORMATION/USE OF TRADE SECRETS

The Agent understands and agrees that during the course of her or his performance of this Contract, certain confidential  and  proprietary information, including trade secrets  relating  to  the  Company's  policyholders, prospective customers, business  and  operations will be made available to the Agent (which information is referred to herein as "Confidential Information"). The Agent agrees that she or he will not use this Confidential Information except in connection with the performance of her or his duties hereunder. The Agent further agrees not to disclose this Confidential Information to anyone other than employees of the Agent who have a need to know it, and to take all necessary and reasonable action to insure and cause all such persons to protect the confidentiality of such Confidential Information and to insure compliance with the confidentiality obligations herein. Such Confidential Information includes, but is not limited to, any and all business information such as: (a) proprietary methods, techniques, and practices, financial data, plans and all other know-how and trade secrets of the Company which have not been published or disclosed to the general public; (b) the Company's business methods and practices, including pricing methods, contract terms, commissions, bonus schedules and practices; (c) compilations of data or information, including policyholder information and records, the Company's customer lists, lead lists and potential customer lists, CAS database information, and Impact application information; and (d) any other information not generally known to the public, including, but not limited to, information about the Company's policyholders, agents and agent contracts, hierarchies, operations, personnel, products, and trademarks or services, which, if misused or disclosed, could adversely affect the Company's business and/or provide a competitive advantage to anyone using or obtaining such Confidential Information.

During the term of this Contract, Company hereby grants to the Agent a non-exclusive, worldwide, non-sub-licensable, non-assignable license to use the Company's Confidential Information, trademarks and logos solely in connection with Agent's work under this Contract. The Agent's license to use the Company's trademarks and logos terminates when this Contract terminates pursuant to the provisions of the Term and Termination provisions of this Contract.

The Agent understands and agrees that the obligations of this section survive termination of this Contract.

IMMUNITY NOTICE: 18 U.S.C. § 1833(b) states: "An individual shall  not  be held criminally  or  civilly liable under any Federal or State trade  secret  law  for  the disclosure of a trade secret that (1) is made (a) in confidence to a Federal, State or local government official, either directly or indirectly, or to an attorney; and (b) solely for the purpose of reporting or investigating a suspected violation of law; or (2) is made in a complaint or other document filed in a lawsuit or other proceeding, if such filing is made under seal." Accordingly, the Agent has the right to disclose in confidence trade secrets to Federal, State or local government officials, or to an attorney, for the sole purpose of reporting or participating in the investigation of a suspected violation of law. The Agent also has the right to disclose trade secrets in a document filed in a lawsuit or other proceeding, but only if the filing is made under seal and protected from public disclosure. Nothing in this Contract is intended to conflict with 18 U.S.C. § 1833(b) or create liability for disclosures of trade secrets that are expressly allowed by 18 U.S.C. § 1833(b).

## TERM AND TERMINATION OF CONTRACT

Either party may terminate this Contract immediately for cause, including non-performance of any material provision, or if the other party violates any applicable law, insurance code, or regulation. In addition, either party may terminate this Contract without cause by giving thirty (30) days' written notice. Any notice of termination of this Contract sent by the Agent to the Company shall be sent to: American Income Life Insurance Company; 1200 Wooded Acres Drive, Waco, Texas 76710; Attention: Agency Department. Notice of termination of this Contract, if sent by the Company to the Agent, is effective if mailed to the last address for the agent known by the Company's Senior Vice President of Agency, or if emailed to the Agent at the Agent's last known email address on file with the Company.

If the State General Agent to which the Agent is coded terminates its relationship with the Agent because the Agent has violated any applicable law, insurance code, or regulation, then this Contract will terminate immediately. If the State General Agent to which the Agent is coded terminates its relationship with the Agent for any other reason by giving the Agent thirty (30) days of written notice of same, then this Contract will terminate at the end of that thirty (30) days.

This Contract shall terminate automatically if the Agent's license(s) to sell insurance in the State(s) where the Agent sells the Company's products is/are terminated, suspended or revoked, or if the Agent otherwise fails to maintain such license(s).

