**IN THE UNITED STATES DISTRICT COURT FOR
THE WESTERN DISTRICT OF PENNSYLVANIA**

**RENEE ZINSKY**,                          Civil Action No. 2:22-cv-547(MJH)

     Plaintiff,                          The Honorable Marilyn J. Horan

     vs.

**MICHAEL RUSSIN, RUSSIN
FINANCIAL, RUSSIN GROUP, SIMON
ARIAS, III, ARIAS AGENCIES, S.A.
ARIAS HOLDINGS, LLC, AMERICAN
INCOME LIFE INSURANCE COMPANY**,          ELECTRONICALLY FILED

     Defendants.


**MEMORANDUM OF LAW IN SUPPORT OF
AMERICAN INCOME LIFE INSURANCE COMPANY'S
<u>MOTION TO COMPEL ARBITRATION AND STAY THE CASE</u>**

## <u>TABLE OF CONTENTS</u>

I.      INTRODUCTION ................................................................................................. 1

II.     FACTUAL BACKGROUND ............................................................................... 3

        A.      Plaintiff Signed an Agent Contract to Sell AIL Insurance Products .................... 3

        B.      Plaintiff's Operative Agent Contract Contains A Binding Arbitration
                Agreement that Covers Her Dispute with AIL ..................................................... 3

III.    THE COURT SHOULD GRANT AIL'S MOTION AND COMPEL
        ARBITRATION .................................................................................................. 5

        A.      The FAA Governs the Arbitration Agreement ...................................................... 5

        B.      The Court Should Compel Arbitration Because Plaintiff Agreed to
                Arbitrate Her Dispute with AIL ........................................................................... 7

                1.      The Arbitration Agreement is Valid ......................................................... 8

                2.      Plaintiff's Claims Fall Within the Scope of the Arbitration
                        Agreement ............................................................................................... 10

                3.      Courts Have Enforced the Same Arbitration Agreement in Similar
                        Circumstances ........................................................................................ 13

IV.     Passage of EFASASHA Does Not Alter This Analysis And The Court Must
        Compel Arbitration of Plaintiff's Claims Against AIL ...................................... 14

        A.      Plaintiff's Sexual Assault Claim—Against Russin—Arose and Accrued
                Prior to the Passage of EFASASHA and Therefore Its Specific Exclusions
                Do Not Apply to AIL ............................................................................................ 14

        B.      Plaintiff's August 2021 Agent Contract Is Not a Predispute Arbitration
                Agreement Therefore EFASASHA Does Not Apply ............................................ 16

        C.      Plaintiff's Sexual Assault and Related Causes of Action Are Not Alleged
                Against AIL .......................................................................................................... 17

V.      This Action Must Be Stayed Pending Resolution Of This Motion Under 9 U.S.C.
        § 3 ...................................................................................................................... 18

VI.     CONCLUSION .................................................................................................. 19

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Allied-Bruce Terminix Cos., Inc. v. Dobson*,
   513 U.S. 265 (1995)....................................................................................................7

*AT&T Mobility LLC v. Concepcion*,
   563 U.S. 333 (2011)..............................................................................................7, 10

*Battaglia v. McKendry*,
   233 F.3d 720 (3d Cir. 2000)....................................................................................11

*Bell v. Am. Income Life Ins. Co.*,
   2021 WL 5858575 (C.D. Cal. Nov. 30, 2021)......................................................13

*Berry et al v. American Income Life Insurance Company*,
   2:20-CV-00110 (W.D. Pa. Sept. 20, 2020)..................................................... *passim*

*Blair v. Scott Specialty Gases*,
   283 F.3d 595 (3d Cir. 2002)................................................................................8, 10

*In re Border Steel, Inc.*,
   229 S.W.3d 825 (Tex. 2007)....................................................................................8

*Bradford v. Robert Peltier Nissan Pontiac*,
   2007 WL 865685 (E.D. Tex. Mar. 15, 2007) ......................................................13

*Brown v. J. Kaz, Inc.*,
   581 F.3d 175 (3d Cir. 2009)....................................................................................18

*Brown v. Trueblue, Inc.*,
   2012 WL 1268644 (M.D. Pa. Apr. 16, 2012) ........................................................6

*Bruce v. Am. Income Life Ins. Co. et al.*,
   No. 3:18-CV-00258-G-BT (N.D. Tex. July 27, 2018) .........................................14

*Bruffett v. Warner Commc'ns, Inc.*,
   534 F. Supp. 375 (E.D. Pa.), *aff'd*, 692 F.2d 910 (3d Cir. 1982)...........................15

*Cantella & Co., Inc. v. Goodwin*,
   924 S.W.2d 943 (Tex. 1996)....................................................................................9

*Chassen v. Fid. Nat'l Fin., Inc.*,
   836 F.3d 291 (3d Cir. 2016)....................................................................................8

*Chesapeake Appalachia, L.L.C. v. Ostroski*,
   199 F. Supp. 3d 912 (M.D. Pa. 2016) ...................................................................6

*In re Choice Homes, Inc.*,
   174 S.W.3d 408 (Tex. 2005) ................................................................................6

*Citizens Bank v. Alafabco, Inc.*,
   539 U.S. 52 (2003) ..............................................................................................6

*Corpman v. Prudential-Bache Secs., Inc.*,
   907 F.2d 29 (3d Cir. 1990) ...............................................................................18

*Dalrymple v. Brown*,
   701 A.2d 164 (Pa. 1997) ...................................................................................16

*DIRECTV, Inc. v. Imburgia*,
   136 S. Ct. 463 (2015) ..........................................................................................6

*Doughtery v. VFG, LLC*,
   118 F. Supp. 3d 699 (E.D. Pa. 2015) ..................................................................7

*Edwards v. DoorDash, Inc.*,
   888 F.3d 738 (5th Cir. 2018) .............................................................................12

*Epic Sys. Corp. v. Lewis*,
   138 S. Ct. 1612 (2018) ......................................................................................12

*Fernandez v. Sierra Plastics, Inc.*,
   2021 WL 1050047 (W.D. Tex. Mar. 16, 2021) ...............................................13

*First Liberty Inv. Grp. v. Nicholsberg*,
   145 F. 3d 647 (3d Cir. 1998) .............................................................................13

*First Options of Chi., Inc. v. Kaplan*,
   514 U.S. 938 (1995) ............................................................................................8

*Focht v. Focht*,
   32 A.3d 668 (Pa. 2011) ...............................................................................14, 15

*Golembiewski v. Nemacolin Woodlands Resort & Spa*,
   2010 WL 11566447 (W.D. Pa. Mar. 10, 2010) .................................................9

