IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| RENEE ZINSKY, ) | |
| ) | |
| Plaintiff, ) | 2:22-cv-547 |
| ) | |
| v. ) | |
| ) | Judge Marilyn J. Horan |
| MICHAEL RUSSIN, RUSSIN FINANCIAL, ) | |
| RUSSIN GROUP, SIMON ARIAS III, ) | |
| ARIAS AGENCIES, S.A. HOLDINGS, LLC, ) | |
| and AMERICAN INCOME LIFE ) | |
| INSURANCE COMPANY, ) | |
| ) | |
| Defendants. | |

OPINION

Plaintiff, Renee Zinsky, brings the within action against Defendants, Russin Financial, Russin Holding Group, Arias Agencies, S.A. Holdings, LLC, and American Income Life Insurance Company ("AIL") (collectively "Corporate Defendants"), for Violation of the Fair Labor Standards Act (Count I), Failure to Maintain Required Records under the FLSA (Count II), Violation of the Pennsylvania Minimum Wage Act (Count III), Violation of the Pennsylvania Wage Payment and Collection Act (Count IV), Unjust Enrichment (Count V), Breach of Contract (Count VI), Declaratory Relief for Recission of Agent Contract (Count VII), Declaratory Relief under the Ending Forced Arbitration of Sexual Assault and Sexual Harassment Act (Count VIII), Negligent Hiring, Retention, and Supervision (Count XIII), and Vicarious Liability/Respondeat Superior (Count XIV). Ms. Zinsky also brings claims against Defendant, Michael Russin, for Sexual Assault (Count IX), Battery (Count X), False Imprisonment (Count XI), and Intentional Infliction of Emotional Distress (Count XII).   As

regards Defendant, Simon Arias, III, Ms. Zinsky avers Violation of the Pennsylvania Wage Payment and Collection Act (Count IV) and Intentional Infliction of Emotional Distress (Count XII). Defendants now move to compel arbitration and stay the case. (ECF Nos. 17, 20, and 22). The matter is now ripe for consideration.

Upon consideration of Defendants' respective Motions to Compel Arbitration and Motions to Stay Case (ECF Nos. 17, 20, and 22), the respective briefs and responses (ECF Nos. 18, 21, 23-25, and 34-36), and for the following reasons, Defendants, AIL, Simon Arias, Arias Agencies, and S.A. Holdings, LLC's, Motion to Compel Arbitration and Motion for Stay will be granted. Defendants, Michael Russin, Russin Financial, and Russin Group's, Motion to Compel Arbitration will be denied. Michael Russin Motion for Stay will be denied. Russin Financial and Russin Group's Motion for Stay will be granted.

I.      Relevant Background

From April 2019 through the present, Ms. Zinsky alleges she was employed by Corporate Defendants. (ECF No. 9 at ¶ 21). From April 2019 through August 2021, Ms. Zinsky held the positions of Agent, Supervising Agent, and General Agent while reporting to Mr. Russin. *Id*. at ¶ 22. From August 2021 through the present, Ms. Zinsky has held the position of Agent while reporting to Mr. Arias. *Id*. at ¶ 23. For all relevant times herein, Mr. Russin allegedly reported to Mr. Arias. *Id*. at ¶ 24.

For each of Ms. Zinsky's positions, the Corporate Defendants required her to sign an "Agent Contract." [1] *Id*. at ¶ 26. She most recently entered into an Agent Contract on August 20,

---

[1] While Ms. Zinsky references other "Agent Contracts," she and AIL have only produced copies of the August 20, 2021 contract. No other "Agent Contract" has been produced before the Court. The parties have not made any reference to any other Agent Contract or provisions. All pleadings and briefings only address the August 20, 2021 Agent Contract. Accordingly, the Court's analysis of the Motions to Compel Arbitration is limited to the language of the August

2

2021.  *Id*. at ¶ 27.  Said Agent Contract provides as follows:

## ARBITRATION

In the event of any dispute or disagreement, whether arising out of or relating to this Contract or otherwise, that is not subject to or resolved by the grievance process set forth in the operative union agreement between the Company's State General Agents, the Company, and OPEIU Local 277, the Parties to the dispute shall use their best efforts to settle such disputes. "Parties" includes the Agent, the Company (including its parent, Globe Life Inc.) and the State General Agent. To this effect, the Parties shall negotiate with each other in good faith to reach a just solution. The negotiation process is to be considered a settlement negotiation for the purpose of all state and federal rules protecting statements made during such conferences from later discovery or use in evidence.

