IN THE UNITED STATES DISTRICT COURT FOR
THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| RENEE ZINSKY, | Civil Action |
| Plaintiff, | No. 2:22-cv-547 |
| vs. | |
| MICHAEL RUSSIN, RUSSIN FINANCIAL, RUSSIN GROUP, SIMON ARIAS, III, ARIAS AGENCIES, S.A. ARIAS HOLDINGS, LLC, AMERICAN INCOME LIFE INSURANCE COMPANY, | **PLAINTIFF'S RESPONSE TO DEFENDANT'S MOTION FOR SANCTIONS** |
| Defendants. | FILED ON BEHALF OF PLAINTIFF |
| | Counsel of Record for This Party: |
| | Janice M. Savinis, Esquire<br>PA ID #51943 |
| | John R. Kane, Esquire<br>PA ID #83771 |
| | Michael J. Gallucci, Esquire<br>PA ID #92859 |
| | SAVINIS, KANE, & GALLUCCI, L.L.C.<br>436 7th Avenue, Suite 322<br>Pittsburgh, PA 15219<br>(412) 227-6556 |

IN THE UNITED STATES DISTRICT COURT FOR
THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| RENEE ZINSKY, | Civil Action |
| Plaintiff, | No. 2:22-cv-547 |
| vs. | |
| MICHAEL RUSSIN, RUSSIN FINANCIAL, RUSSIN GROUP, SIMON ARIAS, III, ARIAS AGENCIES, S.A. ARIAS HOLDINGS, LLC, AMERICAN INCOME LIFE INSURANCE COMPANY, | |
| Defendants. | |

**PLAINTIFF'S RESPONSE TO DEFENDANT'S MOTION FOR SANCTIONS**

AND NOW comes Plaintiff, Renee Zinsky, by and through her attorneys, Amy Williamson, Esquire, John R. Kane, Esquire and the law firm of Savinis, Kane, & Gallucci, L.L.C. and files the following response to the motion for sanctions:

1. At the outset, Plaintiff objects to the motion filed by Simon Arias, III as the instant case is stayed as to him. Consequently, he lacks the ability to act in this case. In order to take action, or have action taken against him, the stay that was enacted by the Honorable Marilyn Horan must be lifted.

2. Simon Arias is attempting to bring a motion for sanctions against Plaintiff's counsel, Amy Williamson, Esquire. In his motion, Arias claims that he has standing to file his motion because he remains a party to the case.[1] Yet, in that same sentence, Arias admits that the case has been stayed as to him. While Arias may still be a party to this case, Arias

---

[1] *See*, paragraph 5 of Defendant's Motion for Rule 11 Sanctions.

completely ignores what a "stay" is. According to BLACKS LAW DICTIONARY, p. 1413 (6th ed. 1992), a stay "is a kind of injunction with which a court freezes its proceedings at a particular point."[2]

3. In order for Defendant to act in this matter, he must first move the Court to lift the stay as to him. The lifting of the stay would also be consenting to the jurisdiction of the Court.

4. Plaintiff suspects that Arias has not formally moved the Court to lift the stay as that would have significant repercussions on Plaintiff's claims against Arias. In fact, one could argue that Arias' motion to this Court equates to jurisdictional consent of the Trial Court over Arias in this case. Affirmative action by a party is often equated to jurisdictional consent.[3] To the extent that Arias believes that he is still an active participant in the instant matter, Plaintiff reserves the right to file appropriate motions against him as to all relevant matters, and/or prosecute her action against Arias before the Trial Court.

5. Without waiving Plaintiff's objection to Arias' inability to act in this matter, Plaintiff will respond on the merits henceforth.

6. Defendant's motion essentially boils down to two points. First, Defendant argues that the allegations contained between paragraph's eleven (11) through fourteen (14) of the affidavit of Chatiqua Hemingway are false and second, that these allegations were filed to "harass and embarrass Simon Arias."[4] Neither point is accurate.

