IN THE UNITED STATES DISTRICT COURT FOR
THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| RENEE ZINSKY,<br><br>Plaintiff,<br><br>vs.<br><br>MICHAEL RUSSIN, RUSSIN FINANCIAL, RUSSIN GROUP, SIMON ARIAS, III, ARIAS AGENCIES, S.A. ARIAS HOLDINGS, LLC, AMERICAN INCOME LIFE INSURANCE COMPANY,<br><br>Defendants. | Civil Action<br><br>No. 2:22-cv-547 |

**PLAINTIFFS' F.R.C.P 60(b) MOTION
FOR RELIEF FROM ORDER OF COURT
AND TO STAY ARBITRATION**

AND NOW COMES Plaintiff, by and through her counsel, John R. Kane, Esquire, Amy Williamson, Esquire, and Savinis, Kane, & Gallucci, LLC, and files the instant motion to stay arbitration and in support thereof, avers as follows:

1. Plaintiff filed the instant action against multiple defendants, one of which remains before the Court (i.e., Michael Russin, hereinafter "Russin").[1] Other Defendants (Simon Arias III, Arias Agencies, S.A. Arias Holdings, LLC, and American Income Life Insurance Co., hereinafter "Arias/AIL") had filed a Motion to Compel Arbitration, which was granted by the instant Trial Court, sending Plaintiff's claims against Arias/AIL to AAA arbitration. The Court's conclusion that arbitration was the proper forum for this matter against Arias/AIL was based entirely on an Agent Contract between Plaintiff and Arias/AIL. The validity of that contract has now come into question. In fact, it has come to light that Plaintiff's signatures on a number of alleged Agent Contracts between the parties are **forgeries**.

2. Discovery in the Zinsky AAA arbitration was to end a few weeks ago, in the middle of December 2023. The parties are presently conferring on and/or litigating motions to compel with respect to items uncovered during the December depositions which have not yet been produced. Plaintiff has been moving steadily towards an arbitration with Arias/AIL, presently scheduled for March 2024.

---

[1] Plaintiff and Defendant Russin have mutually agreed to a stay which is not at issue in the instant motion. Claims against Russin Financial and Russin Group were separately stayed, and are also not at issue by the instant motion. *See Document 110, Order granting unopposed Motion to Stay (Document 109).*

1

3. When this matter was sent to arbitration, the Trial Court permitted the parties to seek intervention from the Trial Court if necessary.  Plaintiff moves for the instant Trial Court's intervention given the changes in circumstance.[2]  This Court's July 22, 2022 Order of Court noted that the federal court action would be stayed against Arias/AIL "unless Court intervention becomes necessary."  Plaintiff believes that Court intervention is now necessary in light of (1) the EEOC's extraordinary actions set forth below, as well as (2) the discovery of fraud and forgery in the documents which sent Plaintiff to arbitration in the first place.

4. Less than two months ago, Plaintiff, Renee Zinsky, was put on notice that the EEOC had reversed its decision in her case, and that the EEOC is now investigating both Defendants, AIL and Arias, for the sexual harassment of Plaintiff Zinsky.  This is an ultrarare action that has truly spun the instant circumstances into a hurricane that has been hard to evaluate.

5. On November 21, 2023, the EEOC sent Plaintiff and Defendant Arias the attached notice that it was reopening its investigation of Ms. Zinsky's claims that she was sexually harassed while employed at <u>Arias</u>.  *See Exhibit 1.*  "Upon further review, the dismissal of the above-referenced charge is hereby revoked …" *See Exhibit 1.*

6. A little more than a week later, on November 29, 2023, a nearly identical notice was sent to Plaintiff and <u>Defendant AIL</u>, indicating that the EEOC had reconsidered its prior decision from 2022, had revoked its dismissal of the sexual harassment charge, and now an "investigation of the charge shall continue."  *See Exhibit 2.*

