IN THE UNITED STATES DISTRICT COURT FOR
THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| RENEE ZINSKY, | Civil Action |
| Plaintiff, | No. 2:22-cv-547 |
| vs. | |
| MICHAEL RUSSIN, RUSSIN FINANCIAL, RUSSIN GROUP, SIMON ARIAS, III, ARIAS AGENCIES, S.A. ARIAS HOLDINGS, LLC, AMERICAN INCOME LIFE INSURANCE COMPANY, | |
| Defendants. | |

**BRIEF IN SUPPORT OF
PLAINTIFF'S MOTION FOR TO STAY ARBITRATION**

## I.      INTRODUCTION

Plaintiff seeks a stay of the arbitration to permit the EEOC to continue with its investigation and to redress the wrongs done to her.  While the arbitration is stayed, and the EEOC's investigation, conciliation, and possible enforcement action marches on, the Trial Court would have an opportunity to review the forgery evidence uncovered in discovery to determine if this matter should even be in arbitration.  If either the contract, or the arbitration clause, is invalidated, so goes the only jurisdiction which permitted arbitration in the first place.

## II.      ARGUMENT

In determining whether to issue a stay, the District Court in *Semon v. Maps Indeed, Inc*., 2016 U.S. Dist. LEXIS 205466 (M.D. PA 2016), cited to a four-part test to be considered:

> As numerous courts in the Third Circuit and the Middle District have held, '[i]n determining whether to grant a motion to stay, courts should consider: (1) the length of the requested stay; (2) the "hardship or inequity" that the movant would face going forward with the litigation; (3) the injury that a stay would inflict upon the non-movant; (4) whether a stay will simplify issues and promote judicial economy.'"

1

*Semon v. Maps Indeed, Inc*., 2016 U.S. Dist. LEXIS 205466, p. 4-5 (M.D. PA 2016), (*internal citations omitted*).  In the instant matter, the four factors are easily met, warranting an immediate stay of the arbitration proceedings.

As to the first fact, i.e., the length of a stay, there is no set time period which is too long to make a stay worthwhile.  In *Semon*, the plaintiff was being sent to prison, which created various logistical difficulties in providing both parties with full access to the fundamental rights inherent in litigation.  The Court had no difficulty in granting the request to stay the case for three years.

Defendants will argue that an indefinite stay is not warranted.  First, while the length of the stay is *indeterminate*, it is not *indefinite*.  This is not merely an argument in semantics, but rather a significant distinction recognized in jurisprudence.  The stay will last only so long as the investigation and/or action brought by the EEOC.  The typical investigation period according to 42 U.S.C. § 2000e-5(f)(1) is 180 days.  Under no circumstance should it even approach, let alone exceed, the three years granted in *Semon*.

Furthermore, in *Rajput v. Synchrony Bank*, 2016 U.S. Dist. LEXIS 193993 (M.D. PA 2016) (*Rajput I*) and *Rajput v. Synchrony Bank*, 2016 U.S. Dist. LEXIS 150231 (M.D. PA 2016) (*Rajput II*), the Court granted <u>two</u> indeterminate, but not indefinite stays. In that matter, the defendant had moved for a stay due to pending litigation presently before the U.S. Supreme Court in the *Spokeo* case and before the United States Court of Appeals for the D.C. Circuit in *ACA International*.  In *Rajput I*, the District Court granted the stay pending the outcome of the *Spokeo* case, but determined that ruling on whether the stay was necessary due to *ACA International* was unnecessary in light of the stay being granted due to the pending *Spokeo* case.  The stay was requested in January 2016,

granted in March 2016, and by May 2016, the Supreme Court had ruled in *Spokeo*. The defendant thereafter again moved for a stay in July 2016 requesting a stay until *ACA International* was decided. In October 2016, the Court again granted a stay until *ACA International* was ruled upon. Thus, the time period need not be definitive, so long as it is not indefinite. Here, the prescribed investigation period is 180 days, and the EEOC began its investigation back in November 2023. Thus, the time period is indeterminate, but not indefinite.

