IN THE UNITED STATES DISTRICT COURT FOR THE WESTERN DISTRICT OF
PENNSYLVANIA

| | |
|---|---|
| RENEE ZINSKY,<br><br>               Plaintiff,<br><br><br>      v.<br><br><br>MICHAEL RUSSIN, RUSSIN FINANCIAL, RUSSIN GROUP,<br><br>           Defendants. | Civil Action No. 2:22-cv-547-MJH<br><br><br>Electronically Filed<br><br><br><br><br><br>Jury Trial Demanded |

**BRIEF IN OPPOSITION TO PLAINTIFF'S FED. R. CIV. P. 60(B) MOTION FOR
RELIEF FROM ORDER OF COURT AND TO STAY ARBITRATION**

## I. PROCEDURAL HISTORY[1]

Plaintiff Renee Zinsky filed suit against Michael Russin, Russin Financial, Russin Group,

American Income Life, Simon Arias, III, S.A. Arias Holdings, LLC, and Arias Agencies.[2] Amd.

Complaint, ECF No. 9. Based on Ms. Zinsky's contract, American Income Life ("AIL"), Simon

Arias, III, S.A. Holdings, LLC, and Arias Agencies (collectively "Arias"), moved to compel

arbitration. AIL Mot. Compel, ECF No. 17; Arias Defs.' Mot. Join AIL's Mot. Compel, ECF No.

20. By Opinion dated July 22, 2022, this Court granted the motion to compel arbitration. Op.,

ECF No. 37.

---

[1] Because arbitration is a private procedure, Arias is not producing documents related to arbitration. The facts set forth as to the arbitration schedule are not in dispute. To the extent that Zinsky may disagree, Arias notes that the dates in arbitration are provided to show the status of arbitration only. AIL, with permission from the arbitration panel, is producing with its brief the limited arbitration documents relevant to Zinsky's Motion.

[2] Arias Agencies is now Arias Organization.

Zinsky filed her arbitration demand on September 27, 2022. The first arbitration management conference was held on January 18, 2023. On January 20, 2023, the arbitration panel entered its First Pre-Hearing Order. Among other things, the First Pre-Hearing Order set the following dates for arbitration: March 4 through March 8, 2024. In subsequent orders, the arbitration panel set or modified the schedule but did not change the arbitration dates.

Based on the arbitration orders and revisions thereto, fact discovery closed on September 8, 2023. It was extended (by arbitration panel order) until October 6, for limited purposes raised by Zinsky. Expert reports were due on September 29, 2023, and expert discovery closed on October 31, 2023. Zinsky's request to extend expert discovery was denied by the arbitration panel.

On or about December 6, 2023, Zinsky asked the arbitration panel to stay arbitration based only on the EEOC's letter stating that it was continuing its investigation of Zinsky's charge. Zinsky's request was opposed by both AIL and Arias. The arbitration panel denied Zinsky's request.

Motions for Summary Judgment (from both AIL and Arias) were filed on January 10, 2024. Zinsky's response was filed on January 27, 2024. Her response to AIL and Arias' Motions for Summary Judgment was the first time she raised the issue of the validity of her contracts. AIL and Arias will be filing replies on February 2, 2024. The arbitration panel's decision regarding the Motions for Summary Judgment is due on February 16, 2024. Fact stipulations and optional pre-hearing briefs are due on February 12, 2024. The pre-hearing conference will take place during the last week of February.

While this matter was proceeding in arbitration, the EEOC notified Arias that it was revoking its dismissal of Zinsky's charge and would continue its investigation. Mot. Ex., ECF No.

111-1.  On or about January 22, 2024, Arias provided additional documents to the EEOC.  As of the date of this filing, Arias is not aware of any finding by the EEOC.

On January 24, 2024, Zinsky filed with this Court a Motion to Stay Arbitration. Mot., ECF No. 111.

## II.    LEGAL ARGUMENTS[3]

Through the Federal Arbitration Act ("FAA"), Congress established a national policy favoring arbitration for dispute resolution. 9 U.S.C. § 1, *et seq.; Lloyd v. Hovensa, LLC*, 369 F.3d 263, 270; 2004 U.S. App. LEXIS 9355 **15 (3d Cir. 2004)(citation omitted).  Therefore, once a matter is moved to arbitration, the matter before the trial court is to be stayed until arbitration is concluded. 9 U.S.C. § 3; *DCK North Am., LLC v. Burns and Roe Servs. Corp*., 218 F. Supp. 3d 465, 471; 2016 U.S. Dist. LEXIS 150223; 2016 WL 6441574 (W.D.Pa. 2016).   There are limited purposes for which parties in arbitration may return to the trial court for assistance. As explained by the Court in *Lloyd*,

> [T]he FAA allows arbitrating parties to return to court for resolution of disputes regarding the appointment of an arbitrator or the filling of an arbitrator vacancy. 9 U.S.C. § 5. Similarly, parties may ask the court to compel the attendance of witnesses, or to punish the witnesses for contempt. 9 U.S.C. § 7.

*Lloyd*, 369 F.3d at 270; 2004 U.S. App. LEXIS 9355 **16.  As the Court noted, the next possible intervention by the trial court occurs after an arbitration award is entered. "[A]fter an arbitration award is rendered, a party is entitled to seek relief in the District Court in the form of a judgment on the award or an order vacating or modifying the award." *Id.*  (citing 9 U.S.C. §§ 9, 10, 11). "The legislative scheme of the FAA thus reflects a policy decision that, if a district court determines that arbitration of a claim is called for, the judicial system's interference with the arbitral process should

---

[3] Copies of the cases are provided for the Court's convenience.

end unless and until there is a final award." *Id.,* 2004 U.S. App. LEXIS 9355 **17. As explained below, there has been no final award, and Zinsky has not established a legal reason to stay arbitration. Therefore, her Motion must be denied.

### A. *Staying Arbitration is Contrary to the FAA and Applicable Law.*

Until there is a final award, the trial court's ability to intervene in arbitration is limited. 9 U.S.C. §§ 5, 7; *Lloyd*, 369 F.3d at 270; 2004 U.S. App. LEXIS 9355 **16. Nothing in the FAA permits a party to seek a stay of arbitration based on an administrative agency conducting an investigation, and Zinsky has cited no authority to support her request for arbitration to be stayed on that basis. *See*, 9 U.S.C. § 1, *et seq.*

Not one case cited by Zinsky addresses the issue of a motion to stay arbitration. *Semon,* the Middle District case on which she relies for the elements supporting a stay, involved a *pro se* defendant seeking a temporary stay of court proceedings based on his incarceration. *Semon v. Maps Indeed, Inc.*, 2016 U.S. Dist. LEXIS 205466 at *1-2 (M.D. Pa. 2016). Stay was granted because the defendant, while incarcerated, would not have access to documents, and the court granted the stay only during the period of incarceration. *Semon*, 2016 U.S. Dist. LEXIS 205466 at *8. Zinsky, however, is not incarcerated and is not limited in her ability access documents and fully participate in arbitration. *Semon*, which did not involve request to stay arbitration, does not apply here.

Similarly, *Rajput I* and *Rajput II* (again, both Middle District cases) involved requests to stay litigation, not arbitration. *Rajput v. Synchrony Bank*, 2016 U.S. Dist. LEXIS 193993 (M.D.Pa. 2016) (*Rajput I*); *Rajput v. Synchrony Bank*, 2016 U.S. Dist. LEXIS 150231 (M.D.Pa. 2016) (*Rajput II*). The requests were based on cases pending in other courts that could affect Rajput's cases. *See Rajput I*, 2016 U.S. Dist. LEXIS 193993 at *1-2; *Rajput II*, 2016 U.S. Dist. LEXIS

150231 at *5.  Zinsky faces no similar issue.  She is in arbitration, not litigation.  *Rajput I* and *Rajput II*, neither of which involved a request to stay arbitration, do not support Zinsky's request for stay.

In short, Zinsky's reliance on cases involving the courts staying litigation are irrelevant to the issue here: Can a trial court, after having referred a matter to arbitration, stay arbitration before the arbitrators have rendered their final decision?  The answer is simply, "No."  Neither the FAA nor the courts permit this Court to intervene and stay arbitration.  Instead, the FAA, the Third Circuit and the Western District all favor arbitration continuing to its conclusion.  9 U.S.C. § 3; *Lloyd*, 369 F.3d at 270; 2004 U.S. App. LEXIS 9355 **16; *DCK North Am., LLC*, 218 F. Supp. 3d at 471.  Therefore, Zinsky's Motion must be denied.

## B.  *The EEOC Investigation is not Reason to Stay Arbitration.*

Zinsky alleges, without support, that she will "face significant hardship" if arbitration is not stayed.  Br., ECF No. 112 at 3.  She claims that permitting arbitration to continue will "retard" the work of the EEOC, although she fails to explain how arbitration interferes with the EEOC.[4]  Br., ECF No. 112 at 3.  She also fails to explain why she believes that anything obtained by the EEOC will be "lost" to her or why she believes that the EEOC will be prevented from performing its duties. Br., ECF No. 112 at 3.

The authorities cited by Zinsky are incorrect or are not applicable to her Motion to Stay Arbitration.  For example, 29 C.F.R. § 1601.28(a)(3) does not permit a complainant to "delay his or her action pending the investigation by the EEOC."  29 C.F.R. § 1601.28(a)(3); *see* Br., ECF No. 112 at 3.  The regulation, however, does provide for further processing of a charge after a right

---

[4] Zinsky admits that the EEOC will continue its investigation "regardless of the arbitration."  Br., ECF No. 112 at 4.

to sue letter has been issued.  29 C.F.R. § 1601.28(a)(3).  That is what occurred here.  A right to sue letter was issued and remains in effect, but the EEOC is continuing its investigation.  Nothing in the regulations supports the proposition that a complainant, having acted on the right to sue letter, can stay those proceedings.  *See* 29 C.F.R. § 1601.28.  The regulations do not support Zinsky's Motion to Stay Arbitration.

As for Zinsky's allegation that she will lose the assistance of the EEOC, 29 C.F.R. §1601.28(b)(4) provides, "The issuance of a notice of right to sue does not preclude the Commission from offering such assistance to a person issued such notice as the Commission deems necessary or appropriate."  9 C.F.R. § 1601.28(b)(4).  Given that the EEOC currently is investigating her claims, any allegation by Zinsky that she will lose what assistance the EEOC has to offer is unfounded.

The Ninth Circuit case cited by Zinsky for the proposition that "[she] has the right to delay …her action pending the investigation by the EEOC," actually does not address a plaintiff's ability to stay proceedings.  *Scott v. Gino Morena Enters., LLC,* 888 F.3d 1101 (9th Cir. 2018).  *Scott* held that an aggrieved party's 90-day filing deadline is triggered by the issuance of the right to sue letter, not the expiration of 180 days after which an aggrieved person may request a right to sue letter. *Scott,* 888 F.3d at 1113.  There being no allegation that Zinsky failed to take timely action after receiving her right to sue letter, *Scott,* even if it were a Third Circuit case, would not be applicable here.

Because the EEOC has not filed suit, there is no reason to address Zinsky's comments regarding her right to intervene in such an action.  *See* Br., ECF No. 112 at 3.  Additionally, conciliation at the EEOC occurs only after a finding of "reasonable cause to believe discrimination has occurred."  https://www.eeoc.gov/employers/what-you-can-expect-after-charge-filed.  No

finding has been made. Arbitration cannot be stayed based on Zinsky's hope that the EEOC will determine that she was an employee and that her Title VII rights were violated.

Having failed to establish that she is entitled to a stay of arbitration, Zinsky resorts to hyperbole regarding what Arias and AIL might do. Arias will not dignify such unsupported speculation with a detailed response. It is enough to point out that Zinsky provides no binding authority for her positions. Her mere belief that the EEOC's reopening of its investigation constitutes a finding that she has been determined to be an employee is without support. Her alleged employment status remains part of the investigation – which has not concluded. The EEOC's continuing investigation will not be affected by arbitration. Arbitration has been scheduled for more than a year. Nothing has been rushed. No rights are lost by permitting arbitration to continue, and no binding authority exists to permit this Court to stay arbitration. Thus, Zinsky's Motion must be denied.

C. *Zinsky's Allegations of Forgery are Unfounded.*

Possibly the most outrageous claim by Zinsky is that her signatures were "forged," thereby rendering her contracts (and the arbitration clauses) void. *See* Br., ECF No. 112 at 9-10. AIL will be briefing this issue in detail. Arias addresses it here only to highlight the ridiculousness of the allegation. Zinsky is a competent adult. She admitted in her Complaint and Amended Complaint that she signed (more than once) agent contracts. *See* ECF No. 1, ¶¶ 26, 27 n.1, 164, 172, 174; ECF No. 9, ¶¶ 26, 27 n.1, 169, 177, 179. Those contracts were produced during fact discovery, which closed on September 8, 2023. She testified about those agreements during her deposition on August 29, 2023. To have her now, on the eve of arbitration, allege that some of her signatures were forged is beyond belief. The Court should spend no time on this outrageous allegation clearly designed only to stop arbitration for which Zinsky and her attorneys are not prepared.

## III.   <u>CONCLUSION</u>

Based upon the foregoing, Arias Organization, S.A. Arias Holdings, LLC, and Simon

Arias, III, respectfully request that the Court deny Renee Zinsky's Motion to Stay Arbitration.

Respectfully submitted,

STRASSBURGER McKENNA GUTNICK
& GEFSKY


By: /s/ Jean E. Novak
        Jean E. Novak
        Pa. Id. #69490

        Four Gateway Center, Suite 2200
        444 Liberty Avenue
        Pittsburgh, PA 15222
        T - (412) 281-5423
        F - (412) 281-8264

        *Counsel for Arias Organization, S.A. Arias
        Holdings, LLC,* and *Simon Arias, III*

⚠️ Caution
As of: January 31, 2024 5:29 PM Z

# *Lloyd v. Hovensa*

United States Court of Appeals for the Third Circuit

December 10, 2003, Argued ; May 13, 2004, Filed

NOS. 03-1502 and 03-1592

**Reporter**

369 F.3d 263 *; 2004 U.S. App. LEXIS 9355 **; 93 Fair Empl. Prac. Cas. (BNA) 1499; 149 Lab. Cas. (CCH) P59,853; 85 Empl. Prac. Dec. (CCH) P41,746

BRUNO LLOYD Appellant in No. 03-1502 v. HOVENSA, LLC.; WYATT, V.I., INC. BRUNO LLOYD v. HOVENSA, LLC.; WYATT, V.I., INC. Wyatt, V.I., Inc. Appellant in No. 03-1592

**Prior History:** **[**1]** On Appeal From the District Court of the Virgin Islands. (D.C. Civil Action No. 02-cv-00121). District Judge: Hon. Raymond L. Finch.

*Lloyd v. Hovensa LLC, 243 F. Supp. 2d 346, 2003 U.S. Dist. LEXIS 3052 (D.V.I., 2003)*

**Disposition:** Reversed and remanded.

## Core Terms

arbitration, district court, discovery, parties, pending arbitration, unconscionable, public policy, merits, motion to compel arbitration, discriminatory, unenforceable, cross-appeal, disputes, final decision, proceedings, Rights

## Case Summary

### Procedural Posture

Appellant, an unsuccessful job applicant, sued appellee employer, alleging that the employer required applicants to execute arbitration agreements as a means of racial discrimination. The applicant and the employer cross-appealed the order of the United States District Court of the Virgin Islands which granted the employer's motion to compel arbitration but denied the employer's motion to stay, rather than dismiss, the proceedings.

### Overview

The applicant contended that he was denied employment based on racial discrimination and that the arbitration agreement was only required of local applicants who were primarily members of racial minorities. The employer argued that the requirement for the arbitration agreement was due to the high cost of employee litigation claims in the local area, and that, even though all claims were deemed arbitrable, the action should have been stayed rather than dismissed. The appellate court first held that, under the plain language of *9 U.S.C.S. § 3,* a stay of the proceedings was required upon the employer's request where arbitration was compelled in lieu of judicial action. Further, the arbitration agreement was facially neutral with regard to race, the employer provided a legitimate basis for requiring the agreement as a condition of consideration of job applications, and the applicant proffered no evidence that the employer's use of the agreement was in any way discriminatory.

### Outcome

The order compelling arbitration and dismissing the action was reversed, with instructions to enter an order compelling arbitration and staying the proceedings pending arbitration.

## LexisNexis® Headnotes

Business & Corporate Compliance > Alternative Dispute Resolution > Mandatory ADR
Civil Procedure > Pretrial Matters > Alternative Dispute Resolution > Mandatory ADR

Civil Procedure > ... > Alternative Dispute Resolution > Arbitration > General Overview

International Trade Law > Dispute Resolution > International Commercial Arbitration > Arbitration

Civil Procedure > ... > Arbitration > Federal Arbitration Act > General Overview

Civil Procedure > Appeals > Appellate Jurisdiction > General Overview

Civil Procedure > Appeals > Appellate Jurisdiction > Final Judgment Rule

*HN1*[⬇] **Alternative Dispute Resolution, Mandatory ADR**

An appellate court has jurisdiction over an appeal pursuant to *9 U.S.C.S. § 16(a)(3)* where a district court's order constitutes a final decision with respect to an arbitration.

Business & Corporate Compliance > Contracts > Contract Conditions & Provisions > Arbitration Clauses
Contracts Law > Contract Conditions & Provisions > Arbitration Clauses

Civil Procedure > ... > Alternative Dispute Resolution > Arbitration > General Overview

Civil Procedure > ... > Arbitration > Federal Arbitration Act > General Overview

Business & Corporate Compliance > ... > Arbitration > Federal Arbitration Act > Arbitration Agreements
Civil Procedure > ... > Arbitration > Federal Arbitration Act > Arbitration Agreements

Business & Corporate Compliance > Alternative Dispute Resolution > Mandatory ADR
Civil Procedure > Pretrial Matters > Alternative Dispute Resolution > Mandatory ADR

Civil Procedure > Appeals > Appellate Jurisdiction > Final Judgment Rule

International Trade Law > Dispute Resolution > International Commercial Arbitration > Arbitration

*HN2*[⬇] **Contract Conditions & Provisions, Arbitration Clauses**

An order compelling arbitration and dismissing a plaintiff's case with prejudice plainly disposes of the entire case on the merits and leaves no part of it pending before the court. The Federal Arbitration Act, *9 U.S.C.S. § 1 et seq.*, does permit parties to arbitration agreements to bring a separate proceeding in a district court to enter judgment on an arbitration award once it is made (or to vacate or modify it), but the existence of that remedy does not vitiate the finality of a district court's resolution of the claims. *9 U.S.C.S. §§ 9*, *10*, *11*. The district court's order is therefore a final decision with respect to an arbitration within the meaning of *9 U.S.C.S. § 16(a)(3)*, and an appeal may be taken.

Civil Procedure > Appeals > Appellate Jurisdiction > Final Judgment Rule

International Trade Law > Dispute Resolution > International Commercial Arbitration > Arbitration

Civil Procedure > ... > Arbitration > Federal Arbitration Act > General Overview

*HN3*[⬇] **Appellate Jurisdiction, Final Judgment Rule**

See *9 U.S.C.S. § 16(a)(3)*.

Civil Procedure > ... > Arbitration > Federal Arbitration Act > General Overview

International Trade Law > Dispute Resolution > International Commercial Arbitration > Arbitration

Civil Procedure > Appeals > Appellate Jurisdiction > Interlocutory Orders

*HN4*[⬇] **Arbitration, Federal Arbitration Act**

See *9 U.S.C.S. § 16(b)(2)*.

Civil Procedure > Appeals > Appellate Jurisdiction > Final Judgment Rule

International Trade Law > Dispute Resolution > International Commercial Arbitration > Arbitration

Civil Procedure > ... > Arbitration > Federal Arbitration Act > General Overview

*HN5*[⬇] **Appellate Jurisdiction, Final Judgment Rule**

See *9 U.S.C.S. § 16(a)(1)(A)*.

> Civil Procedure > Appeals > Standards of
> Review > De Novo Review
>
> International Trade Law > Dispute
> Resolution > International Commercial
> Arbitration > Arbitration
>
> Civil Procedure > ... > Arbitration > Federal
> Arbitration Act > General Overview
>
> Governments > Legislation > Interpretation

*HN6*[⬇] **Standards of Review, De Novo Review**

In construing the language of the Federal Arbitration Act, *9 U.S.C.S. § 1 et seq.*, a court's review is plenary.

> Civil Procedure > Appeals > Standards of
> Review > De Novo Review
>
> Governments > Legislation > Interpretation

*HN7*[⬇] **Standards of Review, De Novo Review**

The standard of review in cases of statutory construction is plenary.

> Business & Corporate Compliance > Alternative
> Dispute Resolution > Validity of ADR Methods
> Civil Procedure > Pretrial Matters > Alternative
> Dispute Resolution > Validity of ADR Methods
>
> Civil Procedure > ... > Arbitration > Federal
> Arbitration Act > General Overview
>
> International Trade Law > Dispute
> Resolution > International Commercial
> Arbitration > Arbitration
>
> Civil Procedure > ... > Alternative Dispute
> Resolution > Arbitration > General Overview

*HN8*[⬇] **Alternative Dispute Resolution, Validity of ADR Methods**

See *9 U.S.C.S. § 3*.

> Civil Procedure > ... > Arbitration > Federal
> Arbitration Act > General Overview
>
> Governments > Legislation > Interpretation
>
> International Trade Law > Dispute
> Resolution > International Commercial
> Arbitration > Arbitration

*HN9*[⬇] **Arbitration, Federal Arbitration Act**

Courts apply the plain language of the statutory text in interpreting the Federal Arbitration Act, *9 U.S.C.S. § 1 et seq.*

> Business & Corporate
> Compliance > ... > Arbitration > Federal Arbitration
> Act > Stay Pending Arbitration
> Civil Procedure > ... > Arbitration > Federal
> Arbitration Act > Stay Pending Arbitration
>
> International Trade Law > Dispute
> Resolution > International Commercial
> Arbitration > Arbitration
>
> Civil Procedure > ... > Arbitration > Federal
> Arbitration Act > General Overview
>
> Business & Corporate Compliance > Alternative
> Dispute Resolution > Validity of ADR Methods
> Civil Procedure > Pretrial Matters > Alternative
> Dispute Resolution > Validity of ADR Methods

*HN10*[⬇] **Federal Arbitration Act, Stay Pending Arbitration**

The plain language of *9 U.S.C.S. § 3* affords a district court no discretion to dismiss a case where one of the parties applies for a stay pending arbitration.

> Business & Corporate Compliance > Alternative
> Dispute Resolution > Mandatory ADR
> Civil Procedure > Pretrial Matters > Alternative
> Dispute Resolution > Mandatory ADR
>
> Civil Procedure > ... > Alternative Dispute
> Resolution > Arbitration > General Overview

Civil Procedure > ... > Arbitration > Federal
Arbitration Act > General Overview

Business & Corporate
Compliance > ... > Arbitration > Federal Arbitration
Act > Stay Pending Arbitration
Civil Procedure > ... > Arbitration > Federal
Arbitration Act > Stay Pending Arbitration

Business & Corporate Compliance > Alternative
Dispute Resolution > Validity of ADR Methods
Civil Procedure > Pretrial Matters > Alternative
Dispute Resolution > Validity of ADR Methods

International Trade Law > Dispute
Resolution > International Commercial
Arbitration > Arbitration

*HN11*[⬇] **Alternative Dispute Resolution, Mandatory ADR**

*9 U.S.C.S. § 3* clearly states, without exception, that whenever suit is brought on an arbitrable claim, a court shall upon application stay the litigation until arbitration has been concluded.

Governments > Legislation > Interpretation

*HN12*[⬇] **Legislation, Interpretation**

Courts are free to disregard an unambiguous directive of Congress only in the rare instances where failing to do so produces a nonsensical result that could not have been intended.

Governments > Legislation > Interpretation

*HN13*[⬇] **Legislation, Interpretation**

Courts do not look past the plain meaning of statutory language unless it produces a result demonstrably at odds with the intentions of its drafters or an outcome so bizarre that Congress could not have intended it.

Civil Procedure > Pretrial Matters > Alternative
Dispute Resolution > Judicial Review
Business & Corporate Compliance > Alternative
Dispute Resolution > Judicial Review

International Trade Law > Dispute
Resolution > International Commercial
Arbitration > Arbitration

Civil Procedure > ... > Alternative Dispute
Resolution > Arbitration > General Overview

Civil Procedure > ... > Arbitration > Federal
Arbitration Act > General Overview

Business & Corporate
Compliance > ... > Arbitration > Federal Arbitration
Act > Stay Pending Arbitration
Civil Procedure > ... > Arbitration > Federal
Arbitration Act > Stay Pending Arbitration

Business & Corporate Compliance > Alternative
Dispute Resolution > Validity of ADR Methods
Civil Procedure > Pretrial Matters > Alternative
Dispute Resolution > Validity of ADR Methods

*HN14*[⬇] **Alternative Dispute Resolution, Judicial Review**

Whenever a party is subjected to litigation on any issue and is found to be entitled to arbitrate that issue, *9 U.S.C.S. § 3* mandates that a stay be entered by a district court. The effect of that stay is twofold: it relieves the party entitled to arbitrate of the burden of continuing to litigate the issue while the arbitration process is on-going, and it entitles that party to proceed immediately to arbitration without the delay that would be occasioned by an appeal of the district court's order to arbitrate. Under *9 U.S.C.S. § 16*, whenever a stay is entered under *9 U.S.C.S. § 3*, the party resisting arbitration is expressly denied the right to an immediate appeal. The legislative scheme of the Federal Arbitration Act, *9 U.S.C.S. § 1 et seq.*, thus reflects a policy decision that, if a district court determines that arbitration of a claim is called for, the judicial system's interference with the arbitral process should end unless and until there is a final award.

