**IN THE UNITED STATES DISTRICT COURT FOR
THE WESTERN DISTRICT OF PENNSYLVANIA**

RENEE ZINSKY,                                Civil Action No. 2:22-cv-547(MJH)

        Plaintiff,                      The Honorable Marilyn J. Horan

        vs.

MICHAEL RUSSIN, RUSSIN FINANCIAL,
RUSSIN GROUP, SIMON ARIAS, III,
ARIAS AGENCIES, S.A. ARIAS
HOLDINGS, LLC, AMERICAN INCOME
LIFE INSURANCE COMPANY,                      ELECTRONICALLY FILED

        Defendants.


**DEFENDANT AMERICAN INCOME LIFE INSURANCE COMPANY'S
OBJECTION TO SETTLEMENT AGREEMENT**

## INTRODUCTION

It is well-established that an agreement to pay or provide a fact witness anything of value in exchange for their testimony is unethical, illegal, and unenforceable. "Courts have rejected such agreements as 'lean[ing] toward the procurement of perjury; toward the raising of a class of witnesses who, for a sufficient consideration, will give testimony that shall win or lose the lawsuit; toward the perversion of justice; and toward the perversion of our courts.'" *In re Compl. of PMD Enterprises Inc.*, 215 F. Supp. 2d 519, 530 (D.N.J. 2002) (citation omitted). Offering a financial benefit to a fact witness in exchange for testimony "is extremely serious misconduct," *Florida Bar v. Wohl*, 842 So. 2d 811, 816 (Fla. 2003), an "evil that should be avoided," *id.*, and "absolutely indefensible." *In re Robinson*, 136 N.Y.S. 548, 556 (N.Y. App. Div. 1st Dept. 1912).

Yet that is exactly what Plaintiff Renee Zinsky did here: pursuant to a secret Settlement Agreement with Defendant Michael Russin—her alleged harasser and abuser—Zinsky agreed to dismiss her claims against Russin (for which Zinsky was seeking millions of dollars in damages from Russin) in exchange for pages of specific testimony to support her claims against Defendant American Income Life Insurance Company ("AIL"). To ensure Russin fulfilled his end of the bargain by testifying against AIL as promised, Zinsky agreed to dismiss her claims against Russin only after he testified at the arbitration hearing, with Zinsky and Russin requesting and receiving two stays from this Court on the premise that they were engaged in ongoing settlement discussions when, in fact, Zinsky's counsel had already signed the Settlement Agreement.

Zinsky and her counsel's efforts to keep the agreement hidden show that they knew it violated basic tenets of the legal process. Zinsky and her counsel hid the agreement from this Court, from the arbitration Panel, and from AIL, ultimately electing to dismiss Zinsky's claims against AIL with prejudice rather than disclose their improper conduct. It was not until Russin

filed his Petition to Enforce Settlement (ECF No. 145[1]) that the terms of the Settlement Agreement were revealed, confirming that Zinsky's case against AIL was based on the tainted testimony of her alleged abuser.

If Zinsky were after the truth, she would have simply issued a subpoena and required Russin to testify at the arbitration hearing.  Instead, Zinsky conspired with her alleged abuser and offered him a significant benefit in exchange for specific testimony, without any admission of wrongdoing.  There is no question that the Settlement Agreement is an illegal and unenforceable contract.  Although Zinsky's claims against AIL have been dismissed with prejudice, the Settlement Agreement was entered to prejudice AIL's rights[2] and thus AIL requests that the Court find that the Settlement Agreement is unenforceable.