After termination of this Contract, the Agent will never use the Company's Confidential Information, including trade secrets such as policyholder information and records, Company-provided union or credit union membership records, or other Company business records (such as lead return cards, referrals, policyholder lists, CAS database information, Impact application information, computer disks or other storage media, no matter how or when obtained, and whether prepared by the Company or the State General Agent or any other person) for any purpose, including, without limitation, for the purpose of soliciting the sale of insurance policies of the type offered for sale by the Company (*e.g.*, life insurance policies, accidental death and dismemberment policies, cancer insurance policies and disability insurance policies) and/or for the purpose of replacing any insurance policy sold by the Company. Immediately upon termination of this Contract, all such records comprising Confidential Information shall be returned by the Agent via overnight courier, signature required, to the address then on file with the Department of Insurance at the time in the state where the Agent's affiliated State General Agent's office is located. All such records will be returned immediately as provided herein without the Agent retaining any copies. In the event the records comprising Confidential Information are returned to Agent as undeliverable, Agent is responsible to immediately return such records via overnight courier, signature required, to American Income Life Insurance Company, Attention:  Agency Department, 1200 Wooded Acres Drive, Waco, Texas 76710.

Agent agrees that in the event of a breach of this Contract with respect to the Company's Confidential Information, including trademarks and trade secrets, an award of damages alone will not adequately compensate the Company and that immediate and irreparable injury will result and that Company has no adequate remedy at law such that Agent agrees that in addition to Company's right of action for damages, Company shall be entitled to injunctive relief for any violation.

## NON-COMPETITION

For a period of two (2) years after termination of this Contract, the Agent shall not:

(a) Directly or indirectly contact the Company's policyholders to attempt to induce them to terminate their respective policies or in any other way to injure the business or reputation of the Company.

(b) Attempt to induce other agents of the Company to end their respective relationships with the Company, or to violate the terms or conditions of their respective contracts with the Company.

Agent agrees that in the event of a breach of this Contract by Agent that an award of damages alone will not adequately compensate the Company and that immediate and irreparable harm will result and that the Company has no adequate remedy at law such that Agent agrees that in addition to the Company's right of action for damages, Company shall also be entitled to injunctive relief for any violation.

## SEVERABILITY

If any provision of this Contract should be determined to be invalid or otherwise unenforceable under applicable law, the remainder of this Contract shall not be affected thereby.

## DEPORTMENT

The Agent shall immediately forfeit her or his right to receive any commissions due or to become due under this Contract or any other agreement with the Company if the Agent at any time, either before or after termination of this Contract: (1) wrongfully withholds any funds belonging to any applicant for insurance, a policyholder, or the Company; (2) induces any policyholder to lapse, relinquish or surrender a policy with the Company; (3) engages in any conduct which constitutes a misappropriation of the Company's Confidential Information, including without limitation any trade secret(s); or (4) in any other way breaches this Contract during its tenure or subsequent to its termination (including, but not limited to, a violation of those provisions of this Contract that survive the termination of this Contract).

## ARBITRATION

In the event of any dispute or disagreement, whether arising out of or relating to this Contract or otherwise, that is not subject to or resolved by the grievance process set forth in the operative union agreement between the Company's State General Agents, the Company, and OPEIU Local 277, the Parties to the dispute shall use their best efforts to settle such disputes. "Parties" includes the Agent, the Company (including its parent, Globe Life Inc.) and the State General Agent. To this effect, the Parties shall negotiate with each other in good faith to reach a just solution. The negotiation process is to be considered a settlement negotiation for the purpose of all state and federal rules protecting statements made during such conferences from later discovery or use in evidence.