*Guidotti v. Legal Helpers Debt Resol., L.L.C.*,
   716 F.3d 764 (3d Cir. 2013) ...............................................................................5

*Hovanski v. Am. Income Life Ins. Co.*,
   2006 WL 8436890 (N.D. Ala. Jan. 11, 2006) ..................................................18

*John Hancock Mut. Life Ins. Co. v. Olick*,
 151 F.3d 132 (3d Cir. 1998) .......................................................................8

*Kaneff v. Del. Title Loans, Inc.*,
 587 F.3d 616 (3d Cir. 2009) ........................................................................8

*Kruzits v. Okuma Mach. Tool, Inc.*,
 40 F.3d 52 (3d Cir. 1994) ............................................................................9

*Kubischta v. Schlumberger Tech Corp.*,
 2016 WL 3752917 (W.D. Pa. July 14, 2016) ..............................................9

*Lloyd v. Hovensa*,
 369 F.3d 263 (3d Cir. 2004) ......................................................................19

*Marmet Health Care Ctr., Inc. v. Brown*,
 565 U.S. 530 (2012) ....................................................................................7

*Masoner v. Educ. Mgmt. Corp.*,
 18 F. Supp. 3d 652 (W.D. Pa. 2014) .........................................................10

*Maxatawny Twp. v. Kutztown Borough*,
 113 A.3d 895 (Pa. Commw. Ct. 2015) ......................................................13

*In re McKinney*,
 167 S.W.3d 833 (Tex. 2005) ........................................................................9

*Medtronic AVE Inc. v. Cordis Corp.*,
 100 F. App'x 865 (3d Cir. 2004) ...............................................................11

*Mitsubishi Motors, Inc. v. Soler Chrysler-Plymouth*,
 473 U.S. 614 (1985) ....................................................................................5

*Moses H. Cone Mem'l Hosp. v. Mercury Const. Corp.*,
 460 U.S. 1 (1983) ....................................................................................7, 8

*In re Olson's Estate*,
 291 A.2d 95 (Pa. 1972) ...............................................................................9

*Pajor-Flores v. Am. Income Life Ins. Co.*,
 2017 WL 6033689 (D. Colo. Oct. 31, 2017) .............................................18

*Patterson v. Am. Income Life Ins. Co.*,
 2020 WL 6387555 (E.D. Ark. Oct. 30, 2020) ...........................................13

*Pennzoil Expl. and Prod. Co. v. Ramco Energy Ltd.*,
 139 F.3d 1061 (5th Cir. 1998) ...................................................................11

*Pension Ben. Guar. Corp. v. White Consol. Indus., Inc.*,
  998 F.2d 1192 (3d Cir. 1993) ........................................................................5

*Samuel et al. v. Serur Agencies Mgmt. et al.*,
  No. 1881-CV-00261 (Mass. Super. Ct. June 17, 2019) .........................................14

*Smith v. RB Distribution, Inc.*,
  515 F. Supp. 3d 311 (E.D. Pa. 2021) ...............................................................15

*Styczynski v. MarketSource, Inc.*,
  340 F. Supp. 3d 534 (E.D. Pa. 2018) ...............................................................13

*Williams v. Nabors Drilling USA, LP*,
  2014 WL 710078 (W.D. Pa. Feb. 25, 2014) .......................................................12

*Wroblewski v. Ohiopyle Trading Post, Inc.*,
  2013 WL 4504448 (W.D. Pa. Aug. 22, 2013) .......................................................9

**Statutes**

9 U.S.C. § 2 ......................................................................................................6, 7

9 U.S.C. §§ 2-3 ....................................................................................................2

9 U.S.C. § 401 ...............................................................................................2, 14, 16

9 U.S.C. § 402 .........................................................................................2, 14, 16, 18

Title 9, United States Code .......................................................................................14

Ending Forced Arbitration of Sexual Assault and Sexual Harassment Act of 2021 ............ *passim*

Fair Labor Standards Act ....................................................................1, 4, 11, 12, 13

Federal Arbitration Act, 9 U.S.C. § 1 *et seq.* ..................................................... *passim*

Pennsylvania Human Relations Act ..............................................................................18

Pennsylvania Minimum Wage Act ..............................................................1, 4, 11, 13

Pennsylvania Wage Payment and Collection Law ...........................................1, 4, 11, 13

**Other Authorities**

Black's Law Dictionary, 11th Ed. (2019) .......................................................................14

## I.       INTRODUCTION

Defendant American Income Life Insurance Company ("AIL") is an insurance company based in Texas that produces life, accident, and supplemental health insurance policies.  The sale of insurance products is a regulated activity, including in the Commonwealth of Pennsylvania, and is handled by independent sales agents who must be licensed directly by the state.  Plaintiff Renee Zinsky ("Plaintiff" or "Zinsky") is an independent contractor licensed by the Commonwealth of Pennsylvania to sell insurance products as a registered sales agent and who chose to contract with AIL to sell AIL insurance products.

Like every person who contracts to sell AIL insurance products, Plaintiff entered into an independent contractor agreement ("Agent Contract") with AIL.  (Am. Compl. ¶¶ 22, 26.)  As Plaintiff admits, she entered into her most recent Agent Contract on August 20, 2021.  (Declaration of Debra Gamble ("Gamble Decl."), Ex. 1; Am. Compl. ¶ 27.)  Plaintiff's Agent Contract contains an arbitration agreement, under the capitalized and bolded heading "**ARBITRATION**," requiring Plaintiff and AIL to resolve any disputes through binding individual arbitration.  Plaintiff signed the Agent Contract, agreeing that she "read the foregoing contract in its entirety, including the arbitration agreement," and that she "agree[d] to all contract terms."  (*Id.*)

Plaintiff failed to honor her agreement, however, when she filed this lawsuit against AIL. The gravamen of Plaintiff's allegations against AIL relate to her purported misclassification as an independent contractor and wage-and-hour claims under the Fair Labor Standards Act ("FLSA"), the Pennsylvania Minimum Wage Act ("PMWA"), and the Pennsylvania Wage Payment and Collection Law ("WPCL").  Not only do such claims fall within the broad scope of the arbitration agreement, numerous federal courts—including most recently, the Western District of Pennsylvania—have enforced AIL's arbitration agreement against a variety of claims and granted AIL's motions to compel arbitration.  *Berry et al v. American Income Life Insurance Company*,

1

2:20-CV-00110 (W.D. Pa. Sept. 20, 2020) ("*Berry*") (attached hereto as Dana Decl. Ex. 1) (compelling arbitration of federal and state wage-and-hour claims, unjust enrichment, and declaratory relief in the form of rescission of the agent contract). This Court should do the same.