If the Parties do not reach a just solution by negotiation as described above, then upon written notice by one Party to another, all disputes, claims, questions and controversies of any kind or nature arising out of or relating to this Contract, any alleged violation of any state or federal statute, regulation, law or order of any kind, and/or the agent's relationship as an independent contractor and not an employee (including, without limitation, claims for wrongful termination, discrimination, wage-and-hour violations, or any other claim based on an alleged employment relationship), regardless of whether they are brought by or against the Company, the Agent, or the State General Agent, except a dispute relating to the enforceability of this agreement to arbitrate, shall be submitted to binding arbitration under the substantive rules of the Federal Arbitration Act ("FAA"), to be administered by the American Arbitration Association ("AAA") in accordance with its Commercial Rules then in effect. The arbitration shall take place in the AAA office closest to the domicile of the Agent. The Company shall pay any AAA filing, administrative, and arbitrator fee(s). Arbitration shall be on an individual, not a class, collective, representative, or private attorney general basis. If waiver as to class action claims is deemed unenforceable, the parties do not agree to class arbitration and any class action claims must proceed in court. If waiver as to collective, representative, or private attorney general claims is deemed unenforceable, any such claims must proceed in court, and must be stayed while any remaining claims are arbitrated on an individual basis. The arbitrator shall have the power to award any relief that would otherwise be available in court, including attorney's fees if permitted by statute, injunctive or other equitable relief. The arbitrator's findings and award shall be final and binding on the Parties and their beneficiaries, successors, assigns, or anyone claiming an interest in the Contract. Any court having jurisdiction may enter judgment on the award rendered by the arbitrator(s). The parties acknowledge that this Contract involves interstate commerce, and all issues relating to arbitration or the enforceability of this agreement to arbitrate shall be governed by the Federal Arbitration Act, 9 U.S.C. § 1 et seq. Aside from issues relating to arbitration or the

---

20, 2021 and the attendant allegations and assertions regarding the same.

enforceability of this agreement to arbitrate, all issues relating to any dispute, claim, or controversy arising out of or relating to this Contract shall be governed by and decided in accordance with the internal laws of the State of Texas, without regard to its choice-of-law rules.

(ECF No. 9-1 at p. 7). All Defendants move to enforce said arbitration provision and stay this action pending resolution of the within motions to compel arbitration. Mr. Russin, Russin Financial, Russin Holding Group, Simon Arias, III, Arias Agencies, S.A. Holdings, LLC argue that the arbitration provision should also include parties who were non-signatories to the Agent Contract. Ms. Zinsky contends that the arbitration provision within the Agent Contract is invalidated pursuant to the Ending Forced Arbitration of Sexual Assault and Sexual Harassment Act of 2021, Public Law No. 117-90 (March 3, 2022) ("EFASASH Act" or "the Act"). The Defendants argue that the Act does not apply to this case.

II.     Standard of Review

When presented with a motion to compel arbitration, the Court must affirmatively answer two questions before compelling arbitration pursuant to § 4 of the Federal Arbitration Act: (1) whether the parties entered into a valid arbitration agreement; and (2) whether the dispute at issue falls within the scope of the arbitration agreement. *Century Indem. Co. v. Certain Underwriters at Lloyd's*, 584 F.3d 513, 523 (3d Cir. 2009). "Before a party to a lawsuit can be ordered to arbitrate and thus be deprived of a day in court, there should be an express, unequivocal agreement to that effect." *McCoy v. Pan Am. Grp.*, No. 2:21-CV-00389-CCW, 2021 WL 2529789, 2021 U.S. Dist. LEXIS 114816 (W.D. Pa. June 21, 2021) (citing *Par-Knit Mills, Inc. v. Stockbridge Fabrics Co.*, 636 F.2d 51, 54 (3d Cir. 1980)).