7. As to the first point, Plaintiff's counsel has no reason to believe that the allegations contained in the affidavit are indeed false. Instead, Ms. Hemingway maintains the belief

---

[2] This is but one definition listed, but yet the most apropos.
[3] For example, in *Konopka v. McAteer*, 313 Pa. 510, 169 A. 778 (1934), the Pennsylvania Supreme Court held that a defendant's general appearance waived all defects or irregularities that may have occurred during service of original process, and subjects the party to the jurisdiction of the court.
[4] *See* paragraph 19 of Arias' Motion for Sanctions.

that the statements are true based on her firsthand knowledge and her interactions with relevant individuals. Ms. Hemingway has never retracted those statements, and she stands steadfastly by those statements, believing them to be true. Those, the parties cannot agree on the veracity of paragraphs 11 through 14.

8. Contrary to Defendant's second point, the affidavit was not created to annoy or harass Simon Arias. In fact, the affidavit was specifically created through circumstances with which Defendant Arias and his counsel are quite familiar.

9. Prior to meeting Amy Williamson, Esquire, affiant Chatiqua Hemingway was a member of the Board of Directors for a charity known as Steel City Impact ("SCI"). The purpose of SCI is to create "a youth-centered program in the Greater Pittsburgh area that provides mind, body, and spirit-based development and mentoring opportunities to the youth of our community."[5] Simon Arias was also a member of this board. During this same time period, Ms. Hemingway, who is a professional boxer, also trained with Simon Arias as a personal trainer. Through her various associations with Simon Arias, Hemingway became concerned with behavior that she believed was, at best, inappropriate, and at worst, illegal.

10. Due to her duty to the SCI board on which she sat, Ms. Hemingway believed that it was no longer appropriate for Simon Arias to sit on said board. To that end, she contacted other members of the board in an effort to develop a plan to have Mr. Arias removed from the board for-cause. Ms. Hemingway disclosed her concerns regarding Simon Arias to other board members. When Simon Arias learned that Ms. Hemingway was raising concerns regarding him, she was instead removed from the SCI Board.

---

[5] *See "About Us" section of Steel City Impact website, along with its "Mission" "Vision," and "Goal," attached hereto as Exhibit 1.*

11. Mr. Arias was not content with simply removing Ms. Hemingway from the SCI Board. He hired the same law firm who has brought this motion for sanctions, Strassburger McKenna Gutnick & Gefsky ("SMGG"), to fire Ms. Hemingway from the board and to send her a cease and desist letter. *See Exhibit 2.* In said letter, SMGG threatened Ms. Hemingway with potential legal action should she continue to voice her claims about Mr. Arias. SMGG alleged in this letter that Ms. Hemingway failed to bring her allegations to the SCI Board, and SMGG claimed that this spoke to the veracity of her claims. In fact, Ms. Hemingway brought these matters to the SCI Board, and Ms. Hemmingway believes that this is what got her fired from the board. Admittedly, this does speak to the veracity of said claims as SMGG admits. Additionally, SMGG advised Ms. Hemingway that she is a mandatory reporter, and that she is required to report said conduct under her legal obligations as a mandatory reporter. SMGG further claimed that her failure to report the allegations to the authorities could expose her to criminal liability. SMGG thereafter noted that the SCI Board had concluded that her statements were thus without merit. Importantly, though, the SCI Board was admitting that they were aware of the allegations she made against Mr. Arias, which directly contradicted the allegation that she did not tell the board of her concerns. In fact, exhibit 2 notes that a board member, Mr. Steele, was advised of the allegations by Ms. Hemingway – again a direct contradiction of the assertion that Ms. Hemingway failed to disclose the allegations to the board.

12. These issues are not new to Mr. Arias, nor to SMGG. After hiring Ms. Williamson, Ms. Hemingway issued a response to Arias and SMGG. In said response, Ms. Hemingway noted that contrary to SMGG's assertions, Ms. Hemingway did report her claims about Simon Arias to the authorities, and she would not shy away from speaking the truth when

5

necessary. Ms. Hemingway reported her concerns regarding Simon Arias to the authorities, and was informed that after running the information up the flag pole, the authorities learned that various governmental agencies were already investigating Arias.