7. While 29 CFR § 1601.28 (a)(3) permits the subsequent investigation and action by the EEOC after dismissal of a sexual harassment charge more than a year earlier, the effect of such action is an issue of first impression in the Third Circuit.  Other circuits have reviewed this ultrarare action by the EEOC, but there is a split between the circuits as to the effect of such a reversal.  The fifth circuit has determined that issuance a right-to-sue letter strips the EEOC of authority to continue its investigation against employers.  *EEOC v. Hearst Corp., 103 F.3d 462 (5th Cir. 1997).*  However, the seventh and ninth circuits disagree, and have held that the EEOC is fully empowered to continue its investigation after dismissal of a charge.[3]  *See EEOC v. Fed. Express. Corp., 558 F.3d 842 (9th Cir. 2009) and EEOC v. Union Pacific Railroad Co., 558 F.3d 843 (7th Cir. 2017).*[4]  Both the circuits acknowledge the fifth circuit's decision in *Hearst*, and thereafter dispute the validity of *Hearst*.

---

[2] Plaintiff moved the arbitrators to stay the arbitration, and while drafting this motion, the arbitrators denied Plaintiff's request.  Importantly, the matter fraud and forgery issue raised herein were not yet raised with the arbitration panel, as Plaintiff was still investigating the fraud/forgery claim.  Further, the issue of whether to enforce an arbitration provision in an alleged contract is properly before the Trial Court, and not the panel.
[3] The Third Circuit has yet to address this issue.
[4] *See, generally, Master of its own case: EEOC Investigations after Issuing a Right-to-Sue Notice, Chicago Law Review, Eric Petry, attached hereto as Exhibit 3.*

8. After receiving the EEOC's revocation of its dismissal of Plaintiff's sexual harassment charge, and notification that the EEOC is now investigating Plaintiff's claims, Plaintiff's counsel came to learn that Plaintiff's signature on her first Agent Contract, as well her signature on three other accompanying documents, was a <u>forgery</u>.  This fraud was only discovered this month, and thus Plaintiff's counsel has been investigating this issue only since 2024.  After receiving confirmation that the signatures were, in fact, forged, Plaintiff's counsel had no choice by to seek intervention by the Trial Court pursuant to the July 22, 2022 Order of Court, as well as Federal Rule of Civil Procedure 60(b).

9. According to F.R.C.P. 60(b) "[o]n motion and just terms the court may relieve a party or its legal representative from a final judgment, order, or proceeding for the following reasons:

    (1) …
    (2) newly discovered evidence that, with reasonable diligence, could not have been discovered in time to move for a new trial under Rule 59(b);
    …
    (6) any other reason that justifies relief.

    While Fed.R.C.P. 60(b)(2) may not be completely applicable given that no trial has occurred, the last section, Fed.R.C.P. 60(b)(6), is certainly applicable given the new reasons that have just come to light that justify relief.

10. Additionally, while the Trial Court's July 22, 2022 order of court sending this matter to arbitration foresaw that court intervention might be necessary in the future, it is unlikely that the Trial Court envisioned either of these two extraordinary events unfolding.

11. First, the EEOC, on its own initiative, has taken unparalleled action by re-opening an investigation that was closed a year and a half earlier.  This action has placed Plaintiff in a precarious position, as she filed suit within the applicable ninety-day statute of limitations period when the EEOC had previously dismissed her charge.  Plaintiff has pursued her claim in court and arbitration as she had no choice following the EEOC's dismissal.  Now, however, it appears that without this Court's intervention, Plaintiff will have her claim resolved prior to reaping the benefits of the actions of the EEOC. This result would run counterclockwise to the purpose behind Title VII's mandate from Congress.

    a. While the prescribed posture of the bringing of a sexual harassment claim may typically be linear, the events in this case are anything but.  After reporting, the EEOC is first required to investigate a charge of sexual discrimination and/or harassment from a plaintiff before suit may be filed.  A plaintiff must wait as the investigation unfolds.  If the claims are deemed to have merit, the EEOC is required to conciliate the matter with the employer.  If the EEOC is unable to settle the matter, then the attorney general will file an enforcement

action. At that point, plaintiff has an absolute right to intervene in the EEOC's action, which Plaintiff seeks to do here. *See, EEOC v. Fed. Express Corp.*, 558 F.3d 842, 849-850 (2009). Plaintiff has no deadline with which to file suit if the EEOC is still investigating or negotiating with the employer(s), as Plaintiff is permitted to wait until the conclusion of the EEOC's efforts. Here, however, because the matter was closed, and reopened a year and a half later, the procedural posture of these circumstances is completely askew. Now, if Plaintiff's arbitration is resolved before the EEOC's action is resolved, Plaintiff will be deprived of substantial rights and relief to which she is entitled.