As to the second factor in the *Semon* test, Claimant faces significant hardship if a stay is not granted. The purpose behind the EEOC is for the government to bear the brunt of the work to curb and eliminate discrimination. Refusal to stay this matter will retard that purpose. Additionally, all evidence, effort, and remedies which the EEOC will be able to secure in its investigation, conciliation, and/or enforcement action will be lost to Zinsky. The Supreme Court has held that one of the basic precepts of Title VII requires the EEOC to make the victim whole. *General Tel. Co. v. EEOC*, 446 U.S. 318, 332, 100 S. Ct. 1698, 1708 (1980). Any effort to prevent that will undoubtedly exact prejudice upon her. Plaintiff merely seeks the rights afforded her under Title VII of the Civil Rights Act of 1964, 42 USCS §§ 2000e et seq. and its progeny. Specifically, under 29 CFR § 1601.28 (a)(3), Plaintiff has the right to delay his or her action pending the investigation by the EEOC; *see also*, *Scott v. Gino Morena Enters., LLC*, 888 F.3d 1101, 1110 (9th Cir. 2018). Plaintiff also has the right to intervene. *See*, 42 U.S.C. § 2000e-5(f)(1); *General Tel. Co. v. EEOC*; *EEOC v. Fed. Express Corp*.

As to the third factor, there will be absolutely no injury inflicted upon the employers here, regardless of what they allege. In fact, an objective evaluation of this situation reveals

that the employers may be injured if the stay is <u>not</u> granted.  The EEOC has voiced a clear intent to move forward with its investigation of Zinsky's case, regardless of the arbitration. If this arbitration is not stayed, Defendants will deal with these issues on two fronts, one in arbitration and one with the EEOC.  Eventually, they will potentially face discovery, hearings, and trial in both venues, all for the same facts with the same parties.  Defendants should *want* a stay of this arbitration.  Instead, Defendants will hope to create roadblocks to justice, arguing such principals as collateral estoppel, issue preclusion, double recovery, or some other legal machination to hinder the EEOC's efforts and prevent Zinsky's relief. Of course, a stay protects all from any potential prejudice.  Defendants will also contend that the EEOC has not yet filed an enforcement action against them.  However, the EEOC does not exhume a claim that had already been buried, unless it believes that the facts so warrant such a drastic action.

Finally, as to the fourth factor, a stay will undoubtedly simplify issues and promote judicial economy so that two identical actions will not occupy judicial resources in two different forums, as discussed above.  It will further prevent all of the procedural roadblocks outlined by Plaintiff.  Regardless of what happens in arbitration, the EEOC is obligated to move forward now that it has undertaken to reopen its investigation.

> Once the charge is filed, "[t]he EEOC is then *required* to investigate the charge and determine whether there is reasonable cause to believe that it is true." *Occidental Life Ins. Co.*, 432 U.S. at 359 (emphasis added); *see also Univ. of Pa.*, 493 U.S. at 190 ("The Act *obligates* the Commission to investigate a charge of discrimination[.]" (emphasis added));
> …
> If the EEOC "determines after investigation that there is reasonable cause to believe that the charge is true," it must "endeavor to eliminate [the] alleged unlawful employment practice by informal methods of conference, conciliation, and persuasion." 42 U.S.C. § 2000e-5(b); *see also* 29 C.F.R. §§ 1601.20, 1601.24(a). If those efforts don't work, the EEOC may then bring a civil action against the

employer, 42 U.S.C. § 2000e-5(f)(1); 29 C.F.R. § 1601.27, in which the charging party may intervene as a matter of right, 42 U.S.C. § 2000e-5(f)(1).

*EEOC v. Fed. Express Corp*., 558 F.3d 842, 849 (9th Cir. 2009) (*emphasis* added).  None of the procedures outlined above allow for the EEOC to disregard its mandate simply because of the result of a private arbitration.

Defendants likely hope that Third Circuit will follow the Fifth Circuit's *Hearst* case.  Defendants hope that they can quickly push the arbitration to conclusion and thereafter preclude the EEOC from continuing with its investigation as reflected in *Hearst*. The Ninth Circuit, however, explicitly held that the Fifth Circuit wrongly decided *Hearst*. The Ninth Circuit was quick to point out that the Fifth Circuit, in *Hearst*, failed to even refer to 29 CFR § 1601.28 (a)(3), which permits such action.

> *Hearst* failed even to consider 29 C.F.R. §1601.28 (a)(3), which makes clear that the EEOC has concluded that a continuing investigation can further the public interest, even after the charging party has filed suit. *Compare Hearst*, 103 F.3d at 462-70 (failing to discuss or cite 29 C.F.R. § 1601.28 (a)(3)), *with* 29 C.F.R. §1601.28 (a)(3) (authorizing the continuing processing of a charge, even after the charging party has filed suit, when "it would effectuate the purpose of title VII").