Business & Corporate Compliance > Alternative
Dispute Resolution > Mandatory ADR
Civil Procedure > Pretrial Matters > Alternative
Dispute Resolution > Mandatory ADR

Civil Procedure > ... > Alternative Dispute
Resolution > Arbitration > General Overview

Civil Procedure > ... > Arbitration > Federal

Arbitration Act > General Overview

Business & Corporate
Compliance > ... > Arbitration > Federal Arbitration
Act > Orders to Compel Arbitration
Civil Procedure > ... > Arbitration > Federal
Arbitration Act > Orders to Compel Arbitration

Business & Corporate
Compliance > ... > Arbitration > Federal Arbitration
Act > Stay Pending Arbitration
Civil Procedure > ... > Arbitration > Federal
Arbitration Act > Stay Pending Arbitration

Business & Corporate Compliance > Alternative
Dispute Resolution > Validity of ADR Methods
Civil Procedure > Pretrial Matters > Alternative
Dispute Resolution > Validity of ADR Methods

Civil Procedure > Appeals > Appellate
Jurisdiction > Final Judgment Rule

Civil Procedure > Appeals > Appellate
Jurisdiction > Interlocutory Orders

International Trade Law > Dispute
Resolution > International Commercial
Arbitration > Arbitration

*HN15*[🔗] **Alternative Dispute Resolution, Mandatory
ADR**

Under *9 U.S.C.S. § 16(a)(1)(A)*, *(B)*, a party may seek immediate appeal of an order refusing a to grant a stay under *9 U.S.C.S. § 3* or an order denying a petition to compel arbitration under *9 U.S.C.S. § 4*. Under *9 U.S.C.S. § 16(b)(1)*, *(2)*, however, an appeal may not be taken (except as provided by *28 U.S.C.S. § 1292(b)*) from an interlocutory order granting a stay under *9 U.S.C.S. § 3* or compelling arbitration under *9 U.S.C.S. § 4*.

Business & Corporate Compliance > Alternative
Dispute Resolution > Mandatory ADR
Civil Procedure > Pretrial Matters > Alternative
Dispute Resolution > Mandatory ADR

Civil
Procedure > ... > Justiciability > Standing > General
Overview

Constitutional Law > The Judiciary > Case or

Controversy > General Overview

Civil Procedure > Preliminary
Considerations > Justiciability > General Overview

Constitutional Law > ... > Case or
Controversy > Standing > General Overview

Constitutional Law > ... > Case or
Controversy > Standing > Elements

*HN16*[🔗] **Alternative Dispute Resolution, Mandatory
ADR**

In order for there to be standing under U.S. Const. art. III, there must be a case or controversy. That is, the following three elements must be present. First, the plaintiff must have suffered an injury in fact--an invasion of a legally protected interest which is (a) concrete and particularized, and (b) actual or imminent, not conjectural or hypothetical. Second, there must be a causal connection between the injury and the conduct complained of--the injury has to be fairly traceable to the challenged action of the defendant, and not the result of the independent action of some third party not before the court. Third, it must be likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision.

Business & Corporate Compliance > Alternative
Dispute Resolution > Validity of ADR Methods
Civil Procedure > Pretrial Matters > Alternative
Dispute Resolution > Validity of ADR Methods

*HN17*[🔗] **Alternative Dispute Resolution, Validity of
ADR Methods**

By agreeing to arbitrate a statutory claim, a party does not forgo the substantive rights afforded by the statute; it only submits to their resolution in an arbitral, rather than a judicial, forum. It trades the procedures and opportunity for review of the courtroom for the simplicity, informality, and expedition of arbitration.

Civil Procedure > Appeals > Reviewability of Lower
Court Decisions > Preservation for Review

*HN18*[🔗] **Reviewability of Lower Court Decisions,
Preservation for Review**

It is inappropriate for an appellate court to consider a contention raised on appeal that was not initially presented to the district court.

Business & Corporate Compliance > Alternative Dispute Resolution > Validity of ADR Methods
Civil Procedure > Pretrial Matters > Alternative Dispute Resolution > Validity of ADR Methods

Civil Procedure > Appeals > Standards of Review > Clearly Erroneous Review

Labor & Employment Law > Collective Bargaining & Labor Relations > Labor Arbitration > Enforcement

Civil Procedure > Pretrial Matters > Alternative Dispute Resolution > Judicial Review
Business & Corporate Compliance > Alternative Dispute Resolution > Judicial Review

Civil Procedure > Appeals > Standards of Review > General Overview

Civil Procedure > Appeals > Standards of Review > De Novo Review

*HN19*[🔗] **Alternative Dispute Resolution, Validity of ADR Methods**

An appellate court exercises plenary review over questions regarding the validity and enforceability of an agreement to arbitrate. However, to the extent that the district court predicated its decision on findings of fact, the appellate court's standard of review is whether those findings were clearly erroneous.

Contracts Law > Defenses > Unconscionability > General Overview

Evidence > Burdens of Proof > General Overview

Contracts Law > Defenses > General Overview

*HN20*[🔗] **Defenses, Unconscionability**

The burden of proving a generally applicable contract defense lies with the party challenging the contract provision.

Civil Procedure > Appeals > Standards of Review > Abuse of Discretion

Civil Procedure > Discovery & Disclosure > General Overview

*HN21*[🔗] **Standards of Review, Abuse of Discretion**

An appellate court reviews a district court's denial of a discovery motion for an abuse of discretion.

Administrative Law > Judicial Review > Administrative Record > Disclosure & Discovery

Civil Procedure > Discovery & Disclosure > General Overview

Administrative Law > Judicial Review > Reviewability > Reviewable Agency Action

Administrative Law > Judicial Review > Standards of Review > Abuse of Discretion

Civil Procedure > Appeals > Standards of Review > Abuse of Discretion

*HN22*[🔗] **Administrative Record, Disclosure & Discovery**

It is well established that the scope and conduct of discovery are within the sound discretion of the trial court and that, after final judgment of the district court or final agency order, an appellate court's review is confined to determining if that discretion has been abused.

**Counsel:** Lee J. Rohn, K. Glenda Cameron (Argued), Law Offices of Lee J. Rohn, Christiansted, St. Croix, USVI, Attorneys for Bruno Lloyd Appellant/Cross-Appellee.

Charles E. Engeman, David J. Comeaux (Argued), Ogletree, Deakins, Nash, Smoak & Stewart, St. Thomas, USVI, Attorneys for Wyatt, V.I., Inc. Appellee/Cross-Appellant.

Linda J. Blair, Rachel L. Witty (Argued), Bryant, Barnes & Moss, Christiansted, St. Croix, USVI, Attorneys for HOVENSA, LLC Appellee.

**Judges:** BEFORE: NYGAARD, BECKER and

STAPLETON, Circuit Judges BECKER, Circuit Judge, concurring.

Opinion by: STAPLETON

# Opinion

 [*265] OPINION OF THE COURT

STAPLETON, Circuit Judge:

Bruno Lloyd appeals from an order of the District Court of the Virgin Islands compelling arbitration of his claims against Wyatt, V.I., Inc. ("Wyatt" or "Cross-Appellant") and HOVENSA, LLC ("HOVENSA"; collectively, "Appellees") pursuant to the Federal Arbitration Act ("FAA"), *9 U.S.C. § 1 et seq.* [**2] [*266] Wyatt cross-appeals from the District Court's order insofar as it denied Wyatt's motion for a stay of the proceedings on Lloyd's claims pending arbitration.

Lloyd, who applied for employment at Wyatt, brought suit against Appellees alleging, *inter alia*, discriminatory conduct in violation of Title VII of the Civil Rights Act of 1964, *42 U.S.C. § 2000e et seq.* Invoking the provisions of an arbitration agreement entered into as a condition of Lloyd's application, Appellees filed a motion to compel arbitration of Lloyd's claims and to stay the proceedings pending arbitration. The District Court granted Appellees' motion to compel arbitration, but dismissed the case with prejudice rather than granting a stay. For the reasons that follow, we will reverse the District Court's order and remand with instructions to enter an order consistent with this opinion.

I.

Lloyd worked for more than twelve years as a boilermaker and pipefitter for various contractors at the HOVENSA refinery in St. Croix, Virgin Islands. Although the contractors for maintenance and repairs changed over these years, Lloyd remained employed at the HOVENSA refinery. In November [**3] 2001, Lloyd was working for Jacobs/IMC, one of the contractors at the refinery. At that time, HOVENSA awarded a contract to Wyatt, a newly created subsidiary of Wyatt Field Services Company ("Wyatt Field Services"), for services that Jacobs/IMC had been performing. Lloyd was then informed by Jacobs/IMC that he would be laid-off when

Jacobs/IMC's contract expired on December 31, 2001. [1] After Wyatt was awarded the new contract, it filled positions in its upper management with persons on the continental United States who were already employed by its parent corporation, Wyatt Field Services. These persons, according to Lloyd, were predominantly white.

In January 2002, Wyatt began to hire between 300 and 400 people in the Virgin Islands. Also in January 2002, Wyatt began requiring all [**4] applicants to sign a Dispute Resolution Agreement ("DRA") as a condition of having their applications considered. App. at 196. The DRA states, in relevant part:

> I recognize that differences may arise between Wyatt and me in relation to my application for employment. Both Wyatt and I agree to resolve any and all claims, disputes or controversies arising out of or relating to my application or candidacy for employment, the terms and conditions of my employment, and any claims arising from or relating to the employment relationship exclusively by final and binding arbitration before a neutral arbitrator pursuant to the American Arbitration Association's National Rules for the Resolution of Employment Disputes [("AAA Rules")] . . . . This agreement extends to disputes with or claims against Wyatt V.I., Inc., HOVENSA, L.L.C., and any of their related or affiliated companies, entities, or individuals (as intended third party beneficiaries).

App. at 37.

On January 9, 2002, Lloyd applied for employment with Wyatt and signed the DRA. He was not hired. Lloyd thereafter filed this action against both Wyatt and HOVENSA. The complaint alleged: (1) [*267] violation of the [**5] Federal Civil Rights Act of 1968; (2) violation of *Titles 10* and *24 of the Virgin Islands Code*; (3) wrongful discharge by HOVENSA; (4) breach of an implied contract of good faith and fair dealing by HOVENSA; and (5) negligent and/or intentional infliction of emotional distress. Lloyd requested punitive as well as compensatory damages.

On September 27, 2002, Wyatt filed a motion to compel arbitration, pursuant to the DRA, and to stay the proceedings pending arbitration. Lloyd opposed this motion, arguing that the agreement to arbitrate was unenforceable because AAA Rules 17, 18, and 34 with

---

[1] According to Lloyd, it was the custom at the HOVENSA refinery that the former employees of the outgoing contractor would be offered employment or transferred to the incoming contractor, but Wyatt did not adhere to that custom.

respect to confidentiality, AAA Rule 7 with respect to discovery procedure, and the DRA's fee-splitting provision were all unconscionable and against public policy. Lloyd also requested that the District Court allow him further discovery based on his belief that Wyatt's use of the DRA only in the Virgin Islands was motivated by bad faith or an otherwise improper motive. He claimed that, if Wyatt had indeed discriminated against Black or Hispanic Virgin Islanders through the use of the DRA, then the DRA would be violative of federal and Virgin Islands law and unenforceable as a matter of public policy.

[**6] On November 18, 2002, Wyatt filed a reply to Lloyd's memorandum opposing arbitration and HOVENSA filed a notice of joinder, thereby joining Wyatt's motion to compel arbitration. The District Court held a hearing on the motion on January 14, 2003, at which the testimony of several witnesses was taken.

After the evidentiary hearing, the District Court granted Wyatt's motion to compel arbitration and dismissed the complaint with prejudice. The District Court held that AAA Rules 17, 18, and 34, as incorporated into the DRA, were unconscionable. In addition, the District Court denied Lloyd's request for discovery on his theory that Wyatt used the DRA in a racially discriminatory manner. The District Court noted that Lloyd had never filed a motion for an order to conduct discovery, in accordance with _Fed. R. Civ. P. 7(b)_ or Local R. Civ. P. 7.1, during the nearly three months between his October 21, 2002 memorandum opposing arbitration and the evidentiary hearing. The District Court further held that the most Lloyd had shown was that Wyatt differentiated between applicants on the basis of residency and nothing more. Accordingly, the District Court found that the DRA had not been used as [**7] a tool of unlawful discrimination. Finally, the District Court severed the confidentiality provisions of AAA Rules 17, 18 and 34 from the DRA and granted Wyatt and HOVENSA's motion to compel arbitration. Rather than stay the proceedings pending arbitration, however, the District Court dismissed the action with prejudice because it found all of Lloyd's claims to be arbitrable and thus left no claims for adjudication by the District Court. [2] Lloyd

filed a timely notice of appeal and Wyatt subsequently filed a notice of cross-appeal.

II.

The District Court had jurisdiction [**8] over this case under _28 U.S.C. §§ 1331_ and _48 U.S.C. § 1612(a)_, because the case arose [*268] under, _inter alia_, Title VII, _42 U.S.C. §§ 2000e, et seq._ The District Court exercised supplemental jurisdiction over Lloyd's Virgin Islands claims pursuant to _28 U.S.C. § 1367_ and _48 U.S.C. § 1612(a)_.

_HN1_[↑] We have jurisdiction over this appeal and cross-appeal pursuant to _9 U.S.C. § 16(a)(3)_ because the District Court's order constituted a final decision with respect to an arbitration. _See Green Tree Fin. Corp.- Ala. v. Randolph, 531 U.S. 79, 88-89, 148 L. Ed. 2d 373, 121 S. Ct. 513 (2000)._ [3] We recognize that a district court's order compelling arbitration is usually an interlocutory order that cannot be appealed. _See 9 U.S.C. § 16(b)(2)._ [4] [**10] In this case, however, the District Court both compelled the parties to arbitrate their dispute and also dismissed the matter with prejudice. In _Green Tree_, the Supreme Court also considered _HN2_[↑] an order compelling arbitration and dismissing the plaintiff's [**9] case with prejudice, and, applying the well-established meaning of the term "final decision," ruled that such order

> plainly disposes of the entire case on the merits and leaves no part of it pending before the court. The FAA does permit parties to arbitration agreements to bring a separate proceeding in a district court to enter judgment on an arbitration award once it is made (or to vacate or modify it), but the existence of that remedy does not vitiate the finality of the District Court's resolution of the claims in the instant proceeding. _9 U.S.C. §§ 9, 10, 11._ The District Court's order was therefore "a final decision with respect to an arbitration" within the meaning of _§ 16(a)(3)_, and an appeal may be taken.

---

[2] The District Court also held that (1) the DRA's fee-splitting provision, because it provided that Lloyd would not have to pay any fees upon demonstrating financial hardship to the arbitrator, was not unconscionable, (2) AAA Rule 7's discovery procedures were not unconscionable, and (3) that the DRA was not unconscionable solely because of the existence of unequal bargaining power. These rulings are not at issue in

this appeal or cross-appeal.

[3] _9 U.S.C. § 16(a)(3)_ provides that _HN3_[↑] "an appeal may be taken from a final decision with respect to an arbitration that is subject to this title."

[4] _9 U.S.C. § 16(b)(2)_ provides that _HN4_[↑] "except as otherwise provided in _section 1292(b)_ of title 28, an appeal may not be taken from an interlocutory order . . . directing arbitration to proceed under _section 4_ of this title."

*531 U.S. at 86*. Accordingly, we have before us a final appealable order that we may address on the merits. [5]

III.

We first address the issue of whether the District Court erred in dismissing Lloyd's complaint with prejudice rather than staying the proceedings pending arbitration. On cross-appeal, Wyatt argues that pursuant to § 3 of the FAA, *9 U.S.C. § 3* [**11] , the District Court was required to grant Appellees' motion to stay the litigation of Lloyd's claims pending the outcome of the arbitration and that the dismissal of Lloyd's case was therefore improper. [6]

Courts of Appeals have reached different resolutions of the issue of whether a District Court has discretion to deny a motion for a stay pending arbitration and [*269] dismiss a complaint when it finds all claims before it to be arbitrable. *Compare  Choice Hotels Intern., Inc. v. BSR Tropicana Resort, Inc., 252 F.3d 707, 709-10 (4th Cir. 2001)* ("Notwithstanding the terms of  § 3, however, dismissal is a proper remedy when all of the issues presented in a lawsuit are arbitrable."), *and  Green v. Ameritech Corp., 200 F.3d 967, 973 (6th Cir. 2000)* [**12] ("The weight of authority clearly supports dismissal of the case when *all* of the issues raised in the district court must be submitted to arbitration."), *and  Bercovitch v. Baldwin School, Inc., 133 F.3d 141, 156 & n.21 (1st Cir. 1998)* (remanding a case to the District Court to decide whether to dismiss or stay, depending upon whether all issues before the court are arbitrable), *and  Alford v. Dean Witter Reynolds, Inc., 975 F.2d*

*1161, 1164 (5th Cir. 1992)*, *and  Sparling v. Hoffman Const. Co., Inc., 864 F.2d 635, 638 (9th Cir. 1988)*, *with  Adair Bus Sales, Inc. v. Blue Bird Corp., 25 F.3d 953, 955 (10th Cir. 1994)* (holding that where a defendant moved for a stay pending arbitration under  *9 U.S.C. § 3*, the District court erred in instead entering a dismissal and the proper course would have been to enter the stay). We have not heretofore had occasion to resolve the issue. [7] Today, we side with those courts that take the Congressional text at face value.

[**13] *Section 3 of the FAA* provides:

> *HN8*[⬆] If any suit or proceeding be brought in any of the courts of the United States upon any issue referable to arbitration under an agreement in writing for such arbitration, the court in which such suit is pending, upon being satisfied that the issue involved in such suit or proceeding is referable to arbitration under such an agreement, *shall on application of one of the parties stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement*, providing the applicant for the stay is not in default in proceeding with such arbitration.

*9 U.S.C. § 3* (emphasis added).

In accordance with the Supreme Court's instruction in *Green Tree*, *HN9*[⬆] we apply the "the plain language of the statutory text" in interpreting the FAA. *See  531 U.S. at 88* (holding that the plain meaning of the term "final decision" in *9 U.S.C. § 16(a)(3)* must be applied). Here, *HN10*[⬆] the plain language of  § 3 affords a district court no discretion to dismiss a case where one of the parties applies for a stay pending arbitration. The directive that the Court "shall" enter a stay [**14] simply cannot be read to say that the Court shall enter a stay in all cases except those in which all claims are arbitrable and the Court finds dismissal to be the preferable approach. On the contrary, *HN11*[⬆] the statute clearly states, without exception, that whenever suit is brought on an arbitrable claim, the Court "shall" upon application stay the litigation until arbitration has been concluded. In

---

[5] We note that although the District Court's order in this case granted the dismissal *with* prejudice, the District Court's opinion stated that the matter would be dismissed *without* prejudice. *See* App. at 15, 16. This disparity, however, does not affect our appellate jurisdiction. *See  Blair v. Scott Specialty Gases, 283 F.3d 595, 602 (3d Cir. 2002)* (holding that the jurisdictional ruling in *Green Tree*, where the action had been dismissed with prejudice, applies equally to a case that was dismissed without prejudice).

Moreover, we note that, while Wyatt does not rely on it, appellate jurisdiction over the cross-appeal may be exercised pursuant to *9 U.S.C. § 16(a)(1)(A)* (*HN5*[⬆] ) "An appeal may be taken from an order refusing a stay of any action under *section 3* of this title.").

[6] *HN6*[⬆] ] In construing the language of the FAA, our review is plenary. *See  Shenango Inc. v. Apfel, 307 F.3d 174, 192 n.19 (3d Cir. 2002)* *HN7*[⬆] ] ("The standard of review in cases of statutory construction is plenary.").

---

[7] We have twice commented on the issue in *dicta*, *see  Seus v. John Nuveen & Co., 146 F.3d 175, 179 (3d Cir. 1998)* and *Blair, 283 F.3d at 601*. In neither of those cases, however, did a party argue that a stay rather than a dismissal should have been entered and the Court accordingly had no occasion to decide whether *Section 3* is mandatory. Our comments with respect to that issue are thus not precedential. *Mariana v. Fisher, 338 F.3d 189, 201 (3d Cir. 2003)*.

this case, Wyatt requested a stay of the proceeding as part of his motion to compel arbitration. Accordingly, we hold that the District Court was obligated under *9 U.S.C. § 3* to grant the stay once it decided to order arbitration.

*HN12*[↑] We are free to disregard an unambiguous directive of Congress only in the **[*270]** rare instances where failing to do so produces a nonsensical result that could not have been intended. *Mitchell v. Horn, 318 F.3d 523, 535 (3d Cir. 2003) HN13*[↑] ("We do not look past the plain meaning [of statutory language] unless it produces a result 'demonstrably at odds with the intentions of its drafters' . . . or an outcome 'so bizarre that Congress could not have intended it.'"). This is not one of those rare exceptions. Congress adopted the **[**15]** FAA to establish, promote and facilitate a national policy strongly favoring arbitration as a process for resolving disputes. *Alexander v. Anthony Int'l, L.P., 341 F.3d 256, 263 (3d Cir. 2003)*. Holding that Congress intended to deprive the District Court of discretion to deny a stay produces results that effectively promote and facilitate arbitration.

Contrary to Lloyd's suggestion, the District Court has a significant role to play under the FAA even in those instances in which the District Court orders the arbitration of all claims. Even in those instances, the parties are entitled to seek the Court's assistance during the course of arbitration. For example, the FAA allows arbitrating parties to return to court for resolution of disputes regarding the appointment of an arbitrator or the filling of an arbitrator vacancy, *9 U.S.C. § 5*. Similarly, parties may ask the court to compel the attendance of witnesses, or to punish the witnesses for contempt, *9 U.S.C. § 7*. Then, after an arbitration award is rendered, a party is entitled to seek relief in the District Court in the form of a judgment on the award or an order vacating **[**16]** or modifying the award. *See 9 U.S.C. §§ 9, 10, 11*. If the plaintiff's case has been dismissed rather than stayed, the parties will have to file a new action each time the Court's assistance is required, with the attendant risk of having their case assigned to a new judge. On the other hand, if the court enters a stay of the action and retains jurisdiction, then proceedings under *§§ 5, 7, 9, 10, or 11* may be expedited, as the parties may simply return the to the same district judge presiding over the plaintiff's case.

There is an even more important reason, however, to hold that Congress meant exactly what it said. *HN14*[↑] Whenever a party is subjected to litigation on any issue and is found to be entitled to arbitrate that issue, *§ 3 of the FAA*, as we have noted, mandates that a stay be

entered by the District Court. The effect of that stay is twofold: it relieves the party entitled to arbitrate of the burden of continuing to litigate the issue while the arbitration process is on-going, and it entitles that party to proceed immediately to arbitration without the delay that would be occasioned by an appeal of the District Court's order to arbitrate. Under *§ 16 of the FAA* **[**17]** , *9 U.S.C. § 16*, whenever a stay is entered under *§ 3*, the party resisting arbitration is expressly denied the right to an immediate appeal. [8] The legislative scheme of the FAA thus reflects a policy decision that, if a district court determines that arbitration of a claim is called for, the judicial system's interference with the arbitral process should end unless and until there is a final award.

If an exception to the mandate of *§ 3* were to be fashioned, thus giving the District Court discretion to dismiss the action rather **[**18]** than enter a stay, a party who has been held entitled to arbitration would be **[*271]** deprived of an important benefit which the FAA intended him to have - the right to proceed with arbitration without the substantial delay arising from an appeal. Stated conversely, the effect of recognizing an exception to the mandatory directive of *§ 3* is to give the District Court the power to confer a right to an immediate appeal that would not otherwise exist.

While it is true that the suggested exception would extend only to cases where the claim subject to arbitration is not asserted along with other non-arbitrable claims - that is, where all asserted claims are arbitrable - none of the courts that have been willing to endorse it has suggested a reason why Congress might have wanted a party entitled to arbitration to be subjected to an immediate appeal or not depending on how his adversary has chosen to draft his complaint.

In short, a literal reading of *§ 3 of the FAA* not only leads to sensible results, it also is the only reading consistent with the statutory scheme and the strong national policy favoring arbitration. Accordingly, the District Court erred in refusing to enter a stay **[**19]** order.

Although we agree with Wyatt that the District Court's order dismissing Lloyd's case must be reversed, we

---

[8] *HN15*[↑] ] Under *9 U.S.C. § 16(a)(1)(A)* & *(B)*, a party may seek immediate appeal of an order refusing a to grant a stay under *§ 3 of the FAA* or an order denying a petition to compel arbitration under *§ 4*. Under *9 U.S.C. § 16(b)(1)* & *(2)*, however, an appeal may not be taken (except as provided by *28 U.S.C. § 1292(b)*) from an interlocutory order granting a stay under *§ 3* or compelling arbitration under *§ 4*.

reject the argument that reversal would, in turn, deprive us of jurisdiction to hear the merits of Lloyd's appeal. Relying in part on *Green Tree, 531 U.S. at 87 n.2*, Wyatt suggests that if we vacate the District Court's dismissal, we would be left with an unappealable interlocutory order. This argument misconstrues *Green Tree*. In that case, the Supreme Court noted that "had the District Court entered a stay instead of a dismissal . . ., that order would not be appealable." *Id.* (emphasis added). In this case, however, the District Court did not enter a stay. Wyatt's argument assumes that a conclusion that the District Court *should have* entered a stay is tantamount to the conclusion that the District Court *did* enter a stay. This is simply not the case. As we have noted *supra*, the order before us is a final decision that is appealable under *9 U.S.C. § 16(a)(3)*.

While it is clear that a court in this procedural context has jurisdiction to address the merits of the appeal, it may choose to defer to the FAA's policy [**20] favoring expeditious arbitration proceedings and decline to do so when it believes addressing the merits will prolong the ultimate resolution of the dispute. *See, e.g., Adair Bus Sales, 25 F.3d at 955*. Here, however, we are called upon to exercise our discretion after this appeal has been fully briefed and argued, and in a context where resolution of the merits is likely to advance, rather than prolong, the ultimate resolution of the dispute by arbitration. We will therefore proceed to consider the merits of Lloyd's appeal.

IV.

Lloyd argues before us for the first time that HOVENSA failed to demonstrate that it was an intended third party beneficiary of the DRA. It follows, according to Lloyd, that HOVENSA failed to affirmatively show that it had "standing" to compel arbitration. In his reply brief, Lloyd adds that HOVENSA clearly lacks standing to compel arbitration of certain of his claims against it because those claims predate the DRA and, accordingly, fall outside the scope of that agreement. Failure to raise these matters in the District Court should be excused, Lloyd insists, because "standing" to arbitrate is a jurisdictional matter that can be raised [**21] at any stage of the proceedings and because, in any event, finding a waiver would result in [*272] manifest injustice. [9] We are unpersuaded.