## BACKGROUND

### I.    Zinsky Files Suit

On April 11, 2022, Zinsky filed a Complaint against fellow independent contractor sales agent Russin, alleging that Russin engaged in egregious misconduct against her and bringing claims for sexual assault, battery, false imprisonment, and intentional infliction of emotional distress, and seeking actual and punitive damages.  ECF No. 1.  Zinsky also asserted claims against Simon Arias, Arias Agencies, and S.A. Arias Holdings (collectively "Arias"), and AIL predicated on Zinsky's contention that—despite working on a commission basis and signing multiple agent contracts expressly agreeing she was "an independent contractor to the fullest extent permitted by

---

[1] Russin removed the Settlement Agreement from public view almost immediately after filing it (ECF No. 145, replaced at ECF No. 146) in order to avoid revealing its terms.
[2]  A non-settling party has standing to object to the enforcement of a settlement agreement that affects the non-settling party's rights.  *See Eichenholtz v. Brennan*, 52 F.3d 478, 482 (3d Cir. 1995); *In re Cendant Corp. Sec. Litig.*, No. 98-CV-1664 (WHW), 2007 WL 2164241, at *4 (D.N.J. July 25, 2007).  AIL has standing to object to the Settlement Agreement because the purchased testimony appears to have been purposefully crafted to impact AIL's legal rights in the arbitration proceeding and in the future.

law"—AIL and Arias had misclassified her as an independent contractor.  *Id.*

On July 22, 2022, this Court granted AIL and Arias's Motions to Compel Arbitration and stayed the case as to those Defendants pending the completion of arbitration.  ECF No. 37.  On September 27, 2022, Zinsky filed an arbitration demand against AIL and Arias with the American Arbitration Association, again asserting claims based on Zinsky's allegation that she was misclassified as an independent contractor.  Hammer Decl., ¶¶ 2-3.  The federal action against Russin and the arbitration against AIL and Arias proceeded on parallel tracks.

## II.     Zinsky Reaches a Secret Agreement for Russin's Testimony in Exchange for a Complete Release

On October 18, 2023, Russin filed a Motion to Stay the federal case, stating that "on September 6, 2023," Russin and Zinsky had "entered into a binding settlement agreement, resolving the claims" against Russin.  ECF No. 106.  Russin represented that a stay was necessary because "[a] portion of the settlement agreement is conditioned upon the occurrence of certain events in the related AAA arbitration case" against AIL and Arias, and "the hearing in that case is scheduled for early 2024."  *Id.*  At the time the settlement was reached, Zinsky's claims against Russin—as well as her request that Russin be sanctioned, fined, and imprisoned—were pending.[3]

On October 27, 2023, Russin filed a stipulated Amended Motion to Stay, this time representing that "[d]ue to *ongoing settlement discussions*, the parties would like additional time to work out the details of the settlement negotiations."  ECF No. 107 (emphasis added).  The Court granted the motion and entered a stay of 60 days.  ECF No. 108.  On January 8, 2024, Russin filed a stipulated Second Motion to Stay, stating the parties were seeking "an additional stay *to continue*

---

[3] On May 8, 2023, Zinsky also filed a Motion for Contempt against Russin citing "ongoing threats, harassment, and intimidation tactics against Plaintiff" and seeking a fine, fees and costs, issue sanctions, and even "[c]riminal punishment for Defendant Russin."  ECF No. 68.

*to work out the details of those ongoing settlement discussions*."  ECF No. 109 (emphasis added).
Based on this representation, the Court extended the stay until April 12, 2024.  ECF No. 110.

It is now apparent that, contrary to the representations made to the Court, Russin and
Zinsky had finalized the Settlement Agreement, dated September 6, 2023, before both motions to
stay were filed and requested the stays so that Russin could uphold his end of the bargain by
delivering specified testimony against AIL and Arias in exchange for a complete dismissal.

The Settlement Agreement states that "Zinsky seeks to obtain" Russin's testimony "in her
AAA case against Arias and AIL."  Hammer Decl., Ex. A.  Russin agreed to provide specific
testimony against AIL and Arias "as set forth more fully in" a detailed 10-page document appended
to the Settlement Agreement, at both a deposition and the arbitration hearing.  *Id.*, ¶ 1(a).  If there
was any disagreement about the "quality of the Testimony" a designated mediator would review
the transcript and "determine whether Russin testified reasonably consistently with the" agreed
upon testimony.  *Id.*, ¶ 1(d).  In exchange, Zinsky agreed to dismiss her claims against Russin
within 30 days after the conclusion of the arbitration hearing.  *Id.*, ¶ 1(b).  Zinsky also agreed that
Russin is "not required to make any payments to Zinsky or to any persons and/or entities on behalf
of Zinsky by reason of the facts and damages set forth in the Lawsuit, regardless of any verdict or
award entered in favor of Zinsky in relation to the Arbitration Hearing."  *Id.*, ¶ 3.  The parties also
agreed that the Settlement Agreement would remain "absolutely confidential between the Parties"
and "shall not be produced in the AAA arbitration."  *Id.*, ¶ 6.