If the Parties do not reach a just solution by negotiation as described above, then upon written notice by one Party to another, all disputes, claims, questions and controversies of any kind or nature arising out of or relating to this Contract, any alleged violation of any state or federal statute, regulation, law or order of any kind, and/or the agent's relationship as an independent contractor and not an employee (including, without limitation, claims for wrongful termination, discrimination, wage-and-hour violations, or any other claim based on an alleged employment relationship), regardless of whether they are brought by or against the Company, the Agent, or the State General Agent, except a dispute relating to the enforceability of this agreement to arbitrate, shall be submitted to binding arbitration under the substantive rules of the Federal Arbitration Act ("FAA"), to be administered by the American Arbitration Association ("AAA") in accordance with its Commercial Rules then in effect. The arbitration shall take place in the AAA office closest to the domicile of the Agent. The Company shall pay any AAA filing, administrative, and arbitrator fee(s). Arbitration shall be on an individual, not a class, collective, representative, or private attorney general basis. If waiver as to class action claims is deemed unenforceable, the parties do not agree to class arbitration and any class action claims must proceed in court. If waiver as to collective, representative, or private attorney general claims is deemed unenforceable, any such claims must proceed in court, and must be stayed while any remaining claims are arbitrated on an individual basis. The arbitrator shall have the power to award any relief that would otherwise be available in court, including attorney's fees if permitted by statute, injunctive or other equitable relief. The arbitrator's findings and award shall be final and binding on the Parties and their beneficiaries, successors, assigns, or anyone claiming an interest in the Contract. Any court having jurisdiction may enter judgment on the award rendered by the arbitrator(s).  The parties acknowledge that this Contract involves interstate commerce, and all issues relating to arbitration or the enforceability of this agreement to arbitrate shall be governed by the Federal Arbitration Act, 9 U.S.C. § 1 *et seq.* Aside from issues relating to arbitration or the enforceability of this agreement to arbitrate, all issues relating to any dispute, claim, or controversy arising out of or relating to this Contract shall be governed by and decided in accordance with the internal laws of the State of Texas, without regard to its choice-of-law rules.

## RELATIONSHIP

The Agent is an independent contractor to the fullest extent permitted by law, and will not be treated as an employee with respect to services performed under this Contract, including for Federal and State tax purposes. The Agent has no fixed hours and is free to choose the time and manner in which services are performed. The Agent shall not represent or imply that the Agent is an officer of the Company or a person having general authority to transact business for the Company. As an independent contractor, the Agent is not eligible for unemployment benefits or worker's compensation.

## PROTECTED HEALTH INFORMATION

The Agent understands and agrees that while performing her or his obligations under this Contract, she or he may receive information about individuals or entities who enroll, apply for or purchase the Company's insurance, which information is defined as "Protected Health Information" under the privacy regulations issued under the Health Insurance Portability and Accountability Act of 1996 ("HIPAA") and/or "Nonpublic Personal Information" under the Gramm-Leach-Bliley Act ("GLBA") and its implementing regulations (collectively, this information is herein referred to as "Protected Information" or "PI"). The Agent agrees that she or he will at all times comply with the Company's policies regarding the treatment of such PI (hereinafter "Company Policies"). If the Agent becomes aware of any use or disclosure of PI that is not permitted by the Company's Policies and/or HIPAA and/or the GLBA, the Agent shall immediately report such incident to the Company and cooperate fully with the Company to fulfill any resulting legal obligations. The Agent understands and agrees that the obligations contained herein survive termination of this Contract.

**NO WAIVER**

No provision of this Contract shall be waived nor any rule or procedure of the Company become inapplicable merely because the Company has failed to enforce it previously.

**ENTIRE AGREEMENT**

This Contract, the Special Notice Acknowledgment attached hereto as Exhibit A, and the applicable commission schedules represent the entire understanding of the parties with respect to the subject matter hereof and supersedes and terminates any prior or contemporaneous agreements, whether written or oral, in which the Agent and the Company are Parties except as described in this paragraph. This Contract can only be amended in a writing executed by Company and Agent.  Notwithstanding the execution of any subsequent contracts between Company and Agent, in the event the Agent's commission schedule changes and she or he remains an Agent of the Company, insurance policies previously issued by the Company under the existing commission structure then in effect under the prior agent contract shall remain and any new policy of insurance issued by the Company after the effective date of any subsequent agent contract will have the commission payable to the Agent by the Company based on the commission schedule then in effect at the time of issuance of the policy of insurance.

**NONASSIGNABLE**

No benefit or right under this Contract may be assigned without the consent of the Company.

**REQUIREMENT OF WRITING**

All agreements must be in writing. No promise or understanding shall be enforceable unless made in writing.

I HEREBY ACKNOWLEDGE THAT I HAVE READ THE FOREGOING CONTRACT IN ITS ENTIRETY, INCLUDING THE ARBITRATION PROVISION, THE SPECIAL NOTICE ACKNOWLEDGEMENT ATTACHED HERETO AS EXHIBIT A, AND AGREE TO ALL CONTRACT TERMS. THIS CONTRACT SHALL NOT BECOME EFFECTIVE UNLESS AND UNTIL THE COMPANY AND THE APPLICABLE STATE GENERAL AGENT SIGN BELOW.

This Contract is signed *(Date)*        _____.