In an attempt to circumvent her agreement to arbitrate these claims, Plaintiff blurs her wage-and-hour lawsuit against AIL with independent and separate claims for sexual assault and battery against an individual assailant, Michael Russin. By doing so, Plaintiff endeavors to take advantage of a newly-passed law—The Ending Forced Arbitration of Sexual Assault and Sexual Harassment Act of 2021 ("EFASASHA")—which invalidates "predispute arbitration agreement[s]" for claims related to "sexual assault." 9 U.S.C. §§ 401-402. This fails, however, because Plaintiff cannot establish the *prima facie* requirements to qualify for EFASASHA, namely: (1) her claim accrued before the law's recent March 3, 2022 enactment, therefore the law is inapplicable; and (2) her operative arbitration agreement is not a 'predispute' arbitration agreement because she signed it *after* Russin's alleged conduct and her dispute about such conduct had arisen. Even if Plaintiff could meet these express statutory prerequisites, which she cannot, the claims pled against AIL are unrelated to the sexual assault claim against Russin, and therefore do not fall within EFASASHA's specific exclusions from the Federal Arbitration Act's ("FAA") otherwise broad policy favoring arbitration.

AIL therefore brings this Motion to Compel all of Plaintiff's claims against AIL to arbitration. The FAA requires that: (1) Plaintiff's claims be submitted to arbitration as the parties agreed; and (2) the Court stay this action. 9 U.S.C. §§ 2-3.

AIL respectfully moves the Court, pursuant to the FAA, 9 U.S.C. §§1-16, to compel Plaintiff to arbitrate all claims against AIL in this matter and to stay this proceeding pending resolution of this Motion.

## II.    FACTUAL BACKGROUND

### A.    *Plaintiff Signed an Agent Contract to Sell AIL Insurance Products*

AIL is a life insurance company headquartered in Waco, Texas that provides insurance products to families and individuals in different states.  (Gamble Decl., ¶ 2.)  Plaintiff contracted with AIL to sell its insurance products in Pennsylvania.   (Am. Compl. ¶¶ 21, 26; Gamble Decl. ¶ 5.)  At the time of her initial engagement in 2019 as an independent contractor with AIL,[1] Plaintiff signed an Agent Contract.  (Am. Compl. ¶ 26.)  Plaintiff signed her most recent and thus the operative Agent Contract with AIL affirming she is an independent contractor on August 20, 2021.  (Gamble Decl., ¶ 6, Ex.1; ¶ 27.)

### B.    *Plaintiff's Operative Agent Contract Contains A Binding Arbitration Agreement that Covers Her Dispute with AIL*

Plaintiff's operative Agent Contract contains an individual arbitration agreement.  (Gamble Decl., Ex 1.)   The agreement is sectioned off from other provisions and clearly entitled "**ARBITRATION**."   (*Id.*)   The mandatory and bilateral arbitration agreement is broad and provides in relevant part:

> [A]ll disputes, claims, questions, and controversies of any kind or nature arising out of or relating to this Contract, any alleged violation of state or federal statute, regulation, law or order of any kind, and/or the agent's relationship as an independent contractor and not an employee (including, without limitation, claims for wrongful termination, discrimination, wage and hour violations, or any other claim based on an alleged employment relationship), regardless of whether they are brought by or against the Company, the Agent, or the State General Agent, except a dispute relating to the enforceability of this agreement to arbitrate, shall be submitted

---

[1] AIL contracts with independent contractor sales agents in a tiered system:  the highest-level agent contract is a state general agent ("SGA"); with lower tiers such as a regional general agent ("RGA") or a master general agent ("MGA"); and finally, a basic sales agent.  All sales agents at every tier are independent contractors.  Sales agents are usually affiliated with a particular SGA, but AIL does not control with whom sales agents choose to affiliate. (Gamble Decl. ¶ 3).  Sales agents interact directly with other agents affiliated with the SGAs with whom they have chosen to affiliate.  AIL does not control or direct the sales agents' manner of work upon contracting.  (*Id.*)

to binding arbitration … to be administered by the AAA in accordance with its Commercial Rules then in effect.

The arbitration agreement also expressly states that "this Contract involves interstate commerce, and all issues relating to arbitration or the enforceability of this agreement to arbitrate shall be governed by the Federal Arbitration Act, 9 U.S.C. § 1 *et seq*." (*Id.*) The final page of the Agent Contract includes the following acknowledgment, in all capital letters, just above the signature line: **"I HEREBY ACKNOWLEDGE THAT I HAVE READ THE FOREGOING CONTRACT IN ITS ENTIRETY, INCLUDING THE ARBITRATION PROVISION, THE SPECIAL NOTICE OF ACKNOWLEDGEMENT ATTACHED HERETO AS EXHIBIT A, AND AGREE TO ALL CONTRACT TERMS."** (Gamble Decl., Ex. 1.) Plaintiff signed the Agent Contract underneath this acknowledgment and Debra Gamble signed on behalf of AIL. (*Id.*)

On April 11, 2022, Plaintiff filed this lawsuit despite agreeing to arbitrate her claims against AIL. (Dkt. 1; Gamble Decl., Ex. 1.) Thereafter, and prior to effectuating service, Plaintiff voluntarily amended her Complaint. (Dkt. 9, Am. Compl.) Plaintiff's first five causes of action, which are asserted against AIL, allege violations of the FLSA, PMWA, and WPCL. (Am. Compl. ¶¶ 103-161.) All of these causes of action involve Plaintiff's purported misclassification as an independent contractor and failure to pay her properly. As such, Plaintiff alleges that she is entitled to wages for overtime, minimum wages for compensable time—such as for training, missed meal and rest breaks, and is owed for work-related expenses and chargebacks. She also alleges failure to maintain proper employee records and unjust enrichment. (*Id*. ¶¶ 120-128; 156-161.) In addition, Plaintiff asserts breach of the arbitration agreement (and seeks its rescission) for failing to negotiate in good faith to resolve Plaintiff's dispute with AIL; and negligence and vicarious liability as to other independent contractors who also contracted with AIL. (*Id.*, ¶¶ 162-167, 217-232.) Nowhere does Plaintiff assert a cause of action for sexual harassment against AIL.