III.    Discussion

Two issues will determine whether Defendants can compel arbitration in this matter. First, as a threshold matter, the Court will address whether the EFASASH Act invalidates the

4

Agent Contract's arbitration provision.  Second, if the EFASASH Act does not invalidate the Agent Contract's arbitration provision, then the Court must decide whether the Agent Contract's arbitration provision is valid and whether all or only some parties will be subject to arbitration.

      A.  Applicability of EFASASH Act

On March 3, 2022, President Joe Biden signed the EFASASH Act into law.   The Act provides in part as follows:

> (a) In general.--Notwithstanding any other provision of this title, at the election of the person alleging conduct constituting a sexual harassment dispute or sexual assault dispute, or the named representative of a class or in a collective action alleging such conduct, no predispute arbitration agreement or predispute joint-action waiver shall be valid or enforceable with respect to a case which is filed under Federal, Tribal, or State law and relates to the sexual assault dispute or the sexual harassment dispute.

9 U.S.C. § 402(a).  The Act defines predispute arbitration agreement as follows:

> The term "predispute arbitration agreement" means any agreement to arbitrate a dispute that had not yet arisen at the time of the making of the agreement.

9 U.S.C. § 401(a)(1).  As to Act's applicability to conduct prior to March 3, 2022, the enacted law also states:

> This Act, and the amendments made by this Act, shall apply with respect to any dispute or claim that arises or accrues on or after the date of enactment of this Act.

 PL 117-90, March 3, 2022, 136 Stat 26.

      Defendants argue that the EFASASH Act does not apply because Ms. Zinsky's sexual assault claim against Mr. Russin (Count IX), and claims related thereto, arose and accrued prior to the Act's passage, and thus, its specific exclusions on the enforcement of arbitration agreements do not apply.  AIL, Simon Arias III, Arias Agencies, and S. A. Holdings LLC, further maintain that the Agent Contract is not a pre-dispute arbitration agreement under the Act.  Finally, AIL contends that Ms. Zinsky's sexual assault, false imprisonment, and intentional

infliction of emotional distress claims are not alleged against AIL.

Ms. Zinsky contends that EFASASH Act is applicable because her dispute did not arise until after its enactment, because of the Congressional intent as evidenced in the legislative history, and because of the public statements of Michael Russin.

Here, Michael Russin's alleged sexual assault conduct, as described in the Amended Complaint, occurred prior to the March 3, 2022, enactment of the EFASASH Act.  However, Ms. Zinsky argues that her "dispute or claim" did not "arise or accrue" until she filed her Complaint (ECF No. 1) on April 11, 2022, a date after enactment.  Under Texas law, the applicable law under the Agent Contract, a state-law tort claim, like sexual assault, accrues when "facts come into existence that authorize a claimant to seek a judicial remedy." *Bagley v. Montgomery Cnty.*, 516 F.Supp.3d 688, 691 (S.D. Tex. 2021) (quoting *Valdez v. Hollenbeck*, 465 S.W.3d 217, 229 (Tex. 2015)).  Even if Texas law did not apply here, a Pennsylvania tort claim accrues "as soon as the right to institute and maintain a suit arises," which, in most tort actions, is at the moment the injury is sustained. *Debiec v. Cabot Corp.*, 352 F.3d 117, 128–29 (3d Cir. 2003) (quoting *Pocono Int'l Raceway, Inc. v. Pocono Produce, Inc.*, 503 Pa. 80, 468 A.2d 468, 471 (1983).  Ms. Zinsky sustained her alleged injury and could have maintained an action for a judicial remedy prior to March 3, 2022. In fact, on January 27, 2022, Ms. Zinsky filed a Notice of Charge of Discrimination with the Equal Employment Opportunity Commission. (ECF No. 36-1).  Thus, under either Texas or Pennsylvania tort law, Ms. Zinsky's sexual assault dispute or claim arose or accrued before the date of enactment of the EFASASH Act. Even accepting Ms. Zinky's contention that her claim or dispute did not arise until the filing of her Complaint, which the Court does not so find, the Act only invalidates arbitration provisions if it is a predispute arbitration agreement.   On August 20, 2021, Ms. Zinsky's signed the subject Agent Contract.