13. Another visceral layer of this motion which was not disclosed to the Court is that one of the partners of SMGG, Erica Lesko Laughlin, Esquire, also sits on the SCI Board. Additionally, Ms. Laughlin of SMGG has personal ties to Simon Arias and his family.[6] Ms. Laughlin has attended depositions related to these claims on behalf of Arias. Due to SMGG's personal involvement in matters relevant not just to Ms. Hemingway, but also related to all of Plaintiff Zinsky's claims, Plaintiff has personally listed Ms. Laughlin and Mr. Strassburger as witnesses in Claimant's Second Supplemental Witness List in the matter referred to AAA arbitration, given that they admitted to interviewing witnesses related to Ms. Hemingway's claims.[7]

14. It appeared from exhibit 2 that SMGG conducted various interviews regarding the allegations made by Ms. Hemingway. Curiously, though, SMGG failed to even attempt to speak to Ms. Hemingway about her claims, the origin of the claims, or the evidence from which her claims were derived. In addition to the false conclusion that Ms. Hemingway had not advised the board of the claims, when it possessed evidence to the contrary, the letter also claimed that Ms. Hemingway had failed to report her claims to the authorities. This conclusion, which was made without having even interviewed Ms. Hemingway, also allegedly spoke to the veracity of her claims. Contrary to their false assertions, Ms.

---

[6] Photos of Ms. Laughlin socializing with Simon Arias' wife are posted on social media. Plaintiff has various photos of Ms. Laughlin in Simon Arias' backyard, sitting next to Simon's wife on Arias' couch and on chaise lounges in the backyard as recent as this month. Those photos are not produced herein, but certainly can be produced if necessary.
[7] Claimant's Witness & Exhibit List is attached hereto as exhibit 3.

6

Hemingway has reported her claims to the proper authorities. It is agreed, though, that this speaks to the veracity of said claims.

15. This backdrop was necessary when evaluating the within motion for sanctions. Attorney Williamson had not met affiant Chatiqua Hemingway before SMGG sent its March 29, 2023 cease and desist letter. Due to the publicity of the instant case, including the part that was severed and sent to AAA arbitration, Ms. Hemingway reached out to Ms. Williamson requesting legal representation to assist her in responding to the SMGG letter. Ms. Williamson drafted a response to the cease and desist letter.[8] Ms. Hemingway believed the allegations to be true, and further believed that she was ethically and legally required to disclose what she knew to both the board and the authorities. Yet, she was threatened with legal action against her obligations to disclose. In response, Ms. Hemingway advised Mr. Arias, the SCI Board, and SMGG that she would not shrink away from her duties and that she would disclose the information that she has in cooperation with authorities and future investigations. Ms. Hemingway chose to sign the affidavit to legally attest, upon penalty of perjury, that what she has witnessed and learned is true to the best of her knowledge, information, and belief. The affidavit was created in direct response to the actions of SMGG on behalf of Simon Arias and their attempt to silence Ms. Hemingway.

16. The affidavit on which Arias complains was created due to the cease and desist letter, and its various claims brought by SMGG, SCI Board, and Arias. In drafting Ms. Hemingway's response, Ms. Williamson learned through her representation of Ms. Hemingway, that many of the claims brought by Plaintiff Renee Zinsky regarding the toxic work environment at Arias were supported by Ms. Hemingway. The affidavit was not completed

---

[8] *See Williamson's Response letter on behalf of Ms. Hemingway, attached as Exhibit 4.*

to embarrass anyone. Rather, Ms. Hemingway wanted to go on record to attest to what she had personally observed regarding her claims regarding Arias. Further, since Ms. Hemingway corroborated many of the claims of Plaintiff Zinsky, Attorney Williamson drafted the affidavit at issue as a comprehensive statement of Ms. Hemingway.