12. Second, Plaintiff has uncovered evidence that her signature had been <u>forged</u> onto her allegedly first Agent Contract with Defendants AIL/Arias. Indeed, Plaintiff had the signatures on the Agent Contracts reviewed by an expert who has authored a report indicating that the first four signatures on the first Agent Contract were **NOT** the signatures of Plaintiff, and instead were forged by an individual. This newly uncovered evidence, which speaks to the unenforceability of the arbitration clause and the contract, has not yet been reviewed by this Court, or the arbitration panel. Because the Agent Contracts provide the only basis to allegedly instill jurisdiction with the arbitration panel, it is for the Trial Court, and not the arbitration panel, to review this matter.

13. Defendants AIL/Arias oppose any stay of the arbitration in this matter.

### The EEOC's Extraordinary Actions

14. The EEOC's actions in the instant matter are exceptional, and resultantly require a unique solution.

15. It is axiomatic that a plaintiff may only file a lawsuit alleging sexual harassment after first filing a claim with the EEOC, and thereafter receiving a right-to-sue letter. Prior to that letter being issued, if the EEOC finds merit in the plaintiff's claims, the EEOC has a plan of action that it is required to pursue.

> If the EEOC "determines after investigation that there is reasonable cause to believe that the charge is true," it must "endeavor to eliminate [the] alleged unlawful employment practice by informal methods of conference, conciliation, and persuasion." 42 U.S.C. § 2000e-5(b); *see also* 29 C.F.R. §§ 1601.20, 1601.24(a). If those efforts don't work, the EEOC may then bring a civil action against the employer, 42 U.S.C. § 2000e-5(f)(1); 29 C.F.R. § 1601.27, in which the charging party may intervene as a matter of right, 42 U.S.C. § 2000e-5(f)(1). If the EEOC fails to bring such an action, the individual employee may bring an action against the employer directly. *Id*. § 2000e-5(f)(1) (providing for issuance of a right-to-sue notice on dismissal of a charge or failure to resolve a charge by conciliation within 180 days). The right-to-sue notice may also be issued to the charging party

> upon request, 29 C.F.R. § 1601.28(a), or when the EEOC determines that there is reasonable cause to believe that Title VII has been violated, yet was unable to obtain voluntary compliance, but decides not to bring an action against the employer, *id.* § 1601.28(b). The EEOC may intervene in the charging party's lawsuit at the court's discretion. 42 U.S.C. § 2000e-5(f)(1).

*EEOC v. Fed. Express Corp.*, 558 F.3d 842, 849-850 (2009) (emphasis added). The present case, however, turns the above scenario on its head since the EEOC dismissed the charge, and then reopened its investigation over a year later.

16. As is reflected above, the right to bring a private action is only contemplated *after* the EEOC fails to bring an action of its own, and issues a right-to-sue letter. If the EEOC files a charge of its own and/or an enforcement action, and does not issue a right-to-sue letter, then there is no private action filed. Thus, what effect should the EEOC's post-dismissal investigation and charge have on an already filed lawsuit? The circuits are split on the answer to this question; and the matter is an issue of first impression in the Third Circuit. To contemplate that scenario, however, it is necessary to review the purpose behind the EEOC's mandate.

> Title VII was amended in 1972 to provide the EEOC with the authority to sue employers as a means "to implement the public interest as well as to bring about more effective enforcement of private rights. *Gen. Tel. Co. of Nw. v. EEOC*, 446 U.S. 318, 326, 100 S. Ct. 1698, 64 L. Ed. 2d 319 (1980) (discussing 42 U.S.C. § 2000e-5(f)(1)). Indeed, this amendment expressly recognized that the EEOC's critical role in preventing employment discrimination extends beyond the private charge filed by an individual. As the Supreme Court explained in *General Telephone*, "When the EEOC acts, albeit at the behest of and for the benefit of specific individuals, it acts also to vindicate the public interest in preventing employment discrimination." *Id.* at 326; *see also EEOC v. Harris Chernin, Inc.*, 10 F.3d 1286, 1291 (7th Cir. 1993) (EEOC's "interests are broader than those of the individuals injured by discrimination.").