*EEOC v. Fed. Express. Corp.,* 558 F.3d 842, 852-853 (9th Cir. 2009).  Like the Ninth Circuit, the Seventh Circuit also disagreed with *Hearst* in *EEOC v. Union Pacific Railroad Co*., 558 F.3d 843 (7th Cir. 2017) and held that the EEOC may continue investigating after a right-to-sue letter is issued.

Because the EEOC is required to conciliate the matter in good faith, the efforts of other courts to stay cases while conciliations occur is persuasive.  A line of cases exists where suit is filed in ADEA age discrimination cases by plaintiffs, but the Court determines that the conciliation attempts by EEOC may have been somewhat less than necessary.  In those cases, the

courts have routinely held that "if the district court finds that further conciliation efforts are required[,] the proper course is to stay proceedings until such informal conciliation can be concluded." *Marshall v. Sun Oil Co.*, 592 F.2d 563, 566 (10th Cir. 1979); *see also, United States EEOC v. Chicago,* 1987 U.S. Dist. LEXIS 7823 (N.D. Illinois 1987). (The Court stayed the plaintiff's case because it found that "a stay would further Congress' intent" since the ADEA contemplates conciliation, and the EEOC's initiated action had not yet had an opportunity to be conciliated."). While this is not an ADEA claim, the EEOC is required to conciliate this matter when it determines that the claim has merit.

If the EEOC had continued with its investigation back in 2022, instead of halting the investigation for the past year, the right to sue letter would not have been issued, and Zinsky would not have been able to file a suit of her own until that investigation was concluded.[1] Significantly, the right-to-sue letters are based on the predicate that the EEOC did not find reasonable cause to support the claim of discrimination of an employee, and thus the EEOC would not bring charges itself. "In the event that the EEOC determines there is 'n[o] reasonable cause to believe that the charge is true,' the Commission is to dismiss the charge and notify the complainant of his or her right to sue in court." *Fort Bend Cty v. Davis*, 139 S.Ct. 1843, 1847 (2019). However, when the EEOC changes its position on the investigation, as it has here, it

---

[1] Or until the 180 day time had lapsed; even then, Plaintiff was permitted to wait until the EEOC's investigation concluded.

could be determined that reversal of the investigation by the EEOC equates to reversal of the right to sue.

Despite the EEOC letter indicating that the reopening of its investigation does not revoke the right-to-sue letter, it is for this Court to make this determination, and not the EEOC; otherwise, there would be no split in the circuits on the EEOC's right to investigate after issuing a right-to-sue letter.  The entire dispute amongst the circuits in *Hearst, Federal Express*, and *Union Pacific Railroad* occurred because the *effect* of reopening the investigation was ultimately an issue that must be resolved by the Courts.  *See, EEOC v. Hearst Corp., 103 F.3d 462 (5th Cir. 1997), EEOC v. Fed. Express. Corp., 558 F.3d 842 (9th Cir. 2009) and EEOC v. Union Pacific Railroad Co., 558 F.3d 843 (7th Cir. 2017).*

Additionally, while the initial determination of the EEOC and its issuance of a Right to Sue letter is the catalyst which permits a plaintiff to file suit, it is not the final and ultimate decision on the matter; even after the right to sue letter has been issued, a simple filing of a timely request to reopen the investigation has the power to toll the statute of limitations.  "The filing of a timely request to reopen an EEOC decision tolls the statutory time limit." *Rowe v. Sullivan*, 967 F.2d 186, 190 (5th Cir. 1992).  Clearly, the issuance of a right to sue letter is not irreversible, and the case may be paused even after the letter is provided.

Defendants have categorized the EEOC's notice as merely an intent to reconsider, as opposed to the reopening of its investigation.  While the document sent to both counsel is titled

"Notice of Intent to Reconsider," the EEOC is actively investigating the matter, the Justice Department is subpoenaing items from Defendants, and the EEOC has been requesting various materials from Claimant's counsel pursuant to its investigation.  Moreover, the plain language of the letter rebuts just such an argument as the letter itself says "the dismissal of the above-referenced charge is hereby revoked and **investigation of the charge shall continue**."  *See Exhibits 1 and 2.*

Defendants also argue that because the EEOC is still in its investigatory phase, there is no cause to stay the matter.  It would be naivete to believe that the resuscitation of an EEOC claim more than a year after it last had life would result in anything other than a meritorious determination in favor of Plaintiff.  Continuing with the arbitration any further, while the EEOC's investigation continues, only makes the matter murkier as the parties get closer and closer to the March 2024 scheduled arbitration.