It is true that our case law, as well as the decisions of other courts, has often referred to a party's "standing" to compel arbitration. *See, e.g., In re Prudential Ins. Co. of Am. Sales Practice Litig. All Agent Actions, 133 F.3d 225, 229 (3d Cir. 1998)*; *Britton v. Co-op Banking Group, 916 F.2d 1405, 1413 (9th Cir. 1990)* [**22] . Lloyd is mistaken, however, in equating the doctrine of Article III constitutional standing with the "standing" required to compel arbitration in this case. **HN16**[↑] In order for there to be Article III standing, there must be a "case or controversy." That is, the following three elements must be present:

> First, the plaintiff must have suffered an injury in fact - an invasion of a legally protected interest which is (a) concrete and particularized, and (b) actual or imminent, not conjectural or hypothetical. Second, there must be a causal connection between the injury and the conduct complained of - the injury has to be fairly . . . traceable to the challenged action of the defendant, and not . . . the result [of] the independent action of some third party not before the court. Third, it must be likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision.

*Lujan v. Defenders of Wildlife, 504 U.S. 555, 560-61, 119 L. Ed. 2d 351, 112 S. Ct. 2130 (1992)* (citations and internal quotations and footnote omitted). Here, the party invoking federal jurisdiction was Lloyd, and his complaint presented the District Court with a [**23] "case or controversy" that has not yet been resolved. Thus, the District Court properly exercised its jurisdiction. The issues that Lloyd seeks to raise before us relate only to whether HOVENSA has or does not have a contract-based defense requiring arbitration rather than litigation of those claims. That issue is not a jurisdictional one. *See Prudential Ins. Co. of Am., 133 F.3d at 229* (referring to the contractual standing of a party to arbitrate its claims); *Paul Revere Variable Annuity Ins. Co. v. Zang, 248 F.3d 1, 5 n.2 (1st Cir. 2001)*.

Nor are we impressed with Lloyd's manifest injustice argument. It well may be that some of his claims against HOVENSA are not within the scope of the arbitration clause, but the FAA's scheme for the expeditious and

---

[9] Lloyd also contends that he had no opportunity to raise these matters in the District Court, pointing to the fact that HOVENSA did not join in Wyatt's motion to compel arbitration until after Lloyd had filed his memorandum in opposition

thereto. Nearly two months elapsed, however, between HOVENSA's initial reliance on the DRA and the oral argument on the motion to arbitrate. Lloyd, accordingly, had ample opportunity to dispute HOVENSA's status as an intended beneficiary of the DRA and to challenge the arbitrability of his claims against it.

efficient disposition of disputes by arbitration would be frustrated if parties were not required to put their arbitrability claims on the table when the District Court is called upon to address such issues. We believe it is not manifestly unjust to require parties to do so when the only consequence of a waiver is an alternative form of dispute resolution and no loss of substantive rights. **[\*\*24]** *See Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc., 473 U.S. 614, 628, 87 L. Ed. 2d 444, 105 S. Ct. 3346 (1985) HN17*[⬆] ("By agreeing to arbitrate a statutory claim, a party does not forgo the substantive rights afforded by the statute; it only submits to their resolution in an arbitral, rather than a judicial, forum. It trades the procedures and opportunity for review of the courtroom for the simplicity, informality, and expedition of arbitration.").

Our Circuit adheres to a "well established principle that **HN18**[⬆] it is inappropriate **[\*273]** for an appellate court to consider a contention raised on appeal that was not initially presented to the district court." *In re City of Phila. Litig., 158 F.3d 723, 727 (3d Cir. 1998)* (citing *Armbruster v. Unisys Corp., 32 F.3d 768, 772 n.4 (3d Cir. 1994)*; *Frank v. Colt Indus., Inc., 910 F.2d 90, 99-100 (3d Cir. 1990))*. Accordingly, we decline to sustain Lloyd's "standing to arbitrate" arguments. [10]

**[\*\*25]** V.

Finally, we address two arguments relating to the enforceability of the DRA. First, Lloyd challenges the District Court's holding that the DRA was not used in a discriminatory manner against public policy. [11] Second,

---

[10] As we have noted, the DRA allows HOVENSA, as an intended beneficiary, to compel arbitration of claims arising out of Lloyd's employment and employment application. While Lloyd urges that we should remand for fact finding on whether the parties intended HOVENSA to be a third party beneficiary, he has not made a proffer of evidence which would tend to show an intent contrary to that reflected on the face of the DRA.

[11] Lloyd also argues that, even if HOVENSA were an intended third-party beneficiary of the DRA, the provision granting it such status is unconscionable. He contends that the provision is unreasonably one-sided because while he is bound to arbitrate claims against HOVENSA, the provision does not require Wyatt to arbitrate claims against HOVENSA; nor does the DRA allow Lloyd to compel arbitration of any claims that HOVENSA may have against him. As an initial matter, we note that this argument appears to be a challenge to the fundamental principle of contract law that an intended

Wyatt's cross-appeal challenges the District Court's holding that AAA Rules 17, 18, and 34, which govern the confidentiality of certain aspects of the arbitration, are unconscionable and unenforceable. **HN19**[⬆] We exercise plenary review over questions regarding the validity and enforceability of an agreement to arbitrate. *Alexander, 341 F.3d at 263*. However, "to the extent that the district court predicated its decision on findings of fact, our standard of review is whether those findings were clearly erroneous." *Medtronic AVE, Inc. v. Advanced Cardiovascular Sys., Inc., 247 F.3d 44, 53-54 (3d Cir. 2001)* (citing *Kaplan v. First Options of Chicago, Inc., 19 F.3d 1503, 1509 (3d Cir. 1994))*.

**[\*\*26]** A.

Lloyd's primary argument on appeal is that Wyatt used the DRA in a discriminatory manner as part of a "purposeful scheme to contravene unambiguous Virgin Islands public policy, as reflected by the V.I. Civil Rights Act, *10 V.I.C. § 3*." Appellant's Br. at 12. Lloyd bases this claim on his assertion that Wyatt, by requiring Virgin Islands workers to sign the DRA as a condition of employment, uses "place of residence" as a "proxy" for race, color and national origin. Alternatively, Lloyd alleges that the DRA has a disparate impact upon Blacks and Hispanics who predominate in the Virgin Islands workforce. As a result, he urges, the DRA is unenforceable under the generally applicable contract defense that use of the agreement contravenes public policy. Lloyd also claims that the District Court erred in not allowing him an opportunity to conduct discovery into this issue.

Lloyd's generally applicable contract defense relies on *§ 178(1) of the Restatement (Second) of Contracts*, which provides:

> A promise or other term of an agreement is unenforceable on grounds of **[\*274]** public policy if legislation provides that it is unenforceable or the interest in its enforcement is **[\*\*27]** clearly outweighed in the circumstances by a public policy against the enforcement of such terms. [12]

---

beneficiary to a contract may enforce a promise made by the promisor, but not vice versa. *See Restatement (Second) of Contracts § 304* (1981). We need not address the issue, however, because it was never presented to the District Court and was therefore waived. *See In re City of Phila. Litig., 158 F.3d at 727*.

[12] Wyatt argues on appeal that Lloyd waived his public policy argument by not relying on *§ 178* of the Restatement (Second)

369 F.3d 263, *274; 2004 U.S. App. LEXIS 9355, **27

Lloyd also cites Title VII and the Virgin Islands Civil Rights Act, _10 V.I. Code Ann. § 1 et seq.,_ as illustrative of a strong federal and local public policy against employment discrimination. [13]

[**28] Significantly, Lloyd does not allege that any particular promise or term in the DRA was discriminatory. Rather, he claims that Wyatt used the DRA in a discriminatory manner. Even assuming, however, that _§ 178_ of the Restatement may be applied to a facially neutral contract, Lloyd's argument must still fail as he has proffered no evidence that Wyatt's use of the DRA was in any way discriminatory.

Lloyd's argument is based solely on two facts: (1) that Wyatt began using the DRA after its upper management was hired; and (2) that Wyatt's parent company, Wyatt Field Services, does not use the DRA. Wyatt does not contest these facts. Instead, it admits that it began using the DRA in the Virgin Islands in January 2002. Wyatt responds, however, that this timing explains why its upper management employees, who were hired before January 2002, were not required to sign the DRA. The record indicates that all persons who applied for employment at Wyatt after January 2002 were obligated to sign the DRA. Wyatt proffered that the reason it began using the DRA was concern for the high cost of employee litigation claims in the Virgin Islands. It adds that its parent does not, and has not, engaged [**29] in any business in the Virgin Islands. Lloyd has not addressed Wyatt's explanations or claimed that they are pretextual.

_HN20_[⬆] The burden of proving a generally applicable contract defense lies with the party challenging the contract provision. Cf. _Harris v. Green Tree Fin. Corp., 183 F.3d 173, 181 (3d Cir. 1999)_ ("The party

---

of Contracts in the District Court. While it is true that Lloyd never specifically relied upon the Restatement, he nonetheless expressly argued that the DRA was applied in a discriminatory manner and unenforceable as a matter of public policy. He therefore preserved the argument for appeal and we will address it on the merits.

[13] Lloyd further cites, for the first time on appeal, _24 V.I. Code Ann. § 74a(b),_ which provides that "an employer subject to this chapter may not require an employee to arbitrate a dispute as a condition of employment." _Section 74a_ was enacted on September 18, 2002, one month before Lloyd filed his memorandum in opposition to Wyatt's motion to compel arbitration. Lloyd did not, however, bring this statute to the attention of the District Court as a source of public policy and we therefore need not address it.

challenging a contract provision as unconscionable generally bears the burden of proving unconscionability."); E. Allen Farnworth, _Farnsworth on Contracts_ § 4.28 & n.14 (3d ed. 1999) ("The party asserting the defense of unconscionability must prove it."). Here, Lloyd has failed to present any evidence in attempting to meet his burden. We will therefore affirm the District Court's holding that the DRA was not unenforceable as violative of public policy.

With respect to Lloyd's assignment of error regarding his request for discovery, _HN21_[⬆] we review a district court's denial of a discovery motion for an abuse of discretion. _See Seus, 146 F.3d at 178_ (citing _Marroquin-Manriquez v. I.N.S., 699 F.2d 129, 134 (3d Cir. 1983) HN22_[⬆] ("It is well established that the scope and conduct of discovery are within the sound discretion [**30] of the trial court and that after final judgment [*275] of the district court or final agency order, our review is confined to determining if that discretion has been abused." (citations omitted))). Lloyd argues that the District Court erred in not considering his request to conduct discovery, but he does not cite any motion that the court denied or allege that he was deprived of the opportunity to conduct discovery on his own. The Federal Rules of Civil Procedure allow for numerous discovery mechanisms that do not require leave of the court. _See Fed. R. Civ. P. 30(a)(1)_ (oral depositions), _31(a)(1)_ (written depositions), _33(a)_ (interrogatories), _34(b)_ (production of documents). Lloyd does not state whether he ever attempted to use any of these avenues of discovery to support his claim. We therefore reject his assignment of error.

B.

On cross-appeal, Wyatt argues that the District Court erred in holding that the confidentiality provisions of AAA Rules 17, 18, and 34, as incorporated in the DRA, were unconscionable and severable from the remainder of the DRA. We recently addressed an identical issue in _Parilla v. IAP Worldwide Services VI, Inc. , 368 F.3d 269 (3d Cir. 2004)_ [**31] and concluded that the district court in that case had erred in holding these AAA Rules unconscionable. The factual circumstances in this case are substantially the same as those in _Parilla_ and the parties have also presented substantially the same arguments that were presented in that case. For the reasons given in _Parilla,_ we hold that the District Court's ruling on this issue was in error. Accordingly, AAA Rules 17, 18, and 34 should not have been held unconscionable or severed from the DRA.

VI.

For the reasons set forth above, we will reverse the District Court's order and will remand with instructions to enter an order compelling arbitration pursuant to the Dispute Resolution Agreement, as written, and staying the proceedings in this case pending arbitration.

**Concur by:** BECKER

# Concur

BECKER, _Circuit Judge_, concurring:

I join Parts I, II, and III of the majority's opinion in full. I concur in Parts IV and V with the understanding that this case, because it raises substantial and unresolved questions of considerable importance to those involved in employment litigation in the Virgin Islands, is the rare one in which **[**32]** we will exercise our discretion to address the merits of a decision that should have resulted in a stay pending arbitration, rather than dismissal.

# DCK North Am., LLC v. Burns & Roe Servs. Corp.

United States District Court for the Western District of Pennsylvania

October 31, 2016, Decided; October 31, 2016, Filed

Civil Action No. 2:16-cv-00994

**Reporter**

218 F. Supp. 3d 465 *; 2016 U.S. Dist. LEXIS 150223 **; 2016 WL 6441574

DCK NORTH AMERICA, LLC, Plaintiff, v. BURNS AND ROE SERVICES CORP., Defendant.

## Core Terms

arbitration, parties, arbitration provision, arbitration clause, completion, disputes, motion to compel arbitration, performance of a contract, ambiguity, questions, courts, motion to dismiss, time limit, incorporation, unmistakable, arbitration agreement, pending arbitration, parties' agreement, quotations

## Case Summary

### Overview

HOLDINGS: [1]-In an arbitration dispute under the FAA, the court had to decide the question of arbitrability because the parties could not be said to have clearly and unmistakably provided for an arbitrator, rather than a court, to decide the question or arbitrability; [2]-The parties' arbitration provision met the standard for referral to arbitration because it was, without question, susceptible of an interpretation that covered the asserted dispute, and resolving all doubts as to whether an arbitration clause might be interpreted to cover the asserted dispute in favor of arbitration, the court could not, in light of the agreement's ambiguity regarding the completion of contract performance, state with positive assurance that the dispute was not meant to be arbitrated.

### Outcome

Motion granted. Case stayed and administratively closed pending arbitration.

## LexisNexis® Headnotes

Business & Corporate Compliance > ... > Arbitration > Federal Arbitration Act > Scope
Civil Procedure > ... > Arbitration > Federal Arbitration Act > Scope

Civil Procedure > ... > Defenses, Demurrers & Objections > Motions to Dismiss > Failure to State Claim

*HN1*[🔻] **Arbitration, Federal Arbitration Act**

With respect to the *Fed. R. Civ. P. 12(b)(6)* standard, where the affirmative defense of arbitrability of claims is apparent on the face of a complaint (or documents relied upon in the complaint), the FAA, *9 U.S.C.S. § 1 et seq.*, would favor resolving a motion to compel arbitration under a motion to dismiss standard without the inherent delay of discovery. That approach appropriately fosters the *Federal Arbitration Act's* interest in speedy dispute resolution. In those circumstances, the question to be answered becomes whether the assertions of the complaint, given the required broad sweep, would permit adduction of proofs that would provide a recognized legal basis for rejecting the affirmative defense.

Business & Corporate Compliance > ... > Arbitration > Federal Arbitration Act > Orders to Compel Arbitration
Civil Procedure > ... > Arbitration > Federal Arbitration Act > Orders to Compel Arbitration

Civil Procedure > ... > Defenses, Demurrers & Objections > Motions to Dismiss > Failure to State Claim

Civil Procedure > Judgments > Summary Judgment

Page 2 of 11

218 F. Supp. 3d 465, *465; 2016 U.S. Dist. LEXIS 150223, **150223

Civil Procedure > ... > Summary
Judgment > Opposing Materials > Motions for
Additional Discovery

*HN2*[⬇️] **Federal Arbitration Act, Orders to Compel Arbitration**

A *Fed. R. Civ. P. 12(b)(6)* standard is inappropriate when either the motion to compel arbitration does not have as its predicate a complaint with the requisite clarity to establish on its face that the parties agreed to arbitrate, or the opposing party has come forth with reliable evidence that is more than a naked assertion that it did not intend to be bound by the arbitration agreement, even though on the face of the pleadings it appears that it did. Under the first scenario, arbitrability not being apparent on the face of the complaint, the motion to compel arbitration must be denied pending further development of the factual record. The second scenario will come into play when the complaint and incorporated documents facially establish arbitrability but the non-movant has come forward with enough evidence in response to the motion to compel arbitration to place the question in issue. At that point, the *Rule 12(b)(6)* standard is no longer appropriate, and the issue should be judged under the *Fed. R. Civ. P. 56* standard.

Business & Corporate
Compliance > ... > Arbitration > Federal Arbitration
Act > Arbitration Agreements
Civil Procedure > ... > Arbitration > Federal
Arbitration Act > Arbitration Agreements

Business & Corporate
Compliance > ... > Arbitration > Federal Arbitration
Act > Orders to Compel Arbitration
Civil Procedure > ... > Arbitration > Federal
Arbitration Act > Orders to Compel Arbitration

*HN3*[⬇️] **Federal Arbitration Act, Arbitration Agreements**

Under either of the scenarios where arbitrability is not apparent on the face of the complaint or when the complaint and incorporated documents facially establish arbitrability but the non-movant has come forward with enough evidence in response to the motion to compel arbitration to place the question in issue, a restricted inquiry into factual issues will be necessary to properly evaluate whether there was a meeting of the minds on the agreement to arbitrate, and the non-movant must be

given the opportunity to conduct limited discovery on the narrow issue concerning the validity of the arbitration agreement. In such circumstances, *Fed. R. Civ. P. 56* furnishes the correct standard for ensuring that arbitration is awarded only if there is an express, unequivocal agreement to that effect.

Business & Corporate
Compliance > ... > Arbitration > Federal Arbitration
Act > Arbitration Agreements
Civil Procedure > ... > Arbitration > Federal
Arbitration Act > Arbitration Agreements

Civil Procedure > ... > Defenses, Demurrers &
Objections > Motions to Dismiss > Failure to State
Claim

*HN4*[⬇️] **Federal Arbitration Act, Arbitration Agreements**

Where the complaint and attached documents establish on their face that a plaintiff agreed to be bound by the terms of a provision for arbitration, that would trigger a *Fed. R. Civ. P. 12(b)(6)* standard.

Civil Procedure > ... > Defenses, Demurrers &
Objections > Motions to Dismiss > Failure to State
Claim

Civil
Procedure > ... > Pleadings > Complaints > Require
ments for Complaint

*HN5*[⬇️] **Motions to Dismiss, Failure to State Claim**

Under the familiar *Fed. R. Civ. P. 12(b)(6)* standard, a plaintiff's complaint must allege facts sufficient to show that the plaintiff has a plausible claim for relief. Courts must accept all well-pleaded facts as true and disregard any legal conclusions.

Civil Procedure > ... > Alternative Dispute
Resolution > Arbitration > Arbitrability
Business & Corporate Compliance > Alternative
Dispute Resolution > Arbitration > Arbitrability

Business & Corporate
Compliance > ... > Arbitration > Federal Arbitration
Act > Scope

Page 3 of 11

218 F. Supp. 3d 465, *465; 2016 U.S. Dist. LEXIS 150223, **150223

Civil Procedure > ... > Arbitration > Federal Arbitration Act > Scope

Business & Corporate Compliance > ... > Arbitration > Federal Arbitration Act > Arbitration Agreements
Civil Procedure > ... > Arbitration > Federal Arbitration Act > Arbitration Agreements

Business & Corporate Compliance > ... > Arbitration > Federal Arbitration Act > Stay Pending Arbitration
Civil Procedure > ... > Arbitration > Federal Arbitration Act > Stay Pending Arbitration

Business & Corporate Compliance > Contracts > Contract Conditions & Provisions > Arbitration Clauses
Contracts Law > Contract Conditions & Provisions > Arbitration Clauses

*HN6*[🔻] **Arbitration, Arbitrability**

The Federal Arbitration Act (FAA), *9 U.S.C.S. § 1 et seq.*, governs written agreements to arbitrate in contracts involving interstate commerce. *9 U.S.C.S. §§ 1 et seq.* The FAA gave rise to a framework of federal substantive law governing courts' duty to honor agreements to arbitrate. Once a court determines a valid arbitration agreement exists, questions involving whether a suit or proceeding is referable to arbitration under an agreement to arbitrate and the interpretation and construction of such arbitration agreements are determined by reference to federal law. And once a court is satisfied that the parties' dispute is arbitrable, it must stay a pending lawsuit on application of one of the parties until such arbitration is concluded and order the parties to proceed to arbitration consistent with their agreement. *9 U.S.C.S. §§ 3-4.*

Business & Corporate Compliance > ... > Arbitration > Federal Arbitration Act > Arbitration Agreements
Civil Procedure > ... > Arbitration > Federal Arbitration Act > Arbitration Agreements

Civil Procedure > Preliminary Considerations > Federal & State Interrelationships

Business & Corporate Compliance > ... > Arbitration > Federal Arbitration Act > Scope

Civil Procedure > ... > Arbitration > Federal Arbitration Act > Scope

Business & Corporate Compliance > Contracts > Contract Conditions & Provisions > Arbitration Clauses
Contracts Law > Contract Conditions & Provisions > Arbitration Clauses

*HN7*[🔻] **Federal Arbitration Act, Arbitration Agreements**

Federal law governs agreements to arbitrate that fall within the FAA's, *9 U.S.C.S. § 1 et seq.*, scope even where a federal court is sitting in diversity. Federal law governs agreements to arbitrate once a court determines there exists a valid agreement to arbitrate.

Business & Corporate Compliance > ... > Arbitration > Federal Arbitration Act > Arbitration Agreements
Civil Procedure > ... > Arbitration > Federal Arbitration Act > Arbitration Agreements

Business & Corporate Compliance > ... > Arbitration > Federal Arbitration Act > Orders to Compel Arbitration
Civil Procedure > ... > Arbitration > Federal Arbitration Act > Orders to Compel Arbitration

Business & Corporate Compliance > Contracts > Contract Conditions & Provisions > Arbitration Clauses
Contracts Law > Contract Conditions & Provisions > Arbitration Clauses

*HN8*[🔻] **Federal Arbitration Act, Arbitration Agreements**

Under the FAA, *9 U.S.C.S. § 1 et seq.*, framework, arbitration is a matter of contract and a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit. When a party makes a motion to compel arbitration, a court must therefore resolve two issues: (1) whether the parties are bound by a given arbitration clause, and (2) whether an arbitration clause in a concededly binding contract applies to the parties' dispute. In other words, where the parties disagree whether a particular dispute is arbitrable, a court must assist them by determining whether the parties have submitted a particular dispute to arbitration.

Page 4 of 11

218 F. Supp. 3d 465, *465; 2016 U.S. Dist. LEXIS 150223, **150223

Civil Procedure > ... > Alternative Dispute
Resolution > Arbitration > Arbitrability
Business & Corporate Compliance > Alternative
Dispute Resolution > Arbitration > Arbitrability

Evidence > Inferences &
Presumptions > Presumptions

Business & Corporate
Compliance > Contracts > Contract Conditions &
Provisions > Arbitration Clauses
Contracts Law > Contract Conditions &
Provisions > Arbitration Clauses

*HN9*[ ] **Arbitration, Arbitrability**

The question whether the parties have submitted a
particular dispute to arbitration is presumptively for
judicial determination unless the parties agreed to
arbitrate it. The presumption in favor judicial
determination is quite strong: the parties must have
clearly and unmistakably provided otherwise in order to
overcome it. Silence or ambiguity on the question of
who should decide arbitrability is typically construed in
favor of judicial determination. Because not all questions
are for judicial resolution, however, a court also looks to
certain presumptions regarding who decides arbitrability
when the parties' agreement is silent. Courts presume
the parties intended courts, not arbitrators, to decide
questions such as whether the parties are bound by a
given arbitration clause and whether an arbitration
clause in a concededly binding contract applies to the
parties' dispute. On the other hand, courts presume the
parties intended an arbitrator to decide the meaning and
application of procedural preconditions to arbitration.
Procedural preconditions to arbitration include issues
such as waiver, delay, notice, laches, estoppel, and
prerequisites such as time limits.

Civil Procedure > ... > Alternative Dispute
Resolution > Arbitration > Arbitrability
Business & Corporate Compliance > Alternative
Dispute Resolution > Arbitration > Arbitrability

Business & Corporate
Compliance > ... > Arbitration > Federal Arbitration
Act > Arbitration Agreements
Civil Procedure > ... > Arbitration > Federal
Arbitration Act > Arbitration Agreements

Business & Corporate
Compliance > Contracts > Contract Conditions &
Provisions > Arbitration Clauses
Contracts Law > Contract Conditions &
Provisions > Arbitration Clauses

*HN10*[ ] **Arbitration, Arbitrability**

The prevailing rule across jurisdictions is that
incorporation by reference of rules granting the
arbitrator the authority to decide questions of
arbitrability—especially the American Arbitration
Association Rules—is clear and unmistakable evidence
that the parties agreed to submit arbitrability questions
to the arbitrators.

Business & Corporate
Compliance > Contracts > Contract Conditions &
Provisions > Arbitration Clauses
Contracts Law > Contract Conditions &
Provisions > Arbitration Clauses

Evidence > Inferences &
Presumptions > Presumptions

Contracts Law > Contract
Interpretation > Ambiguities & Contra Proferentem

Contracts Law > Contract Interpretation

Business & Corporate
Compliance > ... > Arbitration > Federal Arbitration
Act > Orders to Compel Arbitration
Civil Procedure > ... > Arbitration > Federal
Arbitration Act > Orders to Compel Arbitration

*HN11*[ ] **Contract Conditions & Provisions,
Arbitration Clauses**

When interpreting and applying contractual arbitration
provisions, federal substantive law reflects a strong
presumption in favor of arbitration. Federal courts
liberally construe arbitration clauses—so much so that
any doubts as to whether an arbitration clause may be
interpreted to cover the asserted dispute should be
resolved in favor of arbitration. Although the plain
language of a contract always controls, any ambiguities
regarding the scope of arbitrable issues should be
resolved in favor of arbitration. In other words, the
strong presumption in favor of arbitration applies unless
a court can state with positive assurance that the
dispute was not meant to be arbitrated. A motion to

Page 5 of 11

218 F. Supp. 3d 465, *465; 2016 U.S. Dist. LEXIS 150223, **150223

compel arbitration under a valid arbitration clause should not be denied unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute.

Civil Procedure > ... > Alternative Dispute Resolution > Arbitration > Arbitrability
Business & Corporate Compliance > Alternative Dispute Resolution > Arbitration > Arbitrability

Evidence > Inferences & Presumptions > Presumptions

Business & Corporate Compliance > Contracts > Contract Conditions & Provisions > Arbitration Clauses
Contracts Law > Contract Conditions & Provisions > Arbitration Clauses

Business & Corporate Compliance > ... > Arbitration > Federal Arbitration Act > Arbitration Agreements
Civil Procedure > ... > Arbitration > Federal Arbitration Act > Arbitration Agreements

*HN12*[⤓] **Arbitration, Arbitrability**

In determining when the presumption in favor of arbitration applies, the Third Circuit has added an additional layer of analysis. Where the arbitration provision is narrowly crafted, a court cannot presume, as the court might if it were drafted broadly, that the parties agreed to submit all disputes to arbitration. In those cases, the strong presumption in favor of arbitrability does not apply. Narrow arbitration provisions are those that, for example, expressly limit the range of arbitrable disputes to a single category or function, such as limiting the arbitrator's power to modifying a penalty where only disciplinary layoffs or discharges which violate the terms of an agreement are involved. Broad arbitration provisions, on the other hand, are those which apply to any dispute arising out of an agreement. Where the provision is broad, the presumption of arbitrability applies, and only the most forceful evidence of a purpose to exclude a particular grievance from arbitration can prevail.