The Settlement Agreement is not, as Zinsky claims, merely a "framework for what could
potentially result in a settlement based on a variety of factors still to occur in the future."  ECF No.
148 at ¶ 2, but reflects a bargained-for-exchange between the parties:  in exchange for Russin
providing the scripted testimony reflected in the Settlement Agreement (something of great value

to Zinsky), Zinsky agreed to dismiss her claims against Russin (something of great value to Russin). Indeed, each page of the Agreement is initialed "JK"—the initials of Zinsky's counsel, John Kane—and the Agreement was signed "Renee Zinsky" by John Kane because Zinsky was "out of town" but "authorized [Kane] to sign her name to this agreement" and "agree[d] to be bound." *Id.* The Settlement Agreement was not signed by Russin but, soon after, he acknowledged it is a "binding settlement agreement," ECF No. 105, and maintains that position. ECF No. 145.

On September 10, 2023, four days after the effective date of the Settlement Agreement and without providing AIL any notice of its existence, or any of its terms, Russin testified at a deposition noticed by Zinsky in the arbitration. Hammer Decl., ¶ 4.

### III.    Zinsky Dismisses All Claims Against AIL and Arias with Prejudice Rather than Disclose the Settlement Agreement

Prior to the arbitration hearing that was scheduled to begin on March 4, 2024, Zinsky disclosed that Russin would be appearing voluntarily to testify in Zinsky's case-in-chief. ECF No. 133-2 at 11:9-16. The fact that Russin was voluntarily appearing was the first indication that Russin was cooperating with Zinsky, causing AIL to suspect that Russin and Zinsky had finalized a settlement agreement despite their prior representation to this Court that settlement negotiations were ongoing. *See* ECF No. 109. AIL thus immediately requested that the Panel issue a subpoena requiring Russin to produce the Settlement Agreement when he appeared to testify. On March 3, 2024—the day before the hearing was scheduled to begin—the Panel signed the subpoena. Later that evening, Zinksy's counsel emailed all counsel and the Panel and stated they were withdrawing Zinsky's claims. ECF No. 137-2.

At a conference the following morning, the Panel chair stated "the Panel is just confused on the turn of events in the last, you know – less than 24 hours after all the work everyone's put into this for Claimant to dismiss her case based on us signing subpoena – a subpoena for one

document." ECF No. 133-2 at 8:8-14. Zinsky's counsel provided a number of misleading responses to the Panel. Although Zinsky's counsel had personally signed the Settlement Agreement and Russin has agreed to appear voluntarily to provide scripted testimony, Zinsky's counsel stated: "We don't agree that there's any settlement agreement with Mike Russin. We believe he's an antagonistic witness to us . . . ." *Id.* at 14:9-21. Zinsky's counsel also represented that it would be a violation of this Court's protective order to produce the Settlement Agreement, even though the protective order does not cover the Settlement Agreement, ECF No. 52 at ¶ 1, and, in any event, does not prohibit the production of confidential information in other proceedings pursuant to valid process, *id.* at ¶ 14.

Addressing the concerns raised by Zinsky's counsel, the Panel noted that it ordered Russin, not Zinsky, to produce the Settlement Agreement and thus Zinsky should have no concern about violating the protective order, ECF No. 133-2 at 7:18-8:7, and that while such an agreement would be "potentially relevant to [Russin's] credibility as a witness that [Zinsky] is choosing to call" if there was indeed "no final settlement agreement, then there is nothing for the witness to bring." *Id.* at 21:14-16. The Panel also offered Zinsky's counsel "options" to address their purported concerns about the protective order with this Court, such as calling Russin "out of order" at the hearing, or any other options Zinsky's counsel might propose. *Id.* at 21:17-22:7.