(*Agent Printed Name*)        _____

(*Agent Signature Name*)        _____

(*State General Agent Printed Name*)        _____

(*State General Agent Signature Name*)        _____

By *(Proxy Printed Name)*        _____

By *(Proxy Signature Name)*        _____

## AMERICAN INCOME LIFE INSURANCE COMPANY

This Contract is effective *(Date)*        _____.

By *(Printed Name)*        _____

By *(Signature Name)*        _____

| COMMISSION SCHEDULE INSTRUCTIONS | | |
|---|---|---|
| _____ 50% Career Agent | _____ 67.5% Career Agent | _____ 77.5% Career Agent |
| _____ 60% Standard Career Agent | _____ 70% Career Agent | _____ 80% Career Agent |
| _____ 62.5% Career Agent | _____ 72.5% Career Agent | _____ 90% Career Agent |
| _____ 65% Career Agent | _____ 75% Career Agent | _____ 100% Career Agent |
| **\*\*Career Agent automatic contract progression is outlined in the OPEIU Local 227 Agent/PR collective agreement** | | |

| **HIERARCHY INSTRUCTIONS** (please print) | | |
|---|---|---|
| *Level* | *Contract Percent* | *Name* |
| SGA | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| AGENT | | |

**SPECIAL NOTICE ACKNOWLEDGEMENT**

**EXHIBIT A**

I understand and acknowledge the following:

1. Checks of a policyholder or applicant must be made payable to American Income Life Insurance Company (the "Company") and never to me.

2. I may not cash or deposit any check made payable to the Company.

3. I may not contract for any purchase in the name of the Company.

4. I may not sign any lease or incur any obligation in the name of the Company.

5. I understand that I will not be an employee of the Company; rather, I will be an independent contractor of the Company.

6. I will be paid on a commission basis only and I will receive a Form 1099 for the commissions that I am paid. The Company will not withhold taxes or social security from my commission payments. I am responsible for paying all of my own taxes, including social security payments.

7. I am not eligible for unemployment benefits or worker's compensation.

8. I am responsible for maintaining any separate office(s) in which I work, and I must furnish my own equipment, materials, and supplies (other than State- and/or Company-approved forms). I will incur and be responsible for the expenses related to my work, and expect to have recurring business liabilities and obligations. At my sole discretion and expense, I can hire one or more assistants to work for my business. I recognize that neither the Company nor the State General Agent will reimburse me for any expenses I incur in doing my business. Because the success or failure of my business will depend on the relationship of my business receipts (commission income) to expenditures, I may realize a profit or suffer a loss under my written contract(s) to perform services for the Company.

9. I alone will control the manner and means of my work. I will set my own work schedule, and I will be free to choose the manner in which my work is performed. I understand that I am free to pursue other non-insurance-related business ventures while contracted with the Company.

10. I understand that from time to time, the Company or the State General Agent may make available to me training and/or sales meetings to introduce new products, offer assistance in maximizing my sales, and provide information regarding compliance with federal or state law pertaining to the sale of insurance.

11. I understand that my State General Agent may make sales leads available to me. However, I further understand that I have no right or guarantee to receive any leads at all. I understand that I am responsible for generating my own leads and/or referrals for potential customers.

12. I understand that the Company maintains the ultimate right to approve or disapprove any application and/or potential customer. I will be responsible for the satisfactory completion of the services for which I am contracted, and I will be liable for failure to satisfactorily complete the services. I will be responsible to the Company for all loss or damage arising from business done by and entrusted to me and I shall indemnify and hold harmless the Company from any and all expenses, costs, causes of action, loss or damages resulting from any fraudulent or unauthorized acts or omissions.

13. I will maintain the proper insurance license required to do business and will adhere to all state and federal laws and regulations applicable to insurance sales activity. I understand all customer leads and policyholder information and records are Company trade secrets, and are considered confidential and private and will not use them for anything other than Company business.

14. I will adhere to all State, Federal, and/or Provincial laws regarding privacy of consumer and/or policyholder information and records. I will take all appropriate and necessary steps to protect and safeguard the privacy and confidentiality of consumer and/or policyholder data to which I have access, regardless of the source of such data. I will comply with Company guidelines and contract requirements respecting the maintenance, return, and destruction of consumer- and policyholder-related records, including, but not limited to, business records, policyholder records, CAS records, lead records, and records concerning prospects or organization memberships.

Signature X_____   Date (mm/dd/yy) _____