Separately, Plaintiff asserts *four distinct causes of action against an individual*, Michael Russin—for sexual assault, battery, false imprisonment, and intentional infliction of emotional distress ("IIED")[2]—none of which are asserted against AIL.[3]

In her Amended Complaint, Plaintiff explicitly references her Agent Contract that she executed on or about August 20, 2021. (*Id.* ¶ 27, FN 1.) Therefore, this Court can take judicial notice of this document. *See Berry* at 3 (Dana Decl. Ex. 1) (considering Agent Contract attached to the complaint); *Guidotti v. Legal Helpers Debt Resol., L.L.C.*, 716 F.3d 764, 776 (3d Cir. 2013) (when apparent on face of complaint and "documents relied upon in the complaint" that claims are subject to arbitration clause, motion to compel arbitration should be considered under 12(b)(6) standard without discovery); *Pension Ben. Guar. Corp. v. White Consol. Indus., Inc.*, 998 F.2d 1192, 1196 (3d Cir. 1993) (under motion to dismiss standard, courts may consider undisputedly authentic documents attached by defendant as an exhibit, if plaintiff's claims are based on the document).

## III.   THE COURT SHOULD GRANT AIL'S MOTION AND COMPEL ARBITRATION

### A.   *The FAA Governs the Arbitration Agreement*

Plaintiff and AIL agreed that all disputes between them would be subject to arbitration under the FAA: their arbitration agreement specifies that "all issues relating to arbitration or the enforceability of this agreement to arbitrate shall be governed by the Federal Arbitration Act, 9 U.S.C. § 1 *et seq*." (Gamble Decl., Ex. 1.) The parties' express selection of the FAA controls. *See Mitsubishi Motors, Inc. v. Soler Chrysler-Plymouth*, 473 U.S. 614, 626 (1985) ("Thus, as with

---

[2] The cause of action for IIED also is asserted against defendant Simon Arias ("Arias"), who is the SGA Plaintiff opted to be associated with. (Gamble Decl., Ex. 1; Am. Compl. Count XII)

[3] Plaintiff's own pleading makes clear that the acts alleged in support of her sexual assault, battery, and false imprisonment claims against Russin arose "in the 2019 – 2020 timeframe." (Am. Compl. ¶¶ 195, 209.)

any other contract, the parties' intentions control, [and] those intentions are generously construed as to issues of arbitrability."); *DIRECTV, Inc. v. Imburgia*, 136 S. Ct. 463, 468 (2015) ("[P]arties to an arbitration contract [have] considerable latitude to choose what law governs some or all of its provisions."); *Brown v. Trueblue, Inc.*, No. 1:10–CV–0514, 2012 WL 1268644, at *3 (M.D. Pa. Apr. 16, 2012) (applying FAA when arbitration agreement expressly stated that FAA controls); *In re Choice Homes, Inc.*, 174 S.W.3d 408, 412 (Tex. 2005) ("When parties agree to arbitrate under the FAA, they are not required to establish that the transaction at issue involves or affects interstate commerce.").

Even if the parties had not included the express FAA selection language in their arbitration agreement, the FAA applies by default to all contracts to a transaction "involving commerce" or "affecting commerce." *Citizens Bank v. Alafabco, Inc.*, 539 U.S. 52, 56 (2003) (per curiam) (interpreting 9 U.S.C. § 2). It extends, as Congress intended, to the furthest reaches of the Commerce Clause. *Id.* (explaining that the phrase "involving commerce" signals "the broadest permissible exercise of Congress' Commerce Clause power" and sweeps in activity that "affect[s] interstate commerce"); *Chesapeake Appalachia, L.L.C. v. Ostroski*, 199 F. Supp. 3d 912, 915 (M.D. Pa. 2016) ("this is not a rigorous inquiry; in fact, the contract need only the slightest nexus with interstate commerce, for the FAA to apply") (internal citations and quotations omitted) (Jones, J.).

Plaintiff's Agent Contract with AIL, including the arbitration agreement, indisputably affects interstate commerce, as the parties expressly acknowledged. (Gamble Decl., Ex. 1.) ("The parties acknowledge that this Contract involves interstate commerce."). AIL is a Texas-based insurance agency that operates across many states. (*Id*., ¶ 2.) Plaintiff chose to contract with AIL to sell AIL insurance products to customers in Pennsylvania. (*Id*., ¶ 5.) In accordance with AIL

practices, insurance applications from out-of-state customers are sent to Texas, policy underwriting is done in Texas, and policies are issued in Texas. (*Id*., ¶ 8.) Agent commission payments are determined in Texas, and tax forms reflecting payments to agents are issued from Texas. (*Id*.) The interstate effects extending from the Agent Contracts are more than sufficient to bring the arbitration agreement into the FAA's broad scope. *See*, *e.g.*, *Allied-Bruce Terminix Cos., Inc. v. Dobson*, 513 U.S. 265, 282 (1995) (explaining that the FAA governed an arbitration agreement between a company and a customer because the company was a multistate business and the materials came from out of state); *Doughtery v. VFG, LLC*, 118 F. Supp. 3d 699, 711 (E.D. Pa. July 28, 2015) (applying FAA when parties were residents of different states and marketing and purchases of securities at issue were sold through a "nationwide network"); *Berry* (Dana Decl. Ex. 1) (applying FAA).

**B.  The Court Should Compel Arbitration Because Plaintiff Agreed to Arbitrate Her Dispute with AIL**

Congress enacted the FAA to reverse the "widespread judicial hostility to arbitration agreements." *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 339 (2011). The Supreme Court has repeatedly emphasized that courts must enforce arbitration agreements as written because the FAA "reflects an emphatic federal policy in favor of arbitral dispute resolution." *Marmet Health Care Ctr., Inc. v. Brown*, 565 U.S. 530, 533 (2012) (quoting *KPMG LLP v. Cocchi*, 565 U.S. 18, 21 (2011)).

The FAA provides that contractual arbitration agreements "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. To this end, the FAA requires courts to enforce arbitration agreements through "an affirmative order to engage in arbitration." *Moses H. Cone Mem'l Hosp. v. Mercury Const. Corp.*, 460 U.S. 1, 22 (1983) (superseded by statute on other grounds)

(citing 9 U.S.C. § 4). Given the strong federal policy in favor of arbitration, "any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration." *Id*. at 24-25; *see also Chassen v. Fid. Nat'l Fin., Inc.*, 836 F.3d 291, 295 (3d Cir. 2016) (quoting *Moses H. Cone Mem'l Hosp.*, 460 U.S. at 24-25) ("'[A]ny doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration, whether the problem at hand is the *construction of the contract language itself* or an allegation of waiver, delay, or a like defense to arbitrability.'") (emphasis added); *Blair v. Scott Specialty Gases*, 283 F.3d 595, 607 (3d Cir. 2002) ("initial burden of proof [is] on the party resisting arbitration" to demonstrate that the claims at issue are not suitable for arbitration) (citing *Green Tree Fin. Corp.-Ala. v. Randolph*, 531 U.S. 79, 92 (2000)).[4]

Under the FAA, the Court must compel arbitration if: (1) a valid arbitration clause exists, and (2) the dispute falls within the substantive scope of the arbitration clause. *See John Hancock Mut. Life Ins. Co. v. Olick*, 151 F.3d 132, 137 (3d Cir. 1998). As the *Berry* court concluded, both elements are satisfied here. (Dana Decl. Ex. 1.)