The Amended Complaint avers no conduct, which would be covered by the EFASASH Act that occurred after August 20, 2021. Therefore, the Court cannot find that the Agent Contract was a predispute arbitration agreement under the EFASASH Act.

As to Ms. Zinsky's arguments regarding Congressional intent and Mr. Russin's public comments, neither are availing for the application of the EFASASH Act. Ms. Zinsky indicates that the comments of President Biden, Vice President Kamala Harris, and Senators Kirsten Gillibrand, Lindsey Graham, and Chuck Schumer demonstrate that the law should be applied retroactively.[2] However, in the absence of a contrary indication, a statute will not be construed to have retroactive application. See, e.g., *Landgraf v. USI Film Products*, 511 U.S. 244, 280, 114 S.Ct. 1483, 128 L.Ed.2d 229 (1994). Here, the EFASASH contains no language indicating that it should have a retroactive effect and in fact, it only refers to "any dispute or claim that arises or accrues on or after the date of enactment." Such plain language indicates no Congressional intent to apply the EFASASH Act retroactively. While the Act represents a significant sea change in the enforcement of arbitration provisions, Congress has chosen to temper that change through prospective rather than retrospective applicability. Finally, as to the alleged public comments by Mr. Russin, Ms. Zinsky presents no authority that suggests that such comments affect any applicability of the EFASASH Act.

Accordingly, the EFASASH Act will not apply as a bar to Defendants' Motions to Compel Arbitration under the facts alleged in the Amended Complaint and the record referenced in the parties' submissions.

  B. Parties Subject to Agent Contract's Arbitration Agreement

---

[2] While the Court has no reason to doubt the veracity of these comments, they are accompanied neither with specific citations nor with clear reference points as to their presence in the EFASASH Act's legislative history.

1. AIL and Simon Arias, III

AIL and Simon Arias, III contend that the Court should compel arbitration because Ms. Zinsky agreed to arbitrate her disputes and claims with AIL and its State General Agent (SGA), Simon Arias, III. The August 2021 Agent Contract is signed by Ms. Zinsky and Simon Arias, III. (ECF No. 18-2). Other than her EFASASH Act arguments, Ms. Zinsky raises no contentions in her briefing as regards to whether the arbitration provision is valid or whether her claims against AIL and Mr. Arias fall within the substantive scope of the arbitration clause.[3]

An agreement to arbitrate is valid under the FAA if it is valid under state contract law. *First Options of Chi., Inc. v. Kaplan*, 514 U.S. 938, 944 (1995). Under Pennsylvania or Texas law, a party who signs a document is conclusively presumed to have read and understood its contents. *In re McKinney*, 167 S.W.3d 833, 835 (Tex. 2005); *accord Wroblewski v. Ohiopyle Trading Post, Inc.*, No. CIV.A. 12-0780, 2013 WL 4504448, at *7 (W.D. Pa. Aug. 22, 2013).

Here, the Agent Contract provides that the "Parties," including the Agent (Ms. Zinsky), the Company (AIL) and the SGA (Simon Arias, III) shall submit:

> all disputes, claims, questions and controversies of any kind or nature arising out of or relating to this Contract, any alleged violation of any state or federal statute, regulation, law or order of any kind, and/or the agent's relationship as an independent contractor and not an employee (including, without limitation, claims for wrongful termination, discrimination, wage-and-hour violations, or any other claim based on an alleged employment relationship), regardless of whether they are brought by or against the Company, the Agent, or the State General Agent, except a dispute relating to the enforceability of this agreement to arbitrate, shall be submitted to binding arbitration.

(ECF No. 9-1 at p. 1, 4). By signing the Agent Contract, Plaintiff expressly agreed to its terms and entered into a binding arbitration agreement with AIL and Simon Arias, III. The broad

---

[3] In her Amended Complaint, Ms. Zinsky has sought Declaratory Relief for Recission of Agent Contract (Count VII). (ECF No. 9). However, she raises no legal arguments to the same in her opposition to Defendants' Motions to Compel Arbitration.

language of the Agent Contract's arbitration provision directs that all of the claims against AIL and Simon Arias, III averred in the First Amended Complaint are subject to arbitration.