17. While Zinsky's claims against AIL, Arias, and Russin have been severed by the instant District Court, Zinsky's claims against AIL, Arias, Arias Agencies, and Russin all stem from her work at and with Arias and his Agencies. While Plaintiff's counsel can understand now that Defendant would have preferred that Ms. Williamson create three different affidavits, one dealing with the allegations by Ms. Hemingway against Simon Arias regarding his specific conduct with minors, and a second one dealing with Ms. Hemingway's claims against Russin, and a third affidavit dealing with just Ms. Hemingway's claims against AIL and Arias Agencies, et al., that was neither practical nor required. Ms. Williamson took all of the information provided by Ms. Hemingway and turned it into an affidavit which was reviewed and attested to by Ms. Hemingway. It was simply an attorney taking the information provided by a witness and creating an affidavit at the request of the witness, since the witness' veracity was being called into question.

18. This was no campaign by attorney Williamson to "harass and embarrass Simon Arias." The information contained within the affidavit is all relevant, even paragraphs 14 through 18, dealing with Simon Arias. What Arias fails to acknowledge is that his behavior is a reflection on his subordinates. The toxic work environment which Plaintiff claims existed at Arias, started from the top down. Thus, when Plaintiff makes complaints of sexual harassment and assault against one of Simon Arias' top agents, Michael Russin, one cannot

ignore Simon Arias' own behavior – nor the pressure that could be asserted by Russin against Arias.

19. Despite Plaintiff's claims against Russin being proven valid during the Arias and AIL investigations, Russin was not immediately fired. Even after Plaintiff learned, down the road, that Russin was eventually removed as an agent, Simon Arias continued to do business with Russin, and to provide Russin with income as a consultant. If Ms. Hemingway heard and saw things that were concerning to her, then what must Michael Russin, an individual much closer to Simon Arias, have seen during his tenure at Arias Agencies and AIL? Would Michael Russin have been able to apply pressure to Simon Arias, as a way to angle himself away from being completely terminated?

20. It should also be noted that this affidavit was also used in conjunction with Plaintiff's EEOC claim, and was submitted in that matter by the *Defendant AIL*.

21. Because Plaintiff inadvertently failed to request leave of court to file its Second Supplemental Brief, the District Court struck the brief. The relevant affidavit contained therein, was correspondingly stricken. There the matter rested as far as Ms. Williamson was concerned.

22. Arias focuses on Ms. Williamson failure to request leave of court before filing her second supplemental brief as a critical factor in his motion. Make no mistake, the second supplemental brief was filed, not because of Simon Arias, but rather because Michael Russin has continued his threats and threatening behavior against Plaintiff Zinsky and Attorney Williamson. Plaintiff filed a motion for contempt. Plaintiff thereafter filed a brief in support due to ongoing threats against Plaintiff and her counsel by Russin. Plaintiff filed a supplemental brief because the threats continued and increased after Plaintiff's brief.

Plaintiff's second supplemental brief which is the focus of this motion was filed because Russin's threats continued **_after_** the motion for contempt was filed, after the brief, and after the supplemental brief. Plaintiff chose to continue to update the record with the ongoing threats that seemed to increase with each filing by Plaintiff. The brief was supplementing the record, advising this Honorable Court that Russin was increasing hostility after Plaintiff requested an abeyance. In addition to Plaintiff's observations, Ms. Hemingway attested to Russin's threatening behavior with women, and Plaintiff sought to corroborate her claims with Ms. Hemingway's affidavit. The information was relevant for that reason, and while it was procedurally incorrect, it was done with relevant, probative information, due to the continued conduct of Defendant Russin.

23. After this Court struck the Second Supplemental Brief due to the procedural defect, Arias thereafter requested that Ms. Williamson affirmatively reach out to the Court to request that certain paragraphs of the affidavit be stricken from the record. Ms. Williamson was not inclined to do this for various relevant reasons. First, the matter in the instant case was stayed as to Arias, and Arias had no power to direct Plaintiff to perform any function in this case without lifting the Stay against Arias. Certainly, if Plaintiff request documents, depositions, or any other action in the instant District Court case, Arias would have refused and noted that the matter is stayed as to Arias. Second, the affidavit stems from Simon Arias' attempt to silence Ms. Hemingway, and Ms. Hemingway's refusal to succumb to the pressure. Striking those paragraphs would appear as though the statements were untrue, without foundation, and/or being retracted. This is an end-around method of attacking Ms. Hemingway's claims, and she is not amenable to any action that questions the validity of her claims – especially due to action by Simon Arias, who is the subject of the claims and