*EEOC v. Union Pac. R.R.*, 867 F.3d 843, 847 (2107). Hence, while the EEOC's directive has the broad intent to benefit the public as a whole, and to prevent discrimination on a civic scale, its command to bring about this change is at the behest and through *the individual*. Thus, where, as here, the EEOC delayed its mandate by more than a year, the victim of the harassment and discrimination should not be <u>further</u> harmed by being unable to see the fruits of the EEOC's labor. Regardless of whether the EEOC is able to settle the case through conciliation, or if the EEOC must bring about the sought after change through an enforcement action, the victim which spawned the action should be the <u>first</u> to reap the benefit of such change, and not <u>precluded</u> from such benefit through no fault of her own.

17. This potential prejudice to Plaintiff is aptly exemplified by *EEOC v. Union Pac. R.R.*, 867 F.3d 843 (7th Cir. 2107). In that case, the EEOC had issued its right to sue letter to the plaintiffs, who thereafter filed their own lawsuit. While that private lawsuit

was pending, the EEOC continued its investigation. Eventually, the employer filed a motion for summary judgment against the plaintiffs in the private action, which was granted. The employer thereafter sought to preclude the EEOC from continuing with its investigation given that the plaintiffs' case had been dismissed with prejudice. The employer argued that where the underlying case was dismissed on the merits, the EEOC should be precluded from continuing its investigation.[5] The court of appeals disagreed and held that the EEOC still maintained its ability to continue with its investigation, regardless of what happened with the private action. In that action, however, the plaintiff lost the benefit of the EEOC's actions. Unlike *Union Pac. R.R.*, it is not too late to prevent such a travesty. The arbitration to which Zinsky is presently subjected can be stayed with no harm or prejudice to employers.

18. While the EEOC's actions herein are extremely rare, the EEOC's reversal of its Zinsky decision from 2022 is permitted under 29 CFR § 1601.28 (a)(3) which states:

> Issuance of a notice of right to sue shall terminate further proceeding of any charge that is not a Commissioner charge unless the District Director; Field Director; Area Director; Local Director; Director of the Office of Field Programs or upon delegation, the Director of Field Management Programs; or the General Counsel, determines at that time or at a later time that it would effectuate the purpose of title VII, the ADA, or GINA to further process the charge. Issuance of a notice of right to sue shall not terminate the processing of a Commissioner charge.

19. The above scenario, as contemplated by 29 CFR § 1601.28 (a)(3), is playing out in Ms. Zinsky's case as Area Director, Deborah A. Kane,[6] determined that the EEOC's dismissal of the charge made by Ms. Zinsky is revoked, and the EEOC's investigation of the charge "shall continue." *See Exhibits 1 and 2*.

20. When contemplating the effect of an action by the EEOC and one by a private action, the U.S. Supreme Court in *General Tel. Co. v. EEOC*, 446 U.S. 318, 100 S. Ct. 1698 (1980) did not envision the present scenario. Instead, the Supreme Court discussed the purpose behind Congress' creation of the EEOC's right to bring a civil action, and how that would affect the private action that might <u>follow</u>.

> The 1972 amendments to § 706 accordingly expanded the EEOC's enforcement powers by authorizing the EEOC to bring a civil action in federal district court against private employers reasonably suspected of violating Title VII. In so doing, Congress sought to implement the public interest as well as to bring about more effective enforcement of private rights. The amendments did not transfer all private enforcement to the

---

[5] The actual objection was whether the employer had to comply with a subpoena served in the course of that investigation, but the overriding question to the Court was whether the investigation could continue in these circumstances.

[6] As far as the undersigned knows, there is no familial relation between him and Ms. Kane, despite them sharing the same surname; as far as the undersigned is aware, he has never spoken to or met the area director.