Any argument by Defendant to prevent Plaintiff from benefitting from the sought after widescale change ignores the purpose behind Title VII.  First, this alleged delay is ethereal, as it would have no effect, and would create no prejudice on Defendant since the EEOC will continue with its investigation and pursuit of justice regardless of what happens to Zinsky's arbitration.  Second, delay has been found to be an insufficient harm when compared to the purpose behind Title VII.  "Policy concerns about delays in resolving charges, while worthwhile, would seem an insufficient (if not irrelevant) basis to assess the statutory authority vested in the EEOC to

investigate in parallel or independently, especially in light of the EEOC's broad obligation to the public interest." *EEOC v. Union Pac. R.R*., 867 F.3d 843, 847 (2107).

Tangled within all of these important, serious matters is underlying dispositive issues of (1) whether a contract even exists between Plaintiff and Defendants, and (2) whether Zinsky was an employee of Arias and AIL, contrary to Defendants' claims.  As to the latter issue, the EEOC and the Justice Department would not be able to file charges against Arias and AIL if Plaintiff was merely an independent contractor.  Their decision to reopen the investigation more than a year after halting the original one speaks to their determination of Zinsky's status. Consequently, the EEOC's investigation could have an overarching effect on whether Zinky's claim should *even be* in arbitration.  Her entire contract is premised on the idea that Zinsky was supposedly an independent contractor.  Would her reclassification void her entire contract? While that may be a serious matter for the Court to consider, it does not appear as though a contract even exists given the forgery of Plaintiff's signature on the contract purported to be the document which allegedly created the relationship between the parties.

As described in her motion, Plaintiff has uncovered evidence that her signature had been forged four times onto the documents which Defendants purport are the first contract(s) between Plaintiff and Defendants AIL/Arias.  Even glancing at the signatures reveals that they look dissimilar to the known signatures of Plaintiff.  However, Plaintiff was not content to rely on appearances and instead hired an expert to review the signatures on the contracts allegedly

between the parties.  The expert, Michelle Dresbold, authored a report after reviewing nineteen

(19) valid signatures of Plaintiff Renee Zinsky, over a period of several years, and appearing on

many different types of documents.  Ms. Dresbold compared those 19 signatures to the four (4)

signatures appearing on the purported first contract(s) between Plaintiff and Defendants.

      Ms. Dresbold's report reveals the methodology used in her examination of the signatures,

and she outlines a number of specific elements reviewed.  The report also defines the nine-point

conclusion scale, and how these signatures fit into such a scale.  The expert not only concluded

that the signature on the purported contract was **<u>not</u>** Plaintiff's signature, but Ms. Dresbold also

concluded that she is able to offer that opinion with the highest degree of certainty.  Ms.

Dresbold's report sets forth nine levels of certainty that a signature was forged.  In this case, Ms.

Dresbold indicated that the evidence of forgery was at the number one level, "Elimination-

highest degree write did not write."  *See Exhibit 3.*

      Having the highest degree of evidence that Plaintiff's signature was forged on the first

purported contract between the parties, the validity of the arbitration clause contained within any

contract is now in question, if not entirely debunked.  Plaintiff respectfully requests the

opportunity to present this evidence, along with briefing, to the Court.  It is axiomatic that a

forgery cannot form the basis of a contract.  Furthermore, the existence of one forgery, or four in

this case, implicates a variety of other legal principles such as fraud, unclean hands, etc. which

should be evaluated by the Court.

### III.    CONCLUSION

Plaintiff respectfully request this Honorable Court stay the arbitration that it ordered in its July 22, 2022 Order of Court to allow the EEOC's investigation to continue without prejudice to Plaintiff, and to allow the mandate of Title VII to be fulfilled.  A stay will also afford this Court the opportunity to review the forgery evidence uncovered, and whether there even exists jurisdiction within arbitration.

Respectfully submitted,

   /s/ John R. Kane
John R. Kane, Esquire
Counsel for Plaintiff