**Counsel:** [**1] For DCK NORTH AMERICA, LLC, Plaintiff: David V. Weicht, LEAD ATTORNEY, Leech, Tishman, Fuscaldo & Lampl, Pittsburgh, PA; Donald M. Lund, Ryan O. Hemminger, LEAD ATTORNEYS, Leech Tishman Fuscaldo & Lampl, LLC, Pittsburgh, PA.

For BURNS AND ROE SERVICES CORPORATION, Defendant: Jaimee L. Nardiello, LEAD ATTORNEY, PRO HAC VICE, Zetlin & De Chiara, New York, NY; Michael J. Vardaro, LEAD ATTORNEY, PRO HAC VICE, Zetlin & De Chiara, LLP, New York, NY; Samuel H. Simon, LEAD ATTORNEY, Matthew J. Lautman, Houston Harbaugh, Pittsburgh, PA.

**Judges:** Mark R. Hornak, United States District Judge.

**Opinion by:** Mark R. Hornak

# Opinion

### [*468] Mark R. Hornak, United States District Judge

This is an arbitration dispute in which the parties are currently litigating the question of where they should be litigating—in court or in arbitration. The parties agreed in writing to arbitrate certain disputes. DCK now takes the position that the parties' arbitration provision does not apply to the claims in this case. For the following reasons, Burns and Roe's Motion to Dismiss or Stay Pending Arbitration or Mediation (ECF No. 5) will be granted, this case will be stayed pending arbitration, and the parties will be ordered to arbitration in the manner they [**2] have agreed.

## I. BACKGROUND

Plaintiff DCK North America, LLC ("DCK") filed this action alleging, among other things, that Defendant Burns and Roe Services Corporation ("Burns and Roe") breached its contractual obligation to compensate DCK for over eight million dollars ($8,000,000) of unpaid costs incurred during joint construction projects in Guantanamo Bay, Cuba. ECF No. 1-2. Burns and Roe timely removed the case to this Court from the Court of Common Pleas of Allegheny County, Pennsylvania on the basis of diversity jurisdiction. ECF No. 1. Before the Court is Burns and Roe's Motion to Dismiss or Stay Pending Arbitration or Mediation. ECF No. 5. The parties fully briefed the issues and the Court heard oral argument on September 6, 2016. ECF Nos. 5, 6, 12, 13, 14, 20, 21, 22, 23.

The basic facts are undisputed. Eight years ago, DCK and Burns and Roe entered into a Joint Venture Agreement ("Agreement") to bid on construction project contracts for the United States Navy at Guantanamo Bay, Cuba, and to perform such contracts should they

Page 6 of 11

218 F. Supp. 3d 465, *468; 2016 U.S. Dist. LEXIS 150223, **2

be awarded the bids.[1] ECF No. 1-2 at 4, 25. The Agreement essentially provides that DCK and Burns and Roe would front capital for the construction projects [**3] in equal amounts, with each holding a fifty percent interest, and likewise split any losses, costs, and liabilities down the middle. *Id.* If, for example, one joint venturer contributed capital or incurred losses in excess of fifty percent, the other joint venturer would then contribute additional capital to maintain the equal division of interests. *Id.*

DCK now alleges Burns and Roe shorted it over eight million dollars. *Id.* The shortfall, according to DCK, is based upon the parties' respective monetary contributions for labor, manpower, and equipment. *Id.* DCK filed suit, and Burns and Roe subsequently filed its Motion to Compel Arbitration (ECF No. 5).

The parties' Agreement contains the following arbitration provision:

> Any controversy or claim arising out of or relating to this Agreement or the breach thereof which cannot be resolved in accordance with the foregoing processes while in the course of performance of the Contract(s) shall be settled by arbitration in accordance with the Construction Industry [**4] Arbitration Rules [*469] of the American Arbitration Association and any award tendered shall be final and binding upon the parties hereto, and judgment on the award rendered by the Arbitrator or Arbitrators may be entered in any Court having jurisdiction thereof. Any controversy or claim arising after the completion of the Construction Contract has been performed shall be resolved in a court of law.

ECF No. 1-2 at 23-24. Neither party disputes the validity or the binding nature, generally speaking, of the arbitration provision.

The plain language of the Agreement appears to draw a line between disputes referable to arbitration and disputes that should be settled in court: Those disputes arising during performance of the Contract(s) shall be settled by arbitration and those arising after completion of performance of the Construction Contract shall be settled in court. But at oral argument on Burns and Roe's motion, it became quite clear that the parties have

logical and reasonable positions in support of their differing views as to whether performance on the Contract(s) or the Construction Contract is complete. The parties agree that physical construction of the projects—the labor—is complete. [**5] The parties also agree, though, that they have not submitted a certificate of completion to the Navy, nor has the Navy approved all of their construction work. Thus, it would appear that the arbitrability of the parties' dispute thus turns on a mixed question of fact and contractual interpretation: whether performance of the Contract(s) and/or the Construction Contract was 'complete' when this dispute arose.

Upon closer scrutiny of the parties' Agreement, the line of demarcation as to contract completion is anything but sharp. The Agreement defines the term "Contract(s)" to include several of the Navy contracts the parties bid on as part of their joint venture. ECF No. 1-2 at 10. It does not, however, provide a definition for what the parties refer to as "the Construction Contract." Nor does it make clear what goalpost the parties contemplated for completion of performance on the Construction Contract such that arbitration would no longer be appropriate. The parties might, for example, have contemplated Contract completion as having occurred once the physical labor had been performed. They might have contemplated completion when the Navy approved the final buildouts. They might have [**6] contemplated completion when all outstanding payments had been received. Or the parties might not have contemplated this question at all, at least in terms of providing any definitional language in the Contract documents.

At the Court's request, the parties submitted supplemental briefing addressing who must decide the question of when "after completion of the Construction Contract has been performed" occurs. ECF Nos. 22, 23. The parties also addressed whether a reference in the parties' arbitration provision to the Construction Industry Arbitration Rules of the American Arbitration Association (hereinafter "AAA Rules" or "Rules") incorporates those Rules into the provision, and, if so, whether such incorporation requires that the dispute be arbitrated in and of itself. *Id.* DCK contends this Court must decide the question presented here and argues (seemingly as a matter of law) that the parties' dispute is not arbitrable under the Agreement. ECF No. 23. Burns and Roe contends an arbitrator must determine the issue of Contract completion and, beyond that, the dispute in any event falls within the arbitration provision. ECF No. 22.

---

[1] DCK Worldwide, LLC originally entered the Agreement before assigning it to the Plaintiff in this suit, DCK. ECF No. 1-2 at 25-26. Neither party disputes the validity of the assignment.

Page 7 of 11

218 F. Supp. 3d 465, *469; 2016 U.S. Dist. LEXIS 150223, **6

## II. LEGAL STANDARD

The United States Court of Appeals for **[\*\*7]** the Third Circuit recently clarified the standards to be applied to motions to compel arbitration, identifying the circumstances **[\*470]** under which district courts should apply the standard for a motion to dismiss, as provided by *Rule 12(b)(6) of the Federal Rules of Civil Procedure*, and those under which they should apply the summary judgment standard found in *Rule 56*. *See Guidotti v. Legal Helpers Debt Resolution, L.L.C., 716 F.3d 764, 773-76 (3d Cir. 2013)*. *HN1*[↑] With respect to the *Rule 12(b)(6)* standard, the court held:

> Where the affirmative defense of arbitrability of claims is apparent on the face of a complaint (or documents relied upon in the complaint), the FAA would favor resolving a motion to compel arbitration under a motion to dismiss standard without the inherent delay of discovery. That approach appropriately fosters the [*Federal Arbitration Act*]'s interest in speedy dispute resolution. In those circumstances, the question to be answered becomes whether the assertions of the complaint, given the required broad sweep, would permit adduction of proofs that would provide a recognized legal basis for rejecting the affirmative defense.

*Id. at 773-74* (internal citations and quotations omitted). With respect to the *Rule 56* standard, the court held:

> *HN2*[↑] [A] *Rule 12(b)(6)* standard is inappropriate when either the motion to compel arbitration does not have as its predicate a complaint **[\*\*8]** with the requisite clarity to establish on its face that the parties agreed to arbitrate, or the opposing party has come forth with reliable evidence that is more than a naked assertion that it did not intend to be bound by the arbitration agreement, even though on the face of the pleadings it appears that it did. Under the first scenario, arbitrability not being apparent on the face of the complaint, the motion to compel arbitration must be denied pending further development of the factual record. The second scenario will come into play when the complaint and incorporated documents facially establish arbitrability but the non-movant has come forward with enough evidence in response to the motion to compel arbitration to place the question in issue. At that point, the *Rule 12(b)(6)* standard is no longer appropriate, and the issue should be judged under the *Rule 56* standard. *HN3*[↑] Under either of

those scenarios, a restricted inquiry into factual issues will be necessary to properly evaluate whether there was a meeting of the minds on the agreement to arbitrate, and the non-movant must be given the opportunity to conduct limited discovery on the narrow issue concerning the validity of the arbitration agreement. **[\*\*9]** In such circumstances, *Rule 56* furnishes the correct standard for ensuring that arbitration is awarded only if there is an express, unequivocal agreement to that effect.

*Id. at 774-75* (internal citations and quotations omitted).

The *Guidotti* court went on to explain that *HN4*[↑] where the complaint and attached documents "establish on their face that [a plaintiff] agreed to be bound by the terms of . . . [a] provision for arbitration," that would "trigger[] a *Rule 12(b)(6)* standard." *Id. at 776*.

Here, DCK attached a copy of the parties' Agreement to its Complaint, and it critically relied upon that Agreement—which contains the arbitration provision—to state its claim. ECF No. 1-2 at 4-5, 23-24. Neither party—in pleadings, motions, responses, replies, supplemental briefings, or at oral argument—has disputed the validity or enforceability, generally speaking, of the Agreement's arbitration provision. The Court therefore concludes that under *Guidotti*, a motion to dismiss standard is appropriate.[2]

**[\*471]** *HN5*[↑] Under the familiar *Rule 12(b)(6)* standard, Plaintiff's Complaint must allege facts "sufficient to show that the plaintiff has a 'plausible claim for relief.'" *Fowler v. UPMC Shadyside, 578 F.3d 203, 211 (3d Cir.2009)* (quoting *Ashcroft v. Iqbal, 556 U.S. 662, 679, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009))*. Courts must accept all "well-pleaded facts as true" and disregard any legal conclusions. *Fowler, 578 F.3d at 210-11* (citing *Iqbal, 556 U.S. at 677*).

## III. ANALYSIS

---

[2] In addition or in the alternative, for the reasons set forth in this Opinion, the Court finds it unnecessary to proceed with discovery on any underlying factual questions. In light of the inextricably intertwined issues in this contract interpretation **[\*\*10]** dispute—which, as noted below, federal law dictates must be resolved in favor of arbitration—addressing such factual questions here would not aid in the resolution of Burns and Roe's Motion.

Page 8 of 11

218 F. Supp. 3d 465, *471; 2016 U.S. Dist. LEXIS 150223, **10

HN6[⬆] The *Federal Arbitration Act ("FAA"), 9 U.S.C. § 1 et seq.*, governs written agreements to arbitrate in contracts involving interstate commerce.[3] *9 U.S.C. §§ 1 et seq.*; *see also Prima Paint Corp. v. Flood & Conklin Mfg. Co., 388 U.S. 395, 400-01, 87 S. Ct. 1801, 18 L. Ed. 2d 1270 (1967)*. The FAA gave rise to a framework of federal substantive law governing courts' duty to honor agreements to arbitrate. *Century Indemnity Co. v. Certain Underwriters at Lloyd's, London, 584 F.3d 513, 522 (3d Cir. 2009)*. Once a court determines a valid arbitration agreement exists, as is the case here, questions involving "[w]hether a suit or proceeding is referable to arbitration under an agreement to arbitrate . . . [and the] interpretation and construction of such arbitration agreements are . . . determined by reference to federal law." *Becker Autoradio, 585 F.2d at 43* (internal citations and quotations omitted).[4] And once a court is satisfied that the parties' dispute is arbitrable, it must stay a pending lawsuit on application of one [**11] of the parties until such arbitration is concluded and order the parties to proceed to arbitration consistent with their agreement. *See 9 U.S.C. §§ 3-4*; *Puleo v. Chase Bank USA, N.A., 605 F.3d 172, 181-82 (3d Cir. 2010)*; *Lloyd v. Hovensa, L.L.C., 369 F.3d 263, 269 (3d Cir. 2004)*.

HN8[⬆] Under the FAA framework, "arbitration is a matter of contract and a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit." *Howsam v. Dean Witter Reynolds, Inc., 537 U.S. 79, 83, 123 S. Ct. 588, 154 L. Ed. 2d 491 (2002)*. When a party makes a motion to compel arbitration, a court must therefore resolve two issues:

(1) whether the parties are bound [**12] by a given arbitration clause, and (2) whether an arbitration clause in a concededly binding contract applies to the parties' dispute. *See, BG Group P.L.C v. Republic of Argentina, 134 S. Ct. 1198, 1206-07, 188 L. Ed. 2d 220 (2014)*; *Granite Rock Co. v. Int'l [*472] Bhd. of Teamsters, 561 U.S. 287, 296, 130 S. Ct. 2847, 177 L. Ed. 2d 567 (2010)*; *Howsam, 537 U.S. at 83*; *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc., 473 U.S. 614, 626, 105 S. Ct. 3346, 87 L. Ed. 2d 444 (1985)*; *Medtronic AVE, Inc. v. Advanced Cardiovascular Systems, Inc., 247 F.3d 44, 54-55 (3d Cir. 2001)*. In other words, where, as here, the parties "disagree whether a particular dispute is arbitrable," a court must assist them by "determining whether the parties have submitted a particular dispute to arbitration." *Opalinski v. Robert Half Intern., Inc., 761 F.3d 326, 331 (3d Cir. 2014)* (citing *Howsam, 537 U.S. at 83*).

The parties' Agreement is, on its face, silent about who should decide questions of arbitrability. ECF No. 1-2 at 23-24. HN9[⬆] The question whether the parties have submitted a particular dispute to arbitration is presumptively for judicial determination unless the parties agreed to arbitrate it. *Gay v. CreditInform, 511 F.3d 369, 387 (3d Cir. 2007)* (citing *Howsam, 537 U.S. at 83-84*). The presumption in favor judicial determination is quite strong: the parties must have "clearly and unmistakably provide[d] otherwise" in order to overcome it. *Id*. Silence or ambiguity on the question of who should decide arbitrability is typically construed in favor of judicial determination. *First Options of Chicago, Inc. v. Kaplan, 514 U.S. 938, 944-46, 115 S. Ct. 1920, 131 L. Ed. 2d 985 (1995)*. Because not all questions are for judicial resolution, however, a court also looks to certain presumptions regarding who decides arbitrability when the parties' agreement is silent. *BG Group, 134 S. Ct. at 1206-07*. Courts presume the parties intended courts, not arbitrators, [**13] to decide questions such as whether the parties are bound by a given arbitration clause and whether an arbitration clause in a concededly binding contract applies to the parties' dispute. *Id.; see also Granite Rock, 561 U.S. at 296*; *Howsam, 537 U.S. at 83*; *Mitsubishi Motors, 473 U.S. at 626*; *Opalinski, 761 F.3d at 331*; *Medtronic, 247 F.3d at 54-55*. On the other hand, courts presume the parties intended an arbitrator to decide the meaning and application of procedural preconditions to arbitration. *BG Group, 134 S. Ct. at 1206-07*. Procedural preconditions to arbitration include issues such as waiver, delay, notice, laches, estoppel, and prerequisites such as time limits. *Id. at 1207*.

---

[3] The Court applies the FAA based on the fact that the parties' Agreement involves funding from business in diverse states for construction contracts to be completed in Cuba. Neither party disputes the FAA's applicability, nor do the parties urge the Court to apply the law of any particular state. *See Harris v. Green Tree Financial Corp., 183 F.3d 173, 178 (3d Cir. 1999)* (applying the FAA because the parties do not dispute the contracts at issue involve commerce); *Becker Autoradio U.S.A., Inc. v. Becker Autoradiowek GmbH, 585 F.2d 39, 43, n.9 (3d Cir. 1978)* (applying federal law where the parties do not dispute the FAA's applicability).

[4] *See also Moses H. Cone Mem. Hosp. v. Mercury Constr. Corp., 460 U.S. 1, 25, 103 S. Ct. 927, 74 L. Ed. 2d 765, n.32 (1983)* (finding HN7[⬆] federal law governs agreements to arbitrate that fall within the FAA's scope even where a federal court is sitting in diversity); *Century Indemnity Co., 584 F.3d at 524* (finding federal law governs agreements to arbitrate once a court determines there exists a valid agreement to arbitrate).

Page 9 of 11

218 F. Supp. 3d 465, *472; 2016 U.S. Dist. LEXIS 150223, **13

In support of its motion to compel, Burns and Roe asserts that an arbitrator should decide the question of arbitrability for two reasons. ECF No. 22 at 2. First, Burns and Roe argues the underlying factual question—whether the parties' dispute arose during contract performance—amounts to a procedural precondition to arbitration. ECF No. 22 at 4-5. Burns and Roe asserts the question here is of the time-limit variety, and thus, under *BG Group*, the arbitrator should resolve it. ECF No. 22 at 4-5. The cases dealing with time limit preconditions to arbitration, however, are distinguishable. In *BG Group*, for example, the provision at issue was a time limitation on the parties' ability to **[\*\*14]** request arbitration: it stated that a dispute "shall be submitted to international arbitration" on request of a party as long as "a period of eighteen months ha[d] elapsed" since the dispute was submitted to a local tribunal. *134 S. Ct. at 1207*. The Supreme Court held such a provision was "purely procedural" because it "governs *when* the arbitration may begin, but not *whether* it may occur." *Id.* (emphasis added). The Court went on to analogize the provision in *BG Group* to procedural issues such as whether a party filed a notice of arbitration within the time limit provided by the arbitrator's rules. *Id. at 1207-08*. Such provisions, the Court concluded, **[\*473]** would normally be interpreted by an arbitrator. *Id. at 1208*.

Likewise, in *Howsam*, the Supreme Court considered another time-limit provision which dealt with when, but not whether, arbitration may occur. The provision stated that no dispute "shall be eligible for submission to arbitration ... where six (6) years have elapsed from the occurrence or event giving rise to the ... dispute." *537 U.S. at 82*. The Supreme Court concluded the time limit provision raised a procedural issue which was presumptively for the arbitrator to decide. *Id. at 85*. It reasoned that the rule operated similar to issues of waiver or **[\*\*15]** delay. *Id.* The time limit provision, moreover, was one put in place by the arbitrator—not by the parties to the agreement—and so, the Court found, the arbitrator was the better presumptive adjudicator. *Id. at 85-86*.

Here, the question underling the parties' dispute—whether DCK's claim arose during performance of the contracts or after performance—is not an issue governing when arbitration may begin, as in *BG Group*, nor is it an arbitrator's rule or mechanism for raising a procedural question, as in *Howsam*. The question is also not one of waiver or delay, questions typically decided by the arbitrator.[5] DCK's claim is, the Court finds, more akin to those questions of arbitrability that courts presumptively decide, such as whether the parties are bound by a given arbitration clause or whether an arbitration clause covers the parties' dispute. *See, e.g., BG Group, 134 S. Ct. at 1206-07*; *Granite Rock, 561 U.S. at 296*; *Howsam, 537 U.S. at 83*; *Opalinski, 761 F.3d at 331*; *Medtronic, 247 F.3d at 54-55*.

Burns and Roe next contends an arbitrator should decide the question of arbitrability because the parties' made reference in their arbitration provision to the AAA Rules. Under the parties' arbitration provision, disputes which arise during performance of the contracts **[\*\*16]** shall be settled by arbitration in accordance with the Rules, while those that arise after performance shall be settled in a court of law. ECF No. 1-2 at 23.

The Third Circuit has not explicitly decided the issue whether incorporation of the AAA Rules is sufficient to establish a clear and unmistakable intent of parties in a bilateral dispute to delegate to the arbitrator the question of arbitrability. Virtually every other circuit to have considered that issue, however, has concluded that incorporation of the Rules is sufficient to establish clear and unmistakable evidence that the parties agreed to arbitrate arbitrability. *See Chesapeake Appalachia, L.L.C. v. Scout Petroleum, L.L.C., 809 F.3d 746, 763-64 (3d Cir. 2016)*; *see also Oracle Am., Inc. v. Myriad Grp. A.G., 724 F.3d 1069, 1074 (9th Cir. 2013)*; *Petrofac, Inc. v. DynMcDermott Petroleum Operations Co., 687 F.3d 671, 675 (5th Cir. 2012)*; *Fallo v. High-Tech Inst., 559 F.3d 874, 878 (8th Cir. 2009)*; *Qualcomm Inc. v. Nokia Corp., 466 F.3d 1366, 1373 (Fed. Cir. 2006)*; *Terminix Int'l Co. v. Palmer Ranch LP, 432 F.3d 1327, 1332 (11th Cir. 2005)*; *Contec Corp. v. Remote Solution Co., 398 F.3d 205, 208 (2d Cir. 2005)*. And although relatively few district courts in this Circuit have addressed the question, those that have addressed it seem to follow the same reasoning. *See Ins. Newsnet.com, Inc. v. Pardine, No. 11-cv-286, 2011 U.S. Dist. LEXIS 85825, 2011 WL 3423081, \*3 (M.D. Pa. August 4, 2011)* (*HN10*[⬆️] "The prevailing rule across jurisdictions is that incorporation by reference of rules granting the arbitrator the authority to decide questions of arbitrability—especially the [R]ules—is clear and unmistakable **[\*474]** evidence that the parties agreed to submit arbitrability questions to the arbitrators."); *Way Servs., Inc. v. Adecco N. Am., LLC, No. 06-cv-2109,*

---

[5] Bums and Roe does not contend, for example, that DCK brought its claim too late.

Page 10 of 11

218 F. Supp. 3d 465, *474; 2016 U.S. Dist. LEXIS 150223, **16

*2007 U.S. Dist. LEXIS 44206, 2007 WL 1775393, *4 (E.D. Pa. June 18, 2007)* **[**17]** (noting the same). Burns and Roe urges this Court to follow suit. ECF No. 22 at 7.

Here, however—even assuming the parties successfully incorporated the AAA Rules into their arbitration provision[6]—the generally-accepted rule outlined above would not be dispositive. First, the parties' arbitration provision is distinguishable from those in *Insurance Newsnet.com*, *Way Services*, and those cases from other circuits where reference to Rules evidenced a clear and unmistakable intent to arbitrate the question of arbitrability. In each of those cases, the parties' arbitration provision was sweeping, referring all disputes—with few or no exceptions—to arbitration. In this case, a fair reading of the parties' contract makes it clear the parties only agreed to arbitrate under the Rules for disputes that arise during the course of performance of the contracts. ECF No. 1-2 at 23-24. The provision goes on to state that any disputes "arising after completion of the Construction Contract has been performed shall be resolved in a court of law." *Id.* Thus, even if incorporation of the Rules were successful, we would, at most, be back to our original question: what goalpost **[**18]** did the parties contemplate for completion of performance such that arbitration is appropriate?

In addition and in the alternative, even if incorporation of the AAA Rules were sufficient to subject all the parties' disputes to those Rules, the Court would then have to intuit, absent any clear contractual provision, whether the parties intended to incorporate the version of the Rules in circulation at the time of the Agreement or at some other time—such as at the time of the dispute or of a court's ruling on the issue. The Court notes that what appears to be the current version of the AAA Rules provides "[t]he arbitrator shall have the power to rule on his or her own jurisdiction, including any objections with respect to the existence, scope, or validity of arbitration agreement." AAA Rule R-9, available at http://www.adr.org . But the parties have provided no guidance on past versions of the Rules or their dates of adoption.

Because the parties' reference to the AAA Rules in their arbitration provision **[**19]** does not necessarily bring those Rules into play in this dispute, and because it is further ambiguous which version of the Rules the parties intended to reference and what those particular Rules reveal, the parties cannot be said to have clearly and unmistakably provided for an arbitrator, rather than a court, to decide the question of arbitrability. The Court must therefore decide the question. *See First Options, 514 U.S. at 944-47; Gay, 511 F.3d at 387*.

**HN11**[↑] When interpreting and applying contractual arbitration provisions, federal substantive law reflects a strong presumption in favor of arbitration. *Medtronic, 247 F.3d at 55*. Federal courts liberally construe arbitration clauses—so much so that "any doubts as to whether an arbitration clause may be interpreted to cover the asserted dispute should be resolved in favor of arbitration." *Becker Autoradio, 585 F.2d at 44; see also AT&T Tech, Inc. v. Comm. Workers of Am., 475 U.S. 643, 650, 106 S. Ct. 1415, 89 L. Ed. 2d 648 (1986); Medtronic, 247 F.3d at 55*. Although the plain language of a contract always controls, any ambiguities **[*475]** regarding the scope of arbitrable issues should be resolved in favor of arbitration. *See, e.g., CardioNet v. Cigna Health Corp., 751 F.3d 165, 172-73 (3d Cir. 2014); see also Granite Rock 561 U.S. at 298*. In other words, the strong presumption in favor of arbitration applies "unless a court can state with positive assurance that [the] dispute was not meant to be arbitrated." *Becker Autoradio, 585 F.2d at 44* (internal quotations omitted). The Supreme Court has held, therefore, **[**20]** that a motion to compel arbitration under a valid arbitration clause "should not be denied unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute." *AT&T Tech., 475 U.S. at 650*.