Rather than risk disclosing the Settlement Agreement, Zinsky's counsel elected to dismiss her claims with prejudice.[4] *Id.* at 31:22-32:19. The Panel issued a Final Order dismissing Zinsky's

---

[4] Zinsky was not present at the hearing, but Zinsky's counsel represented that he was acting with Zinsky's authority. ECF No. 133-2 at 31:1-21. As it was Zinsky's counsel who signed the illicit Settlement Agreement and faced risk as a result of its disclosure, Zinsky's counsel may have had a serious conflict of interest in dismissing her claims to keep the agreement secret. *See* 204 Pa. Code § 1.7 ("a lawyer shall not represent a client if…there is significant risk that the representation…will be materially limited…by a personal interest of the lawyer").

claims with prejudice, which this Court confirmed over Zinsky's opposition.  ECF No. 138.

**IV.    Russin's Counsel Attempts to Enforce the Agreement, Filing and Then Removing the Agreement from the Public Docket**

On April 16, 2024, Russin filed a "Petition to Enforce Settlement Agreement," attaching the Settlement Agreement and stating, "[Zinsky] and Russin Defendants entered into a settlement agreement whereby in exchange for the testimony of Michael Russin at an Arbitration hearing, Plaintiff would dismiss the lawsuit in its entirety within 30 days of the conclusion of the Arbitration Hearing . . . ."  ECF No. 145, Hammer Decl., Ex. A.  As 30 days had passed since the arbitration, Russin requested that the claims against Russin be dismissed with prejudice.  *Id.*  That same day, Russin removed the Petition from the docket and replaced it with a version that did *not* contain the Settlement Agreement.  ECF No. 146.

## THE SETTLEMENT AGREEMENT IS UNENFORCEABLE

Zinsky's agreement to dismiss her claims against Russin in exchange for favorable testimony is unethical, illegal, and therefore unenforceable.

Pennsylvania Rule of Professional Conduct Rule 3.4(b) states that: "A lawyer shall not pay offer to pay, or acquiesce in the payment of compensation to a witness contingent upon the content of the witness' testimony."  *See also* Pennsylvania Bar Formal Opinion 2019-100, 2019 WL 13417216 (Dec. 3, 2019) (noting Rule 3.4(b)'s "express prohibition against payment of compensation that is 'contingent upon the content of the witness' testimony").

> [L]awyers should never pay fact witnesses for their testimony, regardless of whether the payment is for the fact of a witness's testimony, or its content or substance.  A fact witness's compensation may never be contingent upon the fact, content, or substance of the witness's testimony, or the outcome of the litigation. A requirement that a witness's testimony be truthful will not cure any of these ills.

Douglas R. Richmond, Compensating Fact Witnesses: The Price Is Sometimes Right, 42 Hofstra L. Rev. 905, 939 (2014).

Rule 3.4(b) prohibits providing monetary as well as non-monetary benefits to a fact witness in exchange for testimony. *See* Penn. Ethics Op. 92-37, 1992 WL 810361 at *1 (Apr. 9, 1992) (an agreement to "not pursue the defendant-witness's civil liability . . . if the defendant-witness were to testify in a certain manner [against a second defendant] . . . would clearly violate Rule 3.4(b)"). This includes settling claims against a witness in exchange for the witness's testimony. In *State of N.Y. v. Solvent Chem. Co., Inc.*, 166 F.R.D. 284 (W.D.N.Y. 1996), for example, the court held that the defendant improperly "purchased" the witness's cooperation "by orchestrating the settlement of [a plaintiff's] claims against" the witness in related litigation, "by obtaining [the plaintiff's] agreement to indemnify [the witness] with respect to any claims made against him by other parties in that case, and by undertaking not to sue him in the present action. Those actions were the equivalent of making cash payments to [the witness] as a means of making him 'sympathetic' and securing his testimony." *Id.* at 289; *see also Iowa Supreme Ct. Att'y Disciplinary Bd. v. Gailey*, 790 N.W.2d 801, 806 (Iowa 2010) (suspending attorney who offered favorable dissolution settlement in exchange for agreement "to testify in a certain way"). Even *proposing* to settle claims in exchange for that witness's testimony violates the rule prohibiting compensating fact witnesses. *See Dyll v. Adams*, No. CIV.A.3:91-CV-2734-D, 1997 WL 222918, at *2 (N.D. Tex. Apr. 28, 1997) (holding that letter proposing "the exchange of information that will be useful at trial [against the remaining defendants]—that is, [defendant's] videotaped deposition testimony—for a settlement with plaintiffs" is an improper "form of *quid pro quo*" and "violates relevant disciplinary rules and ethical guidelines").[5]