### 1.    The Arbitration Agreement is Valid

An agreement to arbitrate is valid under the FAA if it is valid under state contract law. *First Options of Chi., Inc. v. Kaplan*, 514 U.S. 938, 944 (1995). Here, the choice-of-law provision within the arbitration agreement directs that Texas law controls any arbitration issues not governed by the FAA. (Gamble Decl., Ex. 1.) As the Third Circuit has noted, Pennsylvania courts generally honor the intent of the contracting parties and enforce contractual choice-of-law provisions if the

---

[4] Both Pennsylvania and Texas law have strong policies that favor arbitration of disputes and that would require enforcement of this arbitration agreement. *Kaneff v. Del. Title Loans, Inc.*, 587 F.3d 616, 624 (3d Cir. 2009) ("Pennsylvania law, like federal law, favors the enforcement of arbitration agreements."); *In re Border Steel, Inc*., 229 S.W.3d 825, 832 (Tex. 2007) (Texas "law presumes the existence of an arbitration agreement, and any doubts regarding the existence or scope of an agreement are resolved in favor of arbitration").

chosen state bears a reasonable relationship to the contract.  *Kruzits v. Okuma Mach. Tool, Inc.*, 40 F.3d 52, 55 (3d Cir. 1994).  Texas law is reasonably related to the transaction here: AIL is based in Texas and conducts most of its functions in Texas, including issuing insurance policies and agent commission payments.  (Gamble Decl., ¶ 2, 8.)  Applying Texas law will not "conflict with strong public policy interests" of Pennsylvania.  *Kruzits*, 40 F.3d at 52; *see also Kubischta v. Schlumberger Tech Corp.*, No. CV 15-1338, 2016 WL 3752917, at *4-5 (W.D. Pa. July 14, 2016) (applying the parties' Texas choice-of-law provision).

Regardless, under Pennsylvania or Texas law, Plaintiff is bound by her arbitration agreements with AIL.  A party who signs a document is conclusively presumed to have read and understood its contents.  *In re McKinney*, 167 S.W.3d 833, 835 (Tex. 2005); *accord Wroblewski v. Ohiopyle Trading Post, Inc.*, No. CIV.A. 12-0780, 2013 WL 4504448, at *7 (W.D. Pa. Aug. 22, 2013) ("Under Pennsylvania law, the failure to read a contract does not nullify the contract's validity.") (citing *Standard Venetian Blind Co. v. Am. Empire Ins. Co.,* 469 A.2d 563, 566 (Pa. 1983) ("failure to read [the contract] is an unavailing excuse or defense and cannot justify an avoidance, modification or nullification of the contract or any provision thereof").

By signing the Agent Contract, Plaintiff expressly agreed to its terms and entered into a binding arbitration agreement with AIL. *See Cantella & Co., Inc. v. Goodwin*, 924 S.W.2d 943, 944 (Tex. 1996) (rejecting argument that plaintiff who signed an arbitration agreement within a client agreement could avoid its application, relying on the "legal presumption that a party who signs a contract knows its contents"); *accord In re Olson's Estate*, 291 A.2d 95, 98 (Pa. 1972) ("failure to read is an unavailing excuse or defense and cannot justify an avoidance, modification or nullification of the contract or any provision thereof."); *Golembiewski v. Nemacolin Woodlands Resort & Spa*, No. 2:09CV994, 2010 WL 11566447, at *3 (W.D. Pa. Mar. 10, 2010) (enforcing

arbitration agreement against plaintiff and finding "self-serving statements in her affidavit to the effect that she did not review or see a full copy of the arbitration program" does not constitute grounds for avoidance). The arbitration terms are clear and highlighted with the capitalized and bolded heading "**ARBITRATION**," and just above the line where Plaintiff signed, there is an additional statement, in all capital letters, requiring her to expressly acknowledge that she read the arbitration agreement and agreed to its terms. (Gamble Decl., Ex. 1.)

Moreover, the arbitration agreement that Plaintiff signed is bilateral and requires both Plaintiff and AIL to independently arbitrate claims that they may have against each other. (Gamble Decl., Ex. 1.) *See also Blair*, 283 F.3d at 603 ("When both parties have agreed to be bound by arbitration, adequate consideration exists and the arbitration agreement should be enforced."); *Masoner v. Educ. Mgmt. Corp.*, 18 F. Supp. 3d 652, 660 (W.D. Pa. 2014) (concluding that adequate consideration existed to support an arbitration agreement where both parties agreed to arbitrate claims brought by either party). The arbitration agreement also provides that AIL, not Plaintiff, will pay filing, administrative, and arbitrator fees. (Gamble Decl., Ex. 1.) It incorporates the AAA rules and directs that arbitration will take place in the AAA office closest to Plaintiff's domicile. (*Id.*) And it provides that the relief available in arbitration will mirror what is available in court. (*Id.*)

Under these circumstances, there is a *prima facie* showing that Plaintiff and AIL formed and are bound by an arbitration agreement. *Concepcion*, 563 U.S. at 335 ("courts must place arbitration agreements on an equal footing with other contracts, and enforce them according to their terms").

### 2.    Plaintiff's Claims Fall Within the Scope of the Arbitration Agreement

Plaintiff and AIL agreed to arbitrate all of the claims that have been asserted against AIL. The Agent Contract requires the parties to arbitrate "all disputes, claims, questions, or

controversies of any kind or nature arising out of or relating to this Contract," including "any alleged violation of any state or federal statute, regulation, law or order of any kind," and "the agent's relationship as an independent contractor and not an employee (including, without limitation, claims for . . . wage and-hour violations, or any other claim based on an alleged employment relationship)." (Gamble Decl., Ex. 1.)  This is a broad arbitration clause. *Battaglia v. McKendry*, 233 F.3d 720, 727 (3d Cir. 2000) ("when phrases such as 'arising under' and 'arising out of' appear in arbitration provisions, they are normally given broad construction."); *accord Pennzoil Expl. and Prod. Co. v. Ramco Energy Ltd.*, 139 F.3d 1061, 1067 (5th Cir. 1998) (describing agreement to arbitrate "arising out of or in relation to or in connection with [an] Agreement" and similar clauses as "broad arbitration clauses capable of expansive reach").  As such, the arbitration clause applies to "any dispute between the contracting parties that is in any way connected with their contract." *Medtronic AVE Inc. v. Cordis Corp.*, 100 F. App'x 865, 868 (3d Cir. 2004) (quoting *Sweet Dreams Unlimited, Inc. v. Dial–A–Mattress Int'l, Ltd.,* 1 F.3d 639, 642 (7th Cir. 1993)).