Accordingly, AIL and Simon Arias, III's Motion to Compel Arbitration will be granted.

2. Arias Agencies and S.A. Arias Holdings, LLC

Arias Agencies and S.A. Arias Holdings, LLC contend that Ms. Zinsky's claims against them as non-signatories to the Agent Contract should be subject to arbitration. Again, Ms. Zinsky's response does not address this specific argument.

Simon Arias asserts he is an SGA for AIL. (ECF No. 21-1 at ¶ 3). He further asserts that in connection with his business as an SGA, Mr. Arias owns and operates Arias Agencies, LLC and S.A. Arias Holdings, LLC. *Id*. at ¶¶ 4, 7-8; ECF No. 9 at ¶ 13. According to Mr. Arias, Arias Agencies, LLC, is the business through which Mr. Arias operates as an SGA. (ECF No. 21-1 at ¶ 4). Mr. Arias asserts that S.A. Arias Holdings, LLC, is the entity that owns or leases properties for use by Arias Agencies, LLC. *Id*. at ¶ 8. Therefore, Mr. Arias contends that, as relevant to Ms. Zinsky's claims herein, there is no corporate distinction between Arias Agencies and S.A. Arias Holdings, LLC, or among Simon Arias, III, Arias Agencies, and S.A. Arias Holdings, LLC. (ECF No. 9 at ¶¶ 13, 18, 20). Accordingly, Mr. Arias argues that Arias Agencies, and S.A. Arias Holdings, LLC, exist as part of Mr. Arias' independent contractor business, through which Arias engages in the independently-licensed work of selling AIL insurance products.

Under Pennsylvania law, "an arbitration clause can be 'enforced by or against nonparties through assumption, piercing the corporate veil, alter ego, incorporation by reference, third-party beneficiary theories, waiver and estoppel.'" *HealthplanCRM, LLC v. AvMed, Inc.*, 458 F.Supp.3d 308, 328 (W.D.Pa. 2020) (citing *White v. Sunoco, Inc.*, 870 F.3d 257, 262 (3d Cir. 2017)).

Likewise, under Texas law, courts may compel arbitration "involving nonsignatories under the following contract and agency principles: (a) incorporation by reference; (b) assumption; (c) agency; (d) veilpiercing(sic)/alter ego; (e) estoppel; and (f) third-party beneficiary. *Wood v. PennTex Res., L.P.*, 458 F. Supp. 2d 355, 365 (S.D. Tex. 2006), aff'd sub nom.

Equitable estoppel may permit "a non-signatory-to-an-arbitration-agreement defendant…[to] compel arbitration against a signatory-plaintiff." *Grigson v. Creative Artists Agency L.L.C.*, 210 F.3d 524, 526 (5th Cir. 2000). Such is the case when the signatory to the contract containing an arbitration clause raises allegations of substantially interdependent and concerted misconduct by both the non-signatory and one or more of the signatories to the contract. Otherwise, the arbitration proceedings between the two signatories would be rendered meaningless and the federal policy in favor of arbitration effectively thwarted. *Id*. at 527.

Here, the Amended Complaint alleges substantially interdependent and concerted misconduct by both the nonsignator[ies], Arias Agencies and S.A. Arias Holdings, LLC, and the signatories, i.e. Mr. Arias. Ms. Zinsky's Amended Complaint offers no distinctions among Arias Agencies, S.A. and Arias Holdings, LLC. Ms. Zinsky also does not proffer any dispute to Mr. Aria's Declaration and his assertions relative to his and his companies' relationship vis-à-vis AIL. Moreover, Ms. Zinsky seeks to hold Arias Agencies and S.A. Arias, LLC similarly liable under the Agent Contract. Therefore, as regards said entities, Ms. Zinsky has alleged "substantially interdependent and concerted misconduct by both" non-signatories and signatories to the contract. Thus, arbitration is appropriate for Plaintiff's claims against the non-signatories, Arias Agencies and S.A. Arias Holdings.

Accordingly, Arias Agencies and S.A. Arias Holdings, LLC.'s Motion to Compel Arbitration will be granted.