the behavior which Ms. Hemingway reported to the authorities. Third, this request by a stayed party is a waste of time and judicial resources. Plaintiff has no ability to alter the docket. Plaintiff would be required to ask the Court to file an order redacting four paragraphs from an affidavit buried within a second supplemental brief. Requesting leave of court to obtain an order to instruct the clerk of courts to strike three or four paragraphs of one exhibit, in one second supplemental brief that has already been stricken by the Court is not a worthwhile endeavor, especially to minimize attention to the claims. Fourth, if the goal was to minimize attention to the claims brought in paragraphs 14-18 of the affidavit, filing a motion drawing attention to those specific allegations would accomplish the opposite of that. Contrary to the claims of Simon Arias, Ms. Hemingway believes the allegations to be true. Any request by Plaintiff to strike said paragraphs due to a lack of alleged relevance could not be accomplished by Ms. Hemingway without her reasserting their veracity so as not to weaken the validity of the claims. This reassertion of the claims is not the relief which Arias seeks.

24. This case has garnered significant media attention. Indeed, the within Motion for Sanctions filed by Simon Arias spawned a news article itself, drawing further media attention to this matter. *See Exhibit 5.* The proper course of action was that action suggested by Plaintiff – do nothing. Drawing further attention to allegations was counterintuitive to Mr. Arias' goal, unless his goal was to weaken the claims by Ms. Hemingway.

25. While it is admitted that the filing of the Second Supplemental Brief was procedurally inappropriate without leave of court, the inclusion of the affidavit was appropriate to the claims brought therein. It contained many facts which support the toxic work environment in which Plaintiff Zinsky was forced to work. Even if one were to concede that the

paragraphs related to Simon Arias are not relevant to Russin, a point which Plaintiff disputes, litigants do not strike each paragraph when claims in a case are whittled down, and paragraphs are no longer relevant. Requesting leave of court to request a judge instruct the clerk of courts to strike three or four paragraphs of one exhibit in one brief that has already been stricken is not a worthwhile endeavor, let alone a sanctionable action.

WHEREFORE, should this Honorable Court entertain the motion attempting to be brought by stayed party, Simon Arias, Plaintiff respectfully requests that DENY Defendant Arias' Motion for Rule 11 Sanctions.

Respectfully Submitted,

_____
John R. Kane, Esquire

**CERTIFICATE OF SERIVCE**

I, John R. Kane, Esquire, hereby certify that a true and correct copy of Plaintiff's Response to Motion for Rule 11 Sanctions was electronically served upon counsel of record on this 26th day of July 2023 via email, addressed as follows:

| Benjamin D. Webb, Esq.<br>Cozza Law Group PLLC<br>400 Holiday Drive, Suite 210<br>Pittsburgh, PA 15220<br>bwebb@cozzalaw.com<br>*Counsel for Russin Defendants* | Jean E. Novak, Esq.<br>Strassburger, McKenna, et al<br>Four Gateway Cntr, Ste 2200<br>444 Liberty Ave.<br>Pittsburgh, PA 15222<br>jnovak@smgglaw.com<br>*Counsel for Arias Defendants* | Andrea Kirshenbaum, Esq.<br>Littler Mendelson, PC<br>1601 Cherry St., Ste 1400<br>Philadelphia, PA 19102<br>akirshenbaum@littler.com<br>*Counsel for AIL* |
|---|---|---|
| Amy Williamson, Esq.<br>Williamson Law LLC<br>355 Parkway Drive<br>Pittsburgh, PA 15228<br>awilliamson@awilliamsonlaw.com<br>*Counsel for Plaintiff Renee Zinsky* | | David B. White, Esq.<br>BURNS WHITE<br>48 26th Street<br>Pittsburgh, PA 15222<br>dbwhite@burnswhite.com<br>*Mediator* |

SAVINIS, KANE, & GALLUCCI, L.L.C.

John R. Kane, Esq.
Attorney for Plaintiff