> EEOC and assign to that agency exclusively the task of protecting private interests. The EEOC's civil suit was intended to supplement, not replace, the private action. Cf. *Alexander* v. *Gardner-Denver Co.*, 415 U.S. 36, 45 (1974). **The EEOC was to bear the primary burden of litigation**, but the private action previously available under § 706 was not superseded. Under § 706 (f)(1), the aggrieved person may bring his own action at the expiration of the 180-day period of exclusive EEOC administrative jurisdiction if the agency has failed to move the case along to the party's satisfaction, has reached a determination not to sue, or has reached a conciliation or settlement agreement with the respondent that the party finds unsatisfactory. **The aggrieved person may also intervene in the EEOC's enforcement action**.

*General Tel. Co. v. EEOC*, 446 U.S. 318, 326, 100 S. Ct. 1698, 1704 (1980) (**Emphasis** added).

21. In the above synopsis, the Supreme Court does not predict a scenario, like here, where a Claimant was forced to file suit so as not to let the 90-day statute of limitations expire, begin carrying the full load of prosecution of a private action, only to learn a year and a half later that the EEOC has now deemed the individual's discrimination claim to have merit and be worthy of its attention. In such a setting, what would be the proper remedy, especially if the plaintiff may be foreclosed from intervening as of right given that procedural posture? If the individual wanted to reap the benefit of the EEOC's efforts, as Congress intended, should that individual be precluded? Would that foster the tenets of Title VII and the commission of the EEOC? No impartial interpretation could find such action supportive of the explicit policy for which Title VII was created. Moreover, it would go against the U.S. Supreme Court's explanation that the EEOC has to "bear the primary burden of litigation." *Id.*  Further, the Supreme Court noted that the private individual <u>has the absolute right to intervene</u>. However, if Zinsky's arbitration were to continue and finish before the EEOC's investigation is concluded, then Zinsky may be foreclosed from intervening.[7] Plaintiff Zinsky seeks a stay to, *inter alia,* enable her to intervene following the efforts of the EEOC.

22. Were Zinsky's arbitration stayed, the EEOC would continue with its duty by investigating, conciliating, and only if necessary, filing an enforcement action. It is axiomatic that Attorney General has a substantially greater ability to achieve redress than Zinsky does. Further, it will come as no surprise that Zinsky wants to benefit from the efforts made by the Department of Justice and the EEOC against Arias and AIL on her behalf. That is why Zinsky absolutely intends to intervene in the EEOC's enforcement action should the Attorney General be unable to resolve the matter. The

---

[7] Regardless of what happens in arbitration, Zinky's employer will certainly argue either that her intervention amounted to a double-recovery if the arbitration is successful for Zinsky. Also, in the unlikely event that the employers are successful at arbitration, then they will undoubtedly argue that Zinsky is somehow collaterally estopped from intervening given that her case was dismissed. All of which can be preserved by staying the arbitration until resolution by the EEOC/Attorney General.

labors of Claimant's counsel in arbitration will pale in comparison to the efforts that the Department of Justice can bring to bear when charges are brought against Arias and AIL on behalf of the EEOC through the Attorney General.  Consequently, if a stay is not entered, Claimant will be severely prejudiced.

   a. By way of an apt example between Claimant's counsel's efforts in arbitration versus the Department of Justice's efforts, one need only consider that Claimant has been precluded from discovering facts regarding the employer's own investigation into the sexual assault and harassment in the arbitration proceeding.  As this Court may be aware, following Zinsky's reporting of her sexual assault and harassment, an investigation was eventually conducted and concluded by Defendant AIL.  However, AIL has refused to reveal the results of that investigation.[8]  The individuals who conducted that investigation (as well as another investigation regarding Zinsky's separate reporting of fraud) have refused to honor subpoenas for discovery depositions issued by the arbitration panel.  The two investigators have hired lawyers who refuse to acknowledge the power of the arbitration panel.  The Justice Department, in its power to investigate the claims, will certainly have more success in obtaining cooperation from both AIL and the two investigators.  The EEOC's investigatory powers were created by Congress for just such purposes: to obtain information and redress that might otherwise be prevented by employers through private means.

23. The U.S. Supreme Court acknowledged that through Title VII, the EEOC is tasked with making Plaintiff whole through its efforts and the legislation that empowers it.

   We have also stressed the strong congressional intent to provide "make whole" relief to Title VII claimants: "'The provisions of this subsection are intended to give the courts wide discretion exercising their equitable powers to fashion the most complete relief possible. . .' 118 Cong. Rec. 7168 (1972)."