**HN12**[↑] In determining when the presumption in favor of arbitration applies, the Third Circuit has added an additional layer of analysis. Where "the arbitration provision is narrowly crafted, we cannot presume, as we might if it were drafted broadly, that the parties [] agreed to submit all disputes to arbitration." *Local 827, Intern, Broth Of Elec. Workers, AFL-CIO v. Verizon New Jersey, Inc., 458 F.3d 305, 310 (3d Cir. 2006)*. In those cases, the strong presumption in favor of arbitrability does not apply. *Trap Rock Industries, Inc. v. Local 825, Intern. Union of Operating Engineers, AFL-CIO, 982 F.2d 884, 888, n.5 (3d Cir. 1992)*. Narrow arbitration provisions are those that, for example, "expressly limit the range of arbitrable disputes to a single category or function, such as limiting the arbitrator's power to modifying a penalty where only disciplinary layoffs or discharges which violate the terms of [an agreement]

---

[6] The Court assumes for the purposes of argument—but does not decide—that the parties' reference to the AAA Rules was sufficient to incorporate those Rules into the agreement under any applicable state law.

Page 11 of 11

218 F. Supp. 3d 465, *475; 2016 U.S. Dist. LEXIS 150223, **20

are involved." *Id.* Broad arbitration provisions, on the other hand, are those which apply to "any dispute" arising out of an agreement. *Id.* Where the provision is broad, the presumption of arbitrability applies, and "only the most forceful evidence of a purpose to exclude **[**21]** a particular grievance from arbitration can prevail." *Id.* (citing *AT&T Tech., 475 U.S. at 650*).

Here, the parties' arbitration clause is broad rather than narrow. It provides that "[a]ny controversy or claim arising out of or relating to this Agreement or the breach thereof which cannot be resolved in accordance with the foregoing processes while in the course of performance of the Contract(s) shall be settled by arbitration." ECF No. 1-2 at 23; *EM. Diagnostic Systems, Inc. v. Local 169, 812 F.2d 91, 92, 95 (3d Cir. 1987)* (finding that an arbitration clause containing "[a]ny dispute arising out of a claimed violation of the agreement was broad and entitled to the strong presumption of arbitrability); *Luken Steel Co. v. U.S. Steelworkers of America, 989 F.2d 668, 673 (1993)* (finding that an arbitration clause containing "[s]hould any differences arise" was broad and entitled to the strong presumption of arbitrability). Although the parties' arbitration clause in this case limits arbitrable disputes to those that arise during performance, ECF No. 1-2 at 23-24, such limitation does not narrow the scope of the arbitration clause so much that the arbitrator's role is relegated to resolving a single discrete category or type of dispute. *Cf. Trap Rock, 982 F.2d at 888, n.5*. In light of the sophisticated nature of the parties in this case and the considerable ambiguity in the arbitration limitation itself (due to **[**22]** the parties' failure to demarcate with any certainty their goalpost for the end of performance), the Court is not persuaded that the clause is sufficiently narrow to avoid the strong presumption in favor of arbitration.

Because the parties' arbitration provision is facially unclear regarding what goalpost the parties' contemplated for completion of performance—whether it be **[*476]** once the physical labor had been performed, once the Navy approved the final buildouts, once all outstanding payments have been received, or some other benchmark—the provision is ambiguous. The court need not "strain to find [] ambiguity," *Regents of Mercersburg Coll v. Republic Franklin Ins. Co., 458 F.3d 159, 172 (3d Cir. 2006)*, because the ambiguity present here is considerably more boisterous than a "flicker of interpretive doubt." *Cf. PaineWebber, Inc. v. Hartmann, 921 F.2d 507, 513 (3d Cir. 1990)*. The presumption of arbitrability, therefore, applies.

Applying the presumption, the parties' arbitration

provision meets the standard for referral to arbitration: it is, without question, "susceptible of an interpretation that covers the asserted dispute." *AT&T Tech., 475 U.S. at 650*. At oral argument, the parties conceded they have not submitted a certificate of completion to the Navy for their contracts, nor has the Navy approved all of the parties' construction work. Resolving all "doubts **[**23]** as to whether an arbitration clause may be interpreted to cover the asserted dispute ... in favor of arbitration," the Court cannot, in light of the Agreement's ambiguity regarding the completion of contract performance, "state with positive assurance that [the] dispute was not meant to be arbitrated." *Becker Autoradio, 585 F.2d at 44* (internal quotations omitted); *see also AT&T Tech, 475 U.S. at 650*.

## IV. CONCLUSION

For the reasons set forth above, Burns and Roe's Motion to Dismiss or Stay Pending Arbitration or Mediation (ECF No. 5) will be granted. This case will be stayed and administratively closed pending arbitration, and the parties will be ordered to proceed forthwith to arbitration in the manner they have agreed. The stay may be lifted by this Court on its own Motion or for good cause shown. An appropriate Order will issue.

/s/ Mark R. Hornak

**Mark R. Hornak**

**United States District Judge**

Dated: October 31, 2016


## *Semon v. Maps Indeed, Inc.*

United States District Court for the Middle District of Pennsylvania

September 12, 2016, Decided; September 12, 2016, Filed

Civil Action No. 3:14-CV-01593

**Reporter**
2016 U.S. Dist. LEXIS 205466 *; 2016 WL 11789349

JEFFREY P. SEMON, LINDA LEEVER, and WILLIAM JACOT, Plaintiffs, v. MAPS INDEED, INC., et al., Defendants.

## Core Terms

proceedings, incarcerated, storage facility, motion to stay, temporary stay, withdrawn, documents, requests, deem

**Counsel:** [*1] For Insequence Inc., Defendant, Cross Defendant, Cross Claimant: Kevin J. Mangan, Womble Bond Dickinson (US) LLP, Wilmington, DE; Cathy A Hinger, LEAD ATTORNEY, Christopher M Schafbuch, Womble Bond Dickinson (US) LLP, Washington, DC.

Jeffrey DeAnthony, Cross Claimant, Pro se, Shavertown, PA.

For William Jacot, her husband, Linda Leever, Plaintiffs: Lawrence J. Moran Jr., LEAD ATTORNEY, Jennifer Menichini, Joyce Carmody & Moran P.C., Pittston, PA.

Maps Indeed Inc., Cross Defendant, Pro se, Plains, PA.

Victor Deanthony, Cross Defendant, Pro se, Plains, PA.

For Jeffrey P. Semon, Plaintiff: Lawrence J. Moran Jr., LEAD ATTORNEY, Jennifer Menichini, Joyce Carmody & Moran P.C., Pittston, PA.

Jeffrey DeAnthony, Defendant, Pro se, Shavertown, PA.

Maps Indeed Inc., Defendant, Pro se, Plains, PA.

Jeffrey DeAnthony, Cross Defendant, Pro se, Shavertown, PA.

Victor Deanthony, Defendant, Pro se, Plains, PA.

**Judges:** Edwin M. Kosik, United States District Judge.

**Opinion by:** Edwin M. Kosik

## Opinion

### MEMORANDUM

Before the Court are Defendant Victor DeAnthony's Motion for Temporary Stay of Proceedings (Doc. 81), Plaintiffs' Motion to Deem Victor DeAnthony's Motion to Stay Withdrawn (Doc. 85), and Plaintiffs' Motion to Strike Victor DeAnthony's [*2] Brief in Support of his Motion to Stay Proceedings (Doc. 100).

### I. BACKGROUND

On June 8, 2016, *pro se* Defendant Victor DeAnthony filed a motion for a temporary stay of proceedings (Doc. 81).[1] In his motion, Victor DeAnthony states that he reported to United States Penitentiary ("USP") in Hazleton, West Virginia, to begin a 36 month sentence, on June 1, 2016. (Doc. 81.) Victor DeAnthony further states that during his incarceration, he will not have access to a storage facility in Chantilly, Virginia, where Defendant Maps InDeed, Inc.'s ("MID") electronic information, emails or documentation related to the instant litigation, are located. (Id.) Victor DeAnthony also states that without direct access to the information held at the storage facility, he is unable to respond to discovery requests and defend himself. (Id.) Therefore, Victor DeAnthony requests a stay of proceedings for a period of 36 months or until his release date, whichever is sooner. (Id.)

Defendant InSequence, Inc. ("InSequence") filed a brief in support of the motion to stay on June 15, 2016 (Doc. 83). In it, InSequence supports the stay, because Plaintiff's claims against InSequence are based on alter ego and agency theories [*3] of liability. As a result, InSequence needs the information Victor DeAnthony has in the storage facility to properly defend itself. In a

---

[1] Victor DeAnthony did not file a brief in support until July 18, 2016 (Doc. 91), which Plaintiffs seek to strike (Doc. 100).

supplemental brief (Doc. 87), InSequence also indicated that Frank Sepco, an individual identified by Defendant Jeffrey DeAnthony to to have discoverable information in this case, responded to a subpoena stating that he did not have any responsive documents, as all such documents would be located in MID's computers, which are located in the storage facility.

On June 27, 2016, in response, Plaintiffs filed a motion to deem Victor DeAnthony's motion to stay withdrawn, because Victor DeAnthony did not file a brief in support of his motion, as required by Local Rule 7.5 (Doc. 85). Victor DeAnthony subsequently filed a brief in support of his motion (Doc. 91), on July 18, 2016. As a result of the late brief filed by Victor DeAnthony, Plaintiffs filed a motion to strike that brief (Doc. 100).

## II. DISCUSSION

We first consider Plaintiff's motion to deem Victor DeAnthony's motion to temporary stay proceedings withdrawn (Doc. 85). Although all parties are required to adhere to the rules of the Court, we generally liberally construe the filings of a *pro se* party.

In this case, **[*4]** Defendant Victor DeAnthony filed a motion to temporary stay proceedings while he is incarcerated. Victor DeAnthony did not timely file a brief in support, as required by Local Rule 7.5, which states, "Within fourteen (14) days after the filing of any motion, the party filing the motion shall file a brief in support of the motion .... If a supporting brief is not filed within the time provided in this rule the motion shall be deemed to be withdrawn." Local Rule 7.5. Victor DeAnthony filed an untimely brief in support of his motion (Doc. 91), which Plaintiffs move to strike.

Liberally construing Defendant Victor DeAnthony's filings, we will deny Plaintiff's motion to strike, consider Victor's brief in support of his motion to stay (Does. 91, 92), and deny Plaintiff's motion to deem the motion to stay withdrawn. As Plaintiffs aptly point out, "numerous courts in the Third Circuit and Middle District have held, '[i]n determining whether to grant a motion to stay, courts should consider: (1) the length of the requested stay; (2) the "hardship or inequity" that the movant would face in going forward with the litigation; (3) the injury that a stay would inflict upon the non-movant; [and] (4) whether a stay will simplify **[*5]** issues and promote judicial economy. *Barnard v. Lackawanna Cnty., Civ. No. 3:15-2220, 2016 U.S. Dist. LEXIS 14143, 2016 WL 362424, at *2 (M.D. Pa. Jan. 29, 2016)* (quoting *Structural Grp., Inc. v. Liberty Mut. Ins. Co., No. Civ. A 1:07-CV-01793, 2008 U.S. Dist. LEXIS 82266, 2008 WL 4616843, at *5 (M.D. Pa. Oct. 16, 2008)*).

Here, taking into consideration the mentioned factors, Victor DeAnthony requests a stay for his term of incarceration, which is 36 months, or whenever he is released, whichever is sooner. Plaintiffs argue that a 36 month stay is an extraordinary length, as Victor knew he was going to be incarcerated on June 1, 2016, since March 10, 2016, the time of his sentencing, and that incarceration is not a valid reason to stay proceedings.

Next, Victor DeAnthony states that he would face a hardship and an inequity in going forward with the litigation. Specifically, Victor states that as a result of being incarcerated, he does not have access to the storage facility, that holds all of the business records of MID are located, and therefore cannot properly defend himself and respond to discovery requests. Additionally, Victor states that his ability to communicate outside of the prison, which affects the proper depositions of witnesses, is limited to fifteen (15) minutes per phone call and 300 minutes per month at a cost of twenty-one (.21) cents a minute; visitations on weekends only; and the inability to bring any recording device, paper and pencil **[*6]** included, to any visitation. Plaintiffs respond by arguing that Victor could have responded to discovery requests that included business records held in the storage facility before he was incarcerated.[2]

In support of the motion to stay, Defendant InSequence argues that it too would face hardship and inequity if the stay was not granted. InSequence argues that it would be severely prejudiced by its lack of access to Victor's documents held in the storage facility, as part of InSequence's defense will be based on showing that MID was a separate entity and not the alter ego of InSequence. Additionally, Frank Sepco, a key individual likely to have discoverable information as identified by Defendant Jeffrey DeAnthony, was not able to provide any documents in response to a subpoena, because they are located on MID's computers in the storage facility.

We next consider the injury to the non-movant if a stay

---

[2] We note that as of August 16, 2016, Plaintiffs had not responded to Victor's discovery request, and were directed to respond within 30 days. Victor asserts that not until he receives the requested discovery from Plaintiffs, can he fully understand what is needed from the storage facility, to properly defend himself.

is granted. Plaintiffs argue that it would be a miscarriage of justice to further delay resolution of this case, as the alleged unlawful acts occurred in 2011, and Plaintiffs have been vigorously pursuing this litigation since filing a complaint. Plaintiffs assert that the amount of damages **[*7]** in this case could exceed $500,000, which could be used to fund college educations and retirements.

In considering the above factors and whether a stay will simplify issues and promote judicial economy, we find that it would promote judicial economy and that the prejudice to the Defendants would outweigh the prejudice to the Plaintiffs if the proceedings were not temporarily stayed. Defendant Victor DeAnthony and Defendant InSequence's defenses to the claims against them require access to the business records located on MID's computers that are located in a storage facility. To properly and adequately defend itself, InSequence must have MID's business records. Additionally, Frank Sepco, identified for having discoverable information, has been unable to comply with a subpoena, as the information is located on MID's computers. Furthermore, we agree with InSequence that the cases cited to by Plaintiffs regarding incarceration and the staying of proceedings are distinguishable, as in those cases, the one incarcerated is the Plaintiff, not the Defendant as in the present case. Taking all the factors into consideration, we find that a temporary stay until Victor DeAnthony is no longer incarcerated, **[*8]** is an appropriate court of action.

### III. CONCLUSION

For the reasons set forth above, we will grant Victor DeAnthony's motion for a temporary stay of proceedings. An appropriate order will follow.

### ORDER

AND NOW, THIS 12th DAY OF SEPTEMBER, 2016, IT IS HEREBY ORDERED THAT:

[1] Plaintiffs' Motion to Deem Victor DeAnthony's Motion to Stay Proceedings Withdrawn (Doc. 85) is **DENIED**;

[2] Plaintiff's Motion to Strike Victor DeAnthony's Brief in Support of His Motion to Stay Proceedings (Doc. 100) is **DENIED**;

[3] Defendant Victor DeAnthony's Motion for Temporary Stay of Proceedings is **GRANTED**; and

[4] This action is **STAYED** for 36 months or until Victor DeAnthony is no longer incarcerated, whichever is sooner.

/s/ Edwin M. Kosik

Edwin M. Kosik

United States District Judge

---

**End of Document**

# *Rajput v. Synchrony Bank*

United States District Court for the Middle District of Pennsylvania

March 10, 2016, Decided; March 10, 2016, Filed

CIVIL ACTION NO. 3:15-CV-1079

**Reporter**

2016 U.S. Dist. LEXIS 193993 *

RACHEL BEIDARI RAJPUT, Plaintiff v. SYNCHRONY BANK f/k/a GE CAPITAL RETAIL BANK, Defendant

**Subsequent History:** Stay granted by *Rajput v. Synchrony Bank, 2016 U.S. Dist. LEXIS 150231 (M.D. Pa., Oct. 31, 2016)*

## Core Terms

proceedings

**Counsel:** **[*1]** For Rachel Rajput, Plaintiff: Craig Thor Kimmel, LEAD ATTORNEY, Kimmel & Silverman, Ambler, PA USA.

For Synchrony Bank, formerly known as, GE Capital Retail Bank, Defendant: Jack P Bock, III, LEAD ATTORNEY, Reed Smith LLP, Pittsburgh, PA USA; Valerie Eifert Brown, Reed Smith LLP, Philadelphia, PA USA.

**Judges:** William J. Nealon, United States District Judge.

**Opinion by:** William J. Nealon

## Opinion

### ORDER

On June 1, 2015, Plaintiff, Rachel Rajput, filed a complaint against Defendant, Synchrony Bank f/k/a GE Capital Retail Bank. (Doc. 1). Plaintiff alleges that Defendant repeatedly violated the Telephone Consumer Protection Act, *47 U.S.C. § 227, et seq.* ("TCPA"). (Id. at pp. 1-5). Specifically, Plaintiff claims that Defendant violated *section 227(b)(1)(A)(iii)* of the TCPA when "[d]espite the fact that, in July 2014, Plaintiff revoked any consent that may have been previously given for Defendant to place calls to her[,] Defendant repeatedly

placed non-emergency calls to Plaintiff's cellular telephone." (Id. at p. 4). Plaintiff seeks statutory damages up to $1,500 for each call in violation of the TCPA and injunctive relief. (Id. at p. 5).

On January 29, 2016, Defendant moved to stay the above-captioned action until a ruling by the United States Supreme Court in *Spokeo, Inc. v. Robins, 135 S. Ct. 1892, 191 L. Ed. 2d 762 (2015)*, and the United States Court of Appeals for the D.C. Circuit **[*2]** in ACA International v. Federal Communications Commission, Case No. 15-1211 (D.C. Cir. filed July 10, 2015). (Doc. 13). In Spokeo, the United States Supreme Court will:

> address the issue of "[w]hether Congress may confer Article III standing upon a plaintiff who suffers no concrete harm, and who therefore could not otherwise invoke the jurisdiction of a federal court, by authorizing a private right of action based on a bare violation of a federal statute."

*Davis v. Nationstar Mortgage, LLC, 2016 U.S. Dist. LEXIS 252, at *7 (E.D. Pa. Jan. 4, 2016)*. Thus, Defendant argues, Spokeo "may determine whether this Court lacks subject-matter jurisdiction over the statutory violations alleged in this case." (Doc. 13, p. 2). To date, Plaintiff has not filed a brief in opposition; and the deadline for filing such a brief has passed. See *M.D. Pa. L.R. 7.6*. Therefore, Plaintiff is deemed not to oppose the motion, which is ripe for disposition. For the reasons discussed below, Defendant's motion will be granted, and the above-captioned action will be stayed pending the United States Supreme Court's ruling in Spokeo.

### I. STANDARD OF REVIEW

"The District Court has broad discretion to stay proceedings as an incident to its power to control its own docket." *Clinton v. Jones, 520 U.S. 681, 706, 117 S. Ct. 1636, 137 L. Ed. 2d 945 (1997)*. "As numerous courts in the Third Circuit and **[*3]** the Middle District have held, '[i]n determining whether to grant a motion to

stay, courts should consider: (1) the length of the requested stay; (2) the "hardship or inequity" that the movant would face going forward with the litigation; (3) the injury that a stay would inflict upon the non-movant; (4) whether a stay will simplify issues and promote judicial economy.'" *Barnard v. Lackawanna Cnty., 2016 U.S. Dist. LEXIS 14143, at *6 (M.D. Pa. Jan. 29, 2016)* (Mannion, J.) (citing *Structural Grp., Inc. v. Liberty Mut. Ins. Co., 2008 U.S. Dist. LEXIS 82266 (M.D. Pa. 2008)* (Kane, J.); *Scicchitano v. Cnty. of Northumberland, 2015 U.S. Dist. LEXIS 158956 (M.D. Pa. 2015)* (Brann, J.); *Pa. ex rel. Kane v. McGraw-Hill Cos., Inc., 2013 U.S. Dist. LEXIS 49462 (M.D. Pa. 2013)* (Conner, J.); *Vasvari v. Rite Aid Corp., 2010 U.S. Dist. LEXIS 86361 (M.D. Pa. 2010)* (Jones, J.)). "The Third Circuit has further noted that, 'efficiency does not, by itself, allow a federal court to refuse to exercise its jurisdiction in favor of proceedings in an alternative forum.'" Id. (citing *CTF Hotel Holdings, Inc. v. Marriott Int'l, Inc., 381 F.3d 131, 135-36 (3d Cir. 2004))*.

## II. DISCUSSION

In consideration of the first factor, the length of the requested stay here is dependent upon the United States Supreme Court's issuance of its ruling in Spokeo. Notably, "[o]n November 2, 2015, the Supreme Court heard oral argument in the case of Spokeo, Inc. v. Robins, No. 13-1339." *Davis, 2016 U.S. Dist. LEXIS 252, at *7.* Thus, "the stay will likely last at most until June or July 2016, when the Supreme Court's current term ends." *Davis, 2016 U.S. Dist. LEXIS 252, at *9* (citing *Duchene v. Westlake Servs., LLC, 2015 U.S. Dist. LEXIS 139269, at *10 (W.D. Pa. 2015)* ("A relatively short delay of definite duration would not likely affect the availability of evidence or the memory of witnesses, **[*4]** especially where we have no specific facts or reasoning that indicate otherwise.")); see *Salvatore v. Microbilt Corp., 2015 U.S. Dist. LEXIS 110025, at *5-6 (M.D. Pa. 2015)* (Carlson, M.J.) (decision in Spokeo is "expected by the end of June 2016, in accordance with the Supreme Court's customary practice."); *Miller v. Trans Union, LLC, 2015 U.S. Dist. LEXIS 173043, at *5 (M.D. Pa. 2015)* (Carlson, M.J.). Therefore, under these circumstances, a delay of up to five (5) months weighs in favor of granting the requested stay. See *Salvatore, 2015 U.S. Dist. LEXIS 110025, at *5-6*; *Miller, 2015 U.S. Dist. LEXIS 173043, at *5*; see also *Davis, 2016 U.S. Dist. LEXIS 252, at *9*; *Kamal v. J. Crew Grp., Inc., 2015 U.S. Dist. LEXIS 172578, at *5-6 (D.N.J. 2015)*; *Duchene, 2015 U.S. Dist. LEXIS 139269, at *10*.

As for the second factor, whether the movant would face "hardship or inequity" by going forward with the litigation, it weighs in favor of granting the stay. As noted above, in Spokeo, the United States Supreme Court will:

> address the issue of "[w]hether Congress may confer Article III standing upon a plaintiff who suffers no concrete harm, and who therefore could not otherwise invoke the jurisdiction of a federal court, by authorizing a private right of action based on a bare violation of a federal statute."

*Davis, 2016 U.S. Dist. LEXIS 252, at *7.* "Although Spokeo deals with the Fair Credit Reporting Act, it could have an impact on this case because the TCPA similarly has a statutory damages provision." Id. (citing *Duchene, 2015 U.S. Dist. LEXIS 139269, at *2)*. Consequently, "Spokeo may well conclude that the Plaintiff lacks standing, or, . . . bring [the plaintiff's] standing directly **[*5]** into dispute . . . ." *Duchene, 2015 U.S. Dist. LEXIS 139269, at *7.* Thus, Defendant "could be prejudiced if forced to expend substantial resources in litigation only for Spokeo to rule that this Court lacks jurisdiction to resolve this case." *Davis, 2016 U.S. Dist. LEXIS 252, at *10* (citing *Duchene, 2015 U.S. Dist. LEXIS 139269, at *7-9)*. As a result, this factor also supports entry of a stay.

In regards to the third factor, Plaintiff has not opposed the instant motion and thus, has not asserted it would be injured by the issuance of a stay. Nevertheless, staying this litigation would cause Plaintiff minor harm, at the very least. Specifically, Plaintiff would be unable to obtain a speedy resolution of her claims for up to five (5) months. However, such a delay "is not, itself, sufficiently prejudicial to outweigh the very plain benefits of staying the case, particularly when the issues pending at the Supreme Court go to this Court's power to hear the case." *Duchene, 2015 U.S. Dist. LEXIS 139269, at *11* (held that an eight (8) to nine (9) month delay was not, by itself, sufficiently prejudicial to weigh in favor of granting a stay). Therefore, the third factor supports the entry of a stay.

Finally, the Court must determine whether a stay will simplify issues and promote judicial economy. "Though considerations of judicial economy take a backseat to the considerations **[*6]** addressed above, they are still relevant to the stay inquiry." Id. As noted above, a ruling in Spokeo could result in this Court losing jurisdiction over the above-captioned action. See Id. "If that happens, any judicial resources spent on this matter between now and then would essentially be to no avail." Id. (citing *Salvatore v. Microbilt, 2015 U.S. Dist. LEXIS*

*110025 (M.D. Pa. 2015)* (Carlson, M.J.); *Stone v. Sterling Infosystems, Inc., 2015 U.S. Dist. LEXIS 99161 (E.D. Cal. 2015)*; *Hillson v. Kelly Servs., Inc., 2015 U.S. Dist. LEXIS 97958 (E.D. Mich. 2015)*; *Boise v. ACE USA, Inc., 2015 U.S. Dist. LEXIS 87200 (S.D. Fla. 2015)*; *Provo v. Rady Children's Hosp. San Diego, 2015 U.S. Dist. LEXIS 100491 (S.D. Cal. 2015))*. Consequently, the fourth factor also supports entry of a stay.

### III. CONCLUSION

As a result of the foregoing, Defendant's motion to stay this action pending a ruling by the United States Supreme Court in Spokeo, (Doc. 13), will be granted.[1]

**ACCORDINGLY, THIS 10TH DAY OF MARCH, 2016, IT IS HEREBY ORDERED THAT**:

1. Defendant's motion to stay proceedings pending a ruling by the United States Supreme Court in *Spokeo, Inc. v. Robins, 135 S. Ct. 1892, 191 L. Ed. 2d 762 (2015)*, (Doc. 13), is **GRANTED**.

2. To the extent that Defendant's motion to stay the proceedings relies on the pendency of the United States Court of Appeals for the D.C. Circuit's case in ACA International v. Federal Communications Commission, Case No. 15-1211 (D.C. Cir. filed July 10, 2015), (Doc. 13), it is **DISMISSED** as **MOOT** and without prejudice to renewal.

3. The above-captioned **[*7]** action is **STAYED**.

4. The Clerk of Court is directed to **ADMINISTRATIVELY CLOSE** this case during the period of the stay.

5. Within thirty (30) days of the United States Supreme Court's ruling in *Spokeo, Inc. v. Robins, 135 S. Ct. 1892, 191 L. Ed. 2d 762 (2015)*, Plaintiff shall notify this Court in writing that said proceedings are concluded, and the above captioned action should be reopened.

/s/ William J. Nealon

**United States District Judge**

---

*End of Document*

---

[1] To the extent that Defendant relies on the pendency of ACA Inernational v. Federal Communications Commission, Case No. 15-1211, to obtain a stay in this action, see (Doc. 13, p. 1), that request is now moot. See *Davis, 2016 U.S. Dist. LEXIS 252, at *10*. After the United States Supreme Court's disposition of Spokeo, and the stay has been lifted in this matter, Defendant may reassert its request to the stay this action until the disposition of ACA International.