---

[5] The relevant rules in New York, Texas and Iowa are nearly identical to Pennsylvania Rule 3.4(b). *See* N.Y. Rule Prof. Conduct 3.4 (a lawyer shall not "offer to pay or acquiesce in the payment of compensation to a witness contingent upon the content of the witness's testimony or the outcome of the matter"); Tex. Rule Prof. Conduct 3.04(b) ("A lawyer shall not . . . pay, or offer to pay, or acquiesce in the offer or payment of compensation to a witness or other entity contingent upon the

"Congress codified th[e] common law principle" reflected in Rule 3.4(b) "at 18 U.S.C. § 201," *Rocheux Intern. of New Jersey v. U.S. Merchants Fin. Group, Inc.*, No. CIV. 06-6147, 2009 WL 3246837, at *3 (D.N.J. Oct. 5, 2009), a criminal statute that prohibits "directly or indirectly, giv[ing], offer[ing], or promis[ing] anything of value to any person, for or because of the testimony under oath or affirmation given or to be given by such person as a witness upon a trial, hearing, or other proceeding . . . ." 18 U.S.C. § 201(c)(3). "Section 201(c)(3) clearly prohibits demanding or accepting anything of value in exchange for testimony," even truthful testimony. *U.S. v. Blaszak*, 349 F.3d 881, 887 (6th Cir. 2003) (affirming conviction under Section 201(c)(3) of defendant who agreed to testify truthfully in civil action in exchange for payment).

The Settlement Agreement violates the bedrock principle prohibiting paying or providing something of value to a witness in exchange for testimony. In exchange for 10 pages of itemized testimony that was favorable to Zinsky, she agreed to dismiss all claims against Russin and that Russin would not be "required to make any payments to Zinsky." Hammer Decl., Ex. A at ¶¶ 1(a), 1(b), 4. The parties even established a dispute resolution process to ensure that Russin provided "quality" testimony. *Id.* at ¶ 1(d). That Russin agreed to "testify truthfully," *id.* at ¶ 1(a), does not legitimize the agreement. *See Solvent Chem. Co., Inc.*, 166 F.R.D. at 289 ("The payment of a sum of money to a witness to 'tell the truth' is as clearly subversive of the proper administration of justice as to pay him to testify to what is not true."). Zinsky's agreement to dismiss all claims had tremendous value to Russin, who was facing claims for actual and punitive damages—which Zinsky had claimed were millions of dollars—based on serious allegations. Russin was also facing ongoing legal fees and Zinsky's pending request for monetary sanctions, costs, and fees.

---

content of the testimony of the witness or the outcome of a case."); Iowa Rule Prof. Conduct 32:3.4(b) ("A lawyer shall not … offer an inducement to a witness that is prohibited by law.").

Zinsky also structured the Settlement Agreement to ensure that it would remain secret and maximize the impact on Russin's testimony. Even after Zinsky's counsel signed the Settlement Agreement and Russin provided deposition testimony in the arbitration, Zinsky did not dismiss her case against Russin. Instead, the parties asked the Court to stay the litigation—on the pretext of ongoing settlement discussions—past the date of the arbitration hearing, ensuring Russin would give testimony against AIL at the hearing before he received dismissal in compensation. Russin was only hours from providing this testimony when Zinsky dismissed her claims with prejudice rather than risk the disclosure of the Settlement Agreement.