Plaintiff's claims do not just touch matters covered by the arbitration agreement—they fall squarely inside the arbitration agreement.  The first five causes of action Plaintiff asserts against AIL are all wage and hour claims.  (Am. Compl. ¶¶ 103-161) (citing Counts I – V.)  Plaintiff alleges that she was misclassified as exempt from the requirements of the FLSA, PMWA, and WPCL when she was allegedly wrongfully classified as independent contractor, that due to this purported error she did not receive the wages required under the FLSA, PMWA, and WPCL, that she was improperly required to pay her own work-related expenses, that AIL failed to maintain the required records, and that AIL was unjustly enriched.  (*Id.*, ¶¶ 103-184.)  Each of these claims falls squarely within the language in the arbitration agreement to arbitrate any disputes or claims

concerning Plaintiff's "relationship as an independent contractor and not an employee (including, without limitation . . . wage-and-hour violations), or any other claim based on an alleged employment relationship." (Gamble Decl. Ex. 1.)

Plaintiff also asserts a claim for breach of the arbitration agreement for failure to negotiate in good faith to resolve the dispute, while simultaneously seeking declaratory relief requesting rescission of the very same agreement. (Am. Compl., ¶¶ 162-184). A claimed breach of the arbitration agreement itself falls squarely within the contractual language "all disputes, claims, questions and controversies of any kind or nature arising out of or relating to this Contract." (Gamble Decl. Ex. 1.) Moreover, the court in *Berry* explicitly rejected an identical rescission argument and granted the motion to compel arbitration. (*See Berry* at 6) (Dana Decl. Ex. 1) (*citing Buckeye Check Cashing, Inc. v. Cardegna*, 546 U.S. 440, 445-46 (2006) (holding that a challenge to the validity of a contract as a whole, rather than to the arbitration clause itself, must be decided by the arbitrator). Plaintiff similarly asserts a cause of action against AIL for negligent hiring, retention, and supervision of *other* independent contractor sales agents, as well as vicarious liability for *other* independent contractor sales agents—both of which clearly fall within the arbitration agreement's language governing claims alleging "violation of state or federal . . . law" and/or arising out of an "alleged employment relationship." (Gamble Decl. Ex. 1.)

Because these claims fall squarely within the bounds of Plaintiff's Agent Contract with AIL, they are precisely the type that the parties agreed to arbitrate. (*Id.*) Moreover, they are precisely the type that courts routinely find arbitrable. *See*, *e.g.*, *Epic Sys. Corp. v. Lewis*, 138 S. Ct. 1612, 1626 (2018) (upholding arbitration agreement in dispute involving federal wage and hour laws); *Edwards v. DoorDash, Inc.*, 888 F.3d 738, 742, 746 (5th Cir. 2018) (enforcing arbitration of plaintiff's minimum wage claims under FLSA); *accord Williams v. Nabors Drilling*

*USA, LP*, No. Civ.A. 13-1013, 2014 WL 710078, at *1 (W.D. Pa. Feb. 25, 2014) (enforcing arbitration of plaintiff's wage claims under the FLSA, PMWA, and WPCL on an individual, non-class or collective basis); *Styczynski v. MarketSource, Inc.*, 340 F. Supp. 3d 534 (E.D. Pa. Nov. 30, 2018) (enforcing arbitration of plaintiff's employment and declaratory relief claims); *Bradford v. Robert Peltier Nissan Pontiac*, No. 606-CV-477, 2007 WL 865685, at *4 (E.D. Tex. Mar. 15, 2007) (compelling arbitration of claims including negligent hiring and supervision); *Fernandez v. Sierra Plastics, Inc*., No. EP20CV00290DBATB, 2021 WL 1050047, at *3 (W.D. Tex. Mar. 16, 2021), report and recommendation adopted, No. EP-20-CV-290-DB-ATB, 2021 WL 2767299 (W.D. Tex. Apr. 6, 2021) (compelling claims of "negligent hiring, supervision, training, or retention" to arbitration).  There is no room for doubt that the arbitration agreement encompasses Plaintiff's claims against AIL, but even if there were, "any doubts concerning the scope of arbitrable issues must be resolved in favor of arbitration."  *See First Liberty Inv. Grp. v. Nicholsberg*, 145 F. 3d 647, 653 (3d Cir. 1998); *see also Maxatawny Twp. v. Kutztown Borough*, 113 A.3d 895, 900 (Pa. Commw. Ct. 2015) (same).  The Court should compel Plaintiff to arbitrate all claims against AIL.

### 3.      Courts Have Enforced the Same Arbitration Agreement in Similar Circumstances

Similar arbitration agreements entered into by independent contractor sales agents with AIL have been enforced by numerous state and federal courts presented with similar claims.  *See e.g., Bell v. Am. Income Life Ins. Co*., No. CV207046MWFPJWX, 2021 WL 5858575, at *1 (C.D. Cal. Nov. 30, 2021); *Patterson v. Am. Income Life Ins. Co*., No. 4:19-CV-00918-KGB, 2020 WL 6387555, at *6 (E.D. Ark. Oct. 30, 2020); *see also* Dana Decl. Exs. 1-3 (containing Court Orders Granting AIL's Motions to Compel Arbitration in *Berry et al v. American Income Life Insurance Company*, 2:20-CV-00110 (W.D. Pa. Sept. 20, 2020); *Bruce v. Am. Income Life Ins. Co. et al.,* No.

3:18-CV-00258-G-BT (N.D. Tex. July 27, 2018); *Samuel et al. v. Serur Agencies Mgmt. et al.,* No. 1881-CV-00261 (Mass. Super. Ct. June 17, 2019).)  In all of these cases, plaintiffs filed lawsuits alleging wage and hour violations arising from their alleged misclassification as independent contractors (and in one instance a claim for declaratory relief in the form of rescission), and in each case, the court compelled all claims to arbitration because plaintiffs and AIL had agreed to arbitrate the claims pursuant to binding arbitration agreements.  The same result is warranted here.