3. Michael Russin, Russin Financial, and Russin Group

Michael Russin, Russin Financial, and Russin Group (Russin Defendants) also contend that they, as non-signatories to the Agent Contract, should also have their claims subject to arbitration through a theory of equitable estoppel. Specifically, the Russin Defendants contend that the Amended Complaint raises substantially interdependent and concerted misconduct claims against both signatories and non-signatories. Again, Ms. Zinsky's response does not address these specific arguments.

Here, however, unlike Simon Arias, III, none of the Russin Defendants are parties to the August 20, 2021 Agent Contract. Ms. Zinsky also alleges that from April 2019 through August 2021, she reported to Mr. Russin; however, following her execution of the August 20, 2021 Agent Contract, she reported to Mr. Arias. (ECF No. 9 at ¶¶ 22-23). The Agent Contract only references AIL, the SGA (Mr. Arias), and Ms. Zinsky. Neither Mr. Russin, Russin Financial, and Russin Group, nor Mr. Russin's asserted status as Regional General Agent are referenced in said Agent Contract or arbitration provision. While there are some claims in common against the Simon Arias, Arias Agencies, and S.A. Holdings, LLC's and the Russin Defendants, the claims against the Russin Defendants arise under a different timetable and pre-date the August 20, 2021 Agent Contract. The Amended Complaint does not allege, and the Russin Defendants do not assert, that any employment, independent contract, or agency relationship continued to exist as between Ms. Zinsky and the Russin defendants following execution of the August 20, 2021 Agent Contract. Given the timing and alleged prior severance in working relationship between Ms. Zinsky and the Russin Defendants, and the alleged independent misconduct by Mr. Russin individually, and the absence of Russin Defendants as signatories to the August 20, 2021 Agent Contract, the Court does not find that equitable estoppel compels arbitration between Ms.

Zinsky and the Russin Defendants.

Accordingly, the Russin Defendants' Motion to Compel Arbitration will be denied.

C.  Stay

As the Motion to Compel Arbitration will be granted as to AIL, Simon Arias, Arias Agencies, and S.A. Holdings, LLC's, any further proceedings in this case, as regards those defendants, will be stayed.  The Russin Defendants, have alternatively sought a stay in this case, pending the outcome of the arbitration among Ms. Zinsky, AIL, Simon Arias, Arias Agencies, and S.A. Holdings, LLC.   As the claims against Mr. Russin are independent of the claims against AIL and the Arias Defendants, the Court finds no compelling reason why the matter against Mr. Russin should not proceed.   As regards the claims against Russin Financial and Russin Group, while those claims may or may not be independent from those against AIL, Simon Arias, Arias Agencies, and S.A. Holdings, LLC's, Ms. Zinsky has grouped those defendants together in Counts I through VII, and XIII through XIV.  Because there may be some overlap in the factual development of Counts I through VII, and XIII through XIV, the Court finds that a stay, pending resolution of the arbitration against AIL, Simon Arias, Arias Agencies, and S.A. Holdings, LLC, is warranted as to these claims against Russin Financial, and Russin Group.  Accordingly, Mr. Russin's stay request is denied, and the Russin Defendants' stay request will be granted.

ORDER

Following consideration of Defendants' Motions to Compel Arbitration and Motions to Stay Case (ECF Nos. 17, 20, and 22), the respective briefs and responses (ECF Nos. 18, 21, 23-25, and 34-36), and for the foregoing reasons, it is hereby ordered as follows:

1.  Defendants, AIL and Simon Arias, Arias Agencies, and S.A. Holdings, LLC, Motion

to Compel Arbitration is granted. A stay against those defendants is entered, pending completion of arbitration unless Court intervention becomes necessary.

2. Defendants, Russin Financial, and Russin Group's, Motion to Compel Arbitration is denied. Their Motion or Request for Stay is granted pending resolution of the arbitration against AIL, Simon Arias, Arias Agencies, and S.A. Holdings, LLC.

3. Defendant, Michael Russin's, Motion to Compel Arbitration is denied. Mr. Russin's Motion or Request for a Stay is denied, and he will file his responsive pleading to Counts IX, X, XI, and XII, on or before August 5, 2022.

SO ORDERED this 22nd day of July 2022.

_____
Marilyn J. Horan
United States District Judge

cc:   All counsel of record