   *General Tel. Co. v. EEOC*, 446 U.S. 318, 332, 100 S. Ct. 1698, 1708 (1980) (*citing Albemarle Paper Co*. v. *Moody*, 422 U.S. 405, 421 (1975)).  Failure to stay the arbitration will thwart such a purpose; conversely, Zinsky's employers' efforts at opposing a stay are aimed at blocking the EEOC's endeavors to make her whole.

24. From a public policy standpoint, when the EEOC investigates an employer and attempts to correct the actions of an employer, the purpose behind the EEOC's actions is to bring about <u>change</u>.  For Claimant to not be able to benefit from a case brought by the Department of Justice on her own behalf, would be the *height* of prejudice.  In addition to the time, effort, and expense wasted by Zinsky in a private action, permitting that action to go forward could result in a procedural nightmare

---

[8] Plaintiff has filed a motion to compel Defendants' to reveal the results of their investigation; the arbitrators have yet to rule on whether AIL/Arias must disclose the results of its 'independent' investigation into the sexual harassment of Renee Zinsky.

upon successful completion of the EEOC's action. Undoubtedly, Zinsky's employers will challenge, and may seek to nullify, whatever was gained in arbitration by Plaintiff given the Supreme Court's pronouncements in *General Telephone* regarding (1) preclusion of "double recovery by an individual" and (2) the ability of a Court, when necessary to "reasonably require any individual who claims under its judgment to relinquish his right to bring a separate private action." *General Tel. Co. v. EEOC*, 446 U.S. 318, 331-332, 100 S. Ct. 1698, 1708 (1980). A stay protects the parties from either quagmire. Contrarily, Defendant has moved for summary judgment in arbitration; while Plaintiff has sufficient evidence to deny said motion and proceed with trial, if the arbitration panel were to err and grant summary judgment, any evidence discovered thereafter by the EEOC would be lost to Plaintiff. The existence, and yet prohibition of use of any favorable evidence found by the EEOC would spoil the purpose behind Title VII, for no reason whatsoever; while a stay would protect and honor that purpose.

25. Additionally, the rule (i.e. §1601.28(a)) provides that the claimant shall have the right to delay his or her action pending the investigation by the EEOC. Indeed, if the EEOC is still investigating a claim beyond the 180 days set forth in §1601.28(a), a Claimant *may* request a right-to-sue letter but is not required to do so. It is axiomatic that a claimant may wish to hold off on filing suit until the EEOC's efforts have been exhausted, and that is planned for in §1601.28(a). "Thus, allowing an aggrieved person to wait for the agency's investigation to conclude—even if it takes more than 180 days—furthers the purpose of the administrative exhaustion requirement without undermining the purpose of the 90-day limitations period." *Scott v. Gino Morena Enters., LLC* 888 F.3d 1101, 1110 (9th Cir. 2018). Courts have not only understood a claimant may seek to wait until resolution of the EEOC's investigation, but holdings of the Courts have interpreted that the statute of limitations as being consistent with this. *See Lynn v. Western Gillette, Inc.* 564 F.2d 1282 (9th Cir. 1977) (the ninety-day statute of limitations period under Title VII is not triggered until a right to sue letter is provided, even when the EEOC sent a letter to Claimant admitting that its conciliation efforts have failed); *see also*, *Scott v. Gino Morena Enters., LLC* 888 F.3d 1101, 1110 (9th Cir. 2018) (the statute of limitations began to run when the right to sue letter was received, not the date from which the claimant was first *eligible* to receive one).

26. This motion was originally drafted and planned as a motion based on the extraordinary actions of the EEOC by reversing its dismissal of Plaintiff's sexual harassment claims against AIL/Arias. However, prior to submission of a motion on that point, Plaintiff uncovered forgery in her contracts which form the basis of jurisdiction in arbitration.

### Forgeries Forestall Any "Contract"

27. It is axiomatic that for any contract to exist, it must actually be entered into by both parties. In its July 22, 2022 Opinion, the Trial Court determined that the Agent Contract between Plaintiff and Defendants Arias/AIL was controlling in this matter. Within that Agent Contract was an arbitration provision which this Trial Court

9

determined compelled arbitration.  However, Plaintiff's recently discovered evidence that Plaintiff's signature on the hiring documents had been <u>forged</u> invalidates any purported contract between Plaintiff and Defendants.