✚ Positive

As of: January 26, 2024 7:52 PM Z

# *Rajput v. Synchrony Bank*

United States District Court for the Middle District of Pennsylvania

October 31, 2016, Decided; October 31, 2016, Filed

CIVIL ACTION NO. 3:15-CV-1079

**Reporter**

2016 U.S. Dist. LEXIS 150231 *; 2016 WL 6433134

RACHEL RAJPUT, Plaintiff v. SYNCHRONY BANK f/k/a GE CAPITAL RETAIL BANK, Defendant

**Prior History:** *Rajput v. Synchrony Bank, 2016 U.S. Dist. LEXIS 193993 (M.D. Pa., Mar. 10, 2016)*

## Core Terms

district court, cellular telephone, binding, discovery, dialing, telephone, hardship, parties, court of appeals, motions, weighs, federal court, interpretations, Appeals, alleges, argues, phone

## Case Summary

### Overview

HOLDINGS: [1]-In a suit alleging that a bank violated the *TCPA* by using an automatic telephone dialing system (ATDS) to place calls to a cellular telephone without consent, a stay was warranted pending disposition by the U.S. Court of Appeals for the District of Columbia Circuit of a case challenging the FCC's definition of ATDS. The stay would likely last for no more than a few months, discovery or motions practice could be rendered moot if the FCC's ruling were invalidated, and a stay would simplify issues and promote judicial economy.

### Outcome

Motion to stay granted.

## LexisNexis® Headnotes

Civil Procedure > Judicial Officers > Judges > Discretionary Powers

Civil Procedure > Judgments > Entry of Judgments > Stays of Judgments

**HN1**[⤓] **Judges, Discretionary Powers**

A district court has broad discretion to stay proceedings as an incident to its power to control its own docket. A stay is an extraordinary measure, and the decision to impose a stay rests within the sound discretion of the district court. To exercise that discretion within the bounds of the law, a district court must weigh competing interests and maintain an even balance. In determining whether to grant a motion to stay, courts should consider: (1) the length of the requested stay; (2) the hardship or inequity that the movant would face going forward with the litigation; (3) the injury that a stay would inflict upon the non-movant; and (4) whether a stay will simplify issues and promote judicial economy. Efficiency does not, by itself, allow a federal court to refuse to exercise its jurisdiction in favor of proceedings in an alternative forum.

Civil Procedure > Judgments > Entry of Judgments > Stays of Judgments

**HN2**[⤓] **Entry of Judgments, Stays of Judgments**

As for the second factor in determining whether a stay is warranted, the court must assess the hardship or inequity that the movant would face going forward with the litigation. The burden is on the movant to make out a clear case of hardship or inequity in being required to go forward.

Governments > Courts > Judicial Precedent

**HN3**[⤓] **Courts, Judicial Precedent**

While federal courts should respect each other's efforts, binding precedent for all is set only by the U.S. Supreme Court, and for the district courts within a circuit, only by the court of appeals for that circuit, meaning that each federal court has an obligation to engage independently in reasoned analysis.

Communications Law > Federal Acts > Telephone Consumer Protection Act
Business & Corporate
Compliance > Communications, Satellite Transmissions & Telecommunications > Federal Acts > Telephone Consumer Protection Act

*HN4*[↧] **Federal Acts, Telephone Consumer Protection Act**

Under the *Telephone Consumer Protection Act*, *47 U.S.C.S. § 227 et seq.*, an automatic telephone dialing system is any equipment which has the capacity (A) to store or produce telephone numbers to be called, using a random or sequential number generator; and (B) to dial such numbers.

**Counsel:** [*1] For Rachel Rajput, Plaintiff: Craig Thor Kimmel, LEAD ATTORNEY, Kimmel & Silverman, Ambler, PA.

For Synchrony Bank, formerly known as GE Capital Retail Bank, Defendant: Valerie Eifert Brown, Reed Smith LLP, Philadelphia, PA.

**Judges:** William J. Nealon, United States District Judge.

**Opinion by:** William J. Nealon

# Opinion

## MEMORANDUM

On June 1, 2015, Plaintiff, Rachel Rajput, filed a complaint against Defendant, Synchrony Bank f/k/a GE Capital Retail Bank. (Doc. 1). Plaintiff alleges that Defendant repeatedly violated the *Telephone Consumer Protection Act, 47 U.S.C. § 227, et seq.* ("*TCPA*"). (Id. at pp. 1-5). Specifically, Plaintiff claims that Defendant violated *section 227(b)(1)(A)(iii) of the TCPA* when, "[d]espite the fact that, in July 2014, Plaintiff revoked any consent that may have been previously given for

Defendant to place calls to her[,] Defendant repeatedly placed non-emergency calls to Plaintiff's cellular telephone." (Id. at p. 4). Plaintiff seeks statutory damages up to $1,500.00 for each call in violation of the *TCPA*, as well as injunctive relief. (Id. at p. 5).

On January 29, 2016, Defendant moved to stay the above-captioned action until the United States Supreme Court ruled in *Spokeo, Inc. v. Robins, 135 S. Ct. 1892, 191 L. Ed. 2d 762 (2015)*, and the United States Court of Appeals for the D.C. Circuit ruled in *ACA International v. Federal Communications Commission*, Case No. [*2] 15-1211 (D.C. Cir. filed July 10, 2015). (Doc. 13). On March 10, 2016, Defendant's motion to stay was granted in part and dismissed as moot in part. (Doc. 14). Specifically, this matter was stayed pending the disposition of Spokeo by the Supreme Court of the United States. (*Id. at p. 7*). As a result, Defendant's request to stay this action pending the United States Circuit Court for the D.C. Circuit's disposition of ACA International was dismissed as moot. (Id. at p. 7 n.1).

On May 16, 2016, the Supreme Court decided *Spokeo. Spokeo, Inc. v. Robins, 136 S. Ct. 1540, 194 L. Ed. 2d 635 (May 16, 2016)*. As a result, the Court lifted the stay and reopened the above-captioned action. (Doc. 18).

On July 12, 2016, Defendant filed the instant motion to stay pending the disposition of ACA International by the United States Court of Appeals for the D.C. Circuit. (Doc. 15). On July 26, 2016, Plaintiff filed her brief in opposition. (Doc. 16). On August 1, 2016, Defendant filed its reply. (Doc. 17). The motion having been fully briefed is now ripe for disposition. For the reasons stated below, Defendant's motion to stay will be granted.

## I. FACTUAL ALLEGATIONS

Plaintiff makes the following allegations in support of her *TCPA* claim: She has had a cellular telephone number for over a year. (Doc. 1, **[*3]** p. 2). "Plaintiff has only used this number as a cellular telephone number," and "[t]he phone has been assigned to a cellular telephone service for which Plaintiff incurs a charge for incoming calls." (Doc. 1, p. 3). During or around "July 2014, and continuing through September 2014, Defendant called Plaintiff on her cellular telephone on a repetitive and continuous basis." (Id.). According to Plaintiff, when Defendant contacted her on her cellular telephone, "Defendant used an automatic telephone dialing system [("ATDS")] and automatic and/or prerecorded messages." (Id.). Moreover, Plaintiff claims these calls

were not made for "emergency purposes." (Id.).

At some point in July 2014, Plaintiff claims she "spoke with Defendant and explicitly revoked any consent that may have been previously given for Defendant to call her on her cellular telephone." (Id.). Specifically, "Plaintiff told Defendant to stop calling her." (Id.). According to Plaintiff, "Defendant heard and acknowledged Plaintiff's revocation of consent and demand to stop calling her cellular telephone." (Id.). "Despite the above," Plaintiff alleges, "Defendant persisted in calling Plaintiff on her cellular telephone." (Id.).

 [*4] As a result of these alleged actions, Plaintiff claims, "Defendant's conduct violated § 227(b)(1)(A)(iii) of the TCPA by placing repeated calls using an [ATDS] to Plaintiff's cellular telephone without prior express consent." (Id. at p. 5). Plaintiff seeks statutory damages pursuant to 47 U.S.C. §§ 227(b)(3)(B), (c)(5)(B), and (c)(5)(C); injunctive relief pursuant to 47 U.S.C. § 227(b)(3); and "[a]ny other relief deemed appropriate." (Doc. 1, p. 5).

## II. STANDARD OF REVIEW

HN1[↑] "The District Court has broad discretion to stay proceedings as an incident to its power to control its own docket." Clinton v. Jones, 520 U.S. 681, 706, 117 S. Ct. 1636, 137 L. Ed. 2d 945 (1997). "A stay is an extraordinary measure,[footnote omitted] and the decision to impose a stay rests within the sound discretion of the district court." Barker v. Kane, 149 F. Supp. 3d 521, 525 (2016) (Conner, J.) (citing Walsh Sec. v. Cristo Prop. Mgmt., 7 F. Supp. 2d 523, 526 (D.N.J. 1998); In re Adelphia Commc'ns Secs. Litig., 2003 U.S. Dist. LEXIS 9736 (E.D. Pa. 2003)). "To exercise that discretion within the bounds of the law, a district court must 'weigh competing interests and maintain an even balance.'" Germann v. Watts Regulator Co., 2015 U.S. Dist. LEXIS 168475, at *5 (M.D. Pa. 2015) (Jones, J.) (quoting Landis v. N. Am. Co., 299 U.S. 248, 254, 57 S. Ct. 163, 81 L. Ed. 153 (1936)). "As numerous courts in the Third Circuit and the Middle District have held, '[i]n determining whether to grant a motion to stay, courts should consider: (1) the length of the requested stay; (2) the "hardship or inequity" that the movant would face going forward with the litigation; (3) the injury that a stay would inflict upon the non-movant; and (4) whether a stay will simplify issues and promote judicial economy.'" Barnard v. Lackawanna Cnty., 2016 U.S. Dist. LEXIS 14143, at *6

(M.D. Pa. Jan. 29, 2016) (Mannion, J.) (citing Structural Grp., Inc. v. Liberty Mut. Ins. Co., 2008 U.S. Dist. LEXIS 82266 (M.D. Pa. 2008) (Kane, J.); Scicchitano v. Cnty. of Northumberland, 2015 U.S. Dist. LEXIS 158956 (M.D. Pa. 2015) (Brann, J.); Pennsylvania v. McGraw-Hill Cos., 2013 U.S. Dist. LEXIS 49462 (M.D. Pa. 2013) (Conner, J.); Vasvari v. Rite Aid Corp., 2010 U.S. Dist. LEXIS 86361 (M.D. Pa. 2010) (Jones, J.)). "The Third Circuit has further noted that, 'efficiency does not, by itself, allow a federal [*5] court to refuse to exercise its jurisdiction in favor of proceedings in an alternative forum.'" Id. (citing CTF Hotel Holdings, Inc. v. Marriott Int'l, Inc., 381 F.3d 131, 135-36 (3d Cir. 2004)).

## III. DISCUSSION

As stated, Defendant moves to obtain a stay in the above-captioned action pending the United States Court of Appeals for the D.C. Circuit's disposition of ACA International. (Doc. 15). After considering the four (4) factors outlined above, the Court determines that Defendant's motion should be granted and a stay should be entered. Those four (4) factors will be addressed seriatim.

### A. Length of Requested Stay

As to the first factor, the length of the requested stay, Defendant argues that a stay based on ACA International will be "relatively short." (Doc. 15, p. 12). In support, Defendant cites to a number of district court cases from outside this jurisdiction which have found that a stay pending the resolution of ACA International would be for a relatively short period. (Id. at pp. 12-13) (citing Rose v. Wells Fargo Advisors, LLC, 2016 U.S. Dist. LEXIS 85287 (N.D. Ga. June 14, 2016); Adams v. Nationstar Mortg. LLC, No. 15-CV-9912, 2016 U.S. Dist. LEXIS 152964 (C.D. Cal. June 14, 2016); Chattanond v. Discover Fin. Servs., LLC, No. 15-CV-8549, 2016 U.S. Dist. LEXIS 24700 (C.D. Cal. Feb. 26, 2016); Small v. GE Capital, Inc., No. 15-CV-2479, 2016 U.S. Dist. LEXIS 118959 (C.D. Cal. June 9, 2016); Fontes v. Time Warner Cable Inc., 2015 U.S. Dist. LEXIS 169580 (C.D. Cal. Dec. 17, 2015)). Also, Defendant notes that briefing in ACA International concluded [*6] as of February 24, 2016. (Id. at p. 12). Plaintiff responds by noting that "[t]his matter has already sat stagnant for four months waiting for one decision which has had no meaningful effect on the way this litigation should proceed." (Doc. 16, p. 2). Further, Plaintiff claims that "[b]y the time that the ACA International decision is rendered, it is likely

that another high-profile *TCPA* case may be pending before another circuit court." (Id. at p. 3).

District courts assessing the potential duration of a stay based upon ACA International have reached at least two (2) differing conclusions. Some district courts have determined that a stay pending the D.C. Circuit's disposition of ACA International would be relatively short. See, e.g., *Errington v. Time Warner Cable Inc., 2016 U.S. Dist. LEXIS 66317, at *10 (C.D. Cal. May 18, 2016)*; *Rose, 2016 U.S. Dist. LEXIS 85287, at *4*. Recently, for example, the United States District Court for the District of Minnesota determined that a stay pending a decision by the D.C. Circuit in ACA International "will be relatively short in duration." *Frable v. Synchrony Bank, 215 F. Supp. 3d 818, 2016 U.S. Dist. LEXIS 153702, 2016 WL 6123248, at *3 (D. Minn. Oct. 17, 2016)*. In support of this conclusion, the court noted that oral argument in ACA International "will be held later this week, on October 19, 2016." Id. Further, while the district court conceded that it "cannot predict when the D.C. Circuit will rule, it will likely be no more than **[*7]** a few months." Id.

A number of district courts, however, "have come to the opposite conclusion, noting that the delay caused by a stay awaiting the D.C. Circuit's decision 'could be substantial,' and therefore opting to allow progress in the case, particularly on issues unrelated to that appeal." *Espejo v. Santander Consumer USA, Inc., 2016 U.S. Dist. LEXIS 142259, at *17 (N.D. Ill. Oct. 14, 2016)*. For example, in Konopca v. Comcast Corporation,[1] the United States District Court for the District of New Jersey also addressed whether ACA International provided sufficient grounds to warrant a stay. There, the plaintiff alleged that the defendant violated "*Section 227(b)(1)(A)(iii)* of the [*TCPA*], by making calls to his cell phone using an automated telephone dialing system and prerecorded messages." *Konopca, 2016 U.S. Dist. LEXIS 55274, at *2*. The plaintiff claimed that the defendant called his "cell phone numerous times over the past four years using an automated telephone dialing system and prerecorded messages that were not intended for him but, rather, for a third party." Id. The plaintiff also alleged that "the calls and prerecorded messages related to a Comcast account that did not belong to [the plaintiff], who never had a business relationship with Comcast." *Id. at *2-3*. "Consequently," the court noted, "two potentially dispositive issues in this case appear **[*8]** to be whether

Comcast used an 'automatic telephone dialing system' and whether it had the consent of the 'called party.'" *Id. at *3*.

In reaching its determination to deny the motion to stay, the court first considered whether a stay would have unduly prejudiced the plaintiff. *Id. at *10*. The court found that "there is a potential for a lengthy delay, as it is uncertain when the D.C. Circuit will issue a ruling." Id. Thus, the court noted that "the delay here could be substantial." *Id. at *10*. Specifically, the court stated that:

> As noted by one court in addressing a motion similar to the instant motion, "the D.C. Circuit is unlikely to be the final step in the litigation over the FCC's 2015 Omnibus Order. Whichever party is unsuccessful in that court is almost certain to appeal to the Supreme Court. Thus, even the most optimistic estimate of the time required for a decision from the D.C. Circuit significantly understates the delay a stay might engender and the concomitant prejudice to the Plaintiff."

*Konopca, 2016 U.S. Dist. LEXIS 55274, at *10* (quoting *Lathrop v. Uber Techs., Inc., 2016 U.S. Dist. LEXIS 2490 (N.D. Cal. Jan. 8, 2016)*; citing *Elikman v. Sirius XM Radio, Inc., 2015 U.S. Dist. LEXIS 171769, at *6-7 (N.D. Ill. 2015))*. The district court went on to find that "[c]onsequently, . . .on balance, this factor weighs slightly against staying this case." *Id. at *11*.

Clearly, the length of the requested stay is dependent upon the D.C. Circuit's **[*9]** decision in ACA International. As discussed above, district courts addressing this issue have come down on opposite sides. Here, Defendant is seeking to stay the matter until the D.C. Circuit has ruled on ACA International. (Doc. 15). Importantly, Defendant is not requesting that the matter be stayed until ACA International reaches final resolution. (Id.). As noted, in ACA International, briefing concluded in February 2016. See *Frable, 2016 U.S. Dist. LEXIS 153702, 2016 WL 6123248, at *3*; *Richardson, 2016 U.S. Dist. LEXIS 113738, at *5*. Further, oral argument was held on October 19, 2016. See Id. Thus, the Court determines that the length of the requested stay likely will be for no more than a few months. Therefore, this factor weighs in favor of granting Defendant's motion to stay.

## B. Hardship or Inequity Defendant Will Face Going Forward With Litigation

*HN2*[⬆] As for the second factor in determining whether

---

[1] *2016 U.S. Dist. LEXIS 55274 (D.N.J. Apr. 26, 2016)*.

a stay is warranted, the Court must assess the "hardship or inequity" that the movant would face going forward with the litigation. The burden is on the movant to "make out a clear case of hardship or inequity in being required to go forward . . . ." *Landis, 299 U.S. at 255*.

Defendant argues that this factor weighs in favor of entering a stay because if a stay is not entered Defendant "will incur actual harm in the **[*10]** form of time and expense incurred to litigate this putative class case . . . ." (Doc. 15, p. 14). In support, Defendant notes that "[c]ourts have found litigation expense sufficient to demonstrate actual prejudice to justify a stay." (Id.) (citing *Rose, 2016 U.S. Dist. LEXIS 85287*; *Adams, No. 15-CV-9912, 2016 U.S. Dist. LEXIS 152964*; *Chattanond, No. 15-CV-8549, 2016 U.S. Dist. LEXIS 24700*; *Mackiewicz v. Nationstar Mortg., LLC, No. 15-CV-0465, 2015 U.S. Dist. LEXIS 180770 (M.D. Fla. Nov. 10, 2015)*).

Plaintiff responds by taking issue with the potential precedential value of the D.C. Circuit's disposition of ACA International. According to Plaintiff, "[t]here is nothing to be gained by staying this matter to await the decision of a sister circuit." (Doc. 16, p. 3). The Court does not agree.

It is determined that if a stay is not granted, both parties could incur unnecessary fees and expenses. In particular, any discovery and/or motions practice performed prior to the D.C. Circuit's disposition of ACA International would be at risk of being rendered moot if the Court of Appeals invalidates the FCC's July 2015 Declaratory Ruling. Specifically, by not staying the matter, the parties "may suffer hardship in conducting discovery and trial preparation in light of the uncertain difference between 'potential' capacity and 'theoretical' **[*11]** capacity under the definition of an ATDS." *Rose, 2016 U.S. Dist. LEXIS 85287, at *4*. Further, any decisions from the Court prior to the D.C. Circuit's disposition of ACA International could be called into question if the Court of Appeals issues a ruling favorable to Defendant. Additionally, if such a decision is issued by the D.C. Circuit it would also likely require the parties to resubmit any pending or decided motions to address the impact of the ACA International decision on this case. Therefore, not only would staying the instant matter protect the parties from potentially unnecessary expenses, discovery, and/or motions practice, but, as discussed further in Subsection D below, it would also conserve judicial resources.

## C. Injury Requested Stay Would Inflict on Plaintiff

In regards to the third factor, whether the entry of a stay would inflict injury upon Plaintiff, Defendant claims that they stay will be "relatively short" and "no hardship exists." (Doc. 15, pp. 13-14). "Moreover," Defendant contends, Plaintiff cannot show that she is suffering any continuing harm that would be exacerbated by a stay." (Id. at p. 13). Plaintiff responds by claiming that she "will be prejudiced by further delay in her cases in awaiting a decision **[*12]** that will have no binding effect on this Court." (Doc. 16, p. 3).

The Court is aware that granting or denying the stay would cause "[e]ach respective party [to] endure some sort of 'hardship . . . .'" *Vasvari, 2010 U.S. Dist. LEXIS 86361, at *8*. In particular, "either the parties would incur greater expense and expend resources in an action that could potentially be dismissed from this Court, or Plaintiff will have [to] wait longer to 'get the lawsuit moving.'" Id. However, a relatively short delay because of a stay pending the D.C. Circuit's decision in ACA International likely will not cause substantial injury to Plaintiff. As a result, this factor favors granting Defendant's motion and the entering of a stay.

## D. Whether Granting a Stay Would Streamline the Proceedings by Simplifying the Issues and Promote Judicial Economy

As to the fourth factor, whether a stay will simplify issues and promote judicial economy, Defendant argues that "[d]epending upon how the D.C. Circuit rules in the pending appeal, Plaintiff's *TCPA* claims could be extinguished; at the very least, this ruling will dictate the scope of the issues and discovery needed in this case." (Doc. 15, p. 15). In particular, Defendant states that "Plaintiff seeks to hold [Defendant] liable **[*13]** for allegedly calling her cell phone using an 'automatic telephone dialing system' or 'ATDS.'" (Id.). As a result, Defendant argues, "the outcome of [ACA International] petition will have a direct and substantial impact on Plaintiff's *TCPA* claims in this case." (Id. at p. 17). According to Defendant, "[t]he very definition of ATDS—which is a central element of Plaintiff's *TCPA* claims here—will be decided by the D.C. Circuit appeal." (Id.). Said differently, Defendant states that "[b]ecause Plaintiff's case rests on the argument that Synchrony used an ATDS to place the allegedly offending phone calls, the outcome of the appeal will have a substantial impact on the claims here." (Doc. 17, p. 3).

Plaintiff contends that ACA International will not be "binding on this Court." (Doc. 16, p. 2). And thus, Plaintiff continues, "[r]egardless of the DC Circuit's decision, such holding will be only persuasive authority and this Court is free to consider any argument made to the DC Circuit on its own." (Id.).

Defendant responded by arguing that Plaintiff's opposition "exhibits a fundamental misunderstanding of the importance of the appeal in" ACA International. (Doc. 17, p. 1). Defendant contends that ACA International "is not simply **[\*14]** an appeal of a sister circuit." (Doc. 17, p. 1). "Rather," Defendant argues, ACA International "is an administrative appeal that is binding on all federal courts across the country, including this one." (Id.). Thus, Plaintiff's contention that ACA International will not be binding on this Court is "wrong." (Id.).

According to Defendant, "[u]nder the Communications Act, challenges to a final order of the Federal Communications Commission ('FCC') must be brought under the *Administrative Orders Review Act*, also known as the *Hobbs Act, 28 U.S.C. § 2341, et seq.*" (Id.) (citing *47 U.S.C. § 402(a)*). Thus, Defendant contends, "FCC orders like the FCC's July 10, 2015 Order are 'orders' subject to review under the *Hobbs Act*." (Id. at p. 2) (citing *Columbia Broad Sys., Inc. v. United States, 316 U.S. 407, 417, 62 S. Ct. 1194, 86 L. Ed. 1563 (1942)*; *Leyse v. Clear Channel Broad., Inc., 545 F. App'x 444, 454 (6th Cir. 2013)*). Moreover, under the *Hobbs Act*, "only a federal court of appeals . . . has the power to set aside a final FCC order." (Id.) (citing *28 U.S.C. § 2342(1)*; *Morse v. Allied Interstate, LLC, 65 F. Supp. 3d 407, 411-12 (M.D. Pa. 2014)*; *CE Design Ltd. v. Prism Bus. Media, Inc., 606 F.3d 443, 446 (7th Cir. 2010)*; *Murphy v. DCI Biologicals Orlando, LLC, 2013 U.S. Dist. LEXIS 181732 (M.D. Fla. 2013)*). "Thus, the outcome of [ACA International] will have binding nationwide implications regarding the definition of an ATDS, including in this Court." (Id.).

First, in order to address the potential impact ACA International could have on this matter, the Court must assess the parties' conflict concerning precedential value of the forthcoming decision by the D.C. Circuit. It **[\*15]** is important to note at the outset that *HN3*[⬆] "while cognizant that federal courts should respect each other's efforts," the Court "is equally aware that '[b]inding precedent for all is set only by the Supreme Court, and for the district courts within a circuit, only by the court of appeals for that circuit,' meaning that each federal court has an obligation to engage independently

in reasoned analysis." *Philadelphia Inquirer v. Wetzel, 906 F. Supp. 2d 362, 366 (M.D. Pa. 2012)* (Kane, J.) (quoting *In re Korean Air Lines Disaster, 829 F.2d 1171, 1176, 265 U.S. App. D.C. 39 (D.C. Cir. 1987)*). With that said, a number of district courts have addressed whether the forthcoming decision by the D.C. Circuit in ACA International will be binding precedent. As discussed in more detail below, courts have reached conflicting conclusions.

For example, the United States District Court for the Middle District of Florida stated that "the extent to which this Court would be bound [by ACA International] is not entirely clear." *Sliwa, 2016 U.S. Dist. LEXIS 93852, at \*7*. Generally, the court noted, "'[b]inding precedent for all is set only by the Supreme Court, and for the district courts within a circuit, only by the court of appeals for that district.'" Id. (alteration in original) (quoting *Murphy v. F.D.I.C., 208 F.3d 959, 965 (11th Cir. 2000)*). The district court continued by stating that "[w]here, however, multiple petitions challenging **[\*16]** an FCC (or other agency) regulation are consolidated in one circuit under *28 U.S.C. § 2112*—as here—there is support for the proposition that the assignee circuit 'bec[o]mes, and remains, the sole forum for addressing . . . the validity of the FCC's rules.'" *Sliwa, 2016 U.S. Dist. LEXIS 93852, at \*7* (second alteration in original) (quoting *Peck v. Cingular Wireless, LLC, 535 F.3d 1053, 1057 (9th Cir. 2008)*; (*GTE S., Inc. v. Morrison, 199 F.3d 733, 743 (4th Cir. 1999)*). "Thereafter, a 'decision regarding the validity of the [challenged interpretations] is binding outside of th[at] . . . Circuit.'" Id. (quoting *Peck, 535 F.3d at 1057*; citing *ONRC Action v. U.S. Bureau of Reclamation, 2012 U.S. Dist. LEXIS 118153, at \*88-89 (D. Ore. Jan. 17, 2012)*). The district court stated that "[t]his case law stands for the proposition that, if the D.C. Circuit were to vacate (or uphold) one or more of the challenged FCC interpretations, this court could not instead continue to follow the FCC's now-vacated (or not follow the FCC's now-affirmed) interpretations in resolving Plaintiff's claims.[footnote omitted]" Id. (citing *Peck, 535 F.3d at 1057*; citing *ONRC Action, 2012 U.S. Dist. LEXIS 118153*).