Enforcing Zinsky and Russin's secret and illicit Settlement Agreement would result in "the perversion of justice" and "the perversion of our courts." *In re Compl. of PMD Enterprises Inc.*, 215 F. Supp. 2d at 530 (finding agreement to pay witness unenforceable and sanctioning lawyer). Accordingly, the Court should find that the Settlement Agreement is unenforceable. *See Hamilton v. General Motors Corp.*, 490 F.2d 223 (7th Cir. 1973) (holding that agreements to compensate fact witnesses, other than for lost time and reasonable expenses, are unenforceable for lack of consideration and as against public policy); *In re Telcar Group, Inc.*, 363 B.R. 345, 354 (Bankr. E.D.N.Y. 2007) (denying approval of bankruptcy settlement that could violate rules against paying fact witness); *Marshall v. Higginson*, 813 P.2d 1275 (Wash. Ct. App.1991) (finding agreement with former client releasing lawyer from liability for malpractice in return for lawyer's promise to testify in separate proceeding void as against public policy).

## **CONCLUSION**

For the foregoing reasons, AIL respectfully requests the Court find that the Settlement Agreement is unenforceable and issue any other such relief as it deems appropriate.

Dated:  April 24, 2024                    By:  _/s/ Jeffrey Hammer_____

**LITTLER MENDELSON, P.C.**
Andrea M. Kirshenbaum (Pa. Bar No. 88030)
Three Parkway
1601 Cherry Street, Suite 1400
Philadelphia, PA 19102Tel: (267) 402-3076
Fax: (267) 402-3131
Email:  AKirshenbaum@littler.com

**KING & SPALDING LLP**
Jeffrey Hammer* (Cal. Bar No. 264232)
James A. Unger* (Cal. Bar No. 325115)
633 West Fifth Street, Suite 1600
Los Angeles, California 90071
Tel: (213) 218-4002
Fax: (213) 443-4310
Email: jhammer@kslaw.com
Email: junger@kslaw.com

Anne R. Dana* (NY Bar No. 5011366)
1185 Avenue of the Americas
34th Floor
New York, NY 10036
Tel: (212) 556-2100
Email:  adana@kslaw.com

*Admitted Pro Hac Vice*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on April 24, 2024 a true and correct copy of the foregoing document was served and filed using the Western District of Pennsylvania's ECF system, through which this document is available for viewing and downloading, causing a notice of electronic filing to be served upon the following counsel of record:

Amy Williamson, Esquire
WILLIAMSON LAW
429 Fourth Avenue, Suite 300
Pittsburgh, PA 15219
awilliamson@awilliamsonlaw.com

Janice Marie Savinis
SAVINIS, KANE, & GALLUCCI
436 7th Avenue, Suite 322
Pittsburgh, PA 15219
jsavinis@sdklaw.com

John R. Kane
SAVINIS, KANE, AND GALLUCCI
436 7th Avenue, Suite 322
Pittsburgh, PA 15219
jkane@sdklaw.com

Michael J. Gallucci
SAVINIS, KANE, & GALLUCCI
436 7th Avenue, Suite 322
Pittsburgh, PA 15219
mgallucci@sdklaw.com

*Attorneys for Plaintiff Renee Zinsky*

Jean E. Novak, Esquire
STRASSBURGER MCKENNA GUTNICK AND GEFSKY
Four Gateway Center, Suite 2200 444
Liberty Avenue Pittsburgh, PA 15222
jnovak@smgglaw.com

*Attorneys for Defendants Simon Arias, III, Arias Agencies and S.A. Holdings, LLC*

Matthew D. Gailey, Esquire
COZZA LAW GROUP PLLC
400 Holiday Drive, Suite 210
Pittsburgh, Pennsylvania 15220
mgailey@cozzalaw.com

*Attorney for Defendants Michael Russin, Russin Group, LLC and Russin Financial*

*/s/ Adelina Landeros*
Adelina Landeros