## IV.   PASSAGE OF EFASASHA DOES NOT ALTER THIS ANALYSIS AND THE COURT MUST COMPEL ARBITRATION OF PLAINTIFF'S CLAIMS AGAINST AIL

### A.   *Plaintiff's Sexual Assault Claim—Against Russin—Arose and Accrued Prior to the Passage of EFASASHA and Therefore Its Specific Exclusions Do Not Apply to AIL*

On March 3, 2022, EFASASHA was signed into law, amending Title 9 of the United States Code, providing that "no predispute arbitration agreement . . . shall be valid or enforceable with respect to a case which is filed under Federal [] or State law and relates to the sexual assault dispute or the sexual harassment dispute." 9 U.S.C. §402(a).  However, EFASASHA is clear on its face that it only applies "with respect to any dispute or claim that arises or accrues **on or after the date of the enactment of this Act**." 9 U.S.C. §401 historical notes (emphasis added).

"In Pennsylvania, a cause of action accrues when the plaintiff could have first maintained the action to a successful conclusion." *Focht v. Focht,* 32 A.3d 668, 671 (Pa. 2011) (collecting cases); *see also* Black's Law Dictionary, 11th Ed. (2019) (providing the legal definition for accrue is: "to come into existence as an enforceable claim or right; to arise <the plaintiff's cause of action for silicosis did not accrue until the plaintiff knew or had reason to know of the disease>."). Therefore, "in a suit to recover damages for personal injuries, this right arises when the injury is inflicted." *Focht,* 32 A.3d at 671; *see also Smith v. RB Distribution, Inc.,* 515 F. Supp. 3d 311,

321 (E.D. Pa. 2021) (dismissing battery claim as time-barred because the cause of action for battery

accrues at the time of the act); *Bruffett v. Warner Commc'ns, Inc*., 534 F. Supp. 375, 377 (E.D.

Pa.), *aff'd*, 692 F.2d 910 (3d Cir. 1982) (dismissing IIED claim because the cause of action accrued

upon the date of injury).

Plaintiff pleads four causes of action—sexual assault, battery, false imprisonment, and

IIED—that arguably fall within the ambit of "sexual assault" disputes under EFASASHA.

However, Plaintiff's own pleadings make clear that all of the alleged acts giving rise to these

claims arose or accrued long before the passage of EFASASHA on March 3, 2022.   In her

Amended Complaint, Plaintiff alleges that:

- "Beginning in **late April 2019**, Russin began making unwelcomed sexual advances and or otherwise sexually assaulted Plaintiff." (Am. Compl. ¶ 59.)

- The purported "misconduct took place" "in the **2019 – 2020 timeframe**."  (*Id*. ¶ 195.)

- The purported sexual acts that occurred in Russin's car were "**in 2019 and 2020**." (*Id*. ¶ 209.)

- "On August 11, 2021, Plaintiff told Arias" about the "sexual harassment and/or sexual assault on behalf of Russin." (*Id*. ¶ 72.)[5]

All of the alleged conduct by Russin underlying Plaintiff's sexual assault, battery, and false

imprisonment claims admittedly occurred in the "2019 – 2020 timeframe," and Plaintiff specifies

no qualifying acts by Russin since then—and certainly nowhere close to the March 2022 effective

date of EFASASHA.   Because Plaintiff's sexual assault claim (and any related causes of action)

---

[5] Plaintiff's own pleadings similarly make clear that even when she raised her complaints with AIL directly, this occurred prior to the passage of EFASASHA: (i) on "November 10, 2021" she contacted AIL's "Human Resources representative" and relayed her complaints (*id*. ¶ 85); (ii) on "November 17, 2021" AIL informed Plaintiff that it "had retained outside counsel to investigate Plaintiff's complaints" and that on "November 30, 2021" Plaintiff was interviewed by the investigator (*id*. ¶¶ 86, 90); and (iii) Plaintiff admits that in February of 2022, AIL informed her that it had terminated Russin's contract (*id*. ¶ 100).

arose or accrued prior to the passage of EFASASHA, this is a separate and independent reason why the law is inapplicable in the present case.

>   **B.   Plaintiff's August 2021 Agent Contract Is Not a Predispute Arbitration Agreement Therefore EFASASHA Does Not Apply**

Separate and apart from the effective date of EFASASHA, Plaintiff's attempt to invoke the statute suffers from a second, independent, and fatal flaw:  Plaintiff's operative arbitration agreement in August 2021 was signed *after* the relevant conduct giving rise to the dispute and therefore does not qualify as a "*pre*dispute arbitration agreement" under the express statutory language.

One of the arguments underlying the passage of EFASASHA was to prohibit employers and service providers from requiring individuals to enter into mandatory arbitration agreements in exchange for employment or services long before the events giving rise to the sexual assault claim occurred, as people could not properly evaluate the rights being given up against an unknown and hypothetical event.  However, once the acts giving rise the claim had occurred, individuals were entitled to voluntarily agree to arbitrate a dispute.  As such, EFASASHA is explicitly limited to "predispute arbitration agreement[s]."   9 U.S.C. § 402.   EFASASHA defines a "predispute arbitration agreement" as "any agreement to arbitrate a dispute **that had not yet arisen at the time of the making of the agreement**."  9 U.S.C. § 401 (emphasis added).  As set forth in detail above, *see supra* at 15, a dispute or claim 'arises' when a plaintiff knew or had reason to know of it.  For a sexual assault claim, this arises at the time of the alleged assault.  *See Dalrymple v. Brown*, 549 Pa. 217, 229, 701 A.2d 164, 170 (1997).  EFASASHA does not prohibit an individual from knowingly agreeing to arbitrate disputes *after* the acts giving rise to the sexual harassment or sexual assault occurred, which clearly falls outside the ambit of EFASASHA's specific scope. Indeed, expanding EFASASHA to negate *post-claim* arbitration agreements would not only

contravene its specific statutory language, but would ignore the fact that EFASASHA is a narrow amendment within the broader FAA. (9 U.S.C. § 1-14).

As set forth in detail above, *see supra* at 15, Plaintiff's own pleadings make clear that the alleged acts giving rise to her sexual assault, battery, and false imprisonment claims arose in 2019 and 2020. Plaintiff thereafter knowingly and voluntarily executed the arbitration agreement with AIL on **August 20, 2021**. (Gamble Decl. Ex. 1; Am. Compl. ¶ 27.) Even if the Court were to look past Russin's underlying conduct in the 2019-2020 timeframe, and conservatively extend the conduct into the period that Plaintiff first started raising concerns about Russin with at least Defendant Arias, Plaintiff concedes that she raised those concerns starting "[o]n or about June 2021."[6] (Am. Compl. ¶¶ 62, 65.) In short, Plaintiff knew of her underlying claims about sexual assault by 2020, and further knew that she had already raised those concerns long before she signed the arbitration agreement in August 2021 and the passage of EFASASHA in March 2022.