28. At the time when Defendant filed its Motion to Compel Arbitration, only one Agent Contract was produced by Defendant as an exhibit to its motion.  This was an August 20, 2021 Agent Contract.  Produced in discovery in arbitration, however, were several contracts purporting to be Agent Contracts between Plaintiff and Defendants which all predated the contract presented to the Court.  Chronologically, the purported first, original Agent Contract (and attachments) was allegedly signed by Plaintiff upon hiring on February 13, 2019.  However, Plaintiff had those documents reviewed by an expert in handwriting and signatures who has authored an expert report indicating that those four signatures were signed by one individual, who was **not** Plaintiff, Renee Zinsky.  *See Exhibit 4.*

29. With respect to the forgery issue, Plaintiff's counsel never suspected that Zinsky's signature on the initial contract presented by AIL could have been anything other than genuine, as Zinsky recalled signing many documents.  However, Plaintiff's counsel represents another individual, Abeni Mayfield, who has also filed a claim of sexual assault and sexual harassment due to her employment with AIL/Arias Agencies.  Through that representation of Ms. Mayfield, Plaintiff's counsel learned that one of Ms. Mayfield's Agent Contracts had her signature forged onto it.  When reviewing what was purportedly her first Agent Contract with AIL/Arias, Ms. Mayfield discovered that the signature that was alleged to be hers was absolutely not her signature.  Ms. Mayfield unequivocally denied that it was her signature on the Agent Contract.

30. After learning about the forgery in Ms. Mayfield's purportedly original Agent Contract, Plaintiff's counsel began investigating the validity of other purported signatures.  In speaking a co-worker of Ms. Mayfield's, Kevin Pharaon, Plaintiff's counsel learned from him that his purportedly original contract also had his name forged on it.  Having discovered a pattern or practice of forged original contracts with Arias/AIL, Plaintiff's counsel asked Plaintiff Zinsky to review her signatures on all contracts with AIL and/or Arias.  Upon review, Ms. Zinsky identified four signatures that she did not believe were her signatures.

31. Given (i) the forgery in Ms. Mayfield's case, (ii) the pattern of forgeries as described by Mr. Pharaon, and (iii) Ms. Zinsky's identification of four signatures which were not her signature, Plaintiff hired a handwriting expert to review Ms. Zinsky's signature to determine if Plaintiff Zinsky's identification of false signatures on had merit.  Plaintiff's counsel contacted Michele Dresbold, a handwriting and signature expert, to determine if there was a way to determine if the identified signatures were indeed forgeries.  At her request, Ms. Dresbold reviewed a number of valid signatures of Renee Zinsky's as exemplars of Ms. Zinsky's signatures over the years.  After reviewing all of the signatures, the expert authored a report indicating that the signatures purportedly of Ms. Zinsky on February 13, 2019, **are not Zinsky's**

10

**signatures**.  Attached hereto as Exhibit 4 is the expert report outlining Ms. Dresbold's qualifications for such a report, her methodology, and her conclusion regarding the forgeries.

32. Plaintiff's contract(s) with Defendant provide the basis of her claims being precluded from a jury trial and forced into arbitration.  The forgery of such contracts, especially the first supposed contract between the parties, would be nothing short of an evisceration of the forced arbitration provision.  Plaintiff, nevertheless, avers that the proper course of action, at this time, would be to *stay* the arbitration.  A pause in the arbitration would permit the EEOC's investigation to continue, to consider all evidence uncovered by the EEOC, and whether the EEOC is able to resolve the discrimination with Defendants; it would also permit the Court time to evaluate the effect of forged documents, i.e. contracts, in this case.

33. Considering the breadth and the complexities of the issues contained herein, Plaintiff respectfully suggests that oral argument may add enlightenment to these issues.

    WHEREFORE, Plaintiff respectfully requests this Honorable Court enter a stay of the arbitration proceedings between Plaintiff and AIL/Arias.

 

 

Respectfully submitted,


\_\_/s/ John R. Kane_____
John R. Kane, Esquire
Counsel for Plaintiff