Similarly, the United States District Court for the District of Minnesota stated that it is "bound by the FCC's interpretations of the *TCPA*, unless those interpretations are invalidated by a court of appeals." *Wright v. Target Corp., 2015 U.S. Dist. LEXIS 167000, at \*13 (D. Minn. 2015)* (citing *28 U.S.C. § 2342, et seq.*). In a separate case, the District of Minnesota stated that "[a]lthough Plaintiff questions whether the forthcoming ACA International opinion would be binding on this Court, if

the D.C. Circuit **[*17]** rejects the FCC's interpretation of the term 'capacity,' precedent suggests this Court would follow it." *Frable, 2016 U.S. Dist. LEXIS 153702, 2016 WL 6123248, at *3*. The court continued by stating that "[s]hould the D.C. Circuit reject the FCC's interpretation of 'capacity' and find that the term is limited to 'present ability' or 'current capacity,' federal district courts would be more likely to follow the D.C. Circuit's decision than an invalidated FCC order." Id.

The United States District Court for the Northern District of California, on the other hand, addressed whether ACA International would be binding and reach a different conclusion. Specifically, in O'Hanlon v. 24 Hour Fitness USA, Inc.[2] stated that "[e]ven assuming that the decision from the D.C. Circuit will be favorable to Defendants, it is, of course, not binding on this Court." *O'Hanlon, 2016 U.S. Dist. LEXIS 27509, at *15*.

The Court determines that "[s]hould the D.C. Circuit reject the FCC's interpretation of 'capacity' and find that the term is limited to 'present ability' or 'current capacity,' federal district courts would be more likely to follow the D.C. Circuit's decision than an invalidated FCC order." *Frable, 2016 U.S. Dist. LEXIS 153702, 2016 WL 6123248, at *3*. Thus, the question then becomes how much of an impact the D.C. Circuit's decision could have on this case.

Here, Plaintiff alleges that **[*18]** "Defendant's conduct violated *§ 227(b)(1)(A)(iii) of the TCPA* by placing repeated calls using an [ATDS] to Plaintiff's cellular telephone without prior express consent." (Doc. 1, p. 5). **HN4**[↑] "Under the *TCPA*, an ATDS is any equipment 'which has the capacity (A) to store or produce telephone numbers to be called, using a random or sequential number generator; and (B) to dial such numbers.'" *Robinson v. Nationstar Mortgage, LLC, 220 F. Supp. 3d 1353, 2016 U.S. Dist. LEXIS 147770, at *4 (S.D. Ga. Oct. 25, 2016)* (quoting *47 U.S.C. § 227(a)(1)*). "In a July 10, 2015 FF Ruling, the FCC broadly defined the capacity of an ATDS as 'not limited to its current configuration but also includes potential functionalities.'" *Coatney v. Synchrony Bank, 2016 U.S. Dist. LEXIS 118768, at *3-4 (M.D. Fla. Aug. 2, 2016)* (quoting In re Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991, *30 FCC Rcd. 7961, 7974 (2015)*).

"In ACA International, the D.C. Circuit is reviewing

consolidated challenges to the [Federal Communications Commission's ("FCC")] Order under the *Hobbs Act*, *28 U.S.C. § 2342*." *Schwyhart v. AmSher Collection Servs., Inc., 182 F. Supp. 3d 1239, 2016 U.S. Dist. LEXIS 56065, at *3 (N.D. Ala. Apr. 22, 2016)*. Specifically, "the D.C. Circuit will review the [FCC's] July 15, 2016 Declaratory Ruling and Order implementing the *TCPA, 30 F.C.C.R. 7961 (2015)*." *Caudill v. Wells Fargo Home Mortg., Inc., 2016 U.S. Dist. LEXIS 89136, at *6 (E.D. Ken. July 11, 2016)*. The FCC's "Declaratory Ruling and Order addresses:

key language in the *TCPA*, including "whether dialing equipment is an autodialer under the *TCPA* when it does not have the 'current capacity' or 'present ability' to generate or store random or sequential numbers or to dial sequentially or randomly **[*19]** at the time the call is made," and "whether a caller making a call subject to the *TCPA* to a number reassigned from the consumer who gave consent for the call to a new consumer is liable for violating the *TCPA*."

*Sliwa, 2016 U.S. Dist. LEXIS 93852, at *4* (quoting *30 F.C.C. Rcd. 7961, 7972, 7999*). "Among the questions expected to be addressed [by the D.C. Circuit Court of Appeals] are: (1) whether the FCC acted arbitrarily and capriciously in expanding the definition of ATDS; and (2) whether the FCC acted arbitrarily and capriciously in requiring callers to accept revocation of consent to be called 'at any time and through any reasonable means.'" Id.

As noted above, the definition of an ATDS is directly implicated in this litigation.[3] "Whether Defendants used an ATDS when making telephone calls to Plaintiff is 'a threshold issue for liability under the *TCPA* and for the scope of discovery.'" *Coatney, 2016 U.S. Dist. LEXIS 118768, at *5* (quoting *Rose, 2016 U.S. Dist. LEXIS 85287, at *4*). Thus, a stay pending ACA International

---

[3] The Court notes that Plaintiff, earlier in her complaint, alleges that "[w]hen contacting [her] on her cellular telephone, Defendant used an automatic telephone dialing system and automatic and/or pre-recorded messages." (Doc. 1, p. 3). While her allegation concerning Defendant's use of pre-recorded messages could establish, in part, that the *TCPA* was violated, Plaintiff appears to narrow the basis of her *TCPA* claim later in the complaint. See (Id. at p. 5). Specifically, Plaintiff alleges that "Defendant's conduct violated *§ 227(b)(1)(A)(iii) of the TCPA* by placing repeated calls using an [ATDS] to Plaintiff's cellular telephone without prior express consent." (Id.).

would help clarify and streamline the legal issue concerning the definition of ATDS. Moreover, awaiting a decision from the D.C. Circuit in ACA International would also focus discovery concerning Defendant's alleged ATDS for both parties. Furthermore, as noted, if a stay in this action is not entered the Court would be leaving **[*20]** the door open for the possibility that during the course of discovery, drafting of motions, or while dispositive motions are pending the D.C. Circuit issue its decision in ACA International that would then require additional discovery or renewed motions. Finally, "granting a stay 'will reduce the burden of litigation on the parties and the Court by allowing the Court to avoid issuing a dispositive Order in the midst of an uncertain legal environment.'" Id. (quoting *Mackiewicz, 2015 U.S. Dist. LEXIS 180770, at *2-3)*. As a result, this final factor also weighs in favor of granting the stay.

## IV. <u>CONCLUSION</u>

Given that the **[*21]** above-discussed factors weigh in favor of granting Defendant's motion to stay, Defendant has shown that the circumstances justify granting the relief sought. As a result, Defendant's motion to stay the matter pending resolution of ACA International, (Doc. 15), will be granted. An appropriate Order follows.

**Date**: October 31, 2016

/s/ William J. Nealon

**United States District Judge**

## <u>ORDER</u>

**AND NOW, THIS 31st DAY OF OCTOBER, 2016**, in accordance with the accompanying Memorandum, **IT IS HEREBY ORDERED THAT**:

    1. Defendant's motion to stay pending a ruling from the United States Court of Appeals for the D.C. Circuit in ACA International v. FCC, No. 15-1211 (D.C. Cir. filed July 10, 2015), (Doc. 15), is **GRANTED**.

    2. The above-captioned action is hereby **STAYED**.

    3. The Clerk of Court is directed to **ADMINISTRATIVELY CLOSE** this case during the period of the stay.

    4. Within thirty (30) days of the D.C. Circuit's ruling in ACA International, Plaintiff shall notify this Court

in writing that said proceedings are concluded, and the above captioned action should be reopened.

/s/ William J. Nealon

**United States District Judge**

---

*End of Document*

# *Scott v. Gino Morena Enters., LLC*

United States Court of Appeals for the Ninth Circuit

February 7, 2018, Argued and Submitted, Pasadena, California; April 27, 2018, Filed

No. 16-56200

## Reporter

888 F.3d 1101 *; 2018 U.S. App. LEXIS 10762 **; 130 Fair Empl. Prac. Cas. (BNA) 1489; 102 Empl. Prac. Dec. (CCH) P46,021; 2018 WL 1977123

TAYLOR SCOTT, an individual, Plaintiff-Appellant, v. GINO MORENA ENTERPRISES, LLC, a California limited liability company; DOES, 1-50, inclusive, Defendants-Appellees.

**Subsequent History:** Rehearing denied by, Rehearing, en banc, denied by *Scott v. Gino Morena Enters., 2018 U.S. App. LEXIS 14914 (9th Cir. Cal., June 4, 2018)*

**Prior History: [**1]** Appeal from the United States District Court for the Southern District of California. D.C. No. 3:15-cv-00550-JLS-WVG. Janis L. Sammartino, District Judge, Presiding.

*Scott v. Gino Morena Enters., L.L.C., 2016 U.S. Dist. LEXIS 95504 (S.D. Cal., July 21, 2016)*

**Disposition:** AFFIRMED IN PART, REVERSED IN PART, AND REMANDED.

## Core Terms

notice, right-to-sue, file suit, district court, civil action, aggrieved person, administrative charge, limitations period, filing of charges, retaliation, exhaustion, occurring, limitations, aggrieved, claimant, becomes, summary judgment, eligible, alleges, warning, unlawful employment practice, giving of a notice, right to sue, state agency, harassment, triggered, receives

## Case Summary

### Overview

HOLDINGS: [1]-The 90-day period referenced in *42 U.S.C.S. § 2000e-5(f)(1)* began when the former employee was given notice of the right to sue by the EEOC. The district court erred in concluding that the 90-day clock for the employee to file suit began when she became eligible to receive a right-to-sue notice, rather than when she actually received her right-to-sue notice from the EEOC; [2]-As to timeliness of claims, the employee's Title VII claims could be based on alleged acts occurring after she filed her first administrative charge only to the extent she could show such acts were part of a single hostile work environment claim. To the extent her claims were based on discrete acts occurring after she filed her first charge with the state, the district court did not err in granting summary judgment.

### Outcome

Affirmed in part, reversed in part, and remanded.

# LexisNexis® Headnotes

Labor & Employment Law > Discrimination > Title VII Discrimination
Business & Corporate Compliance > Labor & Employment > Discrimination > Title VII Discrimination

Labor & Employment Law > ... > Civil Actions > Exhaustion of Remedies > Filing of Charges

Labor & Employment Law > ... > Civil Actions > Exhaustion of Remedies > Right to Sue Letters

**HN1[⬇]** Discrimination, Title VII Discrimination

Under *Title VII of the Civil Rights Act of 1964*, an aggrieved person wishing to bring a claim against an employer must exhaust administrative remedies by filing

a charge with the Equal Employment Opportunity Commission or a qualifying state agency and receiving a right-to-sue notice. *42 U.S.C.S. § 2000e-5*.

Civil Procedure > Appeals > Standards of Review > De Novo Review

Civil Procedure > ... > Summary Judgment > Appellate Review > Standards of Review

**HN2**[⤓] **Standards of Review, De Novo Review**

The United States Court of Appeals for the Ninth Circuit reviews the grant of summary judgment de novo. Review is governed by the same standard used by the trial court under *Fed. R. Civ. P. 56(c)*. The court must determine, viewing the evidence in the light most favorable to the nonmoving party, whether there are any genuine issues of material fact and whether the district court correctly applied the substantive law.

Labor & Employment Law > ... > Title VII Discrimination > Statute of Limitations > Begins to Run

Labor & Employment Law > ... > Civil Actions > Exhaustion of Remedies > Filing of Charges

Labor & Employment Law > ... > Civil Actions > Exhaustion of Remedies > Right to Sue Letters

Labor & Employment Law > ... > US Equal Employment Opportunity Commission > Civil Actions > Time Limitations

**HN3**[⤓] **Statute of Limitations, Begins to Run**

There are effectively two limitations periods for *Title VII of the Civil Rights Act of 1964* claims. First, a claimant must exhaust administrative remedies by filing a charge with the EEOC or an equivalent state agency, like the California Department of Fair Employment and Housing and receiving a right-to-sue letter. *42 U.S.C.S. § 2000e-5(e)(1)*. The charge must be filed within 180 days after the allegedly unlawful employment practice occurred. *42 U.S.C.S. § 2000e-5(e)(1)*. Second, after exhausting administrative remedies, a claimant has 90 days to file a

civil action. *42 U.S.C.S. § 2000e-5(f)(1)*.

Labor & Employment Law > ... > Title VII Discrimination > Statute of Limitations > Begins to Run

Labor & Employment Law > ... > US Equal Employment Opportunity Commission > Civil Actions > Time Limitations

Labor & Employment Law > ... > Civil Actions > Exhaustion of Remedies > Filing of Charges

**HN4**[⤓] **Statute of Limitations, Begins to Run**

*42 U.S.C.S. § 2000e-5(f)(1)* states: If a charge filed with the Commission pursuant to subsection (b) of this section is dismissed by the Commission, or if within one hundred and eighty days from the filing of such charge or the expiration of any period of reference under subsection (c) or (d) of this section, whichever is later, the Commission has not filed a civil action under this section or the Commission has not entered into a conciliation agreement to which the person aggrieved is a party, the Commission shall so notify the person aggrieved and within ninety days after the giving of such notice a civil action may be brought against the respondent named in the charge (A) by the person claiming to be aggrieved or (B) if such charge was filed by a member of the Commission, by any person whom the charge alleges was aggrieved by the alleged unlawful employment practice. *42 U.S.C.S. § 2000e-5(f)(1)*. This statutory provision addresses two related, but distinct, ideas: the EEOC's obligation to give notice to the aggrieved person and the person's authorization to file a civil action.

Labor & Employment Law > Regulators > US Equal Employment Opportunity Commission
Business & Corporate Compliance > Labor & Employment > Regulators > US Equal Employment Opportunity Commission

**HN5**[⤓] **Regulators, US Equal Employment Opportunity Commission**

In the context of *42 U.S.C.S. § 2000e-5(f)(1)*, the EEOC's duty to give notice is triggered in two instances: (1) the EEOC's dismissal of the administrative charge,

or (2) the EEOC's failure to file a civil action or enter a conciliation agreement within 180 days from the filing of the charge (or the expiration of time periods referenced in other provisions). If either of these triggering events occurs, the EEOC shall so notify the person aggrieved. *42 U.S.C.S. § 2000e-5(f)(1)*. The corresponding regulation requires the EEOC's notice to state that the claimant may bring an action within 90 days from receipt of such authorization. *29 C.F.R. § 1601.28(e)*. The statute does not expressly state when the EEOC must give such notice. However, it clearly contemplates the giving of notice sometime after 180 days have expired from the date the charge is filed. *42 U.S.C.S. § 2000e-5(f)(1)*.

> Labor & Employment
> Law > Discrimination > Actionable Discrimination

> Labor & Employment Law > ... > Civil
> Actions > Exhaustion of Remedies > Right to Sue
> Letters

*HN6*[⬇] **Discrimination, Actionable Discrimination**

The language from *42 U.S.C.S. § 2000e-5(f)(1)* addressing the right to file a civil action may be broken down into two parts: who may file the suit and when it may be filed. The statute provides that the person claiming to be aggrieved or, if the charge was filed by the EEOC, the person whom the charge alleges was aggrieved may file suit. *42 U.S.C.S. § 2000e-5(f)(1)*. The portion of the statute addressing the time to file a civil action is similarly straightforward. The person claiming to be aggrieved may file a civil action within ninety days after the giving of such notice. The terms "such notice" could refer only to the notice (identified a few words earlier in the sentence) the EEOC must give upon the occurrence of the specified conditions—i.e., the right-to-sue notice. Thus, under a plain reading of *§ 2000e-5(f)(1)*, the 90-day period in which a claimant may file a civil action begins when the EEOC gives a right-to-sue notice.

> Governments > Courts > Judicial Precedent > Dicta

*HN7*[⬇] **Judicial Precedent, Dicta**

A statement is dictum when it is made during the course of delivering a judicial opinion, but is unnecessary to the decision in the case and is therefore not precedential.

The line is not always easy to draw, however, for where a panel confronts an issue germane to the eventual resolution of the case, and resolves it after reasoned consideration in a published opinion, that ruling becomes the law of the circuit, regardless of whether doing so is necessary in some strict logical sense.

> Labor & Employment Law > ... > Civil
> Actions > Exhaustion of Remedies > Right to Sue
> Letters

> Labor & Employment Law > ... > US Equal
> Employment Opportunity Commission > Civil
> Actions > Time Limitations

*HN8*[⬇] **Exhaustion of Remedies, Right to Sue Letters**

*42 U.S.C.S. § 2000e-5(f)(1)* plainly ties the 90-day period to the giving of the right-to-sue notice, not eligibility for a right-to-sue notice.

> Labor & Employment Law > ... > US Equal
> Employment Opportunity Commission > Civil
> Actions > Exhaustion of Remedies

> Labor & Employment Law > ... > US Equal
> Employment Opportunity Commission > Civil
> Actions > Time Limitations

> Labor & Employment Law > ... > Civil
> Actions > Exhaustion of Remedies > Right to Sue
> Letters

*HN9*[⬇] **Civil Actions, Exhaustion of Remedies**

To hold that a plaintiff may sue when the EEOC has not acted on a charge for 180 days but is not required to do so until after receiving a right-to-sue notice is entirely consistent with the differing purposes of administrative exhaustion and the statute of limitations. The purpose of the exhaustion requirement is to provide an opportunity to reach a voluntary settlement of an employment discrimination dispute. The purpose of a statute of limitations, on the other hand, is to require diligent prosecution of known claims, thereby providing finality and predictability in legal affairs and ensuring that claims will be resolved while evidence is reasonably available and fresh. Although a 180-day waiting period provides a reasonable opportunity for voluntary

settlement to occur, at that point the EEOC does not lose jurisdiction to continue investigating the matter and to possibly take action. Even when the EEOC takes more than 180 days to investigate, the employer, already on notice of the charge, will have a fair opportunity to take appropriate steps to preserve evidence while it is reasonably fresh. Thus, allowing an aggrieved person to wait for the agency's investigation to conclude—even if it takes more than 180 days—furthers the purpose of the administrative exhaustion requirement without undermining the purpose of the 90-day limitations period.

> Civil Procedure > ... > Defenses, Demurrers & Objections > Affirmative Defenses > Laches

> Labor & Employment Law > Discrimination > Title VII Discrimination > Statute of Limitations

*HN10*[⬇] **Affirmative Defenses, Laches**

An action under *Title VII of the Civil Rights Act of 1964* may be barred by the doctrine of laches.

> Labor & Employment Law > ... > Title VII Discrimination > Statute of Limitations > Begins to Run

> Labor & Employment Law > ... > Civil Actions > Exhaustion of Remedies > Filing of Charges

*HN11*[⬇] **Statute of Limitations, Begins to Run**

Under *Title VII of the Civil Rights Act of 1964*, a charge must be filed with the California Department of Fair Employment and Housing (and thus "dual-filed" with the EEOC) within 300 days after the alleged unlawful employment practice occurred. *42 U.S.C.S. § 2000e-5(e)(1)*.

> Labor & Employment Law > ... > Title VII Discrimination > Statute of Limitations > Continuing Violations

> Labor & Employment Law > Discrimination > Title VII Discrimination > Statute of Limitations

*HN12*[⬇] **Statute of Limitations, Continuing**

**Violations**

Generally, a Title VII plaintiff may not base a claim on conduct occurring outside the statutory time period for filing a charge (i.e., 300 days before the charge is filed). However, under the continuing violations doctrine, acts that fall outside the statutory time period may be actionable.

> Labor & Employment Law > ... > Title VII Discrimination > Statute of Limitations > Continuing Violations

> Labor & Employment Law > Discrimination > Title VII Discrimination > Statute of Limitations

> Labor & Employment Law > ... > Harassment > Racial Harassment > Hostile Work Environment

*HN13*[⬇] **Statute of Limitations, Continuing Violations**

The applicability of the continuing violations doctrine depends on the nature of the plaintiff's claim. A hostile work environment claim is composed of a series of separate acts that collectively constitute one unlawful employment practice. Consequently, the entire time period of the hostile environment may be considered by a court for the purposes of determining liability so long as at least one act contributing to the claim occurs within the filing period. However, Title VII precludes recovery for discrete acts of discrimination or retaliation that occur outside the statutory time period. Each discrete discriminatory act starts a new clock for filing charges alleging that act.

**Summary:**

**SUMMARY**[**]

**Employment Discrimination**

The panel affirmed in part and reversed in part the district court's summary judgment in favor of the defendant on claims under *Title VII of the Civil Rights Act of 1964*.

_____

** This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

The panel held that, under *42 U.S.C. § 2000e-5(f)(1)*, the 90-day period for filing a civil action, following exhaustion of administrative remedies, begins when the aggrieved person is given notice of the right to sue by the Equal Employment Opportunity Commission, rather than when the person becomes eligible to receive a right-to-sue notice from the EEOC. Accordingly, the plaintiffs' claims based on her first administrative charge were timely.

The panel held that the plaintiff's claims based on a second administrative charge were untimely, but she could base her Title VII claims on the defendant's alleged acts occurring after she filed her first administrative charge to the extent she could show such acts were part of a single hostile work environment claim.

The panel affirmed the district court's grant **[**2]** of summary judgment only as to claims based on discrete discriminatory or retaliatory acts occurring after the plaintiff filed her first administrative charge. The panel otherwise reversed and remanded.

**Counsel:** Armond M. Jackson (argued) and Neil Pedersen, Pedersen Law APLC, Irving, California, for Plaintiff-Appellant.

Daniel E. Gardenswartz (argued) and Leah S. Strickland, Solomon Ward Seidenwurm & Smith, San Diego, California, for Defendant-Appellee.

**Judges:** Before: Consuelo M. Callahan and Jacqueline H. Nguyen, Circuit Judges, and Joseph F. Bataillon,[*] District Judge. Opinion by Judge Callahan.

**Opinion by:** Consuelo M. Callahan

# Opinion

 **[*1104]** CALLAHAN, Circuit Judge:

Taylor Scott appeals from the grant of summary judgment in favor of her former employer, Gino Morena Enterprises, LLC ("GME"). Scott sued GME alleging sexual harassment and retaliation under state law. The parties stipulated to the dismissal of Scott's state law claims and Scott's filing of an amended complaint asserting claims under *Title VII of the Civil Rights Act of*

---

[*] The Honorable Joseph F. Bataillon, United States District Judge for the District of Nebraska, sitting by designation.

*1964*. In granting GME's motion for summary judgment, the district court concluded that Scott's Title VII claims were time-barred and that Scott failed to meet her burden of establishing a basis for equitable **[**3]** tolling.

*HN1*[⬆] Under Title VII, an aggrieved person wishing to bring a claim against an employer must exhaust administrative remedies by filing a charge with the Equal Employment Opportunity Commission (the "EEOC") or a qualifying state agency and receiving a right-to-sue notice. *42 U.S.C. § 2000e-5*. The primary issue in this appeal is whether, under *42 U.S.C. § 2000e-5(f)(1)*, the 90-day period for filing a civil action begins when the aggrieved person becomes eligible to receive a right-to-sue notice from the EEOC or when the person is actually given a right-to-sue notice.

We hold that the 90-day period referenced in *42 U.S.C. § 2000e-5(f)(1)* begins when the aggrieved person is given notice of the right to sue by the EEOC. We also hold that Scott's Title VII claims may be based on alleged acts occurring after she filed her first administrative charge only to the extent such acts are part of a single unlawful employment practice. *See Nat'l R.R. Passenger Corp. v. Morgan, 536 U.S. 101, 117, 122 S. Ct. 2061, 153 L. Ed. 2d 106 (2002)*. We thus affirm in part and reverse in part.

## I. Factual Background

Scott began working for GME in April 2011 at a barbershop located on the United States Marine Corps Base Camp Pendleton, where she was responsible for providing customers with haircuts and selling hair products. Scott alleges Judy Lifesy (a GME Manager) and Katie **[**4]** Shepler (a GME General Manager) sexually harassed and retaliated against her. Specifically, Scott alleges that after she turned down Lifesy's sexual advances, Lifesy began treating Scott poorly. Examples of Lifesy's alleged abusive behavior include pushing Scott out of the way to ring up customers, turning down the temperature of the shop to 30 degrees, turning up the volume of the television in the shop, yelling at Scott in front of customers, throwing Scott's work tools in the sink, and blaming Scott for computer problems.

On November 13, 2013, while Scott was still employed by GME, she filed a charge with the California Department of Fair Employment and Housing (the "DFEH") after speaking with DFEH representative Karen Rice. Scott's handwritten notes from her telephone

conversation with Rice indicate "365 days" in the margin next to "Dept. of Fair Employment & Housing" and "w/in 30 days an investigator will call to determine if actionable." The notes also indicate "statue [sic] of lim 300 Days" in the margin next to "EEOC — Federal coverage (DFEH will send their filing to the EEOC)." Six days later, the DFEH transferred the duty to investigate Scott's charge to the EEOC pursuant **[**5]** to a worksharing agreement between the DFEH and the EEOC.

On November 25, 2013, the DFEH issued a letter giving Scott notice of her right to sue. The letter stated the DFEH **[*1105]** had closed Scott's case "for the following reason: Administrative Dismissal — Waived to Another Agency." The right-to-sue letter also explained that: (1) a civil action under California's Fair Employment and Housing Act (the "FEHA") "must be filed within one year from the date of this letter"; (2) Scott's DFEH charge "is dual filed with the [EEOC]" and Scott "ha[s] a right to request EEOC to perform a substantial weight review of [DFEH's] findings . . . within fifteen (15) days of . . . receipt of this notice"; (3) "[a]lthough DFEH has concluded that the evidence and information did not support a finding that a violation occurred, the allegations and conduct at issue may be in violation of other laws"; and (4) Scott "should consult an attorney as soon as possible regarding any other options and/or recourse [she] may have regarding the underlying acts or conduct." (Emphasis omitted). Scott testified that she read the DFEH right-to-sue letter.