For this reason, the August 2021 arbitration agreement is not a predispute arbitration agreement subject to EFASASHA, as Plaintiff executed it well after the relevant conduct/claims had arisen.

### C.   *Plaintiff's Sexual Assault and Related Causes of Action Are Not Alleged Against AIL*

Even if Plaintiff could meet both of these separate statutory prerequisites of EFASASHA, which she cannot, the claims pled against AIL further fail because they do not fall within EFASASHA's specific exclusions. EFASASHA provides that "no predispute arbitration agreement . . . shall be valid or enforceable with respect to a case which is filed under Federal []

---

[6] Plaintiff pleads that "[o]n or about November 2020, [she] began her attempts to report ongoing misconduct." (Am. Compl. ¶ 62). Plaintiff then alleges that "[o]n or about June 2021, [she] began her efforts to report the ongoing sexual harassment and sexual assault." (Am. Compl. ¶ 65). While these pleadings are inconsistent with one another, either way, Plaintiff's own pleadings make clear that her disputes arose long before March 2022.

or State law *and relates to* the sexual assault dispute or the sexual harassment dispute."
9 U.S.C. §402(a) (emphasis added).

Plaintiff has not asserted a cause of action for sexual assault against AIL. Her causes of action alleging sexual assault, battery, false imprisonment, and IIED are against Russin as an individual. (Am. Compl. ¶¶ 192-216.) Nor has Plaintiff asserted any claims for sexual harassment under federal or state law, because she cannot, as those laws do not extend protections to independent contractors. *See e.g., Pajor-Flores v. Am. Income Life Ins. Co.*, No. 16-CV-01992-CMA-KMT, 2017 WL 6033689, at *5 (D. Colo. Oct. 31, 2017) (sales agent is an independent contractor therefore Title VII does not apply); *Hovanski v. Am. Income Life Ins. Co*., No. 2:03-CV-0838-VEH, 2006 WL 8436890, at *12 (N.D. Ala. Jan. 11, 2006) (holding same); *Brown v. J. Kaz, Inc*., 581 F.3d 175, 180-181 (3d Cir. 2009) (independent contractor was not an employee and therefore "did not fall within the protections" of either Title VII or the Pennsylvania Human Relations Act which is "interpreted coextensively" with Title VII.). Therefore, Plaintiff's claims against AIL do not fall within EFASASHA.

The Court should compel arbitration of all of Plaintiff's claims against AIL.

## V.   THIS ACTION MUST BE STAYED PENDING RESOLUTION OF THIS MOTION UNDER 9 U.S.C. § 3

Until final resolution on the merits of this Motion, the FAA authorizes a stay of all other proceedings, including discovery. 9 U.S.C. § 3. Granting a stay of discovery while the Court resolves this threshold issue of arbitrability will preserve the advantages of arbitration and protect against the unnecessary expense of discovery.

If the Court enforces the arbitration agreement at issue, "responsibility for the conduct of discovery lies with the arbitrators," not the court. *Corpman v. Prudential-Bache Secs., Inc*., 907 F.2d 29, 31 (3d Cir. 1990) (quoting *Suarez-Valdez v. Shearson Lehman/Am. Express, Inc*., 858

F.2d 648, 649 (11th Cir. 1988)) ("An agreement to arbitrate is an agreement to proceed under arbitration and not under court rules."); *see also* 9 U.S.C. § 3 (providing that "the court . . . upon being satisfied that the issue involved in such suit or proceeding is referable to arbitration . . . shall on application of one of the parties stay the trial of the action . . . ."). Any discovery—before the Court decides the arbitration issue—may force the parties to bear expenses for discovery that the arbitrator may not ultimately permit, thus negating AIL's potential right to have an arbitrator manage discovery. Granting a short and temporary stay of discovery while the Court decides the threshold issue of arbitrability will merely maintain the status quo while protecting AIL from the serious prejudice of losing the advantages of arbitration—speed and economy. *See Lloyd v. Hovensa*, 369 F.3d 263, 269-70 (3d Cir. 2004) (finding that "whenever suit is brought on an arbitrable claim, the Court 'shall' upon application stay the litigation until arbitration has been concluded").

## VI.    CONCLUSION

For the foregoing reasons, AIL respectfully requests that the Court grant this motion, compel Plaintiff to pursue her claims against AIL in arbitration, and in the interest of efficiency and to preserve the intent of the parties as memorialized in the Agent Contract, AIL also respectfully requests that the Court stay this action, including all discovery, until there is a final determination on the merits of this Motion.

*            *            *

*Rest of page left intentionally blank*

Dated:  June 13, 2022                                Respectfully submitted,

By:  */s/ Andrea M. Kirshenbaum*

**POST & SCHELL, P.C.**
Andrea M. Kirshenbaum
(Pa. Bar No. 88030)
Four Penn Center
1600 John F. Kennedy Blvd, 14th Floor
Philadelphia, PA 19103
Tel: (215) 587-1126
Fax: (412) 227-9065

Rachel E. Lutz (Pa. Bar No. 315462)
One Oxford Centre
301 Grant Street, Suite 3010
Pittsburgh, Pennsylvania 15219
Tel: (412) 227-8887
Fax: (412) 227-9065
Email:  akirshenbaum@PostSchell.com
rlutz@PostSchell.com

**KING & SPALDING LLP**
Albert Giang (Cal. Bar No. 224332)
James A. Unger (Cal. Bar No. 325115)
633 West Fifth Street, Suite 1600
Los Angeles, California 90071
Tel: (213) 218-4002
Fax: (213) 443-4310
Email: agiang@kslaw.com
junger@kslaw.com

Anne R. Dana (NY Bar No. 5011366)
1185 Avenue of the Americas
34th Floor
New York, NY 10036
Tel: (212) 556-2100
Email:  adana@kslaw.com

*Applications for Admission Pro Hac Vice Forthcoming*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on June 13, 2022 a true and correct copy of the foregoing document was filed electronically with the Clerk of Court through ECF, and that ECF will send a Notice of Electronic Filing (NEF) to the following person(s):

Amy Williamson, Esquire
Williamson Law
429 Fourth Avenue, Suite 300
Pittsburgh, PA 15219
awilliamson@awilliamsonlaw.com
*Attorney for Plaintiff Renee Zinsky*


Dated: <u>June 13, 2022</u>                    */s/  Andrea M. Kirshenbaum*

                                        Andrea M. Kirshenbaum