Scott alleges that on December 22, 2013, approximately one month after she **[**6]** obtained her first right-to-sue letter, Lifesy issued Scott's first warning but described it as her second warning.[1] Scott then decided to leave GME's employ.

Scott did not follow up on her first administrative charge until October 15, 2014, when she contacted Karen Rice from the DFEH and received contact information for the EEOC. That same day, Scott spoke with someone at the EEOC, who confirmed that Scott's complaint was being processed and gave Scott a claim number.

Scott hired a lawyer and filed a second charge with the DFEH on November 17, 2014. The second charge recounted Scott's allegations leading to her first DFEH charge, and then stated:

> After I filed my complaint and received my right to sue letter, Lifesy and Shepler gave me a final

warning (although this was the very first warning I received while I was employed by GM). After the unfair treatment, harassment and retaliation and the immediate warning after I filed my DFEH complaint, I was unable withstand [sic] any further retaliatory harassing and unfair treatment and left GMs [sic] employ knowing that they were setting me up for termination.

Scott received a second DFEH right-to-sue letter on the same date she filed the second **[**7]** charge. The letter stated that Scott's case was being closed because an immediate right-to-sue notice was requested and that the DFEH would take no further action on the charge. The letter also stated: "To obtain a federal Right to Sue notice, you must visit the U.S. Equal Employment Opportunity Commission (EEOC) to file a complaint within 30 days of receipt of this DFEH Notice of Case Closure or within 300 days of the alleged discriminatory act, whichever is earlier."

## II. Procedural Background

On November 20, 2014, Scott filed a complaint in the Superior Court of California, County of Orange, asserting FEHA claims only. GME removed the case to federal court under the federal enclave doctrine. Scott filed a motion to remand the case to state court, arguing she asserted claims under state law only. The district court denied the motion.

On May 22, 2015, GME filed a motion for judgment on the pleadings, seeking dismissal of the FEHA claims as preempted by the federal enclave doctrine. After receiving that motion, Scott requested, and obtained, a right-to-sue notice from the **[*1106]** EEOC (associated with her first administrative charge). The notice, which was issued on June 3, 2015, stated that "[m]ore **[**8]** than 180 days have passed since the filing of this charge" and "[t]he EEOC is terminating its processing of this charge." *Id.* The notice also stated that Scott's "lawsuit under Title VII . . . **must be filed in a federal or state court *WITHIN 90 DAYS* of . . . receipt of this notice**; or [the] right to sue based on this charge will be lost."

Before Scott filed an opposition to the motion for judgment on the pleadings, the parties filed a joint motion to allow Scott to file a First Amended Complaint (the "FAC") and for GME to withdraw its motion for judgment on the pleadings. The proposed FAC included only federal claims under Title VII. The parties' stipulation expressly preserved GME's right to assert

---

[1] Scott does not allege the reason given for the warning.

defenses to Scott's federal claims, "specifically including any statute of limitations defenses." The district court granted the joint motion, and Scott filed her FAC.

GME then moved to dismiss the FAC, arguing the Title VII claims were time-barred. In denying the motion, the district court assumed, without deciding, that Scott's Title VII claims were untimely but ruled that Scott might be entitled to equitable tolling and that the issue was not appropriate for resolution on the pleadings. **[**9]**

After the parties subsequently engaged in discovery on the issue of equitable tolling, GME filed a motion for summary judgment. The district court granted the motion, ruling that all of Scott's claims were time-barred and equitable tolling did not apply. Scott timely appealed.

## III. Standard of Review

**HN2**[⬆] We review the grant of summary judgment de novo. _Szajer v. City of Los Angeles, 632 F.3d 607, 610 (9th Cir. 2011)_. "[R]eview is governed by the same standard used by the trial court under _Federal Rule of Civil Procedure 56(c)_." _Adcock v. Chrysler Corp., 166 F.3d 1290, 1292 (9th Cir. 1999)_. The court "must determine, viewing the evidence in the light most favorable to the nonmoving party, whether there are any genuine issues of material fact and whether the district court correctly applied the substantive law." _Id._

## IV. Discussion

## A. Scott's claims based on the first administrative charge are timely

**HN3**[⬆] There are effectively two limitations periods for Title VII claims. First, a claimant must exhaust administrative remedies by filing a charge with the EEOC or an equivalent state agency, like the DFEH, and receiving a right-to-sue letter. _42 U.S.C. § 2000e-5(e)(1)_; _Jasch v. Potter, 302 F.3d 1092, 1094 (9th Cir. 2002)_. The charge must be filed within 180 days after the allegedly unlawful employment practice occurred.[2]

_42 U.S.C. § 2000e-5(e)(1)_. Second, after exhausting administrative remedies, a claimant has 90 days to file a civil action. _42 U.S.C. § 2000e-5(f)(1)_.

Scott filed her first **[**10]** DFEH charge on November 13, 2013. Twelve days later, she received a notice giving her the right to sue under the FEHA and stating that the charge "is dual filed with the [EEOC]."[3] Scott did not file her complaint **[*1107]** in state court until almost a full year later on November 20, 2014. At that time, she still had not received a right-to-sue notice from the EEOC. On June 3, 2015, the EEOC issued a right-to-sue notice, and two weeks later, the district court granted the parties' joint motion to allow Scott to amend her complaint to assert her Title VII claims.

There is no dispute that Scott timely filed her first administrative charge. At issue is the second limitations period, and the dispute turns on whether the 90-day period to file a civil action begins when the plaintiff receives a right-to-sue notice from the EEOC _or_ 180 days after the charge is filed with the EEOC, regardless of when the EEOC issues a right-to-sue notice. If it is the former, then Scott's claims are not time-barred. If it is the latter, Scott's time to file an action undoubtedly expired before she sued.

**HN4**[⬆] The operative provision of the statute states:

> If a charge filed with the Commission pursuant to _subsection (b)_ of this section **[**11]** is dismissed by the Commission, or if within one hundred and eighty days from the filing of such charge or the expiration of any period of reference under _subsection (c)_ or _(d)_ of this section, whichever is later, the Commission has not filed a civil action under this section . . . or the Commission has not

---

[2] If the charge is initially filed with a state agency that enforces the state's own anti-discrimination laws, like the DFEH in California, the statutory 180-day rule does not apply. Instead, a Title VII charge must be filed within 300 days after the allegedly unlawful employment practice or 30 days after notice

that the state agency has terminated its proceedings under state law, whichever is earlier. _42 U.S.C. § 2000e-5(e)(1)_.

[3] The DFEH "dual filed" Scott's charge with the EEOC pursuant to the Worksharing Agreement Between California Department of Fair Employment and Housing and U.S. Equal Opportunity Commission, Fiscal Year 2013, and FY 2014 Extension of Worksharing Agreement (the "Worksharing Agreement"). _See Stiefel v. Bechtel Corp., 624 F.3d 1240, 1244 (9th Cir. 2010)_ ("Under such an agreement, a charge filed with the DFEH 'is deemed to have been received by the EEOC on the same day.'" (quoting _Green v. Los Angeles Cty. Superintendent of Schools, 883 F.2d 1472, 1476 (9th Cir. 1989)_). We grant GME's unopposed motion for judicial notice to the extent it seeks judicial notice of the Worksharing Agreement.

entered into a conciliation agreement to which the person aggrieved is a party, the Commission . . . shall so notify the person aggrieved and within ninety days after the giving of such notice a civil action may be brought against the respondent named in the charge (A) by the person claiming to be aggrieved or (B) if such charge was filed by a member of the Commission, by any person whom the charge alleges was aggrieved by the alleged unlawful employment practice.

*42 U.S.C. § 2000e-5(f)(1)*. This statutory provision addresses two related, but distinct, ideas: the EEOC's obligation to give notice to the aggrieved person and the person's authorization to file a civil action.

*HN5*[↑] The EEOC's duty to give notice is triggered in two instances: (1) the EEOC's dismissal of the administrative charge, or (2) the EEOC's failure to file a civil action or enter a conciliation agreement within 180 days from the filing of the charge (or the **[**12]** expiration of time periods referenced in provisions not at issue here).[4] If either of these triggering events occurs, the EEOC "shall so notify the person aggrieved." *42 U.S.C. § 2000e-5(f)(1)*. The corresponding regulation requires the EEOC's notice to state that the claimant may bring an action "within 90 days from **[*1108]** receipt of such authorization." *29 C.F.R. § 1601.28(e)*.

The statute does not expressly state when the EEOC must give such notice. However, it clearly contemplates the giving of notice sometime after 180 days have expired from the date the charge is filed.[5] *42 U.S.C. §*

---

[4] *Section 2000e-5(f)(1)* refers to the "period of reference under *subsection (c)* or *(d)* of this section." Those subsections govern when state or local enforcement proceedings are pending before a claimant files a charge with the EEOC, which is not at issue here. *42 U.S.C. § 2000e-5(c)*, *(d)*. Based on the sentence structure of this statutory provision, the phrase "whichever date is later" refers to whichever date is later between either 180 days from the filing of the charge or the expiration of the "period in reference under *subsection (c)* or *(d)*."

[5] The regulations state that the EEOC *may* issue a right-to-sue notice before 180 days have expired from the filing of the charge if (1) the claimant requests a right-to-sue notice and (2) the EEOC determines it is probable that it will be unable to complete its administrative processing of the charge within 180 days. *29 C.F.R. § 1601.28(a)(2)*. "However, courts are split on the validity of this regulation in view of the express statutory provision (*42 USC § 2000e-5(f)(1)*) contemplating

*2000e-5(f)(1)*; *see also* Ming W. Chin et al., Cal. Practice Guide: Employment Litigation (The Rutter Group 2012) ¶ 16:151 ("To protect aggrieved individuals from undue delay, the EEOC must issue a right-to-sue letter upon the potential plaintiff's request anytime *after 180 days* after the charges were filed.") (citing *29 C.F.R. § 1601.28(a)(1)*).

*HN6*[↑] The language from *§ 2000e-5(f)(1)* addressing the right to file a civil action may be broken down into two parts: who may file the suit and when it may be filed. Although not at issue here, the statute provides that the "person claiming to be aggrieved" or, if the charge was filed by the EEOC, "the person whom the charge alleges was aggrieved" may file suit. *42 U.S.C. § 2000e-5(f)(1)*. The portion of **[**13]** the statute addressing the time to file a civil action—the key issue in this case—is similarly straightforward. The person claiming to be aggrieved may file a civil action "within ninety days after the giving of such notice." *Id.* The terms "such notice" could refer only to the notice (identified a few words earlier in the sentence) the EEOC must give upon the occurrence of the specified conditions—i.e., the right-to-sue notice. Thus, under a plain reading of *§ 2000e-5(f)(1)*, the 90-day period in which a claimant may file a civil action begins when the EEOC gives a right-to-sue notice.[6]

The district court concluded that Scott's "90-day window in which to file suit" opened 180 days after Scott's claim was constructively filed with the EEOC—or, in other words, when Scott became eligible for a right-to-sue notice from the EEOC. To support its conclusion, the court did not cite the statute but, instead, relied on our unpublished decision in *Rucker v. Sacramento County Child Protective Services, 462 F. App'x 762, 763 (9th Cir. 2011)* ("Once the DFEH letter issued, an EEOC charge was deemed filed; Rucker was entitled to a right-to-sue letter from the EEOC 180 days thereafter, or on

---

such action only after 180 days." Ming W. Chin et al., Cal. Practice Guide: Employment Litigation (The Rutter Group 2012) ¶ 16:152. Consistent with the regulation, we have held that a plaintiff may file a civil action within the 180-day period if the EEOC has issued a right-to-sue notice. *See Saulsbury v. Wismer & Becker, Inc., 644 F.2d 1251, 1257 (9th Cir. 1980)*.

[6] Although the statute refers to the 90-day clock running from the "giving" of the right-to-sue notice, the corresponding regulation requires the right-to-sue notice to state that the aggrieved person is authorized to bring suit "within 90 days from *receipt* of such authorization." *29 C.F.R. § 1601.28(e)(1)* (emphasis added). We express no opinion on any potential discrepancy between the statute and the regulation.

December 15, 2008.").[7]

*Rucker*, in turn, cites *Stiefel v. Bechtel Corp., 624 F.3d 1240 (9th Cir. 2010)*. The court in *Stiefel* did not consider whether the plaintiff timely **[\*\*14]** filed suit within the 90-day **[\*1109]** limitations period. Rather, the issue in *Stiefel* was whether the plaintiff satisfied the statute's administrative exhaustion requirement. *See Stiefel, 624 F.3d at 1245* ("[W]hen a plaintiff files a disability discrimination complaint with a state agency acting, with respect to ADA complaints, as an agent of the EEOC, and receives a right-to-sue letter from the state agency, thereby becoming entitled to an EEOC right-to-sue letter, the plaintiff need not file a separate complaint with the EEOC nor receive an EEOC right-to-sue letter in order to file suit.").[8]

Thus, while the issue in this case is whether Scott filed suit too *late*, the issue in *Stiefel* was essentially whether the claimant filed suit too *early*. Nonetheless, in generally describing the time limits for filing suit, the court in *Stiefel* observed that "[a]fter receiving an EEOC right-to-sue letter or *becoming eligible for one by the Commission's inaction*, a plaintiff generally has 90 days to file suit." *Stiefel, 624 F.3d at 1245* (emphasis added) (citing *42 U.S.C. § 2000e-5(f)(1)*). The question is whether this statement in *Stiefel* is dictum or binding precedent. On this point, we have stated:

> HN7[↑] A statement is dictum when it is made during the course of delivering a judicial **[\*\*15]** opinion, but . . . is unnecessary to the decision in the case and [is] therefore not precedential. The line is not always easy to draw, however, for where a panel confronts an issue germane to the eventual resolution of the case, and resolves it after reasoned consideration in a published opinion, that ruling becomes the law of the circuit, regardless of whether doing so is necessary in some strict logical sense.

*Cetacean Cmty. v. Bush, 386 F.3d 1169, 1173 (9th Cir. 2004)* (internal quotation marks omitted; alterations in original) (quoting *Best Life Assur. Co. v. Comm'r, 281 F.3d 828, 834 (9th Cir. 2002)* and *United States v.*

*Johnson, 256 F.3d 895, 914 (9th Cir. 2001)* (Kozinski, J., concurring)); *see also United States v. Vroman, 975 F.2d 669, 672 (9th Cir. 1992)* (holding that a prior opinion was not controlling because it did not involve the same issue).

As the sole authority supporting its statement that the 90-day window to sue begins after a claimant receives an EEOC right-to-sue letter *or* becomes eligible for one, *Stiefel* cited *Surrell v. California Water Serv. Co., 518 F.3d 1097 (9th Cir. 2008)*. *624 F.3d at 1245*. Although *Surrell* directly supports the actual holding in *Stiefel*—a plaintiff may file suit if entitled to receive a right-to-sue letter—it does not involve or address (even in dicta) the question of when the 90-day limitations period begins to run. *See Surrell, 518 F.3d at 1105* ("[W]here, as here, a plaintiff is entitled to receive a right-to-sue letter from the EEOC, a plaintiff may proceed absent such a letter, **[\*\*16]** provided she has received a right-to-sue letter from the appropriate state agency."). In fact, contrary to GME's position, *Surrell* states that an aggrieved person has 90 days to file suit "[o]nce [the] person receives an EEOC right-to-sue letter." *Id. at 1104* (citing *42 U.S.C. § 2000e-5(f)(1)*). The statement from *Surrell* that "it makes no difference whether the plaintiff actually obtained" a notice from the EEOC must be read in context—it makes no difference *for purposes of determining whether a plaintiff has exhausted administrative remedies. See id.*

Moreover, the court in *Stiefel* had no occasion to, and thus did not, consider **[\*1110]** whether the 90-day limitations window begins 180 days after EEOC inaction *even if* the EEOC does not "notify the person aggrieved" as required by *§ 2000e-5(f)(1)*. Accordingly, the statement in *Stiefel* cited by *Rucker* is dicta, as it is not necessary to the holding in that case and does not appear to originate from reasoned consideration.

Because we conclude *Stiefel* is not binding on the question of when the 90-day limitations period begins, it is our task to confront the issue de novo. As discussed above, HN8[↑] *§ 2000e-5(f)(1)* plainly ties the 90-day period to the "giving of [the right-to-sue] notice," not eligibility for a right-to-sue **[\*\*17]** notice.

The district court's conclusion is not only contrary to the language of the statute, it arguably would render right-to-sue notices meaningless. If the mere passage of time triggers not only the claimant's *right* to sue (the issue decided in *Surrell* and *Stiefel*) but also the *deadline* by which the claimant must sue (the district court's conclusion), the EEOC's giving of notice after 180 days

---

[7] Unpublished dispositions of this court are not precedent except as provided in *Circuit Rule 36-3(a)*.

[8] In light of our holding in *Stiefel*, Scott is incorrect in suggesting that a claimant must always wait until the EEOC completes its investigation, no matter how long the EEOC takes, before filing a civil suit.

becomes an idle act.

In urging the panel to follow *Steifel*'s dictum, GME argues there should not be two different dates for accrual of the cause of action and running of the statute of limitations. In support, GME cites *Reiter v. Cooper, 507 U.S. 258, 267, 113 S. Ct. 1213, 122 L. Ed. 2d 604 (1993)*: "While it is theoretically possible for a statute to create a cause of action that accrues at one time for the purpose of calculating when the statute of limitations begins to run, but at another time for the purpose of bringing suit, we will not infer such an odd result in the absence of any such indication in the statute." But *Reiter* by no means allows us to interpret a statute of limitations in a manner contrary to the statute's plain language.

Moreover, *HN9*[⬆] to hold that a plaintiff *may* sue when the EEOC has not acted on a charge for 180 days but is not *required* to do so until **[**18]** after receiving a right-to-sue notice is entirely consistent with the differing purposes of administrative exhaustion and the statute of limitations. The purpose of the exhaustion requirement "is 'to provide an opportunity to reach a voluntary settlement of an employment discrimination dispute.'" *Jasch, 302 F.3d at 1094* (quoting *Blank v. Donovan, 780 F.2d 808, 809 (9th Cir. 1986))*. The purpose of a statute of limitations, on the other hand, "is to require diligent prosecution of known claims, thereby providing finality and predictability in legal affairs and ensuring that claims will be resolved while evidence is reasonably available and fresh." *Statute of Limitations*, Black's Law Dictionary (10th ed. 2014).

Although a 180-day waiting period provides a reasonable opportunity for voluntary settlement to occur, at that point the EEOC does not lose jurisdiction to continue investigating the matter and to possibly take action. Even when the EEOC takes more than 180 days to investigate, the employer, already on notice of the charge, will have a fair opportunity to take appropriate steps to preserve evidence while it is reasonably fresh.[9] Thus, allowing an aggrieved person to wait for the agency's investigation to conclude—even if it takes more than 180 days—furthers **[**19]** the purpose of the administrative exhaustion requirement without undermining the purpose of the 90-day limitations period.

GME also argues that "[a] Title VII plaintiff should not have an indefinite limitations period where the EEOC has not **[*1111]** acted, particularly where the plaintiff has not shown diligence." We addressed that concern in *Lynn v. W. Gillette, Inc., 564 F.2d 1282 (9th Cir. 1977)*. *Lynn* involved two consolidated cases in which both appellants received a right-to-sue notice more than two years after filing a charge with the EEOC. *Id. at 1283-84*. They both filed suit within 90 days after receiving their respective notices. *Id. at 1284*. The district court concluded that earlier notices to the appellants indicating that conciliation efforts had failed triggered the 90-day limitations period. *Id.* We reversed, holding that "the ninety-day period does not begin until the charging party receives a letter specifically informing him of his right to sue." *Id. at 1286*.[10]

Critically, the court in *Lynn* clarified that its holding "does not imply that a plaintiff's lack of diligence in filing an action must be overlooked":

> [A]n aggrieved party may request a Right to Sue letter from the Commission any time after 180 days following the filing of the charge with the Commission. **[**20]** Particularly where the aggrieved party has consulted counsel and is aware of this right, it becomes inequitable at some point for the employee to delay filing suit. The complainant should not be permitted to prejudice the employer by taking advantage of the Commission's slowness in processing claims or by procrastinating while being aware that the Commission intends to take no further action.

*Lynn, 564 F.2d at 1287* (footnote omitted).

We have also recognized that *HN10*[⬆] a Title VII action may be barred by the doctrine of laches. In *E.E.O.C. v. Alioto Fish Co., 623 F.2d 86, 88-89 (9th Cir. 1980)*, the court affirmed a grant of summary judgment where the EEOC filed suit 62 months after the employee filed the administrative charge and the employer showed actual prejudice in the form of evidence lost because of the delay.

---

[9] When a charge is filed with the EEOC, the aggrieved person must serve notice of the charge on "the person against whom such charge is made." *42 U.S.C. § 2000e-5(e)(1)*.

[10] Consistent with today's holding, the *Lynn* court's interpretation of the 90-day period in *§ 2000e-5(f)(1)* focused on the right-to-sue notice as the triggering event. Although *Lynn* involved a prior version of *§ 2000e-5(f)(1)*, that version contained the same key statutory phrase that a civil action may be brought "within ninety days after the giving of such notice." *Lynn, 564 F.2d at 1286 n.3* (quoting *42 U.S.C. § 2000e-5(f)(1) (Supp. V. 1975)*).

GME's concern about an indefinitely-open limitations period is thus adequately addressed by existing doctrines and does not justify interpreting *§ 2000e-5(f)(1)* contrary to its plain language.

In the alternative, GME argues the 90-day clock under *§ 2000e-5(f)(1)* is triggered upon the issuance of a right-to-sue notice by *either* the EEOC or the DFEH. The only authority it cites for this proposition is *§ 2000e-5* and an unpublished district court decision, *Marshall v. City & County of San Francisco, No. C 14-04409 WHA, 2015 U.S. Dist. LEXIS 4079, 2015 WL 216748, at *1 (N.D. Cal. Jan. 13, 2015)* [**21] . But the statute makes no reference to a state agency's right-to-sue notice starting the 90-day clock. Instead, the statute describes the duty of "the Commission"—i.e., the EEOC, *see 42 U.S.C. § 2000e-4(a)*—to "notify the person aggrieved" and provides that a civil action may be brought "within ninety days after the giving of such notice." *42 U.S.C. § 2000e-5(f)(1)*. *Marshall* improperly conflates the concepts of administrative exhaustion and the running of the 90-day limitations period.

Accordingly, the district court erred in concluding that the 90-day clock for Scott to file suit began when she became eligible to receive a right-to-sue notice, rather than when she received her right-to-sue notice **[*1112]** from the EEOC.[11]

**B. Scott's claims based on the second administrative charge are untimely, but her claims may be based on acts occurring after her first charge under the continuing violations doctrine**

Scott's FAC asserts two claims under Title VII: harassment and retaliation. Both claims are based, at least in part, on conduct that took place before Scott filed her first DFEH charge. To that extent, her claims are timely for the reasons stated in this opinion. But Scott's retaliation claim is based in part on later conduct. Specifically, **[**22]** Scott alleged in her second administrative charge that after she filed her first charge Lifesy and Shepler retaliated against her by issuing a sham warning in an effort to set her up for termination.

*HN11*[⬆] Under Title VII, a charge must be filed with the DFEH (and thus "dual-filed" with the EEOC) within 300 days "*after* the alleged unlawful employment practice

occurred." *42 U.S.C. § 2000e-5(e)(1)* (emphasis added). The district court granted summary judgment to GME on Scott's Title VII claims stemming from the second administrative charge because she filed the charge more than 300 days after she left her job on December 22, 2013.

Scott does not dispute that her second administrative charge was untimely, and instead claims that it was unnecessary. She argues the continuing violations doctrine allows her to base her Title VII claims on conduct alleged to have occurred *after* she filed her first administrative charge—i.e., retaliation for filing the DFEH charge by issuing a bogus warning which led to Scott quitting her job.

*HN12*[⬆] Generally, a Title VII plaintiff may not base a claim on conduct occurring outside the statutory time period for filing a charge (i.e., 300 days before the charge is filed). However, under the continuing [**23] violations doctrine, acts that fall outside the statutory time period may be actionable. *Nat'l R.R. Passenger Corp. v. Morgan, 536 U.S. 101, 122, 122 S. Ct. 2061, 153 L. Ed. 2d 106 (2002)*.

*HN13*[⬆] The applicability of the continuing violations doctrine depends on the nature of the plaintiff's claim. "A hostile work environment claim is composed of a series of separate acts that collectively constitute one 'unlawful employment practice.'" *Morgan, 536 U.S. at 117* (quoting *42 U.S.C. § 2000e-5(e)(1)*). Consequently, "the entire time period of the hostile environment may be considered by a court for the purposes of determining liability" so long as at least one "act contributing to the claim occurs within the filing period." *Id.* However, Title VII "precludes recovery for discrete acts of discrimination or retaliation that occur outside the statutory time period." *Id. at 105*. "Each discrete discriminatory act starts a new clock for filing charges alleging that act." *Id. at 113*.

To the extent Scott's claims are based on discrete acts occurring after she filed her first DFEH charge—for example, retaliation for filing the first administrative charge—the district court did not err in granting summary judgment.[12] But Scott **[*1113]** may base her Title VII claims on GME's alleged acts occurring after

---

[11] Because we hold Scott timely filed her Title VII claims, we need not address her argument that the district court erred in finding no basis for equitable tolling.

---

[12] To be clear, a determination that the second administrative charge was untimely does not dispose of Scott's retaliation claim altogether. In support of her retaliation claim, Scott alleges retaliatory conduct occurring before she filed, and generally referenced in, her first administrative charge.

she filed her first DFEH charge to the extent she can show such acts are part of **[\*\*24]** a single hostile work environment claim. *See id. at 117*.

## V. Conclusion

We hold that the 90-day period for an aggrieved person to file a civil action under Title VII begins when the person is given notice of the right to sue from the EEOC, not when the person becomes eligible to receive such notice. We also hold that Scott's Title VII claims may be based on alleged acts occurring after she filed her first DFEH charge only to the extent such acts are part of a single unlawful employment practice. *See Morgan, 536 U.S. at 117*. We affirm the district court's grant of summary judgment only as to Scott's claims that are based on discrete discriminatory or retaliatory acts occurring after Scott filed her first DFEH charge. We otherwise reverse and remand. Costs are to be taxed against the appellee, GME.

**AFFIRMED IN PART, REVERSED IN PART, AND REMANDED**.